FILED

FEB 1 0 2006

RICHARD W. W........G
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Suzanne Shell - pro se
2   dsshell@ix.netcom.com
3   14053 Eastonville Rd.
4   Elbert, CO 80106
5   Telephone: (719)749-2971
6   Fax: (719)749-2972
7
8   Defendant
9
10                  **UNITED STATES DISTRICT COURT**
11
12                **NORTHERN DISTRICT OF CALIFORNIA**
13
14                    **SAN FRANCISCO DIVISION**
15
16   INTERNET ARCHIVE                )   CASE NO. C 06 0397 EDL
17          Plaintiff                )
18                                   )   **ANSWER and**
19                                   )   **OBJECTION TO VENUE and**
20                                   )   **COUNTERCLAIM**
21   v.                              )
22                                   )
23   SUZANNE SHELL                   )   Demand for Jury Trial
24          Defendant                )
25                                   )
26                                   )
27
28          Defendant Suzanne Shell (Defendant or Shell) herein answers the complaint by

29   Plaintiff Internet Archive (Plaintiff or Internet Archive), on first hand knowledge as to her

30   own facts; objects to venue; and upon personal knowledge, and upon information and belief

31   also hereby alleges her counterclaim against the Internet Archive as follows:

32                              **ANSWER**

33                            **The Parties**

34   1.      In answer to paragraph 1, Defendant lacks sufficient knowledge or information to form

35           a belief as to the truth of the allegations contained herein, and on that basis, denies

36           same.

37   2.      Admit that Defendant Suzanne Shell is an individual. She resides in El Paso County,

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 1

1   Colorado. Shell owns and maintains a web site at www.profane-justice.org (aka

2   profane-justice.org and under other aliases which direct to www.profane-justice.org )

3   which contains her copyrighted intellectual property. Her web site is registered with

4   the United States Copyright Office (registrations attached). Shell's web site contains

5   the requisite copyright notices mandated in Title 17 of the United States Code

6   governing copyright. Shell's web site also contains explicit license limitations and

7   license fees. The published terms for license fees to obtain a copy of her web site is

8   clearly published on every page at the rate of $5000 per printed page per copy, payable

9   in advance. The intellectual property published on her web site is the product of 15

10   years of intensive research, experience, expertise and testing, and during which time

11   she did not receive any remuneration for her efforts. She is now exploiting her

12   intellectual property for her benefit, as is her exclusive right. Shell owns no assets

13   other than her intellectual property. Shell appears *pro se*. The court shall construe the

14   pleadings and papers of a pro se litigant liberally.

15                    **Jurisdiction and Venue**

16   3.   Admit that the United States District Court has jurisdiction over the subject matter of

17        this action as described in paragraph 3.

18   4.   Deny that this action is properly before the United States District Court, Northern

19        District of California, San Francisco Division as described in paragraph 4. This venue

20        is ***not*** proper pursuant to 28 U.S.C. § 1400(a) and § 1391(b) (1) and (2) because

21        Defendant Shell, (1) resides in Colorado, and (2) conducts her business primarily in

22        Colorado, and (3) that a substantial part of the events giving rise to the claims occurred

23        in Colorado e.g. the theft of the property occurred in Colorado, and (4) a substantial

24        part of the property that is the subject of the action was originally situated in Colorado.

25                    **Intra District Assignment**

26   5.   Deny that a substantial part of the events giving rise to the claims occurred in

27        California as described in paragraph 5 and deny that this court is the proper venue for

28        this action.   Shell's computer, computer server, computer system or computer

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM   page 2

1   network, upon which her web site is situated, is also located in Colorado. Shell did not,

2   at any time, send copies of her web site to the Internet Archive in any electronic or

3   digital file or in any other medium or format. Internet Archive wilfully, knowingly,

4   covertly and stealthily, electronically came onto the computer, computer system or

5   computer network wherein Shell's web site was situated in Colorado on multiple

6   occasions and illegally converted digital copies of her web site to their own use, which

7   copies were then transmitted electronically by the Internet Archive back to the Internet

8   Archive servers and stored as permanent files on its servers. This stealth conversion

9   and theft of her intellectual property was done without notice to Shell, without her

10   permission, without her knowledge and without her participation and without paying

11   the posted license fees for that property. Furthermore, Shell's web site also contains a

12   link on every page to her "Copyright/Security Agreement" (Security Agreement

13   attached - Exhibit A) to which any person copying or distributing Shell's web site

14   expressly agrees to be bound, by virtue of their access to Shell's web site situated in

15   Colorado, where the contract is executed. Internet Archive not only copied Shell's web

16   site at her server, it copied her Security Agreement and republished it on its Wayback

17   Machine, thereby establishing that it had knowledge of and access to the Security

18   Agreement. The vast majority of courts enforce shrinkwrap and "clickwrap" licenses

19   similar to this one even though the individual terms are not negotiated and even if the

20   licensee did not read them. Proper venue for this action is the United States District

21   Court for the District of Colorado, and Plaintiff Shell hereby demands that this action

22   be transferred to that venue in the interest of justice pursuant to 28 U.S.C. § 1412.

### Factual Background

24   6.   In answer to paragraph 6, denied. Shell denies the inference that Internet Archive

25   possesses exclusive interest, rights or ability to provide open and free access to digital

26   literature and other written materials. This appears to be a highly specious "fair use by

27   reason of necessity" argument. Internet Archive has failed to prove their central

28   contention which is that enjoining them from pirating defendant's copyrights would

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 3

1    halt the ability of the public to access this information through a legitimate source

2    when, in fact, the literary content of profane-justice.org has been made available to the

3    public view by the author since 1997. And even if it weren't available, Internet

4    Archive's stated mandate and method of doing business is contrary to copyright law

5    and cannot be sustained on this basis.

6    7.    In answer to paragraph 7, Defendant lacks sufficient knowledge or information to form

7          a belief as to the truth of the allegations contained herein, and on that basis, denies

8          same.

9    8.    In answer to paragraph 8, Defendant lacks sufficient knowledge or information to form

10         a belief as to the truth of the allegations contained herein, and on that basis, denies

11         same.

12   9.    Admit that Internet Archive removed Shell's web site from the Wayback Machine at

13         her request as described in paragraph 9, but deny the rest of the paragraph. Disclaimers

14         on the Internet Archive Wayback Machine which instruct web site owners how to have

15         their web sites removed from the Wayback Machine actually establish that Internet

16         Archive was well aware that its actions were unlawful and proves its wilfulness. This

17         is a transparent attempt to deny the patent illegality of the Internet Archive's wholesale

18         infringing acts. Internet Archive Wayback Machine knowingly committed theft of,

19         possessed, stored, published and displayed several years worth of versions of Shell's

20         web site, without notice to her, without her permission and in violation of her clearly

21         published license terms and in violation of her exclusive rights as copyright owner.

22         Internet Archive made no attempt to contact Shell to negotiate a license fee reduction

23         or waiver, nor to seek her permission. Internet Archive never notified Shell that it had

24         copied her web site and that it had republished and publicly displayed her web site

25         without her permission. The law requires that Internet Archive ask permission of the

26         copyright owner before copying or publicly displaying any copyrighted work. The

27         burden is on the copier to ask permission. It is *not* the duty of the copyright owner to

28         cruise the Internet and ask authors to stop infringing a copyright. Therefore, any claim

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM   page 4

1    that it published 'opt out' notices on its web site is irrelevant and specious and

2    admissive of its wrongdoing. Internet Archive's Terms of Service agreement also

3    clearly indicates that it understands copyright law, because it requires its users to agree

4    to not engage in the same infringing conduct as a condition of their using the Wayback

5    Machine that Internet Archive engages in when obtaining the web sites. Furthermore,

6    since the Defendant did not know the Wayback Machine existed or publicly displayed

7    her web site, she could not ask Internet Archive to remove her web site. Additionally,

8    if the Internet Archive was acting in good faith, it would not have employed stealth to

9    obtain illegal copies of Shell's web site and it would have advised her of its intentions

10    and sought her permission and would not have refused to pay her license fees upon

11    demand.

12    **FIRST CAUSE OF ACTION**

13    10.    In answer to paragraph 10, show the court that said paragraph is introductory and

14    requires no response.

15    11.    Admit the allegations in paragraph 11, with the caveat that this action was legal and

16    fully within Shell's exclusive rights as copyright owner of the intellectual property in

17    question and in accordance with the Copyright Notice and Security Agreement

18    published on profane-justice.org (See attached Exhibit A).

19    12.    Admit the allegation in paragraph 12, with the caveat that this action was legal and

20    fully within Shell's exclusive rights as copyright owner of the intellectual property in

21    question.

22    13.    Admit the allegation in paragraph 13 with the caveat that Internet Archive's removal of

23    Shell's web site from its Wayback Machine did not remedy six years of infringement

24    injury caused to Shell nor remedy the original thefts of her property and did not satisfy

25    the terms of the contract Internet Archive entered into when it copied Shell's web site

26    and did not remedy the thefts of her property.

27    14.    Deny the allegation in paragraph 14. Removal of Shell's web site from the Wayback

28    Machine is a tacit admission of Internet Archive's wilful infringing conduct. Merely

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 5

removing the web site without correcting the injury caused is **not** reasonable. Furthermore, upon information and belief, Internet Archive STILL possesses copies of all 87 versions of Shell's web site without her permission in permanent storage on their computer systems. The Defendant has suffered long-term actual and/or statutory damages as a direct result of Internet Archive's knowing and wilful infringement of her intellectual property, and theft of that property, and breach of contract, and she therefore made a good faith attempt to settle the damages before filing suit in court. Internet Archive is intransigent about paying anything for the injury it caused to Shell for six years of infringement and the original 87 thefts of her property and its breach of contract.

15.    Deny the allegations in paragraph 15 as an outright lie. Internet Archive did NOT act in good faith to negotiate or settle this matter, but attempted to bully Shell into withdrawing her demand in order to absolve it of liability.

16.    In answer to paragraph 16, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, denies same. Additionally, this allegation is patently absurd. There is no legitimate 'non-profit organization' exclusion which permits it to knowingly commit wholesale crimes or copyright infringement, nor is there an 'indigence defense' which would immunize an infringer or a criminal from being held legally responsible for damages resulting from its crimes, breach of contract or infringing activities.

17.    Deny the allegations in paragraph 17.

18.    Admit the allegation in paragraph 18 only that Shell offers a reward for copyright infringement to protect her intellectual property, as is her right. Deny that this reasonable protective action constitutes a 'history of being litigious.'

19.    In answer to paragraph 19, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, denies same.

20.    Deny allegations in paragraph 20. Internet Archive comes before this Court seeking a

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 6

1    remedy in the form of fair use protections with unclean hands and must, therefore, be
2    denied that protection. In paragraph 1 of its complaint, Internet Archive described
3    itself as an "Internet library" which has become it's sole reason for claiming a
4    previously unknown form of 'wholesale fair use' immunity from any copyright
5    infringement claim for its wholesale infringing activities involving, by its own
6    admission, 55 billion web pages. Despite Internet Archive's gross misconceptions to
7    the contrary, fair use does not come for free. Internet Archive disingenuously attempts
8    to avail itself of fair use protections in order to justify its "free use" of Shell's
9    intellectual property. By way of example: Shell has not only published her intellectual
10   property on the Internet, she has also published three hard copy books. Public and
11   private libraries make her books available for free to the public, AFTER they purchase
12   the book, or AFTER they seek and obtain a donation of a book from Shell. Never has
13   any library entered into Shell's warehouse (nor, presumably, a bookstore) to *steal* a
14   copy of any of her books to then make the books freely available to the public in their
15   library. Should any library do so, Shell (or the bookstore owner) would be fully within
16   her rights to seek criminal prosecution or civil remedies for the theft of that property.
17   In this case, Internet Archive surreptitiously, covertly and stealthily, without notice or
18   permission, electronically entered the computer, computer system or computer network
19   where Shell's web site is situated in Colorado and *stole* a copy of her ENTIRE web
20   site on 87 occasions and transmitted the stolen copies of her entire web site back to
21   Internet Archive servers where they were stored in permanent digital and/or electronic
22   format, without her knowledge, consent or participation. Internet Archive then
23   displayed her web site publicly. In so doing, it has effectively destroyed Shell's ability
24   to market and sell her intellectual property by flooding the Internet with access to free
25   copies of the very same documents she charges license fees for and/or limits access to
26   documents. Internet Archive has provided free and unfettered access to her documents
27   to individuals and organizations that Shell expressly chose to exclude from access,
28   which was her exclusive right to exercise. Shell has suffered wholesale infringement of

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 7

1   her property because her very control over any and all access to her property was stolen

2   by Internet Archive. Congress has expressly refused to distinguish an electronic,

3   magnetic or digital publication from a hard copy publication, stating that these formats

4   are to be treated identically for copyright infringement purposes. Even for educational

5   institutions, copying is not permitted to substitute for the purchase of books,

6   publishers' reprints or periodicals. Copy centers and libraries and schools with copy

7   machines are liable for vicarious or contributory infringement when they make it

8   possible for infringers to copy books and periodicals without the permission of the

9   copyright owner, which is also what Internet Archive has done.  The fact that a digital

10  copy is easier to lift, transmit and display does not give anyone more 'rights' to copy,

11  transmit and display that intellectual property without paying the established license

12  fee (for the first copy at least), negotiating a fee reduction or waiver, or otherwise

13  obtaining the consent of the copyright owner before engaging in any subsequent or

14  purported 'fair use' of that property. There is no 'digital' or 'Internet library exception'

15  for copyright infringement, nor for vicarious or contributory infringement, nor for theft

16  of the original intellectual property. Because Shell's intellectual property was first

17  *stolen* by Internet Archive 87 times before it made all 87 versions for the past 6 years

18  of her copyrighted web site freely available in their entirety to the entire world on the

19  Wayback Machine, Internet Archive must be denied any fair use protections for its

20  subsequent use of her copyrighted  property under the unclean hands doctrine and

21  equitable estoppel. Additionally, Internet Archive's use of profane-justice.org was not

22  consistent with fair use as described in Shell's Counterclaim's First Cause of Action,

23  below. Finally, Internet Archive expressly waived fair use protections when it entered

24  into the contract with Shell which states:

25      Commercial/financial gain includes but is not limited to: the use
26      of this copyrighted content and intellectual property (hereinafter
27      property) . . .to use this property to seek or obtain any personal,
28      commercial, financial, professional or other non-tangible benefit
29      for the User without the express written permission of the

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 8

1          Copyright owner and/or without pre-paying the posted license
2          fees or obtaining a waiver of fees in writing; to use this property
3          to influence, cause or inflict Harm or Injury to the copyright
4          owner or her property, occupations and/or associations or to
5          influence, cause or inflict Injury or Harm to anyone who
6          engages in occupations or associations with the copyright
7          owner. User expressly agrees that any and all "Fair Use"
8          exceptions or affirmative defenses shall not apply to any
9          commercial/financial gain use as defined in common practice or
10         as defined herein.

11

12  21.  Deny the allegation in paragraph 21. "Fair use" is not an exemption to copyright law.

13  The concept of "fair use" is a defense, which presumes that an infringement has

14  occurred. In order to claim a "fair use" defense, Internet Archive must first admit to

15  copyright infringement. Since Internet Archive is invoking "fair use" defense, then it

16  has expressly admitted to copyright infringement and therefore no legal controversy

17  exists over the question of whether Internet Archive infringed Shell's copyright or not.

18  Having admitted to infringing Shell's copyright, Shell asserts Internet Archive's use

19  does not fall within fair use guidelines. Additionally any fair use protections are

20  precluded under the unclean hands doctrine and/or under  the doctrine of equitable

21  estoppel that no man will be permitted to profit from his own wrongdoing in a court of

22  justice, and because certain fair use protections have been expressly waived by virtue

23  of Internet Archive entering into the contract with Shell. Therefore, the only legal

24  controversy that exists is the amount of damages due to Shell by Internet Archive.

25  22.  Deny the allegation in paragraph 22. Shell asserts that Internet Archive is precluded

26  from fair use immunity protections under the doctrine of unclean hands, the doctrine of

27  equitable estoppel, and that its 'use' of her copyrighted property at profane-justice.org

28  over the past six years was predicated solely upon multiple thefts of that property and

29  were therefore originated in criminal acts; and by virtue of it's express consent to the

30  security agreement which it entered into when it copied www.profane-justice.org its

31  use was impermissible on its face and Internet Archive expressly waived fair use

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 9

1      protections; it's use was inconsistent with fair use guidelines, and constitutes wilful

2      copyright infringement.

3  23.  Wherefore, Defendant Shell demands the plaintiff's Complaint for Declaratory Relief

4      of Copyright Non-Infringement be denied; that it be held liable for copyright

5      infringement; and declare Internet Archive did not make fair and permissible use of

6      profane-justice.org and deny it's request for attorney fees and costs for bringing this

7      action.

8                           **COUNTERCLAIM**

9  24.  Shell repeats and re-alleges the allegation of paragraphs 1 through 23 of the Answer

10      and Objection to Venue and Counterclaim as if fully set forth herein.

11                      **Jurisdiction and Venue**

12  25.  Shell's aforementioned demand to transfer this case to the United States District Court

13      for the District of Colorado (Colorado) is hereby renewed. Colorado has jurisdiction

14      over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1338(a), as

15      this action arises under the copyright laws of the United States 17 U.S.C. §§ 101 et

16      seq.

17  26.  Shell's aforementioned demand to transfer this case to the United States District Court

18      for the District of Colorado (Colorado) is hereby renewed. Pursuant to 28 U.S.C. §

19      1400(a) and  § 1391(b) (1) and (2), Colorado is the proper venue because the defendant

20      in this case is Shell, who (1) resides in Colorado, and (2) conducts her business

21      primarily in Colorado, and (3) that a substantial part of the events giving rise to the

22      claims occurred in Colorado e.g. the theft of the property was committed in Colorado

23      and the contract was executed in Colorado, and (4) a substantial part of the property

24      that is the subject of the action was originally, and is, situated in Colorado.

25      Furthermore, the burden of litigating this claim long distance would severely impair

26      Shell's ability to avail herself of the protection of the courts.

27  27.  Pursuant to Colorado Revised Statutes § 13-1-124, Internet Archive purposely availed

28      itself of the privilege of acting in Colorado or of causing important consequences here;

1    the cause of action arises from the consequences to Shell in Colorado of Internet

2    Archive's activities; the activities of Internet Archive or the consequences of those

3    activities have a substantial enough connection with Colorado to make the exercise of

4    Colorado's jurisdiction over Internet Archive reasonable. Internet Archive transacted

5    business in Colorado and committed tortious acts in Colorado, therefore, jurisdiction

6    and venue is proper in Colorado.

7   28.   This counterclaim is also brought under the federal Racketeer Influenced and Corrupt

8    Organization ("RICO") statute, 18 U.S.C. § 1961 et seq., and various other Colorado

9    statutes and common law doctrines. Jurisdiction is vested in this Court by virtue of 28

10    U.S.C. § 1331.

11   29.   Because counterclaims brought under Colorado law, are so related to Shell's federal

12    counterclaims, over which the Court has original jurisdiction, that they form part of the

13    same case or controversy under Article III of the United States Constitution, the United

14    States District Court for the District of Colorado also has jurisdiction over Shell's

15    Colorado common law and statutory claims pursuant to 28 U.S.C. § 1367.

16                        **Intradistrict Assignment**

17   30.   This case is improperly filed in the San Francisco Division of the United States

18    District Court for the Northern District of California. Pursuant to 28 U.S.C. § 1400(a)

19    and  § 1391(b) (1) and (2), Colorado is the proper venue because the defendant in this

20    case is Shell, who (1) resides in Colorado, and (2) conducts her business primarily in

21    Colorado, and (3) that a substantial part of the events giving rise to the claims occurred

22    in Colorado, and (4) a substantial part of the property that is the subject of the action

23    was originally and is situated in Colorado.

24                              **Parties**

25   31.   Plaintiff in the counterclaim is the defendant in this action, Suzanne Shell.

26   32.   Defendant in the counterclaim is the plaintiff in this action, Internet Archive.

27   33.   Defendants in the counterclaim for the RICO claims only are Internet Archive's board

28    of directors:

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 11

1      a.     Brewster Kahle, Board Chair and

2      b.     Kathleen Burch, Board Secretary and

3      c.     Rick Prelinger, Board President

4     whose business address is Internet Archive, Presidio of San Francisco, P.O.

5     Box 2924, San Francisco, CA 94129.

6                              **Factual Background**

7    34.    As a country, our most valuable asset is innovation. Our constitution and our laws specifically protects innovation of those who have a specific talent via copyright, trade secret and patent protections and remedies.

10    35.    The Internet provides historically unparalleled opportunity for authors to market and publish their creative works with minimal expense and maximum public exposure. Works published on the Internet enjoy the same copyright protection as other works. There is no legal requirement that a copyright holder take steps to secure or sequester material in order to claim protection. The onus of avoiding infringement is on users, not on copyright holders - an infringement is an infringement whether the material was publicly available or password protected.

17    36.    Anyone wanting to make 'fair use' of a copyrighted online work need only follow the same steps as he or she would for books, periodicals or other similar publications; buy or rent a copy, subscribe to a transmission thereof or borrow a copy from a library.

20    37.    It is not the role of the courts to tell copyright holders the best way for them to exploit their copyrights. Market power does not impose on the intellectual property owner an obligation to license the use of that property to others. Copyright owners enjoy complete discretion in deciding whether or not charge permission license fees and how much to charge. Nothing in the copyright statutes would prevent an author from hoarding all of his works during the term of the copyright.

26    38.    Unauthorized copying and distribution of works of intellectual property, such as web sites, is becoming a pervasive problem on the Internet. The basic nature of the copyright infringement (i.e., unauthorized copying and distributing) is familiar; given

1    the speed and ease of reproducing and widely distributing information on the Internet,

2    however, the potential harm to copyright owners is exponentially greater than the

3    threat posed by traditional acts of infringement.

4   39.   The extensive misuse of the Internet for unlawful purposes is in part due to the nature

5    of the medium. The ease with which information can be copied to and from Internet

6    sites, the simplicity of efficiently downloading ever-larger files based on improved

7    data compression technologies, and the relatively minor cost to a user of

8    communicating with an audience of millions create unparalleled opportunities for

9    copyright infringement. The relative anonymity with which Internet communications

10    may be conducted further facilitates illegal conduct.

11   40.   Unscrupulous Internet users can covertly copy and transmit to the Internet copyrighted

12    web site properties (in which they have no rights and which they have no authority to

13    copy or distribute) thereby making available to a worldwide audience, identical

14    reproductions of copyrighted works that can be and are further copied, distributed and

15    used by others in virtually unlimited, and entirely uncontrolled, fashion.

16   41.   With the explosive growth of the Internet, and with the pervasive public sense of free

17    entitlement to intellectual properties published on the Internet, online infringement at

18    issue in this case will continue unchecked unless the acts of copying and distribution of

19    copyrighted works is deterred by the courts, applying well-established principles of

20    copyright law to infringing online conduct.

21   42.   The United State Attorney General encourages victims of intellectual property theft to

22    pursue their claims civilly.

23   43.   Copyright is a strict liability statute.

24   44.   The intellectual property known as profane-justice.org is registered with the United

25    States copyright office, and that said registration is prima facie evidence of the validity

26    of the copyright in litigation for copyright infringement. (Registrations attached). It is

27    undisputed that Shell is the copyright owner of profane-justice.org.

28   45.   It is undisputed that the literary content of all versions of profane-justice.org is the

1   creation of original works by Shell and is fixed in a tangible medium of expression and

2   are works that contains substantial amount of material created by Shell's own skill,

3   labor and judgment and that subject matter of the work is copyrightable under laws of

4   United States.

5   46.   The web site profane-justice.org has always displayed a copyright notice. Later

6   versions also included posted limitations on use, and established license fees and terms

7   for copying, displaying or distributing.

8   47.   As copyright owner, it is undisputed that Shell possess exclusive rights to reproduce

9   the work (e.g., to make copies), to prepare derivative works (e.g., translation,

10   abridgment, condensation, adaptation), to distribute copies to the public (e.g., publish,

11   sell, rental, lease, license, or lending), to perform the work publicly, to display the

12   work publicly.

13   48.   The property, profane-justice.org, is situated on a computer, computer system or

14   computer network located in Colorado. This property is not transmitted to Internet

15   patrons. Internet patrons must actively and deliberately access the computer, computer

16   system or computer network in Colorado in order to access the web pages.

17   49.   The use of this property is also protected by a security agreement contract (exhibit A)

18   and a clear advisement of that contract is published on every web page which states:

19     IF YOU COPY OR DISTRIBUTE ANYTHING ON THIS SITE
20     - YOU ARE ENTERING INTO A CONTRACT. READ THE
21     CONTRACT BEFORE YOU COPY OR DISTRIBUTE. YOUR
22     ACT OF COPYING AND/OR DISTRIBUTING
23     OBJECTIVELY AND EXPRESSLY INDICATES YOUR
24     AGREEMENT TO AND ACCEPTANCE OF THE
25     FOLLOWING TERMS: *(the words 'following terms' contain a*
26     *hyperlink to the text of the terms).*
27
28   This contract is executed in Colorado upon the user's deliberate and intentional act of

29   copying or distributing, regardless of where the user is located.

30   50.   Shell has a single market for her web site at profane-justice.org, and that single market

31   is the Internet.

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM   page 14

51. Internet Archive also serves the Internet market.

52. Internet Archive has admitted to copying and publicly displaying Shell's web site. (See attached list of Shell's web site versions displayed on Internet Archive Wayback Machine - Exhibit B - AND attached list of approximately 2006 of Shell's copyrighted .txt pages available for display on Internet Archive Wayback Machine - Exhibit C - AND attached list of approximately 217 of Shell's copyrighted .pdf pages available for display on Internet Archive Wayback Machine - Exhibit D)

53. Internet Archive covertly, surreptitiously and stealthily copied Shell's entire web site approximately 87 times between May, 1999 and October, 2004 without seeking or obtaining her permission and without paying license fees.

54. Internet Archive publicly displayed Shell's entire web site daily between May, 1999 and December, 12, 2005 without seeking or obtaining her permission and without paying license fees for that public display.

55. Internet Archive knowingly and wilfully infringed Shell's copyright when it covertly, stealthily and without notice to Shell, without her permission or knowledge and without her participation, illegally converted electronic and/or digital copies of her web site to its own use, without paying the posted license fees, on multiple occasions, and reproduced multiple versions of her web site in permanent storage on its Wayback Machine and publicly displayed those stolen web sites and made those stolen reproductions freely available to the public on the Internet.

56. Internet Archive knowingly and wilfully did *not* disable the copy, print, save or print screen functions of the stolen web site profane-justice.org when it publicly displayed the stolen web sites, which enabled others to infringe Shell's copyright on a wholesale basis.

57. Internet Archive copied Shell's entire web site 1 time in 1999; 10 times in 2000; 12 times in 2001; 18 times in 2002; 31 times in 2003; and 15 times in 2004. This constitutes 87 instances of criminal copyright infringement in the past six years. Copyright infringement is a crime to punish and deter the misappropriation of

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 15

1    intellectual property that an author -- who may have no means to prevent copying --

2    invested time, energy and money to create. Internet Archive willfully stored,

3    reproduced or distributed profane-justice.org on a wholesale basis.

4    58.    Shell discovered the infringement of her copyrighted intellectual property by Internet

5    Archive on December 12, 2005, and immediately sent a cease and desist and demand

6    letter to Internet Archive.

7    59.    Internet Archive honored Shell's demand to remove the web site profane-justice.org

8    from the Wayback Machine, a tacit admission that it did not possess the rights to

9    display that web site without Shell's permission. If Internet Archive truly did believe

10   that it was engaged in fair use, it would not have removed the web site profane-

11   justice.org when Shell demanded.

12   60.    It is undisputed that Internet Archive refused Shell's demand to pay license fees for her

13   intellectual property which it acquired illegally, copied and publicly displayed without

14   permission of the copyright owner.

15   61.    Various versions of Shell's web site were, in fact, knowingly and intentionally

16   reproduced in their entirety and knowingly and intentionally publicly displayed on the

17   Wayback Machine and full  public access was provided on the Internet without

18   comment or discussion.  The illegally obtained copies of profane-justice.org were not

19   used for purposes such as criticism, comment, news reporting, teaching, scholarship, or

20   research. Internet Archive's use was not a transformative use of Shell's property. This

21   is akin to reprinting a hard copy book in its entirety, including all editions, and making

22   that illegal reprint available to the public without charge.

23   62.    Internet Archive is profiting from its wholesale infringing conduct and any claim that it

24   is not profiting is specious. Each time it infringes by stealing a copy of intellectual

25   property and converting it to its own use, it is unjustly enriched in various ways at the

26   expense of the copyright owner. Internet Archive is  profiting from its actions, and it is

27   facilitating the theft and infringement of intellectual property from its creator by

28   knowingly providing free and unlimited access to Shell's property on its Wayback

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 16

1   Machine.

2   63.   By the aforementioned actions, Internet Archive assumed and exercised impermissive

3   control over Shell's exclusive rights as copyright owner and subsumed Shell's ability

4   exercise her exclusive rights to her intellectual property, especially in her target

5   market, in favor of Internet Archive. In effect, Internet Archive became Shell's

6   competitor, and took over Shell's market by giving away for free, her intellectual

7   property which she had labored over for 15 years without remuneration, thereby

8   stealing the fruits of her labor. In this case, her web site works have been copied in

9   their entirety, and the wide availability of the free, pirated copies have a drastic effect

10   on the potential market for the author's legitimate works.

11   **FIRST CAUSE OF ACTION**

12   (Copyright Infringement 17 U.S.C. §§ 101 et seq.)

13   64.   Shell repeats and re-alleges the allegation of all preceding paragraphs of the Answer

14   and Counterclaim as if fully set forth herein. Copyright laws govern only the elements

15   of mere reproduction or the like, and do not address the method or legality of original

16   acquisition of the intellectual property, however, the original acquisition of the

17   property, if acquired by theft, fraud or deceit, can give rise to the denial of fair use

18   protections for Internet Archive's subsequent use of that property under the unclean

19   hands doctrine and under the doctrine of equitable estoppel.

20   65.   Internet Archive knowingly and wilfully infringed Shell's copyright 87 times when it

21   copied her web site on various dates between May, 1999 and October, 2004 without

22   her permission and without paying the posted license fees for that copying, in direct

23   violation of her properly displayed copyright notice and license fees and terms.

24   Between January 2002 and December 2005, it infringed Shell's copyright 64 times.

25   66.   Internet Archive knowingly and wilfully infringed Shell's copyright every day from

26   May, 1999 to December, 2005 when it knowingly and intentionally publicly displayed

27   its stolen copies of her entire web site on the Wayback Machine and when it

28   maintained copies of all versions of her web site in its permanent storage.

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 17

67.   Internet Archive knowing and wilfully contributed to and facilitated long-term wholesale infringement and ongoing infringement of Shell's web site when it knowingly and intentionally publicly displayed its stolen copies of her entire web site on the Wayback Machine without disabling the copy, print, save and print screen functions for her web site thereby enabling the worldwide Internet community to infringe her copyright without her knowledge.

68.   Internet Archive is precluded from arguing fair use immunity under the unclean hands doctrine and under the doctrine of equitable estoppel because its purported 'fair use' was predicated solely upon its covert and stealthy, intentional and wilful theft of the original copies of Shell's web site. He who seeks equity, must do equity.

69.   Alternatively, Internet Archive expressly waived fair use protections on 13 occasions when it copied Shell's website pursuant to the Copyright Notice/Security Agreement.

70.   Alternatively, Internet Archive's use of Shell's intellectual property is inconsistent with fair use for the following reasons:

a.   **Purpose and Character of use:** Simply because a use is allegedly educational and not for profit does not insulate it from a finding of infringement. The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price. Shell asserts that Internet Archive *is* profiting from its wholesale infringing conduct and any claim that it is not profiting is specious. Each time it infringes by stealing a copy of intellectual property and converting it to its own use, it is unjustly enriched in various ways at the expense of the copyright owner by virtue of obtaining the property without paying for it. It also profits by virtue of the grants and donations it solicits and obtains to commit and expand its infringing acts and acquire more intellectual property.

b.   Internet Archive receives "financial gain" as defined in the No Electronic Theft Act for its infringing conduct, including receipt, or expectation of receipt,

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 18

1    of anything of value, including the receipt of other copyrighted works.

2    c.    Additionally, Internet Archive's use was totally devoid of commentary,

3          instruction or discussion thereby rendering its use strictly non-transformative.

4          The essence of "character and purpose" test for fair use is the transformative

5          value, that is, productive use, of the secondary work compared to the original.

6          District Court Judge Leval has noted that, "the use . . . must employ the quoted

7          matter in a different manner or for a different purpose from the original. A

8          quotation of copyrighted material that merely repackages or republishes the

9          original is unlikely to pass the test." Leval, Toward a Fair Use Standard, 103

10         Harv. L. Rev. 1105, 1111 (1990). Because Internet Archive merely republished

11         Shell's web site for the same intrinsic purpose as the original publication,

12         Internet Archive's use cannot be categorized as anything other than a mere

13         repackaging.

14   d.    **Nature of the Copyrighted Work:** Shell's web site literary content is

15         singularly creative, containing insightfully unique results of her research which

16         is not available from any other source, as well as containing editorial

17         commentary, discussion, analysis and legal documents which are not generally

18         available anywhere else. Taken in totality, this content represents a high degree

19         of original and subjective thought, the unique results of 15 years of dedicated

20         qualitative research, and goes far beyond the realm of mere factual works.

21   e.    **The Amount and Substantiality of the Portion Used:** Internet Archive's use

22         infringed not only a substantial portion of Shell's intellectual property, but in

23         fact, infringed by illegally copying and publicly displaying and by making

24         publicly available for further infringement, 87 stolen versions of Shell's entire

25         web site - which constituted her *entire inventory or 100%* of Internet published

26         property for six years . Additionally, during Internet Archive's infringement,

27         the original web site content continued to be published by Shell and accessible

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 19

1    on the Internet by going to www.profane-justice.org.

2    f.    **The Effect of the Use on Potential Markets for or Value of the**

3          **Copyrighted Work:** This factor has been held to be "undoubtedly the single

4          most important element of fair use." Internet Archive did not pay for the

5          property, which deprived Shell of the income from the license fees for that

6          property and Internet Archive was unjustly enriched by the value of those

7          license fees by obtaining that property illegally. Internet Archive copied Shell's

8          works in the manner described so that it didn't have to buy the original or

9          additional copies of the original, or did so to avoid having to pay license fees to

10         the author. Additionally, Internet Archive's use has caused overwhelming and

11         irreparable harm upon the potential market for or the value of Shell's

12         copyrighted Internet work. Internet Archive possesses illegal copies of

13         profane-justice.org by virtue of theft, publicly displays and allows full public

14         access to and use of Shell's entire inventory of intellectual property published

15         on the Internet for free, unfettered by the license fees, exclusions and terms

16         Shell imposed pursuant to her exclusive rights as copyright owner. Why would

17         anyone purchase from Shell what they can obtain from Internet Archive for free

18         - or obtain it for free from someone who obtained it from Internet Archive for

19         free?

20    g.    In this case an important additional factor is the fact that Internet Archive has

21         effectively created a new forum allied to the online publishing industry by

22         usurping all web site authors' copyrights and profits, nothwithstanding the fact

23         that Internet Archive does not charge for its permanent storage, use and display

24         of anyone's web sites. This cannot be sustained as its result is complete

25         frustration of the intent of the copyright law which has been the protection of

26         intellectual property and, more importantly, the encouragement of creative

27         expression. Under these circumstances, if the copyright laws fail to protect

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM   page 20

1    Defendant's intellectual property rights, her only other option is to cease

2    creative expression and publishing on the Internet.

3    h.    In fact, Internet Archive does not argue that it's use is fair use when asked to

4          remove a web site nor insists on continuing it's use, instead, it complies with

5          the cease and desist demand submitted by the copyright owner without

6          question, a tacit admission that it recognizes it's use has not been consistent

7          with fair use.

8    71.   By it's own admissions in its complaint, Internet Archive's infringements have been

9          committed willfully, and have been and are being engaged in with total disregard for

10         Defendant's intellectual property rights.

11   72.   Internet Archive is in fact acting egregiously and is not merely engaged in technical

12         violations of the law. Factors to show that Internet Archive was acting egregiously

13         include: (1) Internet Archive engaged in a significant amount of infringement as

14         proven by its own admission of obtaining and possessing 55 billion web pages, which

15         is comprised of a large percentage for which it paid no license fees nor obtained prior

16         permission to possess, and in the subject case, illegally obtaining, possessing and

17         displaying 87 versions of Shell's web site over six years, without her permission and

18         without paying license fees; (2) the infringing activity occurred repeatedly over a

19         lengthy period of time, by its own admission since 1996; and since 1999 involving 87

20         instances theft of Shell's entire web site and daily infringement between May, 1999

21         and December 12, 2005, by placing copies of her web site in it's permanent storage

22         and publicly displaying it; (3) Internet Archive is so involved in wholesale

23         infringement as to lead unavoidably to the conclusion that its actions were willful; (4)

24         Internet Archive's admissions on its own Complaint for Declaratory Relief of

25         Copyright Non-Infringement, and its published communications and disclaimers on its

26         web site reflect its knowledge of the illegality of its conduct, and/or malice or other

27         criminal intent; and (5) Internet Archive refused to pay license fees demanded by Shell

28         for the property it acquired in violation of her exclusive rights as copyright owner, (6)

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 21

1    the copyrighted works that are the subject of this complaint belong to a much smaller

2    company or single individual, namely Shell, whose sole assets consist of her

3    intellectual property inventory and whose profitability has certainly been jeopardized

4    by Internet Archive's conduct.

5  73.  As a direct cause of this infringement, Shell has suffered continued, ongoing and far-

6    reaching copyright infringement, effectuation of new and further infringements,

7    depreciation in the value of and ability to sell and license her work, lost profits and/or

8    opportunities, and damage to her goodwill and reputation.

9  74.  As a direct cause of this infringement, Shell has suffered actual and statutory damages.

10    **SECOND CAUSE OF ACTION**

11    (Civil Theft and/or Conversion)

12  75.  Shell repeats and re-alleges the allegations of all preceding paragraphs of the Answer

13    and Counterclaim as if fully set forth herein. Relevant state law violations are

14    predicated upon Internet Archive committing acts incorporating elements beyond mere

15    reproduction or the like, including but not limited to Internet Archive's method of

16    initially acquiring the property through acts of computer crime and/or the

17    theft/conversion of Shell's property, therefore Shell's rights involved are not

18    equivalent and preemption will not occur; and this cause of action does not provide a

19    substitute rule of law, but merely an additional means of recovery.

20  76.  Between the dates of and between May, 1999 and October, 2004, on approximately 87

21    occasions, Internet Archive electronically and/or digitally entered the computer,

22    computer system or computer network, located in Colorado and/or leased by her

23    business which operates in Colorado, wherein successive versions of her copyrighted

24    web site profane-justice.org were situated in electronic and/or digital format, and

25    surreptitiously, covertly and stealthily and without notice to her, electronically and/or

26    digitally copied her entire web site and assumed unauthorized control of those stolen

27    copies, and transmitted the stolen copies of her entire web site back to Internet Archive

28    computers for permanent storage, without her permission, knowledge or consent, and

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 22

1   without paying her license fees for that intentional copying, and wilfully concealing

2   from her that it had taken copies, and without paying license fees for its intended

3   subsequent public display of her stolen web site, and wilfully concealing from her that

4   it intended to publicly display its stolen copies, and converted Shell's intellectual

5   properties to its own use and purpose, and refused her demand to pay license fees for

6   the intellectual property it acquired,  thereby permanently depriving Shell of the use or

7   benefit of her property.

8   77.   Shell discovered this theft of her intellectual property on December 12, 2005.

9   78.   As a direct cause of this theft, Shell has suffered lost profits and/or opportunities.

10   79.   As a direct cause of this theft, Shell has suffered actual damages. Assuming these

11   damages are computed based on her actual published license fees for the stolen copies

12   of only _one_ of the 87 thefts consisting of the latest stolen version of her entire web site,

13   the actual damages would be $1,035,000. A search of Internet Archive Wayback

14   Machine archives on December 12, 2005 revealed a purported 2223 stolen pages from

15   profane-justice.org stored on the Wayback Machine (see exhibits C & D). Pursuant to

16   Colorado Revised Statutes §18-4-405, Shell is entitled to triple damages for civil theft

17   as well as attorney fees and costs.

18   **THIRD CAUSE OF ACTION**

19   (Breach of Contract)

20   80.   Shell repeats and re-alleges the allegation of all preceding paragraphs of the Answer,

21   Objection to Venue and Counterclaim as if fully set forth herein. Breach of Contract

22   claims are not preempted because Internet Archive's violations are predicated upon

23   acts incorporating elements beyond mere reproduction or the like, therefore, Shell's

24   rights involved are not equivalent and preemption will not occur; and this cause of

25   action does not provide a substitute rule of law, but merely an additional means of

26   recovery.

27   81.   Internet Archive expressly entered into a contract, defined and published on her web

28   site as "Copyright notice/security agreement" (see exhibit A), with Shell. The security

1  agreement contained an offer to copy or distribute the web site profane-justice.org in

2  exchange for pre-payment of posted license fees. Internet Archive expressly accepted

3  the offer of copying Shell's web site profane-justice.org when it affirmatively

4  performed the act of copying her web site, profane-justice.org on 13 occasions between

5  March 25, 2004 and October 16, 2004. Dates it entered into this contract include:

6      a.    March, 25, 2004

7      b.    March 29, 2004

8      c.    April 11, 2004

9      d.    May 19, 2004

10      e.    May 23, 2004

11      f.    June 6, 2004

12      g.    June 7, 2004

13      h.    June 14, 2004

14      i.    June 15, 2004

15      j.    July 22, 2004

16      k.    September 25, 2004

17      l.    September 26, 2004

18      m.    October 16, 2004

19  82.  Internet Archive possesses the capacity and authority to enter into contracts.

20  83.  Internet Archive did not seek, did not receive and does not possess the requisite written

21  permission from the copyright owner as defined in the security agreement.

22  84.  Internet Archive did not prepay the permission license fees for copying the web site

23  profane-justice.org as required by the notice of license fee schedule published on every

24  web page at profane-justice.org and as required by the security agreement which was

25  hyperlinked to the notice of license fee schedule.

26  85.  Internet Archive received the offered consideration as a result of that transaction,

27  specifically, copies of Shell's intellectual property, the web site profane-justice.org.

28  86.  Shell did not receive the express promised consideration from Internet Archive, e.g.

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 24

1    prepayment of posted license fees or damages and penalties cited in the security

2    agreement therefore Internet Archive was unjustly enriched when it acquired Shell's

3    intellectual property.

4    87.   The security agreement contract is in written form, therefore Internet Archive is bound

5    by its terms regardless of whether Internet Archive read it or not.

6    88.   Internet Archive cannot argue that the posted license fees for copying profane-

7    justice.org are unreasonable or too high under the principle that a party to a contract

8    cannot escape the consequences of bad negotiation.

9    89.   Internet Archive breached the security agreement contract when it harmed Shell and

10   her property, and when it used the property for commercial gain as defined in the

11   contract, and when it failed to seek or obtain permission of the copyright owner prior

12   to copying, and when it failed to prepay posted license fees for copying, and when it

13   failed to fulfil other terms of the security agreement prior to copying Shell's web site

14   and it breached the contract when it refused her demand for payment upon her

15   discovery of its copying.

16   90.   As a direct cause of Internet Archive's breach of contract, Shell has suffered lost

17   profits and actual damages totaling a minimum of $3,900,000 pursuant to the terms of

18   the security agreement which specifies damages:

19   a.    . . . in the sum certain amount of $250,000.00 per each occurrence of
20         unauthorized use of the aforementioned copyrighted material or the appropriate
21         license fees as posted on copyright notice, whichever is greater, and imposes a
22         penalty for failure to pre-pay posted license fees in the sum-certain amount of
23         $50,000.00 per each occurrence of failure to pre-pay license fees, plus costs,
24         plus triple damages;

25

26                    **FOURTH CAUSE OF ACTION**

27                        (Racketeering or RICO)

28   91.   Shell repeats and re-alleges the allegation of all preceding paragraphs of the Answer

29   and Counterclaim as if fully set forth herein. Racketeering claims are not preempted

30   because Internet Archive's violations are predicated upon acts incorporating elements

1  beyond mere reproduction or the like, therefore, Shell's rights involved are not

2  equivalent and preemption will not occur; and this cause of action does not provide a

3  substitute rule of law, but merely an additional means of recovery.

### Defendant Persons

4

5  92.  Named as RICO defendant on the Counterclaim is the plaintiff in this action, Internet

6  Archive, a 501(c)(3) public non-profit organization.

7  93.  Also named as RICO defendants on the Counterclaim are Brewster Kahle, an

8  individual holding the position of Internet Archive Board Chair, and Kathleen Burch,

9  an individual holding the position of Internet Archive Board Secretary, and Rick

10  Prelinger, an individual holding the position of Internet Archive Board President.

### Victims

11

12  94.  Victim of Internet Archive's pattern of racketeering activity in this action is Suzanne

13  Shell.

14  95.  Victims not named in this complaint also include any or all of the copyright owners

15  and authors of the purported 55 billion web pages currently or historically published or

16  permanently stored at the Internet Archive Wayback Machine. Internet Archive has

17  been previously sued by at least one other alleged victim of copyright infringement.

### The Enterprise

18

19  96.  The subject enterprise is a published association-in-fact between - including but not

20  necessarily limited to - the following independent persons and/or entities:

21  a.  Internet Archive and its board of directors and its agents and employees

22  b.  Alexa Internet

23  c.  Library of Congress

24  d.  Smithsonian Institute

### Defendant's Operation or Management of the Enterprise

25

26  97.  The Enterprise is operated and managed by Internet Archive under the direction,

27  management and control of it's board of directors, and has been in operation since

28  1996. According to its web site:

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 26

> "The original idea for the Internet Archive Wayback Machine
> began in 1996, when the Internet Archive first began archiving
> the web. Now, five years later, with over 100 terabytes and a
> dozen web crawls completed, the Internet Archive has made the
> Internet Archive Wayback Machine available to the public. . .
> .The Internet Archive Wayback Machine is owned and operated
> by the Internet Archive."

98.   Internet Archive is engaged in the business of obtaining and archiving online

intellectual property, purportedly obtaining it legally. Internet Archive provides

technology and mechanisms whereby copyright owners can voluntarily donate a copy

of their intellectual properties to Internet Archive for inclusion in the Internet Archive

Wayback Machine. Some of the content of the Wayback Machine is legally obtained

through these mechanisms.

99.   The Enterprise, under the management of Internet Archive, also obtains vast amounts

of intellectual property illegally, which it publishes in the same manner as the legally

acquired intellectual property on the Internet Archive Wayback Machine as described

on the Internet Archive web site:

> "The Internet Archive Wayback Machine contains
> approximately 1 petabyte of data and is currently growing at a
> rate of 20 terabytes per month. This eclipses the amount of text
> contained in the world's largest libraries, including the Library
> of Congress. If you tried to place the entire contents of the
> archive onto floppy disks (we don't recommend this!) and laid
> them end to end, it would stretch from New York, past Los
> Angeles, and halfway to Hawaii."

100.   The Enterprise, under the management of Internet Archive, then makes the illegally

acquired intellectual property available to the public as described on its web site:

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 27

1     "The Archive makes the collections available at no cost to
2     researchers, historians, and scholars. At present, it takes
3     someone with a certain level of technical knowledge to access
4     collections in a way other than our web site, but there is no
5     requirement that a user be affiliated with any particular
6     organization."
7
8     "Now, five years later, with over 100 terabytes and a dozen web crawls
9     completed, the Internet Archive has made the Internet Archive
10    Wayback Machine available to the public."
11
12  101.  Internet Archive also describes its associations in this endeavor:
13
14     "The Archive collaborates with institutions including the
15     Library of Congress and the Smithsonian."
16
17     "The Internet Archive has relied on donations of web crawls,
18     technology, and expertise from Alexa Internet and others."
19
20  102.  Internet Archive Board of Directors Brewster Kahle, Kathleen Burch and Rick

21    Prelinger had knowledge of the pattern of racketeering activity, and participated in,

22    devised and oversaw the pattern of racketeering activity, and possessed the power,

23    ability and authority to compel Internet Archive to cease engaging in the pattern of

24    racketeering activity.

25            **The Pattern**

26  103.  According to Internet Archive's web site, using Alexa Internet technology, the

27    Enterprise, under the auspices of Internet Archive, illegally and impermissibly acquires

28    intellectual property using "automated crawlers" which covertly and stealthily collect

29    publicly accessible Web pages and return a copy of the pages collected to the Internet

30    Archive Wayback Machine computers for permanent storage, public display and

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 28

1    public access. Internet Archive boasts that it has completed twelve complete Web

2    crawls since 1996.

3  104.   Upon information and belief, the covert and stealth automated copying, collection and

4    transmission of intellectual property is performed by Internet Archive without notice to

5    the copyright owners, and without their consent or permission, and frequently without

6    their knowledge.

7  105.   Upon information and belief, Internet Archive's covert and stealth automated copying,

8    collection, transmission and permanent storage of intellectual property is performed

9    without seeking, purchasing or otherwise obtaining a license to legally obtain the first

10    copy, to permanently store or to publicly display the collected pages, and without

11    seeking permission from the copyright owner in advance and without negotiating for

12    license fee reductions or waivers.

13  106.   Internet Archive states that it "[is] proceeding with documenting the growth and

14    content of the Internet, using libraries as our model." However, unlike libraries who

15    purchase their original copies of books, periodicals, and audio/video recordings before

16    making them freely available to the public. The Enterprise, under the management of

17    Internet Archive, utilizes web crawlers that  automatically, covertly and stealthily

18    transmit electronic and/or digital instructions to other computers, computer systems

19    and/or computer networks, which enables Internet Archive to literally *steal* a copy of

20    any digital and/or electronic intellectual property from any location on the Internet and

21    transmit that stolen copy back to Internet Archive for ultimate inclusion in the

1    permanent storage of and display on the Internet Archive Wayback Machine, all

2    without ever leaving Internet Archive offices in San Francisco and without the

3    knowledge of the copyright owners.

4    107.    Internet Archive offers multiple methods of 'opting out' of inclusion in the Wayback

5    Machine, which establishes that Internet Archive is well aware that its stealth and

6    covert copying and collection of web pages activities are unlawful and proves its

7    wilfulness. In fact, Internet Archive does not argue that it's use is fair use when asked

8    to remove a web site nor insists on continuing it's use. Instead, it complies with the

9    cease and desist demand by the copyright owner without question, a tacit admission

10    that it recognizes it's use has not been consistent with fair use. Internet Archive's own

11    Terms of Service clickwrap agreement also clearly indicates that it understands

12    copyright law, because it requires its users, as a condition of using the Wayback

13    Machine, to agree to not engage in the same infringing conduct that Internet Archive

14    engages in.

15    108.    Internet Archive refuses legitimate demands by copyright owners to pay license fees

16    for the original copies of web sites that it has impermissibly or illegally acquired by

17    means of its automatic, covert, stealth web crawlers.

18    109.    The aforementioned acts constitute knowing and wilful copyright infringement on a

19    massive scale.

20    110.    The aforementioned infringement is a direct cause of harm to copyright owners'

21    properties and businesses.

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 30

111.    The Enterprise, under the management of Internet Archive, has been engaged in this pattern of intellectual property theft and copyright infringement since 1996. It has publicly made it clear that it intends to continue in the same pattern.

### Racketeering Activity and Predicate Acts

112.    Regardless of whether a RICO claim is predicated upon state or federal criminal violations (or a combination of both), the defendant need not be criminally convicted before a civil plaintiff can sue for treble damages under RICO. The statute requires only that the criminal activities are "chargeable" or "indictable" under state or federal law, not that the defendant has already been charged or indicted.

113.    Internet Archive is an individual "person," and Brewster Kahle, Kathleen Burch and Rick Prelinger are individual "persons," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and (d), and Colorado Revised Statutes § 18-17-103(4) and § 18-17-104(3) who associated with and/or participated in the conduct of said enterprise's affairs.

114.    Between 1996 and the present, and with regard to Shell for the purposes of this counterclaim between May 8, 1999 and December 12, 2005, Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and (d) and within the meaning of Colorado Revised Statutes §§ 18-17-103(3), 18-17-103(5) and 18-17-104(3), Internet Archive's

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM   page 31

1     pattern of racketeering activity consisted of :

2     a.     **Mail and Wire Fraud e.g. 18 U.S.C. § 1343. Fraud by wire, radio, or**

3     **television and § 1341. Frauds and swindles:** Internet Archive, Brewster

4     Kahle, Kathleen Burch and Rick Prelinger have devised or intended to devise a

5     scheme or artifice for acquiring intellectual property and maintaining interest

6     and control in the illegally acquired intellectual property by means of false or

7     fraudulent pretenses, representations or promises, which scheme to defraud

8     includes material misrepresentations, or the omission or concealment of

9     material facts, including conduct which fails to conform to standards of moral

10     uprightness, fundamental honesty, and fair play, and including conduct

11     calculated to deceive, whether it be by direct falsehood or by innuendo, by

12     speech or silence, by word of mouth, by look, or by gesture, including the

13     suppression of the truth, wherein fraud and deceit arose from Internet Archive's

14     silence where there was an affirmative legal and moral duty to seek permission

15     from the copyright owner prior to acquiring copyrighted intellectual property,

16     and where Internet Archive's silence associated with its acquisitions of that

17     property was wilful and intentional fraud in order to avoid paying permission

18     license fees or obtaining permission from the copyright owners thereby causing

19     injury to the copyright owners and their intellectual property and businesses,

20     when they covertly, secretly and stealthily transmitted or caused to be

21     transmitted by means of wire or other communication in interstate or foreign

1     commerce, any writings, signs, signals, pictures, or sounds for the purpose of

2     executing such scheme or artifice of finding and acquiring said intellectual

3     property by means of wire or other communication and to covertly, secretly and

4     stealthily transmit the stolen copy of that property to Internet Archive for its

5     own use and purposes.

6     b.    **18 U.S.C. § 2319. Criminal infringement of a copyright 17 U.S.C. § 506.**

7     Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger infringe

8     the copyright of Shell and other copyright owners willfully for purposes of

9     commercial advantage or private financial gain e.g. continuing grant awards,

10    donations, unjust enrichment, and the expectation of acquiring intellectual

11    property, etc. - including but not limited to illegally copying, distributing,

12    displaying and using infringed and stolen intellectual property - or by the

13    reproduction or distribution, including by electronic means, during any 180-day

14    period, of 1 or more copies of 1 or more copyrighted works, which have a total

15    retail value of more than $1,000;

16    c.    **§ 18-4-401 C.R.S. Theft**. On approximately 87 occasions between May, 1999

17    and October, 2004, Internet Archive, Brewster Kahle, Kathleen Burch and Rick

18    Prelinger electronically and/or digitally entered Shell's computer, computer

19    system or computer network located in Colorado and/or licensed by her

20    business which operates in Colorado, wherein successive versions of her

21    copyrighted intellectual property, profane-justice.org were situated in electronic

1    and/or digital format, and surreptitiously, stealthily and covertly and without

2    notice to her, copied her entire web site and deceptively assumed control of

3    those copies without authorization, and electronically and/or digitally

4    transmitted the stolen copies of her entire web site back to Internet Archive

5    computers for permanent storage, without her permission, knowledge or

6    consent, and without paying her license fees for that intentional theft and

7    unauthorized copying and wilfully concealing from her that it had taken

8    unauthorized copies, and without paying license fees for its intended

9    subsequent public display of her web site, and wilfully concealing from her that

10   it intended to publicly display its stolen copies and did in fact display its stolen

11   copies, and converted Shell's intellectual properties to its own use and purpose,

12   and refused to pay demanded license fees for those stolen copies thereby

13   permanently depriving Shell of the use or benefit of her property.

14   d.    § 18-5.5-102(a) C.R.S. Computer crime. On approximately 87 occasions

15   between May, 1999 and October, 2004, Internet Archive, Brewster Kahle,

16   Kathleen Burch and Rick Prelinger accessed the computer, computer network,

17   or computer system or any part thereof which was situated in Colorado and

18   wherein Shell's web site was situated and exceeded authorized access to that

19   computer, computer network, or computer system or any part thereof; or used a

20   computer, computer network, or computer system or any part thereof without

21   authorization or in excess of authorized access; illegally copying her web site

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 34

1    which exceeded their published authority to do so, and transmitted or caused to

2    be transmitted the stolen copies of her intellectual property to Internet

3    Archive's computers.

4    e.    § 18-5.5-102 (d)  C.R.S. Computer Crime. On approximately 87 occasions

5    between May, 1999 and October, 2004, Internet Archive, Brewster Kahle,

6    Kathleen Burch and Rick Prelinger accessed the computer, computer network,

7    or computer system, or any part thereof, which computer was situated in

8    Colorado and which hosted Shell's web site, to commit theft of Shell's

9    intellectual property e.g. her web site profane-justice.org.

10    These acts all occurred after the effective date of RICO and more than two such

11    acts occurred within ten years of one another.

12    115.    At all relevant times, the enterprise alleged herein was engaged in, and their activities

13    affected, interstate commerce and foreign commerce.

14    116.    All of the predicate acts described herein were related so as to establish a pattern of

15    racketeering activity, within the meaning of 18 U.S.C. § 1962(c) and (d) and § 18-17-

16    104(3) C.R.S., in that their common purpose was to infringe copyrights and acquire

17    intellectual properties by theft and/or fraud; their common result was to infringe

18    copyrights, including but not limited to Shell's copyright, and acquire intellectual

19    property, including but not limited to Shell's intellectual property, by theft and/or

20    fraud; Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger,

21    personally or through their actors or agents, directly or indirectly, participated in all of

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 35

1    the acts and employed the same or similar methods of commission; Shell was the

2    victim of the acts of racketeering; and/or the acts of racketeering were otherwise

3    interrelated by distinguishing characteristics and were not isolated events.

4    117.    All of the predicate acts described herein were continuous so as to form a pattern of

5    racketeering activity in that:

6        a.    Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger engaged

7              in the predicate acts over a substantial period of time; or

8        b.    The patterns of racketeering activity engaged in by Internet Archive, Brewster

9              Kahle, Kathleen Burch and Rick Prelinger continues or threatens to continue

10             because the such conduct has become a regular way of conducting Internet

11             Archive's on-going business activities.

12   118.    As a direct and proximate result of, and by reason of, the activities of Internet Archive,

13   Brewster Kahle, Kathleen Burch and Rick Prelinger and their conduct in violation of

14   18 U.S.C. §§ 1962(c) and (d) and § 18-17-104(3) C.R.S., Shell has been injured in

15   her business or property, within the meaning of 18 U.S.C. § 1964(c) and § 18-17-

16   106(7) C.R.S.  Among other things, Shell has suffered damages to the extent Internet

17   Archive infringed her copyright, and illegally obtained her intellectual property by

18   theft, and exercised dominion and control over that property, and refused to pay license

19   fees for the acquisition and use of that property and deprived her of the use and benefit

20   of that property and harmed her business and property. Shell is, therefore, entitled to

21   recover threefold the damages she has sustained together with the cost of the suit,

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 36

1   including reasonable attorneys' and experts' fees.

2   **RELIEF**

3   (Damages and Injunctive Relief)

4   Wherefore, Defendant Shell demands trial by jury and judgment from the Court as

5   follows:

6       a.    To join  Brewster Kahle, Kathleen Burch and Rick Prelinger to this action as

7             persons needed for just adjudication pursuant to Fed.R.Civ.P. 19.

8       b.    To transfer this case to the United States District Court for the District of

9             Colorado pursuant to 28 U.S.C. § 1400(a) and  § 1391(b) (1) and (2) and 28

10            U.S.C. § 1412;

11      c.    To award damages against Internet Archive, for copyright infringement,

12            vicarious copyright infringement  and contributory copyright infringement for a

13            sum of money equal to the amount of damages and/or losses Shell has

14            sustained or will sustain; or

15      d.    In lieu thereof, should Shell elect an award of statutory damages, pursuant to 17

16            U.S.C. § 504(c) against Internet Archive, to be increased to the maximum

17            permitted by law, for each act of willful, copyright infringement, vicarious

18            copyright infringement  and contributory copyright infringement;

19      e.    To award damages against Internet Archive, Brewster Kahle, Kathleen Burch

20            and Rick Prelinger, jointly and severally, for a sum of money equal to the

21            amount of damages and/or losses Shell has sustained or will sustain, for

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 37

1    engaging in a pattern of racketeering activity, and to treble the amount of said

2    damages pursuant to 18 U.S.C. § 1964(c) and C.R.S. § 18-17-106(7).

3    f.    To award actual and treble damages against Internet Archive for civil theft

4    pursuant to § 18-4-405 C.R.S.;

5    g.    To award damages in the amount of $11,700,000 against Internet Archive, for

6    breach of contract pursuant to the security agreement it expressly entered into

7    with Shell by virtue of Internet Archive's copying of and distribution of her

8    web site;

9    h.    To award punitive damages pursuant to Colorado statutory or common law;

10   i.    To enjoin Internet Archive, Brewster Kahle, Kathleen Burch and Rick

11   Prelinger, from all future copyright infringement and theft of intellectual

12   property, and to require them to pay license fees or to negotiate reductions or

13   waivers of license fees for its original acquisitions like libraries do, and to

14   obtain written permission from and/or to establish an affirmative 'opt-in'

15   policy and technology which is executed solely by the copyright owner, before

16   copying, storing or publicly displaying anyone's intellectual property in any

17   format;

18   j.    Issue appropriate orders pursuant to 18 U.S.C. §1964, including, but not

19   limited to: ordering Internet Archive, Brewster Kahle, Kathleen Burch and

20   Rick Prelinger, to divest themselves of any interest, direct or indirect, in the

21   enterprise known as the Internet Archive and the Internet Archive Wayback

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 38

1    Machine; imposing reasonable restrictions on the future activities or

2    investments of Internet Archive, Brewster Kahle, Kathleen Burch and Rick

3    Prelinger, including, but not limited to, prohibiting Internet Archive, Brewster

4    Kahle, Kathleen Burch and Rick Prelinger, from engaging in the same type of

5    endeavor as they have been engaged in, the activities of which affect interstate

6    or foreign commerce; or ordering dissolution or reorganization of Internet

7    Archive;

8    k.    To award prejudgment interest on the amount of damages and/or losses that

9    Shell has sustained;

10   l.    To award all costs of litigation incurred by Shell, including her reasonable

11   attorneys' fees and experts' fees, pursuant to 18 U.S.C. § 1964(c) and § 18-17-

12   106(7) C.R.S.;

13   m.    To provide Shell with opportunity to correct deficiencies or errors associated

14   with her pro se pleadings in the interests of justice;

15   n.    To award such other and further relief as the Court deems just and equitable.

16   Respectfully Submitted,

19   _____ March 7, 2006

20   Suzanne Shell, Defendant - pro se

21   14053 Eastonville Rd, Elbert, CO 80106

22   Phone: (719)749-2971

23   Fax: (719)749-2972

24   Email: dsshell@ix.netcom.com

ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM  page 39

CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the attached document **ANSWER and OBJECTION TO VENUE and COUNTERCLAIM** were placed in the United States Mail, first class mail, postage prepaid on March 8, 2006

Perkins Coie, LLP
180 Townsend St. Third Floor
San Francisco, CA 94107


_____ March 8, 2006
Suzanne Shell