FILED

MAR 13 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Suzanne Shell - pro se
dsshell@ix.netcom.com
14053 Eastonville Rd.
Elbert, CO 80106
Telephone: (719)749-2971
Fax: (719)749-2972
**Defendant**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNET ARCHIVE )<br>    Plaintiff )<br> )<br> )<br> )<br> )<br> )<br>v. )<br> )<br>SUZANNE SHELL )<br>    Defendant )<br> )<br> ) | CASE NO. C 06 0397<br><br>**FIRST AMENDED ANSWER and<br>OBJECTION TO VENUE and<br>COUNTERCLAIM**<br><br>Jury Trial Demanded |

Defendant Suzanne Shell (Defendant or Shell) herein submits her **FIRST
AMENDED ANSWER and OBJECTION TO VENUE and COUNTERCLAIM** as a
matter of right under Fed. R. Civ. P. 15, and certifying that she has not received a
responsive pleading on the counterclaim, to correct the error of forgetting to attach the
exhibits to the original ANSWER document and to amend as follows:

## ANSWER

### The Parties

1.    In answer to paragraph 1, Defendant lacks sufficient knowledge or information to
      form a belief as to the truth of the allegations contained herein, and on that basis,
      denies same.

2.    Admit that Defendant Suzanne Shell is an individual. She resides in El Paso

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM      Page 1 of 42



Dockets.Justia.com

1  County, Colorado. Shell owns and maintains a web site at www.profane-justice.org

2  (aka profane-justice.org and under other aliases which direct to www.profane-

3  justice.org ) which contains her copyrighted intellectual property. Her web site is

4  registered with the United States Copyright Office (registrations attached). Shell's

5  web site contains the requisite copyright notices mandated in Title 17 of the United

3  States Code governing copyright. Shell's web site also contains explicit license

7  limitations and license fees. The published terms for license fees to obtain a copy

8  of her web site is clearly published on every page at the rate of $5000 per printed

9  page per copy, payable in advance. The intellectual property published on her web

10  site is the product of 15 years of intensive research, experience, expertise and

11  testing, and during which time she did not receive any remuneration for her efforts.

12  She is now exploiting her intellectual property for her benefit, as is her exclusive

13  right. Shell owns no assets other than her intellectual property. Shell appears *pro*

14  *se*. The court shall construe the pleadings and papers of a pro se litigant liberally.

15  **Jurisdiction and Venue**

16  3.  Admit that the United States District Court has jurisdiction over the subject matter

17  of this action as described in paragraph 3.

18  4.  Deny that this action is properly before the United States District Court, Northern

19  District of California, San Francisco Division as described in paragraph 4. This

20  venue is *not* proper pursuant to 28 U.S.C. § 1400(a) and § 1391(b) (1) and (2)

21  because Defendant Shell, (1) resides in Colorado, and (2) conducts her business

22  primarily in Colorado, and (3) that a substantial part of the events giving rise to the

23  claims occurred in Colorado e.g. the theft of the property occurred in Colorado,

24  and (4) a substantial part of the property that is the subject of the action was

25  originally situated in Colorado.

26  **Intra District Assignment**

78  5.  Deny that a substantial part of the events giving rise to the claims occurred in

28  California as described in paragraph 5 and deny that this court is the proper venue

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM     Page 2 of 42

| | |
|---|---|
| 1 | for this action. Shell's computer, computer server, computer system or computer |
| 2 | network, upon which her web site is situated, is also located in Colorado. Shell did |
| 3 | not, at any time, send copies of her web site to the Internet Archive in any |
| 4 | electronic or digital file or in any other medium or format. Internet Archive |
| 5 | wilfully, knowingly, covertly and stealthily, electronically came onto the computer, |
| 3 | computer system or computer network wherein Shell's web site was situated in |
| 7 | Colorado on multiple occasions and illegally converted digital copies of her web |
| 8 | site to their own use, which copies were then transmitted electronically by the |
| 9 | Internet Archive back to the Internet Archive servers and stored as permanent files |
| 10 | on its servers. This stealth conversion and theft of her intellectual property was |
| 11 | done without notice to Shell, without her permission, without her knowledge and |
| 12 | without her participation and without paying the posted license fees for that |
| 13 | property. Furthermore, Shell's web site also contains a link on every page to her |
| 14 | "Copyright/Security Agreement" (Security Agreement attached - Exhibit A) to |
| 15 | which any person copying or distributing Shell's web site expressly agrees to be |
| 16 | bound, by virtue of their access to Shell's web site situated in Colorado, where the |
| 17 | contract is executed. Internet Archive not only copied Shell's web site at her |
| 18 | server, it copied her Security Agreement and republished it on its Wayback |
| 19 | Machine, thereby establishing that it had knowledge of and access to the Security |
| 20 | Agreement. The vast majority of courts enforce shrinkwrap and "clickwrap" |
| 21 | licenses similar to this one even though the individual terms are not negotiated and |
| 22 | even if the licensee did not read them. Proper venue for this action is the United |
| 23 | States District Court for the District of Colorado, and Plaintiff Shell hereby |
| 24 | demands that this action be transferred to that venue in the interest of justice |
| 25 | pursuant to 28 U.S.C. § 1412. |
| 26 | **Factual Background** |
| 78 | 6.     In answer to paragraph 6, denied. Shell denies the inference that Internet Archive |
| 28 | possesses exclusive interest, rights or ability to provide open and free access to |

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM     Page 3 of 42

| | | |
|---|---|---|
| 1 | | digital literature and other written materials. This appears to be a highly specious |
| 2 | | "fair use by reason of necessity" argument. Internet Archive has failed to prove |
| 3 | | their central contention which is that enjoining them from pirating defendant's |
| 4 | | copyrights would halt the ability of the public to access this information through a |
| 5 | | legitimate source when, in fact, the literary content of profane-justice.org has been |
| 3 | | made available to the public view by the author since 1997. And even if it weren't |
| 7 | | available, Internet Archive's stated mandate and method of doing business is |
| 8 | | contrary to copyright law and cannot be sustained on this basis. |
| 9 | 7. | In answer to paragraph 7, Defendant lacks sufficient knowledge or information to |
| 10 | | form a belief as to the truth of the allegations contained herein, and on that basis, |
| 11 | | denies same. |
| 12 | 8. | In answer to paragraph 8, Defendant lacks sufficient knowledge or information to |
| 13 | | form a belief as to the truth of the allegations contained herein, and on that basis, |
| 14 | | denies same. |
| 15 | 9. | Admit that Internet Archive removed Shell's web site from the Wayback Machine |
| 16 | | at her request as described in paragraph 9, but deny the rest of the paragraph. |
| 17 | | Disclaimers on the Internet Archive Wayback Machine which instruct web site |
| 18 | | owners how to have their web sites removed from the Wayback Machine actually |
| 19 | | establish that Internet Archive was well aware that its actions were unlawful and |
| 20 | | proves its wilfulness. This is a transparent attempt to deny the patent illegality of |
| 21 | | the Internet Archive's wholesale infringing acts. Internet Archive Wayback |
| 22 | | Machine knowingly committed theft of, possessed, stored, published and displayed |
| 23 | | several years worth of versions of Shell's web site, without notice to her, without |
| 24 | | her permission and in violation of her clearly published license terms and in |
| 25 | | violation of her exclusive rights as copyright owner. Internet Archive made no |
| 26 | | attempt to contact Shell to negotiate a license fee reduction or waiver, nor to seek |
| 78 | | her permission. Internet Archive never notified Shell that it had copied her web site |
| 28 | | and that it had republished and publicly displayed her web site without her |

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 4 of 42

1    permission. The law requires that Internet Archive ask permission of the copyright

2    owner <u>before</u> copying or publicly displaying any copyrighted work. The burden is

3    on the copier to ask permission. It is ***not*** the duty of the copyright owner to cruise

4    the Internet and ask authors to stop infringing a copyright. Therefore, any claim

5    that it published 'opt out' notices on its web site is irrelevant and specious and

3    admissive of its wrongdoing. Internet Archive's Terms of Service agreement also

7    clearly indicates that it understands copyright law, because it requires its users to

8    agree to not engage in the same infringing conduct as a condition of their using the

9    Wayback Machine that Internet Archive engages in when obtaining the web sites.

10    Furthermore, since the Defendant did not know the Wayback Machine existed or

11    publicly displayed her web site, she could not ask Internet Archive to remove her

12    web site. Additionally, if the Internet Archive was acting in good faith, it would not

13    have employed stealth to obtain illegal copies of Shell's web site and it would have

14    advised her of its intentions and sought her permission and would not have refused

15    to pay her license fees upon demand.

16    **<u>FIRST CAUSE OF ACTION</u>**

17   10.    In answer to paragraph 10, show the court that said paragraph is introductory and

18       requires no response.

19   11.    Admit the allegations in paragraph 11, with the caveat that this action was legal

20       and fully within Shell's exclusive rights as copyright owner of the intellectual

21       property in question and in accordance with the Copyright Notice and Security

22       Agreement published on profane-justice.org (See attached Exhibit A).

23   12.    Admit the allegation in paragraph 12, with the caveat that this action was legal and

24       fully within Shell's exclusive rights as copyright owner of the intellectual property

25       in question.

26   13.    Admit the allegation in paragraph 13 with the caveat that Internet Archive's

78       removal of Shell's web site from its Wayback Machine did not remedy six years of

28       infringement injury caused to Shell nor remedy the original thefts of her property

1     and did not satisfy the terms of the contract Internet Archive entered into when it

2     copied Shell's web site and did not remedy the thefts of her property.

3     14.     Deny the allegation in paragraph 14. Removal of Shell's web site from the

4          Wayback Machine is a tacit admission of Internet Archive's wilful infringing

5          conduct. Merely removing the web site without correcting the injury caused is **not**

3          reasonable. Furthermore, upon information and belief, Internet Archive STILL

7          possesses copies of all 87 versions of Shell's web site without her permission in

8          permanent storage on their computer systems. The Defendant has suffered long-

9          term actual and/or statutory damages as a direct result of Internet Archive's

10         knowing and wilful infringement of her intellectual property, and theft of that

11         property, and breach of contract, and she therefore made a good faith attempt to

12         settle the damages before filing suit in court. Internet Archive is intransigent about

13         paying anything for the injury it caused to Shell for six years of infringement and

14         the original 87 thefts of her property and its breach of contract.

15    15.     Deny the allegations in paragraph 15 as an outright lie. Internet Archive did NOT

16         act in good faith to negotiate or settle this matter, but attempted to bully Shell into

17         withdrawing her demand in order to absolve it of liability.

18    16.     In answer to paragraph 16, Defendant lacks sufficient knowledge or information to

19         form a belief as to the truth of the allegations contained herein, and on that basis,

20         denies same. Additionally, this allegation is patently absurd. There is no legitimate

21         'non-profit organization' exclusion which permits it to knowingly commit

22         wholesale crimes or copyright infringement, nor is there an 'indigence defense'

23         which would immunize an infringer or a criminal from being held legally

24         responsible for damages resulting from its crimes, breach of contract or infringing

25         activities. Arguments that Internet Archive is unwilling or unable to remedy

26         damages caused by its infringing, tortious and criminal conduct with monetary

78         compensation are wholly frivolous. Monetary compensation is, of course, the

28         customary form of compensation for damages in our court system, and to argue

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM     Page 6 of 42

1    that Internet Archive is entitled to an especial exclusion from liability for such
2    damages by virtue of a allegedly protected 'library' status or it's inability to pay is
3    shocking, outrageous and frivolous and entirely inconsistent with our judicial
4    system philosophy that no man is above the law.

5    17.    Deny the allegations in paragraph 17.

3    18.    Admit the allegation in paragraph 18 only that Shell offers a reward for copyright
7    infringement to protect her intellectual property, as is her right. Deny that this
8    reasonable protective action constitutes a 'history of being litigious.'

9    19.    In answer to paragraph 19, Defendant lacks sufficient knowledge or information to
10    form a belief as to the truth of the allegations contained herein, and on that basis,
11    denies same.

12    20.    Deny allegations in paragraph 20. Internet Archive comes before this Court seeking
13    a remedy in the form of fair use protections with unclean hands and must,
14    therefore, be denied that protection. In paragraph 1 of its complaint, Internet
15    Archive described itself as an "Internet library" which has become it's sole reason
16    for claiming a previously unknown form of 'wholesale fair use' immunity from any
17    copyright infringement claim for its wholesale infringing activities involving, by its
18    own admission, 55 billion web pages. Despite Internet Archive's gross
19    misconceptions to the contrary, fair use does not come for free. Internet Archive
20    disingenuously attempts to avail itself of fair use protections in order to justify its
21    "free use" of Shell's intellectual property. By way of example: Shell has not only
22    published her intellectual property on the Internet, she has also published three
23    hard copy books. Public and private libraries make her books available for free to
24    the public, AFTER they purchase the book, or AFTER they seek and obtain a
25    donation of a book from Shell. Never has any library entered into Shell's
26    warehouse (nor, presumably, a bookstore) to *steal* a copy of any of her books to
78    then make the books freely available to the public in their library. Should any
28    library do so, Shell (or the bookstore owner) would be fully within her rights to

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 7 of 42

seek criminal prosecution or civil remedies for the theft of that property. In this case, Internet Archive surreptitiously, covertly and stealthily, without notice or permission, electronically entered the computer, computer system or computer network where Shell's web site is situated in Colorado and *stole* a copy of her ENTIRE web site on 87 occasions and transmitted the stolen copies of her entire web site back to Internet Archive servers where they were stored in permanent digital and/or electronic format, without her knowledge, consent or participation. Internet Archive then displayed her web site publicly. In so doing, it has effectively destroyed Shell's ability to market and sell her intellectual property by flooding the Internet with access to free copies of the very same documents she charges license fees for and/or limits access to documents. Internet Archive has provided free and unfettered access to her documents to individuals and organizations that Shell expressly chose to exclude from access, which was her exclusive right to exercise. Shell has suffered wholesale infringement of her property because her very control over any and all access to her property was stolen by Internet Archive. Congress has expressly refused to distinguish an electronic, magnetic or digital publication from a hard copy publication, stating that these formats are to be treated identically for copyright infringement purposes. Even for educational institutions, copying is not permitted to substitute for the purchase of books, publishers' reprints or periodicals. Copy centers and libraries and schools with copy machines are liable for vicarious or contributory infringement when they make it possible for infringers to copy books and periodicals without the permission of the copyright owner, which is also what Internet Archive has done. The fact that a digital copy is easier to lift, transmit and display does not give anyone more 'rights' to copy, transmit and display that intellectual property without paying the established license fee (for the first copy at least), negotiating a fee reduction or waiver, or otherwise obtaining the consent of the copyright owner before engaging in any subsequent or purported 'fair use' of that property. There is no 'digital' or 'Internet library exception' for

copyright infringement, nor for vicarious or contributory infringement, nor for theft of the original intellectual property. Because Shell's intellectual property was first *stolen* by Internet Archive 87 times before it made all 87 versions for the past 6 years of her copyrighted web site freely available in their entirety to the entire world on the Wayback Machine, Internet Archive must be denied any fair use protections for its subsequent use of her copyrighted property under the unclean hands doctrine and equitable estoppel. Additionally, Internet Archive's use of profane-justice.org was not consistent with fair use as described in Shell's Counterclaim's First Cause of Action, below. Finally, Internet Archive expressly waived fair use protections when it entered into the contract with Shell which states:

> Commercial/financial gain includes but is not limited to: the use of this copyrighted content and intellectual property (hereinafter property) . . .to use this property to seek or obtain any personal, commercial, financial, professional or other non-tangible benefit for the User without the express written permission of the Copyright owner and/or without pre-paying the posted license fees or obtaining a waiver of fees in writing; to use this property to influence, cause or inflict Harm or Injury to the copyright owner or her property, occupations and/or associations or to influence, cause or inflict Injury or Harm to anyone who engages in occupations or associations with the copyright owner. User expressly agrees that any and all "Fair Use" exceptions or affirmative defenses shall not apply to any commercial/financial gain use as defined in common practice or as defined herein.

21.   Deny the allegation in paragraph 21. "Fair use" is not an exemption to copyright law. The concept of "fair use" is a defense, which presumes that an infringement has occurred. In order to claim a "fair use" defense, Internet Archive must first admit to copyright infringement. Since Internet Archive is invoking "fair use" defense, then it has expressly admitted to copyright infringement and therefore no legal controversy exists over the question of whether Internet Archive infringed Shell's copyright or not. Having admitted to infringing Shell's copyright, Shell

1  asserts Internet Archive's use does not fall within fair use guidelines. Additionally

2  any fair use protections are precluded under the unclean hands doctrine and/or

3  under the doctrine of equitable estoppel that no man will be permitted to profit

4  from his own wrongdoing in a court of justice, and because certain fair use

5  protections have been expressly waived by virtue of Internet Archive entering into

3  the contract with Shell. Therefore, the only legal controversy that exists is the

7  amount of damages due to Shell by Internet Archive.

8  22.  Deny the allegation in paragraph 22. Shell asserts that Internet Archive is

9  precluded from fair use immunity protections under the doctrine of unclean hands,

10  the doctrine of equitable estoppel, and that its 'use' of her copyrighted property at

11  profane-justice.org over the past six years was predicated solely upon multiple

12  thefts of that property and were therefore originated in criminal acts; and by virtue

13  of it's express consent to the security agreement which it entered into when it

14  copied www.profane-justice.org its use was impermissible on its face and Internet

15  Archive expressly waived fair use protections; it's use was inconsistent with fair

16  use guidelines, and constitutes wilful copyright infringement.

17  23.  Wherefore, Defendant Shell demands the plaintiff's Complaint for Declaratory

18  Relief of Copyright Non-Infringement be denied; that it be held liable for copyright

19  infringement; and declare Internet Archive did not make fair and permissible use of

20  profane-justice.org and deny it's request for attorney fees and costs for bringing

21  this action.

22  **COUNTERCLAIM**

23  24.  Shell repeats and re-alleges the allegation of paragraphs 1 through 23 of the

24  Answer and Objection to Venue and Counterclaim as if fully set forth herein.

25  **Jurisdiction and Venue**

26  25.  Shell's aforementioned demand to transfer this case to the United States District

78  Court for the District of Colorado (Colorado) is hereby renewed. Colorado has

28  jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and

1  § 1338(a), as this action arises under the copyright laws of the United States 17

2  U.S.C. §§ 101 et seq.

3  26.  Shell's aforementioned demand to transfer this case to the United States District

4  Court for the District of Colorado (Colorado) is hereby renewed. Pursuant to 28

5  U.S.C. § 1400(a) and  § 1391(b) (1) and (2), Colorado is the proper venue because

3  the defendant in this case is Shell, who (1) resides in Colorado, and (2) conducts

7  her business primarily in Colorado, and (3) that a substantial part of the events

8  giving rise to the claims occurred in Colorado e.g. the theft of the property was

9  committed in Colorado and the contract was executed in Colorado, and (4) a

10  substantial part of the property that is the subject of the action was originally, and

11  is, situated in Colorado. Furthermore, the burden of litigating this claim long

12  distance would severely impair Shell's ability to avail herself of the protection of

13  the courts.

14  27.  Pursuant to Colorado Revised Statutes § 13-1-124, Internet Archive purposely

15  availed itself of the privilege of acting in Colorado or of causing important

16  consequences here; the cause of action arises from the consequences to Shell in

17  Colorado of Internet Archive's activities; the activities of Internet Archive or the

18  consequences of those activities have a substantial enough connection with

19  Colorado to make the exercise of Colorado's  jurisdiction over Internet Archive

20  reasonable. Internet Archive transacted business in Colorado and committed

21  tortious acts in Colorado, therefore, jurisdiction and venue is proper in Colorado.

22  28.  This counterclaim is also brought under the federal Racketeer Influenced and

23  Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961 et seq., and various other

24  Colorado statutes and common law doctrines.  Jurisdiction is vested in this Court

25  by virtue of 28 U.S.C. § 1331.

26  29.  Because counterclaims brought under Colorado law, are so related to Shell's

78  federal counterclaims, over which the Court has original jurisdiction, that they

28  form part of the same case or controversy under Article III of the United States

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 11 of 42

1    Constitution, the United States District Court for the District of Colorado also has

2    jurisdiction over Shell's Colorado common law and statutory claims pursuant to 28

3    U.S.C. § 1367.

**Intradistrict Assignment**

5    30.    This case is improperly filed in the San Francisco Division of the United States

3    District Court for the Northern District of California. Pursuant to 28 U.S.C. §

7    1400(a) and  § 1391(b) (1) and (2), Colorado is the proper venue because the

8    defendant in this case is Shell, who (1) resides in Colorado, and (2) conducts her

9    business primarily in Colorado, and (3) that a substantial part of the events giving

10   rise to the claims occurred in Colorado, and (4) a substantial part of the property

11   that is the subject of the action was originally and is situated in Colorado.

**Parties**

13   31.    Plaintiff in the counterclaim is the defendant in this action, Suzanne Shell.

14   32.    Defendant in the counterclaim is the plaintiff in this action, Internet Archive.

15   33.    Defendants in the counterclaim for the RICO claims only are Internet Archive's

16          board of directors:

17          a.     Brewster Kahle, Board Chair and

18          b.     Kathleen Burch, Board Secretary and

19          c.     Rick Prelinger, Board President

20   whose business address is Internet Archive, Presidio of San Francisco, P.O.

21   Box 2924, San Francisco, CA 94129.

**Factual Background**

23   34.    As a country, our most valuable asset is innovation. Our constitution and our laws

24          specifically protects innovation of those who have a specific talent via copyright,

25          trade secret and patent protections and remedies.

26   35.    The Internet provides historically unparalleled opportunity for authors to market

78          and publish their creative works with minimal expense and maximum public

28          exposure. Works published on the Internet enjoy the same copyright protection as

1 other works. There is no legal requirement that a copyright holder take steps to

2 secure or sequester material in order to claim protection. The onus of avoiding

3 infringement is on users, not on copyright holders - an infringement is an

4 infringement whether the material was publicly available or password protected.

5 36. Anyone wanting to make 'fair use' of a copyrighted online work need only follow

3 the same steps as he or she would for books, periodicals or other similar

7 publications; buy or rent a copy, subscribe to a transmission thereof or borrow a

8 copy from a library.

9 37. It is not the role of the courts to tell copyright holders the best way for them to

10 exploit their copyrights. Market power does not impose on the intellectual property

11 owner an obligation to license the use of that property to others. Copyright owners

12 enjoy complete discretion in deciding whether or not to charge permission license

13 fees and how much to charge. Nothing in the copyright statutes would prevent an

14 author from hoarding all of his works during the term of the copyright.

15 38. Unauthorized copying and distribution of works of intellectual property, such as

16 web sites, is becoming a pervasive problem on the Internet. The basic nature of the

17 copyright infringement (i.e., unauthorized copying and distributing) is familiar;

18 given the speed and ease of reproducing and widely distributing information on the

19 Internet, however, the potential harm to copyright owners is exponentially greater

20 than the threat posed by traditional acts of infringement.

21 39. The extensive misuse of the Internet for unlawful purposes is in part due to the

22 nature of the medium. The ease with which information can be copied to and from

23 Internet sites, the simplicity of efficiently downloading ever-larger files based on

24 improved data compression technologies, and the relatively minor cost to a user of

25 communicating with an audience of millions create unparalleled opportunities for

26 copyright infringement. The relative anonymity with which Internet

78 communications may be conducted further facilitates illegal conduct.

28 40. Unscrupulous Internet users can covertly copy and transmit to the Internet

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM Page 13 of 42

1   copyrighted web site properties (in which they have no rights and which they have

2   no authority to copy or distribute) thereby making available to a worldwide

3   audience, identical reproductions of copyrighted works that can be and are further

4   copied, distributed and used by others in virtually unlimited, and entirely

5   uncontrolled, fashion.

3   41.   With the explosive growth of the Internet, and with the pervasive public sense of

7   free entitlement to intellectual properties published on the Internet, online

8   infringement at issue in this case will continue unchecked unless the acts of

9   copying and distribution of copyrighted works is deterred by the courts, applying

10   well-established principles of copyright law to infringing online conduct.

11   42.   The United State Attorney General encourages victims of intellectual property theft

12   to pursue their claims civilly.

13   43.   Copyright is a strict liability statute.

14   44.   The intellectual property known as profane-justice.org is registered with the United

15   States copyright office, and that said registration is prima facie evidence of the

16   validity of the copyright in litigation for copyright infringement. (Registrations

17   attached). It is undisputed that Shell is the copyright owner of profane-justice.org.

18   45.   It is undisputed that the literary content of all versions of profane-justice.org is the

19   creation of original works by Shell and is fixed in a tangible medium of expression

20   and are works that contains substantial amount of material created by Shell's own

21   skill, labor and judgment and that subject matter of the work is copyrightable under

22   laws of United States.

23   46.   The web site profane-justice.org has always displayed a copyright notice. Later

24   versions also included posted limitations on use, and established license fees and

25   terms for copying, displaying or distributing.

26   47.   As copyright owner, it is undisputed that Shell possess exclusive rights to

78   reproduce the work (e.g., to make copies), to prepare derivative works (e.g.,

28   translation, abridgment, condensation, adaptation), to distribute copies to the

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 14 of 42

1  public (e.g., publish, sell, rental, lease, license, or lending), to perform the work

2  publicly, to display the work publicly.

3  48.  The property, profane-justice.org, is situated on a computer, computer system or

4  computer network located in Colorado. This property is not transmitted to Internet

5  patrons. Internet patrons must actively and deliberately access the computer,

3  computer system or computer network in Colorado in order to access the web

7  pages.

8  49.  The use of this property is also protected by a security agreement contract (exhibit

9  A) and a clear advisement of that contract is published on every web page which

10  states:

11  IF YOU COPY OR DISTRIBUTE ANYTHING ON THIS
    SITE - YOU ARE ENTERING INTO A CONTRACT.
12  READ THE CONTRACT BEFORE YOU COPY OR
    DISTRIBUTE. YOUR ACT OF COPYING AND/OR
13  DISTRIBUTING OBJECTIVELY AND EXPRESSLY
    INDICATES YOUR AGREEMENT TO AND
14  ACCEPTANCE OF THE <u>FOLLOWING TERMS</u>: *(the*
15  *words 'following terms' contain a hyperlink to the text of*
    *the terms).*
16

17  This contract is executed in Colorado upon the user's deliberate and intentional act

18  of copying or distributing, regardless of where the user is located.

19  50.  Shell has a single market for her web site at <u>profane-justice.org</u>, and that single

20  market is the Internet.

21  51.  Internet Archive also serves the Internet market.

22  52.  Internet Archive has admitted to copying and publicly displaying Shell's web site.

23  (See attached list of Shell's web site versions displayed on Internet Archive

24  Wayback Machine - Exhibit B - AND attached list of approximately 2006 of

25  Shell's copyrighted .txt pages available for display on Internet Archive Wayback

26  Machine - Exhibit C -  AND attached list of approximately 217 of Shell's

78  copyrighted .pdf pages available for display on Internet Archive Wayback Machine

28  - Exhibit D)

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 15 of 42

53.    Internet Archive covertly, surreptitiously and stealthily copied Shell's entire web site approximately 87 times between May, 1999 and October, 2004 without seeking or obtaining her permission and without paying license fees.

54.    Internet Archive publicly displayed Shell's entire web site daily between May, 1999 and December, 12, 2005 without seeking or obtaining her permission and without paying license fees for that public display.

55.    Internet Archive knowingly and wilfully infringed Shell's copyright when it covertly, stealthily and without notice to Shell, without her permission or knowledge and without her participation, illegally converted electronic and/or digital copies of her web site to its own use, without paying the posted license fees, on multiple occasions, and reproduced multiple versions of her web site in permanent storage on its Wayback Machine and publicly displayed those stolen web sites and made those stolen reproductions freely available to the public on the Internet.

56.    Internet Archive knowingly and wilfully did *not* disable the copy, print, save or print screen functions of the stolen web site profane-justice.org when it publicly displayed the stolen web sites, which enabled others to infringe Shell's copyright on a wholesale basis.

57.    Internet Archive copied Shell's entire web site 1 time in 1999; 10 times in 2000; 12 times in 2001; 18 times in 2002; 31 times in 2003; and 15 times in 2004. This constitutes 87 instances of criminal copyright infringement in the past six years. Copyright infringement is a crime to punish and deter the misappropriation of intellectual property that an author -- who may have no means to prevent copying -- invested time, energy and money to create. Internet Archive willfully stored, reproduced or distributed profane-justice.org on a wholesale basis.

58.    Shell discovered the infringement of her copyrighted intellectual property by Internet Archive on December 12, 2005, and immediately sent a cease and desist and demand letter to Internet Archive.

59.    Internet Archive honored Shell's demand to remove the web site profane-justice.org from the Wayback Machine, a tacit admission that it did not possess the rights to display that web site without Shell's permission. If Internet Archive truly did believe that it was engaged in fair use, it would not have removed the web site profane-justice.org when Shell demanded.

60.    It is undisputed that Internet Archive refused Shell's demand to pay license fees for her intellectual property which it acquired illegally, copied and publicly displayed without permission of the copyright owner.

61.    Various versions of Shell's web site were, in fact, knowingly and intentionally reproduced in their entirety and knowingly and intentionally publicly displayed on the Wayback Machine and full  public access was provided on the Internet without comment or discussion.  The illegally obtained copies of profane-justice.org were not used for purposes such as criticism, comment, news reporting, teaching, scholarship, or research. Internet Archive's use was not a transformative use of Shell's property. This is akin to reprinting a hard copy book in its entirety, including all editions, and making that illegal reprint available to the public without charge.

62.    Internet Archive is profiting from its wholesale infringing conduct and any claim that it is not profiting is specious. Each time it infringes by stealing a copy of intellectual property and converting it to its own use, it is unjustly enriched in various ways at the expense of the copyright owner. Internet Archive is  profiting from its actions, and it is facilitating the theft and infringement of intellectual property from its creator by knowingly providing free and unlimited access to Shell's property on its Wayback Machine.

63.    By the aforementioned actions, Internet Archive assumed and exercised impermissive control over Shell's exclusive rights as copyright owner and subsumed Shell's ability exercise her exclusive rights to her intellectual property, especially  in her target market, in favor of Internet Archive. In effect, Internet

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 17 of 42

1    Archive became Shell's competitor, and took over Shell's market by giving away

2    for free, her intellectual property which she had labored over for 15 years without

3    remuneration, thereby stealing the fruits of her labor. In this case, her web site

4    works have been copied in their entirety, and the wide availability of the free,

5    pirated copies have a drastic effect on the potential market for the author's

3    legitimate works.

7    **FIRST CAUSE OF ACTION**

8    (Copyright Infringement 17 U.S.C. §§ 101 et seq.)

9    64.    Shell repeats and re-alleges the allegation of all preceding paragraphs of the

10    Answer and Counterclaim as if fully set forth herein. Copyright laws govern only

11    the elements of mere reproduction or the like, and do not address the method or

12    legality of original acquisition of the intellectual property, however, the original

13    acquisition of the property, if acquired by theft, fraud or deceit, can give rise to the

14    denial of fair use protections for Internet Archive's subsequent use of that property

15    under the unclean hands doctrine and under the doctrine of equitable estoppel.

16    65.    Internet Archive knowingly and wilfully infringed Shell's copyright 87 times when

17    it copied her web site on various dates between May, 1999 and October, 2004

18    without her permission and without paying the posted license fees for that copying,

19    in direct violation of her properly displayed copyright notice and license fees and

20    terms. Between January 2002 and December 2005, it infringed Shell's copyright 64

21    times.

22    66.    Internet Archive knowingly and wilfully infringed Shell's copyright every day from

23    May, 1999 to December, 2005 when it knowingly and intentionally publicly

24    displayed its stolen copies of her entire web site on the Wayback Machine and

25    when it maintained copies of all versions of her web site in its permanent storage.

26    67.    Internet Archive knowing and wilfully contributed to and facilitated long-term

78    wholesale infringement and ongoing infringement of Shell's web site when it

28    knowingly and intentionally publicly displayed its stolen copies of her entire web

1  site on the Wayback Machine without disabling the copy, print, save and print

2  screen functions for her web site thereby enabling the worldwide Internet

3  community to infringe her copyright without her knowledge.

4  68.  Internet Archive is precluded from arguing fair use immunity under the unclean

5  hands doctrine and under the doctrine of equitable estoppel because its purported

3  'fair use' was predicated solely upon its covert and stealthy, intentional and wilful

7  theft of the original copies of Shell's web site. He who seeks equity, must do

8  equity.

9  69.  Alternatively, Internet Archive expressly waived fair use protections on 13

10  occasions when it copied Shell's website pursuant to the Copyright Notice/Security

11  Agreement.

12  70.  Alternatively, Internet Archive's use of Shell's intellectual property is inconsistent

13  with fair use for the following reasons:

14  a.  **Purpose and Character of use:** Simply because a use is allegedly

15  educational and not for profit does not insulate it from a finding of

16  infringement. The crux of the profit/nonprofit distinction is not whether the

17  sole motive of the use is monetary gain but whether the user stands to profit

18  from exploitation of the copyrighted material without paying the customary

19  price. Shell asserts that Internet Archive *is* profiting from its wholesale

20  infringing conduct and any claim that it is not profiting is specious. Each

21  time it infringes by stealing a copy of intellectual property and converting it

22  to its own use, it is unjustly enriched in various ways at the expense of the

23  copyright owner by virtue of obtaining the property without paying for it. It

24  also profits by virtue of the grants and donations it solicits and obtains to

25  commit and expand its infringing acts and acquire more intellectual

26  property.

78  b.  Internet Archive receives "financial gain" as defined in the No Electronic

28  Theft Act for its infringing conduct, including receipt, or expectation of

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 19 of 42

1   receipt, of anything of value, including the receipt of other copyrighted
2   works.
3   c.   Additionally, Internet Archive's use was totally devoid of commentary,
4        instruction or discussion thereby rendering its use strictly non-
5        transformative. The essence of "character and purpose" test for fair use is
3        the transformative value, that is, productive use, of the secondary work
7        compared to the original. District Court Judge Leval has noted that, "the
8        use . . . must employ the quoted matter in a different manner or for a
9        different purpose from the original. A quotation of copyrighted material
10       that merely repackages or republishes the original is unlikely to pass the
11       test." Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1111
12       (1990). Because Internet Archive merely republished Shell's web site for
13       the same intrinsic purpose as the original publication, Internet Archive's
14       use cannot be categorized as anything other than a mere repackaging.
15  d.   **Nature of the Copyrighted Work:** Shell's web site literary content is
16       singularly creative, containing insightfully unique results of her research
17       which is not available from any other source, as well as containing editorial
18       commentary, discussion, analysis and legal documents which are not
19       generally available anywhere else. Taken in totality, this content represents
20       a high degree of original and subjective thought, the unique results of 15
21       years of dedicated qualitative research, and goes far beyond the realm of
22       mere factual works.
23  e.   **The Amount and Substantiality of the Portion Used:** Internet Archive's
24       use infringed not only a substantial portion of Shell's intellectual property,
25       but in fact, infringed by illegally copying and publicly displaying and by
26       making publicly available for further infringement, 87 stolen versions of
78       Shell's entire web site - which constituted her ***entire inventory or 100%*** of
28       Internet published property for six years . Additionally, during Internet

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 20 of 42

Archive's infringement, the original web site content continued to be published by Shell and accessible on the Internet by going to www.profane-justice.org.

f. **The Effect of the Use on Potential Markets for or Value of the Copyrighted Work:** This factor has been held to be "undoubtedly the single most important element of fair use." Internet Archive did not pay for the property, which deprived Shell of the income from the license fees for that property and Internet Archive was unjustly enriched by the value of those license fees by obtaining that property illegally. Internet Archive copied Shell's works in the manner described so that it didn't have to buy the original or additional copies of the original, or did so to avoid having to pay license fees to the author. Additionally, Internet Archive's use has caused overwhelming and irreparable harm upon the potential market for or the value of Shell's copyrighted Internet work. Internet Archive possesses illegal copies of profane-justice.org by virtue of theft, publicly displays and allows full public access to and use of Shell's entire inventory of intellectual property published on the Internet for free, unfettered by the license fees, exclusions and terms Shell imposed pursuant to her exclusive rights as copyright owner. Why would anyone purchase from Shell what they can obtain from Internet Archive for free - or obtain it for free from someone who obtained it from Internet Archive for free?

g. In this case an important additional factor is the fact that Internet Archive has effectively created a new forum allied to the online publishing industry by usurping all web site authors' copyrights and profits, notwithstanding the fact that Internet Archive does not charge for its permanent storage, use and display of anyone's web sites. This cannot be sustained as its result is complete frustration of the intent of the copyright law which has been the protection of intellectual property and, more importantly, the

1   encouragement of creative expression. Under these circumstances, if the

2   copyright laws fail to protect Defendant's intellectual property rights, her

3   only other option is to cease creative expression and publishing on the

4   Internet.

5   h.   In fact, Internet Archive does not argue that it's use is fair use when asked

3   to remove a web site nor insists on continuing it's use, instead, it complies

7   with the cease and desist demand submitted by the copyright owner without

8   question, a tacit admission that it recognizes it's use has not been consistent

9   with fair use.

10   71.   By it's own admissions in its complaint, Internet Archive's infringements have

11   been committed willfully, and have been and are being engaged in with total

12   disregard for Defendant's intellectual property rights.

13   72.   Internet Archive is in fact acting egregiously and is not merely engaged in technical

14   violations of the law. Factors to show that Internet Archive was acting egregiously

15   include: (1) Internet Archive engaged in a significant amount of infringement as

16   proven by its own admission of obtaining and possessing 55 billion web pages,

17   which is comprised of a large percentage for which it paid no license fees nor

18   obtained prior permission to possess, and in the subject case, illegally obtaining,

19   possessing and displaying 87 versions of Shell's web site over six years, without

20   her permission and without paying license fees; (2) the infringing activity occurred

21   repeatedly over a lengthy period of time, by its own admission since 1996; and

22   since 1999 involving 87 instances theft of Shell's entire web site and daily

23   infringement between May, 1999 and December 12, 2005, by placing copies of her

24   web site in it's permanent storage and publicly displaying it; (3) Internet Archive is

25   so involved in wholesale infringement as to lead unavoidably to the conclusion that

26   its actions were willful; (4) Internet Archive's admissions on its own Complaint for

78   Declaratory Relief of Copyright Non-Infringement, and its published

28   communications and disclaimers on its web site reflect its knowledge of the

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM     Page 22 of 42

1    illegality of its conduct, and/or malice or other criminal intent; and (5) Internet

2    Archive refused to pay license fees demanded by Shell for the property it acquired

3    in violation of her exclusive rights as copyright owner, (6) the copyrighted works

4    that are the subject of this complaint belong to a much smaller company or single

5    individual, namely Shell, whose sole assets consist of her intellectual property

3    inventory and whose profitability has certainly been jeopardized by Internet

7    Archive's conduct.

8    73.    As a direct cause of this infringement, Shell has suffered continued, ongoing and

9    far-reaching copyright infringement, effectuation of new and further infringements,

10    depreciation in the value of and ability to sell and license her work, lost profits

11    and/or opportunities, and damage to her goodwill and reputation.

12    74.    As a direct cause of this infringement, Shell has suffered actual and statutory

13    damages.

14    **SECOND CAUSE OF ACTION**

15    (Civil Theft and/or Conversion)

16    75.    Shell repeats and re-alleges the allegations of all preceding paragraphs of the

17    Answer and Counterclaim as if fully set forth herein. Relevant state law violations

18    are predicated upon Internet Archive committing acts incorporating elements

19    beyond mere reproduction or the like, including but not limited to Internet

20    Archive's method of initially acquiring the property through acts of computer

21    crime and/or the theft/conversion of Shell's property, therefore Shell's rights

22    involved are not equivalent and preemption will not occur; and this cause of action

23    does not provide a substitute rule of law, but merely an additional means of

24    recovery.

25    76.    Between the dates of and between May, 1999 and October, 2004, on approximately

26    87 occasions, Internet Archive electronically and/or digitally entered the computer,

78    computer system or computer network, located in Colorado and/or leased by her

28    business which operates in Colorado, wherein successive versions of her

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 23 of 42

1    copyrighted web site profane-justice.org were situated in electronic and/or digital

2    format, and surreptitiously, covertly and stealthily and without notice to her,

3    electronically and/or digitally copied her entire web site and assumed unauthorized

4    control of those stolen copies, and transmitted the stolen copies of her entire web

5    site back to Internet Archive computers for permanent storage, without her

3    permission, knowledge or consent, and without paying her license fees for that

7    intentional copying, and wilfully concealing from her that it had taken copies, and

8    without paying license fees for its intended subsequent public display of her stolen

9    web site, and wilfully concealing from her that it intended to publicly display its

10    stolen copies, and converted Shell's intellectual properties to its own use and

11    purpose, and refused her demand to pay license fees for the intellectual property it

12    acquired,  thereby permanently depriving Shell of the use or benefit of her

13    property.

14  77.    Shell discovered this theft of her intellectual property on December 12, 2005.

15  78.    As a direct cause of this theft, Shell has suffered lost profits and/or opportunities.

16  79.    As a direct cause of this theft, Shell has suffered actual damages. Assuming these

17    damages are computed based on her actual published license fees for the stolen

18    copies of only one of the 87 thefts consisting of the latest stolen version of her

19    entire web site, the actual damages would be $1,035,000. A search of Internet

20    Archive Wayback Machine archives on December 12, 2005 revealed a purported

21    2223 stolen pages from profane-justice.org stored on the Wayback Machine (see

22    exhibits C & D). Pursuant to Colorado Revised Statutes §18-4-405, Shell is

23    entitled to triple damages for civil theft as well as attorney fees and costs.

24                **THIRD CAUSE OF ACTION**

25                  (Breach of Contract)

26  80.    Shell repeats and re-alleges the allegation of all preceding paragraphs of the

78    Answer, Objection to Venue and Counterclaim as if fully set forth herein. Breach

28    of Contract claims are not preempted because Internet Archive's violations are

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 24 of 42

1     predicated upon acts incorporating elements beyond mere reproduction or the like,

2     therefore, Shell's rights involved are not equivalent and preemption will not occur;

3     and this cause of action does not provide a substitute rule of law, but merely an

4     additional means of recovery.

5     81.     Internet Archive expressly entered into a contract, defined and published on her

3     web site as "Copyright notice/security agreement" (see exhibit A), with Shell. The

7     security agreement contained an offer to copy or distribute the web site profane-

8     justice.org in exchange for pre-payment of posted license fees. Internet Archive

9     expressly accepted the offer of copying Shell's web site profane-justice.org when it

10     affirmatively performed the act of copying her web site, profane-justice.org on 13

11     occasions between March 25, 2004 and October 16, 2004. Dates it entered into this

12     contract include:

13     a.     March, 25, 2004

14     b.     March 29, 2004

15     c.     April 11, 2004

16     d.     May 19, 2004

17     e.     May 23, 2004

18     f.     June 6, 2004

19     g.     June 7, 2004

20     h.     June 14, 2004

21     i.     June 15, 2004

22     j.     July 22, 2004

23     k.     September 25, 2004

24     l.     September 26, 2004

25     m.     October 16, 2004

26     82.     Internet Archive possesses the capacity and authority to enter into contracts.

78     83.     Internet Archive did not seek, did not receive and does not possess the requisite

28     written permission from the copyright owner as defined in the security agreement.

84.  Internet Archive did not prepay the permission license fees for copying the web site profane-justice.org as required by the notice of license fee schedule published on every web page at profane-justice.org and as required by the security agreement which was hyperlinked to the notice of license fee schedule.

85.  Internet Archive received the offered consideration as a result of that transaction, specifically, copies of Shell's intellectual property, the web site profane-justice.org.

86.  Shell did not receive the express promised consideration from Internet Archive, e.g. prepayment of posted license fees or damages and penalties cited in the security agreement therefore Internet Archive was unjustly enriched when it acquired Shell's intellectual property.

87.  The security agreement contract is in written form, therefore Internet Archive is bound by its terms regardless of whether Internet Archive read it or not.

88.  Internet Archive cannot argue that the posted license fees for copying profane-justice.org are unreasonable or too high under the principle that a party to a contract cannot escape the consequences of bad negotiation.

89.  Internet Archive breached the security agreement contract when it harmed Shell and her property, and when it used the property for commercial gain as defined in the contract, and when it failed to seek or obtain permission of the copyright owner prior to copying, and when it failed to prepay posted license fees for copying, and when it failed to fulfil other terms of the security agreement prior to copying Shell's web site and it breached the contract when it refused her demand for payment upon her discovery of its copying.

90.  As a direct cause of Internet Archive's breach of contract, Shell has suffered lost profits and actual damages totaling a minimum of $3,900,000 pursuant to the terms of the security agreement which specifies damages:

    a.  . . . in the sum certain amount of $250,000.00 per each occurrence of unauthorized use of the aforementioned copyrighted material or the appropriate license fees as posted on copyright notice, whichever is greater, and imposes a penalty for failure to pre-pay posted license fees in the sum-certain amount of $50,000.00 per each occurrence of failure to pre-pay

license fees, plus costs, plus triple damages;

## FOURTH CAUSE OF ACTION

### (Racketeering or RICO)

91.    Shell repeats and re-alleges the allegation of all preceding paragraphs of the Answer and Counterclaim as if fully set forth herein. Racketeering claims are not preempted because Internet Archive's violations are predicated upon acts incorporating elements beyond mere reproduction or the like, therefore, Shell's rights involved are not equivalent and preemption will not occur; and this cause of action does not provide a substitute rule of law, but merely an additional means of recovery.

### Defendant Persons

92.    Named as RICO defendant on the Counterclaim is the plaintiff in this action, Internet Archive, a 501(c)(3) public non-profit organization.

93.    Also named as RICO defendants on the Counterclaim are Brewster Kahle, an individual holding the position of Internet Archive Board Chair, and Kathleen Burch, an individual holding the position of Internet Archive Board Secretary, and Rick Prelinger, an individual holding the position of Internet Archive Board President.

### Victims

94.    Victim of Internet Archive's pattern of racketeering activity in this action is Suzanne Shell.

95.    Victims not named in this complaint also include any or all of the copyright owners and authors of the purported 55 billion web pages currently or historically published or permanently stored at the Internet Archive Wayback Machine. Internet Archive has been previously sued by at least one other alleged victim of copyright infringement.

### The Enterprise

96.    The subject enterprise is a published association-in-fact between - including but

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 27 of 42

not necessarily limited to - the following independent persons and/or entities:

a.     Internet Archive and its board of directors and its agents and employees

b.     Alexa Internet

c.     Library of Congress

d.     Smithsonian Institute

**Defendant's Operation or Management of the Enterprise**

97.   The Enterprise is operated and managed by Internet Archive under the direction, management and control of it's board of directors, and has been in operation since 1996. According to its web site:

> "The original idea for the Internet Archive Wayback Machine began in 1996, when the Internet Archive first began archiving the web. Now, five years later, with over 100 terabytes and a dozen web crawls completed, the Internet Archive has made the Internet Archive Wayback Machine available to the public. . . .The Internet Archive Wayback Machine is owned and operated by the Internet Archive."

98.   Internet Archive is engaged in the business of obtaining and archiving online intellectual property, purportedly obtaining it legally. Internet Archive provides technology and mechanisms whereby copyright owners can voluntarily donate a copy of their intellectual properties to Internet Archive for inclusion in the Internet Archive Wayback Machine. Some of the content of the Wayback Machine is legally obtained through these mechanisms.

99.   The Enterprise, under the management of Internet Archive, also obtains vast amounts of intellectual property illegally, which it publishes in the same manner as the legally acquired intellectual property on the Internet Archive Wayback Machine as described on the Internet Archive web site:

> "The Internet Archive Wayback Machine contains
> approximately 1 petabyte of data and is currently growing at
> a rate of 20 terabytes per month. This eclipses the amount of
> text contained in the world's largest libraries, including the
> Library of Congress. If you tried to place the entire contents
> of the archive onto floppy disks (we don't recommend this!)
> and laid them end to end, it would stretch from New York,
> past Los Angeles, and halfway to Hawaii."

100.    The Enterprise, under the management of Internet Archive, then makes the illegally

acquired intellectual property available to the public as described on its web site:

> "The Archive makes the collections available at no cost to
> researchers, historians, and scholars. At present, it takes
> someone with a certain level of technical knowledge to
> access collections in a way other than our web site, but there
> is no requirement that a user be affiliated with any particular
> organization."

> "Now, five years later, with over 100 terabytes and a dozen web
> crawls completed, the Internet Archive has made the Internet
> Archive Wayback Machine available to the public."

101.    Internet Archive also describes its associations in this endeavor:

> "The Archive collaborates with institutions including the
> Library of Congress and the Smithsonian."

> "The Internet Archive has relied on donations of web crawls,
> technology, and expertise from Alexa Internet and others."

102.    Internet Archive Board of Directors Brewster Kahle, Kathleen Burch and Rick

Prelinger had knowledge of the pattern of racketeering activity, and participated in,

devised and oversaw the pattern of racketeering activity, and possessed the power,

ability and authority to compel Internet Archive to cease engaging in the pattern of

racketeering activity.

**The Pattern**

103.    According to Internet Archive's web site, using Alexa Internet technology, the Enterprise, under the auspices of Internet Archive, illegally and impermissibly acquires intellectual property using "automated crawlers" which covertly and stealthily collect publicly accessible Web pages and return a copy of the pages collected to the Internet Archive Wayback Machine computers for permanent storage, public display and public access. Internet Archive boasts that it has completed twelve complete Web crawls since 1996.

104.    Upon information and belief, the covert and stealth automated copying, collection and transmission of intellectual property is performed by Internet Archive without notice to the copyright owners, and without their consent or permission, and frequently without their knowledge.

105.    Upon information and belief, Internet Archive's covert and stealth automated copying, collection, transmission and permanent storage of intellectual property is performed without seeking, purchasing or otherwise obtaining a license to legally obtain the first copy, to permanently store or to publicly display the collected pages, and without seeking permission from the copyright owner in advance and without negotiating for license fee reductions or waivers.

106.    Internet Archive states that it "[is] proceeding with documenting the growth and content of the Internet, using libraries as our model." However, unlike libraries who <u>purchase</u> their original copies of books, periodicals, and audio/video

recordings before making them freely available to the public. The Enterprise, under the management of Internet Archive, utilizes web crawlers that automatically, covertly and stealthily transmit electronic and/or digital instructions to other computers, computer systems and/or computer networks, which enables Internet Archive to literally *steal* a copy of any digital and/or electronic intellectual property from any location on the Internet and transmit that stolen copy back to Internet Archive for ultimate inclusion in the permanent storage of and display on the Internet Archive Wayback Machine, all without ever leaving Internet Archive offices in San Francisco and without the knowledge of the copyright owners.

107.    Internet Archive offers multiple methods of 'opting out' of inclusion in the Wayback Machine, which establishes that Internet Archive is well aware that its stealth and covert copying and collection of web pages activities are unlawful and proves its wilfulness. In fact, Internet Archive does not argue that it's use is fair use when asked to remove a web site nor insists on continuing it's use. Instead, it complies with the cease and desist demand by the copyright owner without question, a tacit admission that it recognizes it's use has not been consistent with fair use. Internet Archive's own Terms of Service clickwrap agreement also clearly indicates that it understands copyright law, because it requires its users, as a condition of using the Wayback Machine, to agree to not engage in the same infringing conduct that Internet Archive engages in.

108.    Internet Archive refuses legitimate demands by copyright owners to pay license

fees for the original copies of web sites that it has impermissibly or illegally acquired by means of its automatic, covert, stealth web crawlers.

109. The aforementioned acts constitute knowing and wilful copyright infringement on a massive scale.

110. The aforementioned infringement is a direct cause of harm to copyright owners' properties and businesses.

111. The Enterprise, under the management of Internet Archive, has been engaged in this pattern of intellectual property theft and copyright infringement since 1996. It has publicly made it clear that it intends to continue in the same pattern.

### Racketeering Activity and Predicate Acts

112. Regardless of whether a RICO claim is predicated upon state or federal criminal violations (or a combination of both), the defendant need not be criminally convicted before a civil plaintiff can sue for treble damages under RICO. The statute requires only that the criminal activities are "chargeable" or "indictable" under state or federal law, not that the defendant has already been charged or indicted.

113. Internet Archive is an individual "person," and Brewster Kahle, Kathleen Burch and Rick Prelinger are individual "persons," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and (d), and Colorado Revised Statutes § 18-17-103(4) and § 18-17-104(3) who associated with and/or participated in the conduct of said enterprise's affairs.

114.    Between 1996 and the present, and with regard to Shell for the purposes of this

counterclaim between May 8, 1999 and December 12, 2005, Internet Archive,

Brewster Kahle, Kathleen Burch and Rick Prelinger conducted, participated in,

engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs

of the enterprise through a pattern of racketeering activity within the meaning of 18

U.S.C. §§ 1961(1), 1961(5) and 1962(c) and (d) and within the meaning of

Colorado Revised Statutes §§ 18-17-103(3), 18-17-103(5) and 18-17-104(3),

Internet Archive's pattern of racketeering activity consisted of :

a.    **Mail and Wire Fraud e.g. 18 U.S.C. § 1343. Fraud by wire, radio, or**

**television and § 1341. Frauds and swindles:** Internet Archive, Brewster

Kahle, Kathleen Burch and Rick Prelinger have devised or intended to

devise a scheme or artifice for acquiring intellectual property and

maintaining interest and control in the illegally acquired intellectual

property by means of false or fraudulent pretenses, representations or

promises, which scheme to defraud includes material misrepresentations, or

the omission or concealment of material facts, including conduct which

fails to conform to standards of moral uprightness, fundamental honesty,

and fair play, and including conduct calculated to deceive, whether it be by

direct falsehood or by innuendo, by speech or silence, by word of mouth, by

look, or by gesture, including the suppression of the truth, wherein fraud

and deceit arose from Internet Archive's silence where there was an

FIRST AMENDED ANSWER AND OBJECTION TO VENUE AND COUNTERCLAIM    Page 33 of 42

affirmative legal and moral duty to seek permission from the copyright owner prior to acquiring copyrighted intellectual property, and where Internet Archive's silence associated with its acquisitions of that property was wilful and intentional fraud in order to avoid paying permission license fees or obtaining permission from the copyright owners thereby causing injury to the copyright owners and their intellectual property and businesses, when they covertly, secretly and stealthily transmitted or caused to be transmitted by means of wire or other communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice of finding and acquiring said intellectual property by means of wire or other communication and to covertly, secretly and stealthily transmit the stolen copy of that property to Internet Archive for its own use and purposes.

b.    **18 U.S.C. § 2319. Criminal infringement of a copyright 17 U.S.C. § 506.** Internet Archive,  Brewster Kahle, Kathleen Burch and Rick Prelinger infringe the copyright of Shell and other copyright owners willfully for purposes of commercial advantage or private financial gain e.g. continuing grant awards, donations, unjust enrichment, and the expectation of acquiring intellectual property, etc. - including but not limited to illegally copying, distributing, displaying and using infringed and stolen intellectual property - or by the reproduction or distribution, including by electronic

means, during any 180-day period, of 1 or more copies of 1 or more

copyrighted works, which have a total retail value of more than $1,000;

c.    **§ 18-4-401  C.R.S. Theft**. On approximately 87 occasions between May,

1999 and October, 2004, Internet Archive, Brewster Kahle, Kathleen Burch

and Rick Prelinger electronically and/or digitally entered Shell's computer,

computer system or computer network located in Colorado and/or licensed

by her business which operates in Colorado, wherein successive versions of

her copyrighted intellectual property, profane-justice.org were situated in

electronic and/or digital format, and surreptitiously, stealthily and covertly

and without notice to her, copied her entire web site and deceptively

assumed control of those copies without authorization, and electronically

and/or digitally transmitted the stolen copies of her entire web site back to

Internet Archive computers for permanent storage, without her permission,

knowledge or consent, and without paying her license fees for that

intentional theft and unauthorized copying and wilfully concealing from her

that it had taken unauthorized copies, and without paying license fees for its

intended subsequent public display of her web site, and wilfully concealing

from her that it intended to publicly display its stolen copies and did in fact

display its stolen copies, and converted Shell's intellectual properties to its

own use and purpose, and refused to pay demanded license fees for those

stolen copies thereby permanently depriving Shell of the use or benefit of

1    her property.

2    d.    § 18-5.5-102(a)  C.R.S.  Computer crime. On approximately 87 occasions

3
4          between May, 1999 and October, 2004, Internet Archive, Brewster Kahle,

5          Kathleen Burch and Rick Prelinger accessed the computer, computer

3
7          network, or computer system or any part thereof which was situated in

8          Colorado and wherein Shell's web site was situated and exceeded

9          authorized access to that computer, computer network, or computer system

10
11         or any part thereof; or used a computer, computer network, or computer

12         system or any part thereof without authorization or in excess of authorized

13         access; illegally copying her web site which exceeded their published

14
15         authority to do so, and transmitted or caused to be transmitted the stolen

16         copies of her intellectual property to Internet Archive's computers.

17   e.    § 18-5.5-102 (d)  C.R.S.  Computer Crime. On approximately 87

18
19         occasions between May, 1999 and October, 2004, Internet Archive,

20         Brewster Kahle, Kathleen Burch and Rick Prelinger accessed the computer,

21         computer network, or computer system, or any part thereof, which

22
23         computer was situated in Colorado and which hosted Shell's web site, to

24         commit theft of Shell's intellectual property e.g. her web site profane-

25         justice.org.

26   These acts all occurred after the effective date of RICO and more than two

78
28   such acts occurred within ten years of one another.

115.   At all relevant times, the enterprise alleged herein was engaged in, and their activities affected, interstate commerce and foreign commerce.

116.   All of the predicate acts described herein were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c) and (d) and § 18-17-104(3) C.R.S., in that their common purpose was to infringe copyrights and acquire intellectual properties by theft and/or fraud; their common result was to infringe copyrights, including but not limited to Shell's copyright, and acquire intellectual property, including but not limited to Shell's intellectual property, by theft and/or fraud; Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, personally or through their actors or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Shell was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

117.   All of the predicate acts described herein were continuous so as to form a pattern of racketeering activity in that:

   a.   Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger engaged in the predicate acts over a substantial period of time; or

   b.   The patterns of racketeering activity engaged in by Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger continues or threatens to continue because the such conduct has become a regular way of

conducting Internet Archive's on-going business activities.

118.    As a direct and proximate result of, and by reason of, the activities of Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger and their conduct in violation of 18 U.S.C. §§ 1962(c) and (d) and § 18-17-104(3) C.R.S., Shell has been injured in her business or property, within the meaning of 18 U.S.C. § 1964(c) and § 18-17-106(7) C.R.S. Among other things, Shell has suffered damages to the extent Internet Archive infringed her copyright, and illegally obtained her intellectual property by theft, and exercised dominion and control over that property, and refused to pay license fees for the acquisition and use of that property and deprived her of the use and benefit of that property and harmed her business and property. Shell is, therefore, entitled to recover threefold the damages she has sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.

## **RELIEF**

(Damages and Injunctive Relief)

Wherefore, Defendant Shell demands trial by jury and judgment from the Court as follows:

a.    To join Brewster Kahle, Kathleen Burch and Rick Prelinger to this action as persons needed for just adjudication pursuant to Fed.R.Civ.P. 19.

b.    To transfer this case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1400(a) and § 1391(b) (1) and (2) and 28

U.S.C. § 1412;

c.  To award damages against Internet Archive, for copyright infringement, vicarious copyright infringement and contributory copyright infringement for a sum of money equal to the amount of damages and/or losses Shell has sustained or will sustain; or

d.  In lieu thereof, should Shell elect an award of statutory damages, pursuant to 17 U.S.C. § 504(c) against Internet Archive, to be increased to the maximum permitted by law, for each act of willful, copyright infringement, vicarious copyright infringement and contributory copyright infringement;

e.  To award damages against Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, jointly and severally, for a sum of money equal to the amount of damages and/or losses Shell has sustained or will sustain, for engaging in a pattern of racketeering activity, and to treble the amount of said damages pursuant to 18 U.S.C. § 1964(c) and C.R.S. § 18-17-106(7).

f.  To award actual and treble damages against Internet Archive for civil theft pursuant to § 18-4-405 C.R.S. ;

g.  To award damages in the amount of $11,700,000 against Internet Archive, for breach of contract pursuant to the security agreement it expressly entered into with Shell by virtue of Internet Archive's copying of and distribution of her web site;

h.    To award punitive damages pursuant to Colorado statutory or common law;

i.    To enjoin Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, from all future copyright infringement and theft of intellectual property, and to require them to pay license fees or to negotiate reductions or waivers of license fees for its original acquisitions like libraries do, and to obtain written permission from and/or to establish an affirmative 'opt-in' policy and technology which is executed solely by the copyright owner, before copying, storing or publicly displaying anyone's intellectual property in any format;

j.    Issue appropriate orders pursuant to 18 U.S.C. §1964, including, but not limited to: ordering Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, to divest themselves of any interest, direct or indirect, in the enterprise known as the Internet Archive and the Internet Archive Wayback Machine; imposing reasonable restrictions on the future activities or investments of Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, including, but not limited to, prohibiting Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, from engaging in the same type of endeavor as they have been engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of Internet Archive;

k.    To award prejudgment interest on the amount of damages and/or losses that

Shell has sustained;

l.  To award all costs of litigation incurred by Shell, including her reasonable attorneys' fees and experts' fees, pursuant to 18 U.S.C. § 1964(c) and § 18-17-106(7) C.R.S. ;

m.  To provide Shell with opportunity to correct deficiencies or errors associated with her pro se pleadings in the interests of justice;

n.  To award such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

_Suzanne Shell_                                                     March 10, 2006

Suzanne Shell, Defendant  - pro se
14053 Eastonville Rd, Elbert, CO 80106
Phone: (719)749-2971
Fax: (719)749-2972
Email: dsshell@ix.netcom.com

CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the attached document **FIRST AMENDED ANSWER and OBJECTION TO VENUE and COUNTERCLAIM** were placed in the United States Mail, first class mail, postage prepaid on March 11, 2006

Perkins Coie, LLP
180 Townsend St. Third Floor
San Francisco, CA 94107

Kathleen Burch
c/o Internet Archive
Presidio of San Francisco
PO Box 2924
San Francisco, CA 94129

Brewster Kahle
c/o Internet Archive
Presidio of San Francisco
PO Box 2924
San Francisco, CA 94129

Rick Prelinger
c/o Internet Archive
Presidio of San Francisco
PO Box 2924
San Francisco, CA 94129

_____ March 11, 2006
Suzanne Shell