1   KENNETH B. WILSON, State Bar No. 130009
        kwilson@perkinscoie.com
2   STEFANI E. SHANBERG, State Bar No. 206717
        sshanberg@perkinscoie.com
3   SARAH E. PIEPMEIER, State Bar No. 227094
        spiepmeier@perkinscoie.com
4   LILA I. BAILEY, State Bar No. 238918
        lbailey@perkinscoie.com
5   PERKINS COIE LLP
    180 Townsend Street, Third Floor
6   San Francisco, California  94107-1909
    Telephone:    (415) 344-7000
7   Facsimile:    (415) 344-7050

8   Attorneys for Plaintiff and Counterclaim-Defendant
    INTERNET ARCHIVE

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13  INTERNET ARCHIVE,                        CASE NO.:  C 06 0397 JSW
    a California 501(c)(3) non-profit organization,
14                                           **INTERNET ARCHIVE'S NOTICE OF**
                                             **MOTION AND MOTION AND**
15              Plaintiff,                    **MEMORANDUM OF LAW IN**
                                             **SUPPORT MOTION TO DISMISS**
16          v.                               **COUNTERCLAIMS**

17  SUZANNE SHELL,                           Date:      May 5, 2006
    a Colorado resident,                     Time:      9:00 a.m.
18                                           Before:    Hon. Jeffrey S. White
                Defendant.                   Location:  Courtroom 2, 17th Floor
19

20  ─────────────────────────────
    AND RELATED COUNTERCLAIMS
21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

Introduction ....................................................................................................... 1

Statement of Facts ............................................................................................. 2

   I.     PLAINTIFF AND COUNTERCLAIM-DEFENDANT INTERNET
         ARCHIVE ................................................................................ 2

   II.    DEFENDANT AND COUNTERCLAIM-PLAINTIFF SUZANNE
         SHELL ..................................................................................... 3

   III.   BACKGROUND OF THE DISPUTE ......................................... 4

Argument............................................................................................................ 5

   I.     LEGAL STANDARDS FOR MOTION TO DISMISS ............... 5

       A.    Failure to State a Claim. ............................................... 5

       B.    Failure to Provide a Short and Plain Statement............... 6

   I.     THE COUNTERCLAIMS ASSERTED BY SHELL FOR CIVIL THEFT
         / CONVERSION, BREACH OF CONTRACT, AND RACKETEERING
         MUST BE DISMISSED................................................ 6

       A.    Legal Standards for Copyright Act Preemption. ................. 6

       B.    Shell Has Not Properly Stated a Claim for Civil Theft /
           Conversion, and Such Claim, if Properly Stated, Would Be
           Preempted by the Copyright Act. ..................................... 8

           1.   Shell Has Failed to State a Claim for Conversion.................... 8

           2.   Even if Properly Stated, Shell's Conversion Claim Is
               Preempted........................................................... 8

           3.   Shell's Civil Theft Claim Is Not Properly Pled and Is
               Preempted. ......................................................... 10

       C.    Shell's Claim for Breach of Contract is Also Preempted by the
           Copyright Act. ...................................................... 10

       D.    Shell's Claim for Racketeering Must Be Dismissed. .......................... 12

           1.   Shell Has Failed to Properly Allege the Existence of a
               Racketeering Enterprise. ..................................... 13

            2.   Shell's RICO Claim Must Be Dismissed Because the
               Claims Are Not Alleged with Sufficient Particularity. ........... 13

           3.   Shell's RICO Claim Must also Be Dismissed Because It
               Does Not Contain a Short and Plain or Clear and Concise
               Statement. .......................................................... 14

Conclusion..................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3
4      *Associated Gen. Contractors of Calif., Inc. v. Calif. State Counsel of Carpenters,*
       459 U.S. 519 (1983) ............................................................................................ 6

5      *Binder v. Aetna Life Ins. Co.,* 75 Cal. App. 4th 832 (1999) ................................. 12

6      *Burlesci v. Peterson,* 68 Cal.App.4th 1062 (1998) ............................................... 8

7      *Chang v. Chen,* 80 F.3d 1293 (9th Cir. 1996) ................................................. 1, 14

8      *Conley v. Gibson,* 355 U.S. 41 (1957) ................................................................. 6

9      *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973 (9th Cir. 1987) ........... 1, 7

10     *Dielsi v. Falk,* 916 F.Supp. 985 (C.D. Cal. 1996) ................................................ 9

11     *Firoozye v. Earthlink Network,* 153 F. Supp. 2d 1115 (N.D. Cal. 2001) ................. 1, 9, 11, 12

12
       *Hassel v. Simmons,* No. C 03-0813 MMC, 2003 WL 22416698 at *1 (N.D. Cal.
13     Oct. 20, 2003) ...................................................................................................... 6

14     *Howard v. America Online, Inc.,* 208 F.3d 741 (9th Cir. 2000) ........................... 14

15     *Ileto v. Glock Inc.,* 349 F.3d 1191 (9th Cir. 2003) ............................................... 6

16     *In re Glenfed Inc., Sec. Litig.,* 42 F.3d 1541 (9th Cir. 1994) ............................... 15

17     *Itin v. Ungar,* 17 P.3d 129 (Colo. 2000) ............................................................... 9

18     *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649 (S.D.N.Y. 1996) ........... 13

19
20     *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209 (9th Cir. 1998) ......................... 1, 7, 8

21     *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397 (9th
       Cir. 1991) ..................................................................................................... 1, 14, 15

22     *Leatherman v. Tarrant County,* 507 U.S. 163 (1993) ......................................... 2, 16

23     *Lewis v. Sporck,* 612 F.Supp. 13165 (N.D. Cal. 1985) ......................................... 15

24
       *Manhattan Telecomms. Corp., Inc. v. Dialamerica Mktg., Inc.,* 156 F.Supp. 2d
25     376 (S.D.N.Y. 2001) ............................................................................................. 13

26     *McHenry v. Renne,* 84 F.3d 1172 (9th Cir. 1996) ................................................. 7

27     *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531 (9th Cir. 1989) ........... 1, 15

28

*Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984) ............................................................ 10

*Oscar v. Univ. Students Co-op. Ass'n.*, 965 F.2d 783 (9th Cir. 1992) *(en banc)* ................... 13

*Parker v. Google, Inc.*, No. 2:04-CV-03918, WL 680916 (E.D. Pa. March 10, 2006) at *7 ............................................................................................. 16

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) ....................... 6

*Ruiz v. Alegria*, 896 F.3d 645 (1st Cir. 1990) ....................................................... 13

*Shwarz v. U.S.*, 234 F.3d 428 (9th Cir. 2000) ...................................................... 6

*Sprewell v. Golden State Warriors*, 231 F.3d 520 (9th Cir. 2000) ........................... 6, 9

*Stewart v. Wachowski*, 2004 WL 2980783 (C.D. Cal. 2004) .............................. 2, 15

*United Centrifugal Pumps v. Schotz*, No. C-89-2291 FMS, 1991 U.S. Dist. LEXIS 21100 at *8 (N.D. Cal. June 12, 1991) ........................................................... 15

*United States v. Turkette*, 452 U.S. 576 (1981) .................................................. 13

*Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816 (C.D. Cal. 1997) ................. 7, 8, 9

**Statutes**

17 U.S.C. § 102 ............................................................................................ 6

17 U.S.C. § 106 ........................................................................................ 5, 8

17 U.S.C. § 301 ........................................................................................ 1, 5

18 U.S.C. § 1964 .......................................................................................... 11

Colorado Revised Statute § 18-4-401 ............................................................. 9

Colorado Revised Statute § 18-2-202 ............................................................. 9

Colorado Revised Statute § 18-2-203 ............................................................. 9

Colorado Revised Statute § 18-4-301 ............................................................. 9

Colorado Revised Statute § 18-4-405 ............................................................. 9

Colorado Revised Statutes § 18-4-405 ........................................................... 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 4

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

Federal Rules of Civil Procedure 8 ................................................................ 1, 5, 14

Federal Rules of Civil Procedure 9 ................................................................ 1, 13

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

## NOTICE OF MOTION AND MOTION

TO DEFENDANT AND COUNTERCLAIM-PLAINTIFF:

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 8(a)(2) and (e) and 12(b)(6) and 17 U.S.C. § 301(a) of the United States Copyright Act, plaintiff and counterclaim-defendant Internet Archive ("Internet Archive" or "the Archive") moves to dismiss with prejudice defendant and counterclaim-plaintiff Suzanne Shell's ("Shell") counterclaims for (1) Civil Theft / Conversion; (2) Breach of Contract; and (3) Racketeering ("Counterclaims"). Internet Archive's motion shall be heard on May 5, 2006, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Judge Jeffrey S. White in Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California.

This motion is made on the grounds that the Counterclaims fail to use a short and plain statement showing that the pleader is entitled to relief; are not simple, concise, and direct; fail to state a claim upon which relief may be granted; and/or are preempted by the Copyright Act. Further, the Counterclaims cannot be amended to state a claim.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities set forth below, the [Proposed] Order Granting Internet Archive's Motion to Dismiss, the materials on file in this action, and any argument submitted at the hearing on this motion.

## SUMMARY OF ARGUMENT
## PURSUANT TO STANDING ORDER

Internet Archive moves to dismiss Shell's counterclaims for conversion and breach of contract because they are preempted by the Copyright Act. *See* 17 U.S.C. § 301(a). The Ninth Circuit applies a straightforward two-part test to determine whether a state law claim is preempted under Section 301. Specifically, preemption occurs when (1) the work is within the scope of the subject matter of the copyright; and (2) the rights granted under state law are equivalent to those protected by the copyright laws. *See Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987); *see also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998); *see also Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001). Here, Shell's conversion and breach of contract claims are preempted because the alleged actions complained of by Shell are precisely the same as the alleged copyright infringement – i.e., Internet Archive's alleged copying of Shell's profane-justice.org Web site. Copying of such material is governed by Section 106 of the Copyright Act, and the rights Shell seeks to enforce in her conversion and breach of contract claims are equivalent to the rights she seeks to enforce through her Copyright Act claim.

Internet Archive also moves to dismiss Shell's counterclaim for RICO / Racketeering on the grounds that Shell has failed to properly allege the existence of a racketeering enterprise. *See Chang v. Chen*, 80 F.3d 1293, 1295 (9th Cir. 1996). Further, Shell's RICO claim must be dismissed because she has not alleged the claim with sufficient particularity, as is required by Fed. R. Civ. Pro. 9(b). *See, e.g., Lancaster Cmty Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir. 1991); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *see also Stewart v. Wachowski*, 2004 WL 2980783 (C.D. Cal. 2004). Finally, Shell's RICO claim must also be dismissed because it does not contain a short and plain or clear and concise statement of the claim as required by Fed. R. Civ. Pro. 8(a). *See Leatherman v. Tarrant County*, 507 U.S. 163, 168 (1993). Accordingly, based on her failure to properly plead her RICO claim, it must be dismissed.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### Introduction

3     After threatening plaintiff and counterclaim-defendant Internet Archive with a baseless

4     lawsuit based on its mission of caching a historical record of the Internet into an accessible public

5     library (a practice that has recently been held lawful by at least two courts), defendant and

6     counterclaim-plaintiff Suzanne Shell has now attempted to turn up the heat on this non-profit

7     organization with a series of rambling counterclaims.  However, with the exception of her

8     copyright infringement claim (which is substantively without merit but probably properly

9     alleged), Shell's counterclaims failed to state a claim on which relief can be granted.

10     In particular, Shell has brought claims for conversion and civil theft based on the

11     allegation that "Internet Archive ... entered the computer... wherein successive versions of

12     [Shell's] copyrighted website profane-justice.org were situated ... and ... copied her entire web

13     site."  First Amended Answer and Objection to Venue and Counterclaim ("Counterclaim"), ¶ 76.

14     Shell has not alleged and cannot allege that Internet Archive took tangible property or interfered

15     with her possession of property, as required by the elements of these claims.  Moreover, this claim

16     seeks redress for the reproduction of purportedly copyrighted materials, and is therefore

17     preempted by the federal Copyright Act.

18     Shell's breach of contract claim is even more flawed.  Specifically, Shell contends that

19     Internet Archive's automated "crawler" entered into a written contract entitled Copyright

20     Notice/Security Agreement, which provided that Internet Archive could not copy or otherwise use

21     pages from Shell's Web site "without the prior, express written consent and acknowledgment of

22     the Copyright owner's signature in red ink," and further stated that absent such express written

23     consent (which Shell admittedly did not provide to Internet Archive), any such use "constitutes

24     unauthorized use, counterfeiting, and infringement of the copyrighted material." Counterclaim, ¶

25     49 and at Exhibit A.  Setting aside the enforceability of this "agreement" (or lack thereof), it is

26     apparent from the papers submitted by Shell that this breach of contract is nothing more than a

27     thinly disguised copyright infringement claim in which the copyright owner is seeking remedies

28

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

far beyond what the Copyright Act allows.  Accordingly, this claim should also be dismissed as preempted.

Finally, Shell has asserted a RICO claim accusing Internet Archive (as well as certain of its directors, who have not formally been named as parties) of engaging in racketeering by collecting and providing public access to a historical library of the Internet.  However, while Shell has devoted eleven rambling pages to this claim, she has failed to properly allege the existence of a racketeering enterprise, and has further failed to articulate the unlawful conduct with sufficient particularity.

Accordingly, Internet Archive respectfully requests that Shell's Second, Third and Fourth Counterclaims be dismissed with prejudice.

## Statement of Facts

### I.    PLAINTIFF AND COUNTERCLAIM-DEFENDANT INTERNET ARCHIVE

Internet Archive is a non-profit organization that was founded in 1996 to build an Internet library (www.archive.org), with the purpose of providing permanent access for researchers, historians, and scholars to the digital world.  *See* Complaint for Declaratory Relief of Copyright Non-Infringement ("Complaint"), ¶ 1.  Internet Archive's Wayback Machine provides public access to archived Web site content, and it can be used to access over 55 billion Web pages archived as early as 1996.  Collaborating with institutions such as the Library of Congress and the Smithsonian, Internet Archive is working to preserve a record of modern society's history and culture for generations to come.  *See* Complaint, ¶ 7.

Open and free access to literature and other written materials has long been considered essential to the education and maintenance of an open society.  Public and philanthropic enterprises have supported such access through the ages.  To that end, the Internet Archive is working to prevent the Internet – a modern medium with major historical significance – and other 'born-digital' materials from disappearing into the past.  *See* Complaint, ¶ 6.

As Stewart Brand, President of the Long Now Foundation noted: "The Internet Archive is a service so essential that its founding is bound to be looked back on with the fondness and respect that people now have for the public libraries seeded by Andrew Carnegie a century ago. .

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

1   . . Digitized information, especially on the Internet, has such rapid turnover these days that total

2   loss is the norm.  Civilization is developing severe amnesia as a result; indeed it may have

3   become too amnesiac already to notice the problem properly.  The Internet Archive is the

4   beginning of a cure – the beginning of complete, detailed, accessible, searchable memory for

5   society, and not just scholars this time, but everyone." *See* Complaint, ¶ 8.

6        In an effort to accommodate Web site authors who do not want a historical record made

7   of their sites, Internet Archive provides information on its Web site advising Web site owners

8   how to remove sites from the historical archives.  Internet Archive has also removed documents

9   from the Wayback Machine upon request by the Web site author or publisher. *See* Complaint, ¶

10  9.

11  **II.    DEFENDANT AND COUNTERCLAIM-PLAINTIFF SUZANNE SHELL**

12       Defendant and counterclaimant Suzanne Shell is an individual residing in Elbert,

13  Colorado.  Defendant Shell promotes herself as an advocate for, and consultant to, individuals

14  accused of child abuse or neglect.  Defendant Shell maintains an Internet Web site at

15  www.profane-justice.org, through which she markets herself, her services, and publications. *See*

16  Complaint, ¶ 2.

17       Shell is no stranger to the litigation process, as described in an article entitled "Beyond

18  Contempt," which was published at URL http://www.westword.com/issues/2005-02-

19  10/news/features.html.   According to the Westword.com article, Shell is under an injunction

20  from the State Supreme Court of Colorado for the unauthorized practice of law in connection

21  with her advocacy on behalf of individuals accused of child abuse and neglect. *See* Complaint, ¶

22  17.  Moreover, Shell seeks out copyright litigation, as she offers a "reward" in the form of a

23  percentage of any payment received, or damages awarded to, anyone reporting copyright

24  infringement of the materials posted on her www.profane-justice.org Web site. *See* Complaint, ¶

25  18; Counterclaim, ¶ 18.

26       Shell touts her Copyright Notice/Security Agreement, attached to her Counterclaim as

27  Exhibit A.  Among the terms of Shell's "Self-executing Contract/Security Agreement" are that

28  by "copying" her Web site, an act that necessarily occurs every time someone visits her Web

-3-

1  site, a "User" consents to, among other things, a "Security Agreement, wherein User is debtor

2  and Suzanne Shell is Copyright owner, and … User; (1) grants Copyright owner a security

3  interest in all the User's assets, land and personal property, and all User's interests in assets, land

4  and personal property, in the sum certain amount of $250,000.00 per each occurrence of

5  unauthorized use of the aforementioned copyrighted material or the appropriate license fess as

6  posted on copyright notice, whichever is greater, and imposes a penalty for failure to pre-pay

7  posted license fees in the sum-certain amount of $50,000.00 per each occurrence of failure to

8  pre-pay license fees, plus costs; plus triple damages." "User" also "pledges all User's assets,

9  land, consumer goods, farm products, inventory, money, gold, silver, diamonds, investment

10 property, commercial tort claims, letters of credit, letter of-credit rights, chattel paper,

11 instruments, deposit accounts, documents, and general intangibles, and all of User's interest in

12 all such foregoing property, now owned and hereafter acquired, now existing and hereafter

13 arising, and wherever located, as collateral for securing User's contractual obligation in favor of

14 Copyright owner for User's unauthorized use of Copyright owner's copyrighted property."

15 "User" also consents "not [to] claim that any [of the filings required] is bogus, frivolous or

16 vexatious;" "User" "waives all defenses" and "[a]ppoints Copyright owner as Authorized

17 Representative for User … granting Copyright owner full authority and power for engaging in

18 any and all actions on behalf of User including, …. directing the disposition of … funds in said

19 deposit account by acting as signatory on said account without further consent of User." Shell's

20 "Self-executing Contract" also claims that "User" agrees that "all 'Fair Use' exceptions or

21 affirmative defenses shall not apply," and "authorizes Copyright owner's immediate non-judicial

22 strict foreclosure on any and all remaining property and interest in property."

23 **III.   BACKGROUND OF THE DISPUTE**

24        On December 12, 2005, Internet Archive's Copyright Agent received an email from Shell

25 asserting that she owned a registered copyright in the Web site www.profane-justice.org and

26 complaining about Internet Archive's inclusion of Web pages from the www.profane-justice.org

27 Web site in its historical archive.  Complaint, ¶ 11; *see also* Counterclaim, ¶ 11.  In that email,

28 Shell threatened to sue Internet Archive for copyright infringement and to seek actual and/or

-4-

1  statutory damages from Internet Archive, including any additional liability created by third parties

2  who accessed the www.profane-justice.org Web site through the Wayback Machine. Complaint, ¶

3  12; *see* Counterclaim, ¶ 12.

4        In response to the December 12, 2005 email, Internet Archive immediately removed the

5  Web site from the Wayback Machine. As a result, the www.profane-justice.org Web site is no

6  longer available through the Wayback Machine. Complaint, ¶ 13; *see* Counterclaim, ¶¶ 13, 59.

7  Not satisfied with Internet Archive's reasonable response of removing the www.profane-

8  justice.org Web site from the Wayback Machine, Shell repeatedly reiterated her threat to sue if

9  Internet Archive remained unwilling to offer her a monetary settlement. Specifically, Shell

10  advised Internet Archive that she will file suit unless the Internet Archive pays her the sum of

11  $100,000.00. Complaint, ¶ 14.

12        Prior to filing this action, Internet Archive contacted Shell in an effort to determine

13  whether there was something short of monetary compensation that would satisfy her concerns.

14  Shell responded that unless Internet Archive will pay her, she intends to file suit. Complaint, ¶ 15.

15  Now, by her Counterclaims, Shell seeks "damages" in excess of tens of millions of dollars from

16  the non-profit Archive. *See* Counterclaim, pp. 38-41.

17        As a result of Shell's statements, demands, threats of litigation, and litigious reputation,

18  Internet Archive filed the present suit for a declaratory relief of copyright non-infringement on

19  January 20, 2006. Shell filed her original answer and her original counterclaims on March 10,

20  2006, and she filed her amended answer and amended counterclaims on March 13, 2006. A Case

21  Management Conference is scheduled before The Honorable Jeffrey S. White on April 28, 2006.

22                          **<u>Argument</u>**

23  **I.    LEGAL STANDARDS FOR MOTION TO DISMISS**

24        **A.    Failure to State a Claim.**

25        Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

26  for failure to state a claim upon which relief can be granted without leave to amend if it appears

27  that the plaintiff can plead no set of facts in support of its claim that would entitle it to relief. *See*

28  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A claim can be dismissed either because it asserts a

- 5 -

1   legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to

2   support a cognizable legal claim.  Fed. R. Civ. P. 12(b)(6); *see Robertson v. Dean Witter*

3   *Reynolds, Inc.*, 749 F.2d 530, 533-534 (9th Cir. 1984).

4          In evaluating a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, all well-

5   pleaded factual allegations in the complaint are accepted as true and viewed in the light most

6   favorable to the nonmoving party.  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003);

7   *see also Shwarz v. U.S.*, 234 F.3d 428 (9th Cir. 2000).  However, it is not proper for the court "to

8   assume that [the plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of*

9   *Calif., Inc. v. Calif. State Counsel of Carpenters*, 459 U.S. 519, 526 (1983).  And the Court is not

10  "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact,

11  or unreasonable inferences." *Sprewell v. Golden State Warriors*, 231 F.3d 520, 527-28 (9th Cir.

12  2000).

13         **B.     Failure to Provide a Short and Plain Statement.**

14         Under Federal Rule of Civil Procedure 8(a)(2), a claim for relief must be stated "using a

15  short and plain statement of the claim showing that the pleader is entitled to relief."  Further,

16  Federal Rule of Civil Procedure 8(e)(1) requires averments in a pleading to be "simple, concise,

17  and direct."  A complaint is properly dismissed under Rule 8 when the allegations are "convoluted

18  and difficult to read." *Hassel v. Simmons*, No. C 03-0813 MMC, 2003 WL 22416698 at *1 (N.D.

19  Cal. Oct. 20, 2003).  "Prolix, confusing complaints … impose unfair burdens on litigants and

20  judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  A complaint that lacks

21  "simplicity, conciseness and clarity as to whom [the plaintiff is] suing for what wrong, fails to

22  perform the essential functions of a complaint.'" *Id.* at 1180.

23  **I.     THE COUNTERCLAIMS ASSERTED BY SHELL FOR CIVIL THEFT /
        CONVERSION, BREACH OF CONTRACT, AND RACKETEERING MUST BE**
24      **DISMISSED.**

25      **A.     Legal Standards for Copyright Act Preemption.**

26         A state law cause of action is preempted by the Copyright Act if two elements are

27  present. *See Kodadek*, 152 F.3d at 1212.  First, the rights that a plaintiff asserts under state law

28

1    must be "rights that are equivalent" to those protected by the Copyright Act. *Id.* Second, the

2    work involved must fall within the "subject matter" of the Copyright Act. *Id.*

3          The Copyright Act grants rights "to reproduce the copyrighted work in copies," "to

4    prepare derivative works based upon the copyrighted work," to distribute copies … to the

5    public," and "to display the copyrighted work publicly." 17 U.S.C. § 106. The Copyright Act

6    preempts state law claims that raise issues within copyright law protections as set forth in 17

7    U.S.C. § 301(a):

8          [A]ll legal or equitable rights that are equivalent to any of the exclusive rights
           within the general scope of copyright as specified by section 106 in works of
9          authorship that are fixed in a tangible medium of expression and come within
           the subject matter of copyright … are governed exclusively by this title.
10
           The Ninth Circuit applies a straightforward two-part test to determine whether a state law
11
     claim is preempted under Section 301. Preemption occurs when (1) the work is within the scope of
12
     the subject matter of copyright; and (2) the rights granted under state law are equivalent to those
13
     protected by the copyright laws. *Worth*, 5 F.Supp.2d at 821 (C.D. Cal. 1997); *see also Del Madera*
14
     *Props.*, 820 F.2d 973, 977 (9th Cir. 1987).
15
           As Shell sets forth in her Counterclaims, her allegedly infringed Web site comes within the
16
     subject matter of copyright protection. Specifically, the Counterclaim states that "[t]he intellectual
17
     property known as profane-justice.org is registered with the United States copyright office."
18
     Counterclaim, ¶ 44. Shell goes on to state that "[i]t is undisputed that the literary content of all
19
     versions of profane-justices.org is the creation of original works by Shell and is fixed in a tangible
20
     medium of expression and are works that contains (sic) substantial amount (sic) of material created
21
     by Shell's own skill, labor and judgment and that subject matter of the work is copyrightable under
22
     law of United States." Counterclaim, ¶ 45. The Copyright Act clearly covers "original works of
23
     authorship" within the "[s]ubject matter of copyright." 17 U.S.C. § 102(a); *see also Kodadek*, 152
24
     F.3d at 1212 (finding the first prong of the preemption test satisfied where the work in question is
25
     listed in § 102 of the Copyright Act).
26
           The second prong of the preemption analysis looks to whether there is any qualitative
27
     difference between what a plaintiff is seeking to redress by its state law claims versus what it is
28

---

- 7 -

1    seeking to redress by its copyright claims. *Worth*, 5 F. Supp. 2d at 821 (C.D. Cal. 1997). In

2    making this determination, the court looks to whether the state law claim being asserted has any

3    "extra element" that changes the nature of the plaintiff's action. *Id.*

4          **B.**    **Shell Has Not Properly Stated a Claim for Civil Theft / Conversion,**
         **and Such Claim, if Properly Stated, Would Be Preempted by the**

5                    **Copyright Act.**

6               **1.**    **Shell Has Failed to State a Claim for Conversion.**

7          The elements of conversion in California are: (1) the plaintiff's ownership or right to

8    possession of a certain piece of property; (2) the defendant's conversion of the property by a

9    wrongful act or disposition of property rights; and (3) damages. *See Burlesci v. Peterson*, 68

10   Cal.App.4th 1062, 1064 (1998).[1] Further, an action for conversion properly lies only where there is

11   some *actual interference* with possession or the right to possession. *Zaslow v. Kroenert*, 29 C.2d

12   541, 551 (1946). Here, there has been no actual interference because Shell has not been deprived

13   of her property. She could make use of her profane-justice.org website before and after the alleged

14   interference. Indeed, she could not have been deprived of possession of the profane-justice.org

15   Web site by the crawling and alleged copying because she admits in her counterclaims that she did

16   not even discover the alleged interference until Dec 12, 2005. *See* Counterclaim, ¶ 77.

17              **2.**    **Even if Properly Stated, Shell's Conversion Claim Is Preempted.**

18         Even if Shell had properly stated a claim for conversion, however, her claim would be

19   preempted by the Copyright Act. Shell conclusorily alleges that the rights she seeks to redress are

20   qualitatively different and thus not preempted by the Copyright Act. Counterclaim, ¶ 73.

21   However, such conclusory allegations are not sufficient to meet Shell's pleading burden. *See*

22   *Sprewell*, 231 F.231 at 527-28 (9th Cir. 2000) (holding that the Court is not "required to accept as

23

24

_____

25       [1] Internet Archive believes that California state law governs here since the action and
     counterclaims were brought in California. To the extent Shell alleges that Colorado law should

26   apply, the result is the same. Under Colorado law, a plaintiff must establish the following
     elements to sustain a cause of action for conversion: (1) the defendant knowingly (a) exercised

27   control over (b) anything of value (c) which was the property of the plaintiff, (2) without
     authorization, (3) with intent to permanently deprive the plaintiff of the use or benefit of the

28   thing of value. *Itin v. Ungar*, 17 P.3d 129, 131 (Colo. 2000).

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

1   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

2   inferences.")

3   Further, Shell's allegations are specifically contradicted by the relevant case law. Indeed, as

4   this Court noted in *Firoozye v. Earthlink Network*, "while a claim for conversion typically involves

5   tangible property and thus may be immune from preemption, where a plaintiff is only seeking

6   damages from a defendant's reproduction of a work – and not the actual return of the physical piece

7   of property – the claim is preempted." *See Firoozye*, 153 F. Supp. 2d at 1130, citing *Worth v.*

8   *Universal Pictures, Inc.*, 5 F.Supp.2d 816, 821 (C.D. Cal. 1997) (finding that a conversion claim

9   was preempted where plaintiff did not allege that the defendant had failed to return actual physical

10  works), and *Dielsi v. Falk*, 916 F.Supp. 985, 992 (C.D. Cal. 1996) (holding that a claim for

11  conversion of intangible property arising from the reproduction of the property 'is clearly

12  equivalent to a copyright claim.'); *see also Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984)

13  ("Conversion of tangible property involves actions different from those proscribed by the copyright

14  laws, and thus is not preempted").

15  Here, Shell's conversion claim does not allege that Internet Archive took possession of

16  tangible property, and Shell does not seek the return of any tangible property. Rather, Shell's

17  conversion claim is based on alleged copyright infringement. Indeed, the substance of the

18  conversion allegations demonstrates that the exact same conduct is at issue in both the copyright

19  and conversion allegations. Specifically, Shell claims that "Internet Archive ... entered the

20  computer... wherein successive versions of [Shell's] copyrighted website profane-justice.org were

21  situated ... and ... copied her entire web site." Counterclaim, ¶ 76. It is this alleged conduct, and

22  this conduct alone, that forms the basis for all of Shell's causes of action and requests for relief.

23  Shell's state law conversion claim is thus qualitatively indistinguishable from the protection

24  of Shell's copyright interests because compensating Shell for the harm caused by the alleged use

25  and sale of Shell's "research" falls within the exclusive rights granted by the Copyright Act. *See* 17

26  U.S.C. § 106 (reproduction of the copyrighted work are among the exclusive rights granted by the

27  Copyright Act). Accordingly, the rights Shell seeks to enforce through her conversion claim are

28

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

1   equivalent to her copyright claim, and the claim must be dismissed as a matter of law because it is

2   preempted.

3          **3.      Shell's Civil Theft Claim Is Not Properly Pled and Is Preempted.**

4          Finally, Shell attempts to re-style her conversion claim as "civil theft" solely to reap the

5   benefit of her misread of a Colorado statute that provides triple damages. *See* Colorado Revised

6   Statutes § 18-4-405. Shell's allegation is misplaced, however, as it is evident that an owner of stolen

7   property may receive the award of treble damages from the perpetrator of the crime only upon

8   proving that the defendant obtained the property through theft, robbery, or burglary. *See* Colo. Rev.

9   Stat. § 18-4-405. Those three crimes are specifically defined in the Colorado Criminal Code, and

10  Shell has not alleged, and Internet Archive could not have committed, anything that resembles

11  burglary or robbery, which require "unlawful presence inside a building or other occupied structure

12  for the purpose of committing a crime" and "unlawful taking by means of threats, force or

13  intimidation," respectively. *See* Colo. Rev. Stat. §§ 18-2-202, 18-2-203, and 18-4-301.

14         Further, Shell has not properly stated a claim for theft because she has not alleged that

15  Internet Archive: "intends to deprive [Shell] permanently of the use or benefit of the thing of

16  value," "knowingly uses, conceals, or abandons the thing of value in such manner as to deprive

17  [Shell] permanently of its use or benefit," or "uses, conceals, or abandons the thing of value

18  intending that such use, concealment, or abandonment will deprive [Shell] permanently of its use

19  and benefit." *See* Colo. Rev. Stat. § 18-4-401. Simply put, Shell has not been deprived of the use

20  of profane-justice.org. Accordingly, Shell has not properly pled a claim for civil theft and cannot

21  maintain a claim for treble damages under Colorado Revised Statute § 18-4-405.

22         Finally, even if Shell had properly pled her civil theft claim, it would be preempted for the

23  same reasons that her conversion claim is, i.e., because the rights she seeks to enforce by her civil

24  theft claim are equivalent to her claim under the Copyright Act.

25         **C.      Shell's Claim for Breach of Contract is Also Preempted by the
26                   Copyright Act.**

27         Similarly, Shell's breach of contract claim as set forth in her counterclaims is preempted by

28  the Copyright Act. In *Firoozye v. Earthlink Network*, 153 F. Supp. 2d at 1126, this Court analyzed

- 10 -

1   to what extent breach of contract actions may be preempted by the Copyright Act and held that a

2   breach of contract claim may not be preempted if the plaintiff claims that the defendant promised to

3   pay for the allegedly copied work but did not. *Firoozye*, 153 F.Supp.2d at 1127. Further, the Court

4   noted that "there is a crucial difference between a claim based on quasi-contract, i.e., a contract

5   implied in law, and a claim based upon a contract implied in fact." *Id.* (citations omitted). The

6   "crucial difference is the additional element of the defendants' promise to pay the plaintiff for the

7   software. A promise to pay for a work constitutes an extra element such that a breach of contract

8   claim is not preempted by section 301. 'It is not the use of the work alone but the failure to pay for

9   it that violates the contract and gives rise to the right to recover damages.'" *Id.* (citations omitted).

10  Put another way, a state law creating a cause of action for the breach of an implied-in-fact contract

11  is not abridged by an act that would, in and of itself, infringe one of the exclusive rights granted by

12  the Copyright Act because the right to be paid for the use of the work is not granted by the

13  Copyright Act. *See id.*

14          Here, Shell has not alleged, and cannot allege, that Internet Archive ever made a promise to

15  pay a certain amount for the alleged copying of the profane-justice.org website. As an initial

16  matter, it is unclear how a robot that automatically crawls websites (i.e., not a human being) can

17  ever "accept" an offer and thus form a contract based on mutual assent to certain terms. *See Binder*

18  *v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 848 (1999) (mutual manifestation of assent, whether

19  by written or spoken word or by conduct, is the touchstone of contract). Further, unlike in

20  *Firoozye*, where the parties were considering a specific license agreement, one cannot magically

21  transform a Copyright Notice (as the document to which Shell refers is in fact titled) into an

22  agreement that binds another party into paying extortionist fees simply by saying "if you copy or

23  distribute anything on this site – you are entering into a contract."[2] *See* Counterclaim, ¶ 49 and at

24  Exhibit A at 1. In addition, the Copyright Notice states that a contract is formed by prepayment of

25  the posted license fees – one must pay fees before copying, and once one copies, one has entered

26

27

28          [2] Similarly, it is unclear how a contract can be formed when the act that allegedly manifests assent is the same as the act of breach – i.e., copying.

1    into an agreement. *See id.* Since those fees were never paid, no contract was formed, and thus it

2    cannot be breached.

3        Since a Copyright Notice cannot magically transform into a binding agreement without

4    mutual assent, the violation of the purported agreement is simply an alleged infringement of her

5    copyright, as set forth in her Copyright Notice. Because protection against "copying" is the exact

6    same right that she would be granted under Section 106 of the Copyright Act (i.e., the right to

7    protect her work from unlawful copying or reproduction), Shell's breach of contract claim is

8    preempted by the Copyright Act and must be dismissed as a matter of law.

9        **D.    Shell's Claim for Racketeering Must Be Dismissed.**

10       To be held liable in a civil matter under 18 U.S.C. § 1964, the defendant must participate

11   in the affairs of an enterprise through a pattern of racketeering activity. To establish an

12   enterprise under RICO, Shell must show (1) that an enterprise exists that is separate and apart

13   from the pattern of activity in which it engages; (2) that members of a group share a common

14   purpose of engaging in a course of conduct; (3) that there is evidence of an ongoing organization;

15   and (4) that the various members of the group function as a continuing unit. *United States v.*

16   *Turkette*, 452 U.S. 576, 583 (1981).

17       However, the assertion of RICO claims requires close scrutiny because the Court "must be

18   mindful of devastating effect" the RICO allegations may have on the defendant companies (here, a

19   non-profit library). *Manhattan Telecomms. Corp., Inc. v. Dialamerica Mktg., Inc.,* 156 F.Supp. 2d

20   376, 380 (S.D.N.Y. 2001). Because of its stigmatizing effect and the availability of treble damages,

21   "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device."

22   *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (dismissing RICO

23   claim for lack of particularity)(quotation omitted), *aff'd,* 113 F.3d 1229 (2d Cir. N.Y. 1997).

24   Courts, therefore, "should strive to flush out frivolous RICO allegations at an early stage of the

25   litigation." *Ruiz v. Alegria,* 896 F.3d 645, 650 (1st Cir. 1990)(affirming dismissal of RICO claims

26   for "vague references" to mail and wire fraud). "RICO was intended to combat organized crime,

27   not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ.*

28   *Students Co-op. Ass'n.,* 965 F.2d 783, 786 (9th Cir. 1992) *(en banc).*

- 12 -

### 1.   Shell Has Failed to Properly Allege the Existence of a Racketeering Enterprise.

As is clear from Shell's pleadings, she has not alleged and cannot allege a claim that would satisfy either the pleading requirements or the statutory purpose of the RICO statute.  The Ninth Circuit has held that to state a claim for RICO violations, a plaintiff must plead and prove that the enterprise has "an ascertainable structure separate and apart from the structure inherent in the conduct of the pattern of racketeering."  *Chang*, 80 F.3d at 1295

. That includes a showing that the RICO enterprise "at a minimum ... must exhibit 'some sort of structure ... for the making of decisions, whether it be hierarchical or consensual.'  The structure should provide 'some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis.'"  *Id.* at 1299.

While Shell has generally alleged at Paragraph 96 of her Counterclaim an enterprise "including but not necessarily limited to" Internet Archive and its directors, agents, and employees, Alexa Internet, the Library of Congress, and the Smithsonian Institute, she offers none of the specific allegations required by the Ninth Circuit in *Chang* and its progeny.  This deficiency constitutes a separate and independent basis for dismissing Shell's RICO claim.[3]

### 2.   Shell's RICO Claim Must Be Dismissed Because the Claims Are Not Alleged with Sufficient Particularity.

Stringent scrutiny of Shell's counterclaim for RICO violations is further compelled by Federal Rule of Civil Procedure 9(b), which requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.  Fed. R. Civ. P. 9(b).  The Ninth Circuit has repeatedly insisted that this rule be followed for RICO actions, such as this one, which allege the predicate act of mail or wire fraud.  *See, e.g., Lancaster Cmty. Hosp.*, 940 F.2d at 397 (9th Cir. 1991) (affirming dismissal of RICO claim where Court found defendant "has failed to specify the facts relating to the alleged use of

---

[3] Moreover, Shell's Section 1962(d) claim is based entirely on a purported conspiracy to violate Sections 1962(c).  Because the underlying claim has been shown to be legally defective, the Section 1962(d) claim must fail as well.  "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."  *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

1   the mails"); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)

2   (affirming dismissal for failure to specify the time, place, and content of the alleged mail fraud);

3   *see also Stewart v. Wachowski*, 2004 WL 2980783 at *4 (C.D. Cal. 2004) (noting that RICO

4   claims based on willful copyright infringement must also meet the requirements of Fed. R. Civ.

5   P. 9(b)).  The Rule also applies to allegations of conspiracy to commit RICO violations.  *See*

6   *United Centrifugal Pumps v. Schotz*, No. C-89-2291 FMS, 1991 U.S. Dist. LEXIS 21100 at *8

7   (N.D. Cal. June 12, 1991); *Lewis v. Sporck*, 612 F.Supp. 1316, 1325 (N.D. Cal. 1985).

8        Shell is also required under Rule 9(b) to plead with particularly the *nature* of the fraud.

9   Specifically, "[t]o allege fraud with particularity, a plaintiff must set forth more than the neutral

10   facts necessary to identify the transaction.  The plaintiff must set forth what is false or

11   misleading about a statement, and why it is false." *In re Glenfed Inc., Sec. Litig.*, 42 F.3d 1541,

12   1548 (9th Cir. 1994).  Thus, "a plaintiff must set forth, as part of the circumstances constituting

13   fraud, an explanation as to why the disputed statement was untrue or misleading when made."

14   *Id.* at 1549 (emphasis in original).  Here, Shell's amorphous allegations provide no information

15   whatsoever regarding the time, place, or manner of the alleged fraud, let alone the role of

16   defendants[4] in the purportedly fraudulent and/or unlawful scheme.  This failure is sufficient in

17   and of itself to warrant dismissal of Shell's RICO claim.

18        **3.**    **Shell's RICO Claim Must also Be Dismissed Because It Does**

19                 **Not Contain a Short and Plain or Clear and Concise Statement.**

20        In deciding a motion to dismiss, federal courts are bound by the pleading requirements of

21   Federal Rule of Civil Procedure 8(a).  Fed. R. Civ. Proc. 8(a)(2) (requiring "a short and plain

22

23        [4] Shell mentions Internet Archive board members, Brewster Kahle, Kathleen Burch, and

24   Rick Prelinger in her counterclaim, but fails to properly assert claims against them.  Even if Shell were to have properly added such individual defendants as a matter of procedure (which she did

25   not), her purported claim that they have committed in RICO violations would need to be dismissed.  Specifically, Shell fails to attribute specific conduct to any individual defendants, as

26   is required when pleading fraud. *See Moore*, 885 F.2d at 541 (failure to "attribute specific conduct to individual defendants" fatal to RICO claim); *see also Lancaster*, 940 F.2d at 405

27   ("[Rule 9(b)] requires a pleader of fraud to detail...the role of each defendant in each scheme.") (emphasis added).  Shell's allegations against Internet Archive and its partners and affiliates

28   generally fall far short of meeting this burden.

MOTION TO DISMISS
Case No. C 06 0397 (JSW)

Case No. 1:06-cv-01726-LTB-CBS   Document 1-13   filed 08/31/06   USDC Colorado   pg 23 of 23

1  statement of the claim showing that the pleader is entitled to relief.")  All that is necessary,

2  therefore, is a succinct summary sufficient to give defendants fair notice of the nature of the

3  claims.  *Leatherman,* 507 U.S. at 168 (1993) (noting that the Federal Rules of Civil Procedure

4  impose a particularity requirement in only two specific instances, fraud and mistake).  Here,

5  Shell's Complaint alleges at the same time too much and too little.  As noted above, Shell has

6  failed to properly allege certain elements of her RICO claim.  At the same time, she has set forth

7  eleven pages of disjointed, hard-to-follow accusations that make it impossible to ascertain the

8  essence of her claim and how it purportedly ties into the RICO statute.

9       On March 10, 2006, the U.S. District Court for the Eastern District of Pennsylvania,

10  facing a case very similar to this one filed by a *pro se* litigant against Google alleging copyright

11  infringement and RICO violations, among other things, dismissed the racketeering charges

12  because they spanned eleven pages and were "incomprehensible," "unintelligible," and did not

13  provide a "cogent or plain statement … thus fail[ing] to meet Rule 8(a)'s requirement….".

14  *Parker v. Google, Inc.*, No. 2:04-CV-03918, WL 680916 (E.D. Pa. March 10, 2006) at *7.

15  Shell's eleven pages of rambling accusations are no better.  Accordingly, Shell's failure to

16  comply with Rule 8 constitutes yet another separate and independent basis for dismissing Shell's

17  racketeering counterclaim.

### Conclusion

18       For the foregoing reasons, Shell's Counterclaims for civil theft / conversion, breach of

19  contract, and racketeering against Internet Archive should be dismissed with prejudice.

20

21                                      Respectfully submitted,

22                                      PERKINS COIE LLP

23  Date:  March 31, 2006                By: Kenneth B Wilson

24                                     Kenneth B. Wilson
                                   Attorneys for Plaintiff and Counterclaim-Defendant

25                                     INTERNET ARCHIVE

26

27

28

MOTION TO DISMISS
Case No. C 06 0397 (JSW)