KENNETH B. WILSON, State Bar No. 130009
  kwilson@perkinscoie.com
STEFANI E. SHANBERG, State Bar No. 206717
  sshanberg@perkinscoie.com
SARAH E. PIEPMEIER, State Bar No. 227094
  spiepmeier@perkinscoie.com
LILA I. BAILEY, State Bar No. 238918
  lbailey@perkinscoie.com
PERKINS COIE LLP
180 Townsend Street, Third Floor
San Francisco, California 94107-1909
Telephone:   (415) 344-7000
Facsimile:   (415) 344-7050

Attorneys for Plaintiff and Counterclaim-Defendant
INTERNET ARCHIVE

FILED
06 MAY -4 PM 3:51
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNET ARCHIVE, a California 501(c)(3) non-profit organization, <br><br> Plaintiff, <br><br> v. <br><br> SUZANNE SHELL, a Colorado resident, <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | CASE NO.: C 06 0397 JSW <br><br> **INTERNET ARCHIVE'S REPLY TO SHELL'S RESPONSE TO MOTION TO DISMISS COUNTERCLAIMS** <br><br> Date: May 19, 2006 <br> Time: 9:00 a.m. <br> Before: Hon. Jeffrey S. White <br> Location: Courtroom 2, 17th Floor |

REPLY TO RESPONSE TO MOTION TO DISMISS
Case No. C 06 0397 (JSW)

Dockets.Justia.com

### Introduction

Despite submitting almost twice as many pages as are allowed pursuant to this Court's Standing Order, Shell says little actually in opposition to Internet Archive's Motion to Dismiss her counterclaims for conversion/civil theft, breach of contract, and racketeering. Indeed, Shell rambles on for over eleven pages arguing the merits of her copyright counterclaim – a claim that Internet Archive has not moved to dismiss and has, in fact, answered. No doubt Shell puts forward a lot of words, but none actually addresses the issues raised by Internet Archive's Motion to Dismiss.

Specifically, Shell fails to show that she has pled the actual interference with tangible property necessary to state a claim for conversion. She has also failed to establish that her purported conversion claim should survive Internet Archive's Motion to Dismiss based on copyright preemption, and she does not substantively mention her civil theft claim. Similarly, Shell fails to establish that a contract exists between her and Internet Archive because she does not, and cannot, demonstrate that Internet Archive agreed to or had knowledge of the alleged terms. Further, Shell fails to show that her contract claim would not be preempted by the Copyright Act. Finally, Shell has failed to properly plead a racketeering enterprise, has not shown that her claims satisfy the Rule 9(b) requirement that she plead fraud with particularity, and has not shown that her claims comply with the Rule 8(a) requirement that she provide a short and plain statement of her allegations.

Shell asks to be excused because she is *pro se* and shamelessly asserts that the Court must "construe the pleadings and papers of a *pro se* litigant liberally." *See* Shell's Response, ¶ 1. Shell thus attempts to put herself in the same category as prisoners alleging violations of their civil rights. *See Hughes v. Rowe*, 449 U.S. 5 (1980) (relating to prisoner's *pro se* civil rights complaint); *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (relating to *pro se* prisoner's civil rights suit). But the Ninth Circuit has expressly refused to extend this policy to ordinary civil litigation. *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986) (rejecting plaintiff's argument that rules applicable to *pro se* prisoners should be extended to all *pro se* litigants because "[f]irst and foremost … *pro se* litigants in the ordinary civil case should not be treated more favorably

than parties with attorneys of record.") Thus, Shell has the responsibility to inform herself of the applicable law and court procedures (*see Olsen v. Comm'r of Internal Revenue Serv.*, 2001 WL 721732 (E.D. Cal. 2001)) and "is not excused from knowing the most basic pleading requirements." *American Association of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000) (holding that a pro se litigant had waived his personal jurisdiction defense for failing to timely raise it).[1] Accordingly, because Shell's claims are woefully deficient and she is entitled to no deference, her claims should be dismissed with prejudice.

## Argument

### I. Shell's Conversion/Civil Theft Claim Is Not Properly Pled and Is Preempted.

Not only does Shell's Response to Internet Archive's Motion to Dismiss fail to address the specific on-point authority cited by Internet Archive, but Shell instead relies on inapposite cases that simply do not relate to conversion or copyright preemption. For example, Shell completely fails to address the holding in *Firoozye v. Earthlink Network*, where the Northern District of California (Breyer, J.) found that "while a claim for conversion typically involves tangible property and thus may be immune from preemption, *where a plaintiff is only seeking damages from a defendant's reproduction of a work – and not the actual return of the physical piece of property – the claim is preempted.*" See *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (emphasis added), citing *Worth v. Universal Pictures, Inc.*, 5 F.Supp.2d 816, 821 (C.D. Cal. 1997) (conversion claim preempted where plaintiff did not allege defendant failed to return actual physical works), and *Dielsi v. Falk*, 916 F.Supp. 985, 992 (C.D. Cal. 1996) (holding claim for conversion of intangible property arising from the reproduction of property 'is clearly equivalent to a copyright claim.'). Here, Shell does not purport to seek return of physical property.

---

[1] Shell is not even an ordinary civil litigant. In fact, she apparently believes herself quite capable of practicing law and is no stranger to the litigation process. Shell has participated in numerous family court proceedings as an "advocate" for parents accused of neglecting and/or abusing their children. In fact, she has apparently been so prolific in these proceedings that the State Supreme Court of Colorado enjoined her from the unlicensed practice of law in that state. *See* Complaint, ¶ 17. It is ironic that she now pleads ignorance in an effort to gain special treatment as a *pro se* litigant.

Avoiding the on-point legal authority, Shell attempts to save her losing argument by citing inapposite case law to demonstrate that her allegedly copyrighted digital work is "tangible." However, Internet Archive does not dispute that it is possible to fix a digital work in a tangible medium.[2] Shell's arguments and citations fundamentally miss the thrust of Internet Archive's arguments. Whether the profane-justice.org web site is tangible or intangible, in and of itself, does not determine whether Shell has adequately pled a claim for conversion. To be clear, the issue is not whether the work is fixed in a tangible medium of expression, it is whether there was interference with tangible property that permanently deprived Shell of the use of that property.

Here, there has been no actual interference, and Shell has not been deprived of her property; she could make use of her profane-justice.org web site and the servers on which that web site is stored, before and after the alleged interference.[3] Shell does not even claim that she has been permanently deprived of the use of profane-justice.org, and she is not seeking return of the alleged physical manifestation of the copyrighted work. Instead, she is seeking damages for the alleged *reproduction* of that work via the Wayback Machine, exactly the type of claim that is preempted. *See Dielsi*, 916 F.Supp. at 992; *see also* Counterclaim, ¶ 76.

Finally, despite Shell's legally and factually incorrect assertions that her work is "tangible," her conversion allegations rely upon the exact same conduct at issue in her copyright allegations. Shell's state law conversion claim is qualitatively indistinguishable from the protection of Shell's

---

[2] Indeed, Shell cites to *American Multi-Cinema, Inc. v. City of Westminster* (a state court decision regarding the propriety of a use tax on copyrighted films which has nothing whatsoever to do with conversion) for the non-controversial premise that a copyright creates "an incorporeal property right that exists separately and independently from the tangible property, such as a book, a magazine, or a film, upon which the copyrighted material appears." Shell's Response, ¶ 59; *See American Multi-Cinema, Inc. v. City of Westminster*, 910 P.2d 64, 65 (Colo. App. 1995). Shell similarly cites to *May Broadcasting Co. v. Boehm*, 241 Neb. 660 (Neb. 1992), which decides whether a satellite transmission should be subject to a use tax, but has nothing to do with copyright law, conversion, or preemption. Rounding out her "authority" on this issue, Shell cites to a wholly irrelevant Tax Court decision. *See Norwest Corp. v. Commissioner*, 111 T.C. 105 (U.S.T.C. 1998) (consolidated cases involving determinations by respondent of deficiencies in petitioner's Federal income taxes). In short, Shell's wildly off-point citations do not refute or distinguish the authority cited by Internet Archive.

[3] She could not have been deprived of possession of the profane-justice.org web site by the crawling and alleged copying because she admits in her counterclaims that she did not even discover the alleged interference until Dec 12, 2005, over a year after the Wayback Machine began crawling the site. *See* Counterclaims, ¶ 77.

- 3 -
REPLY TO RESPONSE TO MOTION TO DISMISS
Case No. C 06 0397 (JSW)

[BY061240.062]

copyright interests because compensating Shell for the harm caused by the alleged reproduction of Shell's "research" falls within the exclusive rights granted by the Copyright Act. See 17 U.S.C. § 106. Accordingly, even if her conversion claim were properly pled, the rights Shell seeks to enforce through that claim are equivalent to her copyright claim, and the conversion claim is preempted and must be dismissed as a matter of law.[4]

## II. Shell's Breach of Contract Claim Is Not Properly Pled and Is Preempted.

### A. Shell Has Not Alleged the Required Elements of Contract Formation.

Shell cannot demonstrate that the parties ever entered into a binding contract. As an initial matter, there is no mutual assent or meeting of the minds, which is a fundamental requirement of every contract. See Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 848 (1999) (mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract). Shell does not allege that Internet Archive ever knowingly accepted Shell's terms.

Ignoring the glaring lack of acceptance and mutual assent, Shell asserts that "[b]rowsewrap agreements like this have been found to be binding contracts," and citing to *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2nd Cir. 2004). Shell's Response, ¶ 71. While Internet Archive does not dispute this fact, the *Register.com* decision is wholly inapplicable to the case at hand. Specifically, in the *Register.com* decision, the Second Circuit found that defendant Verio's argument that it never assented to Register's terms failed because "Verio admits that it knew perfectly well what terms Register demanded." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401 (2nd Cir. 2004). Unlike in *Register.com*, where the defendant admitted that its queries resulted in a human being receiving actual notice of the terms Register exacted (see 356 F.3d at 398, 402), Shell does not, and cannot, allege that Internet Archive knew what the terms were and accepted them.[5] And Shell has

---

[4] Shell treats her civil theft claim as one and the same as her conversion claim, and she fails to respond to Internet Archive's moving papers, which set forth authority demonstrating that her civil theft claim is improperly pled and cannot succeed.

[5] Indeed, that Internet Archive immediately removed the profane-justice.org content from the Wayback Machine when it learned that Shell wished the content not be archived further supports the fact that it did not have prior knowledge of the terms of the alleged contract. See Complaint, ¶¶ 11-13.

- 4 -
REPLY TO RESPONSE TO MOTION TO DISMISS
Case No. C 06 0397 (JSW)                                                                [BY061240.062]

1 not pointed to a single case where a robot that automatically crawls web sites (i.e., not a human
2 being) "accepted" an offer and thus formed a contract based on mutual assent to certain terms.[6]
3 Shell then argues that Internet Archive's conduct should be seen as an indication of its
4 acceptance of the contract. *See* Shell's Response, ¶ 79 ("performance of the requested act, in this
5 case the downloading of a copy, the copying and distribution of the web site content, indicates
6 assent to the terms of the offer.") But Shell's own allegations regarding the existence of a contract
7 (Shell's Response, ¶ 70) make this claim logically implausible. Specifically, Shell alleges that
8 "[t]he security agreement contained an offer to copy or distribute the web site profane-justice.org in
9 exchange for pre-payment of posted license fees. Internet Archive expressly accepted the offer of
10 copying Shell's web site profane-justice.org when it affirmatively performed the act of copying her
11 website." Shell's Response, ¶ 81. By Shell's own words, the alleged acceptance of the contract
12 (copying Shell's web site profane-justice.org) is the exact same action that constitutes breach of
13 that contract. *See* Counterclaims, ¶ 89 ("Internet Archive breached the security agreement contract
14 when it harmed Shell and her property … when it failed to seek or obtain permission of the
15 copyright owner prior to copying."). It strains credulity to suggest that the same action by Internet
16 Archive (i.e., allegedly copying the profane-justice.org web site) simultaneously both manifests
17 assent and constitutes breach of a contract of which Internet Archive was never even aware.
18 Accordingly, Shell has not properly pled (and cannot properly plead) a claim for breach of contract.

**B.    Shells' Contract Claim Is Preempted.**

20 Moreover, Shell's contract claim is preempted by the Copyright Act. In *Firoozye v.*
21 *Earthlink Network*, 153 F. Supp. 2d at 1126, this Court analyzed to what extent breach of contract
22 actions may be preempted by the Copyright Act and held that a breach of contract claim may not be
23 preempted if the plaintiff claims that the defendant promised to pay for the allegedly copied work

---

[6] In fact, the Second Circuit has explained that even a person's clicking on a "download" button does not constitute assent to contractual terms if the offer did not make clear to the consumer that clicking on the download button would signify assent to the terms. *Specht v. Netscape Communications*, 306 F.3d 17, 29-30 (2nd Cir. 2002); *see also Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App. 3d 987, 992 (Cal. App. 1972). Here, the alleged contract is titled "Copyright Notice," and Shell does not allege that any human being at Internet Archive ever saw the document.

- 5 -
REPLY TO RESPONSE TO MOTION TO DISMISS
Case No. C 06 0397 (JSW)

[BY061240.062]

1  but did not. *Firoozye*, 153 F.Supp.2d at 1127. The Court noted that "the additional element of the
2  defendants' promise to pay the plaintiff for the software ... constitutes an extra element such that a
3  breach of contract claim is not preempted by section 301. 'It is not the use of the work alone but
4  the failure to pay for it that violates the contract and gives rise to the right to recover damages.'"
5  *Id.* (citations omitted). Here, as set forth above, Shell has not alleged, and cannot allege, that
6  Internet Archive ever made a promise to pay a certain amount for the alleged copying of the
7  profane-justice.org web site. Unlike in *Firoozye*, where the parties were negotiating a license
8  agreement, Shell cannot magically transform a Copyright Notice into an agreement that binds
9  another party into paying extortionist fees simply by saying "if you copy or distribute anything on
10 this site – you are entering into a contract." *See* Counterclaim, ¶ 49 and at Exhibit A at 1.

11      Shell's own citations to authority are similarly unavailing. Although *Bowers v. Baystate
12 Technologies, Inc.*, 320 F.3d 1317 (Fed. Cir. 2003), finds no preemption, it is easily
13 distinguishable, and its analysis is instructive here. The Federal Circuit explains in *Bowers* that
14 "not every extra element of a state law claim will establish a qualitative variances between the
15 rights protected by federal copyright law and those protected by state law." *Bowers*, 320 F.3d at
16 1324 (internal citations omitted). The Court goes on to note that "the mutual assent and
17 consideration required by a contract claim render that claim qualitatively different from copyright
18 infringement." *Id.* at 1325 (internal citations omitted). The inescapable conclusion is that if there
19 is no mutual assent, as here, that extra element cannot exist. A Copyright Notice cannot transform
20 into a binding agreement without mutual assent, so the violation of the purported agreement is
21 simply an alleged infringement of her copyright. Further, because protection against "copying" is
22 the exact same right that she would be granted under Section 106 of the Copyright Act (i.e., the
23 right to protect her work from unlawful copying or reproduction), Shell's breach of contract claim
24 is preempted by the Copyright Act and must be dismissed as a matter of law.

25 **III.   Shell's RICO Claim Must Be Dismissed.**
26      In response to Internet Archive's Motion to Dismiss her racketeering claim, Shell spends
27 several pages citing cases that hold against her position. But, she makes no progress in
28 establishing that she has pled (or could possibly plead) the existence of a racketeering enterprise.

Further, she fails to so much as substantively respond to Internet Archive's argument that she has failed to plead fraud with particularity as to the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme as required by Federal Rule of Civil Procedure 9(b). And she fails to even acknowledge Internet Archive's challenge to her pleading under Rule 8(a).

Shell does not address these incurable defects because she cannot. Indeed, the *Bledsoe* case relied upon by Shell in her Response explains that "[t]he primary intent of Congress in enacting 18 U.S.C. § 1962(c) was to prevent organized crime from infiltrating businesses and other legitimate economic entities." *United States v. Bledsoe, et al.*, 674 F.2d 647, 662 (8th Cir. 1981), citing *United States v. Turkette*, 452 U.S. 576 (1981). RICO claims simply do not make sense in the context of a non-profit library, and Shell cannot avoid that she is seeking to misuse the statute in an effort to obtain treble damages – something the Ninth Circuit specifically does not allow. *See Oscar v. University Students Co-Operative Assn.*, 965 F.2d 783, 786 (9th Cir. 1992) (stating that "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.")

### A. Shell Failed to Properly Allege the Existence of a Racketeering Enterprise.

As set forth in Internet Archive's moving papers, Shell has failed to plead the existence of a racketeering enterprise. Shell's Response does nothing to cure this defect. While her Response cites to many irrelevant cases, it conspicuously cites only once to her counterclaims. Indeed, Shell's only support for her claim that she has actually pled the existence of an enterprise is a citation to paragraph 96 of her counterclaim, which vaguely and conclusorily states that "[t]he subject enterprise is a published association-in-fact between – including but not necessarily limited to – the following independent persons and/or entities:  a. Internet Archive and its board of directors and its agents and employees  b. Alexa Internet  c. Library of Congress  d. Smithsonian Institute". Counterclaim, ¶ 96.

Such a statement cannot establish (1) that an enterprise exists that is separate and apart from the pattern of activity in which it engages; (2) that members of a group share a common purpose of engaging in a course of conduct; (3) that there is evidence of an ongoing organization; and (4) that the various members of the group function as a continuing unit, as required by the

1  United States Supreme Court to maintain a racketeering claim. *Turkette*, 452 U.S. at 583.
2  Further, nothing else in Shell's counterclaim properly states the existence of an enterprise.
3        In fact, Shell contradicts the existence of an enterprise with her statement (taken directly
4  from the Internet Archive web site) that "[t]he Archive *collaborates* with institutions including
5  the Library of Congress and the Smithsonian" or that it "has relied on donations of web crawls,
6  technology, and expertise from Alexa Internet and others." Counterclaims, ¶ 101 (emphasis
7  added). Collaboration and relying upon donations do not a racketeering enterprise make. Shell
8  makes no attempt to reconcile that such "collaborators" share a common purpose of engaging in
9  a course of conduct, constitute an ongoing organization, or a continuing unit.
10        Moreover, Shell certainly has not alleged and cannot allege the "existence of a system of
11  authority that guided the operation of the alleged enterprise." *Chang v. Chen*, 80 F.3d 1293 (9th
12  Cir. 1995) (requiring "a structure to the organization beyond that which was inherent in the
13  alleged acts of racketeering activity" and holding that the complaint "did not allege the existence
14  of a system of authority that guided the operation of the alleged enterprise" and ultimately
15  dismissing claim without leave to amend). The *Bledsoe* case cited by Shell further clarifies the
16  "ascertainable structure" element as, for example, "[t]he command system of a Mafia family."
17  *United States v. Bledsoe, et al.*, 674 F.2d at 665 (holding that there are three basic characteristics
18  of an enterprise including a "common or shared purpose," "'function[ing] as a continuing unit,'"
19  and "'ascertainable structure'" and citing *United States v. Turkette*, 452 U.S. 576 (1981).
20  *Bledsoe* and cases that similarly held there must be an "ascertainable structure separate and apart
21  from the pattern of racketeering activity" in order to have a RICO "enterprise" were adopted and
22  followed by the Ninth Circuit in *Chang*. *See Chang v. Chen*, 80 F.3d at 1298 (holding "[w]e
23  now adopt the majority interpretation of the enterprise element, which requires the organization,
24  formal or informal, to be 'an entity separate and apart from the pattern of [racketeering] activity
25  in which it engages" citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Shell has done

nothing to satisfy this standard. As set forth in Internet Archive's moving papers, this deficiency constitutes a separate and independent basis for dismissing Shell's RICO claim.[7,8]

### B. Shell's RICO Claim Must Be Dismissed Because the Claims Are Not Alleged with Sufficient Particularity.

As set forth in Internet Archive's moving papers, Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme. Fed. R. Civ. P. 9(b). As further detailed in Internet Archive's Motion, the Ninth Circuit has repeatedly insisted that this rule be followed for RICO actions which allege the predicate act of mail or wire fraud. *See, e.g., Lancaster Cmty. Hosp.*, 940 F.2d at 397 (9th Cir. 1991); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *see also Stewart v. Wachowski*, 2004 WL 2980783 at *4 (C.D. Cal. 2004). The Rule also applies to charges of criminal copyright infringement. *See Stewart v. Wachowski*, 2004 WL 2980783, *5 (C.D. Cal 2004) (holding that criminal copyright infringement allegations must be plead with particularity because they "sound in fraud) (internal citations omitted).

Shell does nothing in her Response to address Internet Archive's claim that "[t]o allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re Glenfed Inc., Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Indeed, Shell

---

[7] Shell also fails to plead (and cannot properly plead) the prerequisite criminal acts. As a threshold matter, Shell cannot rely upon criminal copyright infringement as a predicate act in this Court, as she names government entities as part of the alleged "enterprise." Specifically, Shell includes the Library of Congress and the Smithsonian as members of the purported enterprise. Accordingly, her theory of "enterprise" necessarily fails, because even in the extremely unlikely event that a copyright action against these entities exists, this Court does not have the authority to hear it. While Congress has provided that a work protected by copyright laws can be "infringed by the United States," the exclusive jurisdiction in which such a claim may be brought is the Court of Federal Claims. 28 U.S.C. § 1498(b) (1994). The remainder of the laundry list of "crimes" alleged by Shell are nothing more than conclusory recitations of inapplicable law that cannot form the predicate necessary for a racketeering claim.

[8] Shell also fails to establish the type of "injury" required by the RICO statute. *See Oscar v. University Students Co-Operative Assn.*, 965 F.2d at 785 (holding that "it is well-established that not all injuries are compensable under this section.... First, a showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest'"). The *Oscar* court further observed that "[t]he lesson of *Berg* is that injuries to property are not actionable under RICO unless they result in tangible financial loss to the plaintiff", citing, among other cases, *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).

1  does not even cite to or explain her vague allegations, and she provides no information

2  whatsoever regarding the time, place, or manner of the alleged fraud, let alone the role of

3  defendants in the purportedly fraudulent and/or unlawful scheme.[9] This failure is sufficient in

4  and of itself to warrant dismissal of Shell's RICO claim.

  **C. Shell's RICO Claim Must Also Be Dismissed Because It Does Not Contain a Short and Plain or Clear and Concise Statement.**

  Shell does not respond to Internet Archive's Motion to Dismiss on the grounds that she has failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a) requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." Just like her Counterclaims, Shell's Response both says too much and too little. While submitting 28 pages to the Court (five regarding her racketeering claim) in response to Internet Archive's Motion to Dismiss, Shell submits little more than conclusory and confusing restatements of what she believes to be the relevant law. Similarly, Shell's Counterclaims span over 30 pages (eleven of which pertain to her racketeering claim), but does nothing more than provide "incomprehensible" and "unintelligible" bare accusations. Just as the U.S. District Court for the Eastern District of Pennsylvania did in *Parker v. Google, Inc.*, No. 2:04-CV-03918, WL 680916 (E.D. Pa. March 10, 2006) at *7, this Court should dismiss Shell's RICO claims for failure to comply with the pleading requirements of Rule 8. As set forth in Internet Archive's moving papers, Shell's failure to comply with Rule 8 constitutes yet another separate and independent basis for dismissing Shell's racketeering counterclaim.

          Respectfully submitted,
          PERKINS COIE LLP

Date: May 4, 2006    By: _/s/ Stefani E. Shanberg_
            Stefani E. Shanberg
          Attorneys for Plaintiff and Counterclaim-Defendant
          INTERNET ARCHIVE

---

[9] Shell does state in paragraph 81 of her Response on page 25 that "[m]ail/wire fraud was pled with *peculiarity* in ¶114a of her Second Amended Answer and Counterclaim...." (emphasis added). Shell is correct, paragraph 114 is "peculiar," but no section, including section (a), is "particular" as required by Rule 9(b). Indeed, paragraph 114 spans four pages of her counterclaim, but does nothing more than recite in a conclusory fashion inapposite legal standards.