Suzanne Shell - pro se
dsshell@ix.netcom.com
14053 Eastonville Rd.
Elbert, CO 80106
Telephone: (719)749-2971
Fax: (719)749-2972

Defendant

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNET ARCHIVE<br><br>Plaintiff and Counterclaim Defendant<br><br>v.<br><br>SUZANNE SHELL<br><br>Defendant and<br>Counterclaim Plaintiff and<br>Third Party Plaintiff<br><br>v.<br><br>AND RELATED COUNTERCLAIMS<br>AND THIRD PARTY CROSS CLAIMS | CASE NO. C 06 0397 JSW<br><br>**SUZANNE SHELL'S AFFIDAVIT IN SUPPORT OF RESPONSE TO INTERNET ARCHIVE'S OPPOSITION TO MOTION TO TRANSFER** |

I, Suzanne Shell, being competent to testify, having first hand knowledge make the following statement under the penalty of perjury:

1. I have been to California three times in my life. Twice on flight layovers in 2003 and once around September, 2005 for about six days.

Affidavit of Suzanne Shell in Support of Response to Opposition
to Motion to Transfer    Page 1

2.   I met Bill Tower one time, when I was in California, at his request because he told me he wanted to meet me face to face to get to know me personally. I agreed to a meeting with him for that purpose. I relied in good faith on Bill Tower's representation to me that this was a personal meeting.

3.   Bill Tower has no knowledge about me or FRAI. He is a competitor who has been attempting to, and conspiring with others to obtain my trade secrets, my proprietary information and has participated in copyright infringement of my intellectual property. These acts have been done in his capacity as a representative of and as a member of American Family Rights Association (AFRA) both before and during his Presidency of AFRA. See affidavit attached.

4.   I am not an advocate as alleged by Bill Tower. I have not been an advocate since 2001.

5.   I do not own or operate an advocacy business. My business is writing, publishing, training and education. I am the only person in our shared market who has been accredited provide Continuing Legal Education (CLE) training. I have written and published three books. I publish a web site, which is the subject of this action.

6.   I did not appear at any court hearing while I was in California.

7.   I was not in California in any paid capacity.

8.   I was not in California in my capacity as an official from Family Rights Advocacy Institute.

9.   Family Rights Advocacy Institute (FRAI) is a Colorado non-profit corporation offering public training and education services and products. It does not have 'branches' or offices anywhere except in Colorado. FRAI is the educational division of Families First Partnership, a 501(c)(3) non profit corporation headquartered in Alaska. FRAI does not solicit branch offices nor to attempt open offices in any other location.

10.   I have licensed certain limited rights to FRAI to obtain and use my copyrighted

Affidavit of Suzanne Shell in Support of Response to Opposition
to Motion to Transfer    Page 2

|    |     |                                                                                                  |
|----|-----|--------------------------------------------------------------------------------------------------|
| 1  |     | intellectual property, trade secrets, proprietary information conditioned upon users             |
| 2  |     | signing non-disclosure, non-compete agreements.                                                  |
| 3  | 11. | Using my proprietary and trade secret property, FRAI provides training and                       |
| 4  |     | educational presentations for conferences and seminars which are hosted by                       |
| 5  |     | sponsoring organizations. I did not make any educational presentation while I was                |
| 3  |     | in California.                                                                                   |
| 7  | 12. | Sponsoring organizations and affiliates are wholly independent of FRAI. They                     |
| 8  |     | choose their own business names, empanel their own directors, determine their                    |
| 9  |     | own missions and agendas and conduct their business without any interference                     |
| 10 |     | from FRAI. They must sign non-disclosure, non-compete agreements as a                            |
| 11 |     | condition of using my intellectual property.                                                     |
| 12 | 13. | FRAI also provides publications for public training and educational purposes.                    |
| 13 | 14. | I did not meet with anyone for any purpose to solicit a future training presentation             |
| 14 |     | while I was with California.                                                                     |
| 15 | 15. | Bill Tower has repeatedly expressed interest in FRAI training, and he was                        |
| 16 |     | repeatedly advised to go to another state to attend said training, including Colorado            |
| 17 |     | (which was sponsored by Colorado Family Rights Advocacy Institute) and Arizona                   |
| 18 |     | (sponsored by Arizona Family Rights Advocacy Institute.)                                         |
| 19 | 16. | I publicly disassociated from AFRA on or about May 15, 2004 and withdrew all                     |
| 20 |     | permission for AFRA and AFRA's membership to use any of my intellectual                          |
| 21 |     | property. I have refused to allow Bill Tower or AFRA access to my proprietary                    |
| 22 |     | materials, trade secrets and intellectual property. Representatives and members of               |
| 23 |     | AFRA have repeatedly complained about my exclusionary policies and have                          |
| 24 |     | retaliated by perpetuating a public campaign to falsely malign my credibility,                   |
| 25 |     | competence, integrity and motives in every available forum.                                      |
| 26 | 17. | The dynamic of AFRA and its membership is a melange of personal bashing,                         |
| 27 |     | harassment, stalking, libel, incompetence, abuse, dishonesty and chaos. In my                    |
| 28 |     |                                                                                                  |

Affidavit of Suzanne Shell in Support of Response to Opposition
to Motion to Transfer     Page 3

|    |     |                                                                                             |
|----|-----|---------------------------------------------------------------------------------------------|
| 1  |     | assessment, AFRA has become a haven for child abusers, batterers, rabid father's            |
| 2  |     | rights/men's rights supporters, and the documented mentally unstable. AFRA                  |
| 3  |     | leadership is populated with people who have both violent criminal histories and            |
| 4  |     | mental health histories. Internet Archive's counsel has copied email messages to            |
| 5  |     | me indicating they have been subjected to typical emails originating from this              |
| 3  |     | source and advised the source to cease contacting them. I have documented the               |
| 7  |     | development of this dynamic since AFRA was founded.                                         |
| 8  | 18. | Bill Tower's own history, as well as his conduct toward me, is consistent with              |
| 9  |     | AFRA's campaign against me and with the aforementioned AFRA dynamic. See                    |
| 10 |     | Tower v. Leslie-Brown, 326 F.3d 290 (1st Cir. 04/22/2003) and Maine Supreme                 |
| 11 |     | Judicial Docket: Som-01-445 (attached).                                                     |
| 12 | 19. | Bill Tower has publicly expressed a personal animosity against me and my                    |
| 13 |     | business and has a motive to cause me harm in any way he can. This includes                 |
| 14 |     | direct harm to me and my business and harm to my associates.                                |
| 15 | 20. | Bill Tower stated to me on March 30, 2006, that he has acquired access to some of           |
| 16 |     | my proprietary information. This was done without my knowledge or consent, and              |
| 17 |     | in spite of my diligent efforts to exclude him from that access.                            |
| 18 | 21. | Bill Tower has also recently provided the personal identifying information of an            |
| 19 |     | associate who wanted to maintain his/her anonymity while online, to a known                 |
| 20 |     | stalker within AFRA membership, who has widely published that identifying                   |
| 21 |     | information and escalated the stalking behavior, endangering the targeted                   |
| 22 |     | individual and his/her family.                                                              |
| 23 | 22. | The facts stated to Mr. Rubin by Bill Tower are false on their face.                        |
| 24 | 23. | For the reasons stated above, Bill Tower is not a reliable witness to the facts stated      |
| 25 |     | in Mr. Rubin's declaration.                                                                 |
| 26 | Further affiant sayeth not.                                                                       |
| 27 |     |                                                                                             |
| 28 |     |                                                                                             |

Affidavit of Suzanne Shell in Support of Response to Opposition
to Motion to Transfer   Page 4

1  PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the
2  county of El Paso, State of Colorado, the within named SUZANNE SHELL who being by
3  me first duly sworn and/or affirms and states contents of this affidavit to be true.
4
5  _____ May 5, 2006
   Suzanne Shell
6  14053 Eastonville Rd, Elbert, CO 80106
7  Phone (719)749-2971
   Fax (719)749-2972
8
9  Subscribed and sworn or affirmed before me this ___5Th___ day of May 2006
10
11 _____
12 My Commission expires: 05/31/2009

[Notary Seal: TROY KOWALSKI, NOTARY PUBLIC, STATE OF COLORADO]
My Commission Expires 05/31/2009

Affidavit of Suzanne Shell in Support of Response to Opposition
to Motion to Transfer    Page 5



**CHRISTINE M. KORN**

**226 G Street**

**Penrose, Colorado 81240**

**Affidavit Regarding: Suzanne Shell, American Family Rights Association and William Tower, President**

**May 4, 2006**

    I became acquainted with William Tower through our mutual association with the American Family Rights Association (AFRA) sometime in the year 2003. During the course of our internet contacts, we worked with several others to expose corruption in the child protection system.

    In March, 2004, both Mr. Tower and I attended a Congressional Hearing in San Bernardino, CA. at which we both testified, I, as a representative of American Family Advocacy Center (AFAC), Mr. Tower as a representative of AFRA. After that point, Mr. Tower would telephone me fairly often to discuss various facets of cases in which he was advocating for parents accused of child abuse or neglect. Most often, his calls appeared to be intended to inflate his own importance by apprising me of his impact on the "system" in California, and his supposed successes in the effort to get children returned to their families. A component of nearly every call was his implied and sometimes direct request to have portions of the AFAC advocacy training materials sent to him for review, for various reasons, but mostly so that he could "assess" them for validity, and determine if Suzanne Shell's training was going to be applicable to California. This was a source of concern for me because to my knowledge, no request had been made of Ms. Shell directly. I tried to remain open to the possibility that Mr. Tower was truly making the strides in California that he claimed, but as his claims escalated in scope, I began to doubt him and to request to hear exactly how he was accomplishing these things.

    Despite my repeated requests to see evidence of the success stories claimed by Mr. Tower, none were ever provided, however his calls did not stop. In mid 2005, I began avoiding his calls. It seemed to me that every time he called, he was seeking to gain information from me regarding the practices and strategies employed by the organization of which I am a part, FRAI. This organization is engaged in education of advocates who then take that training and use it to help families and attorneys who are battling protracted child protection interventions and court actions. The course materials and manuals were all created by Suzanne Shell and are protected as trade secrets and by copyright. As a part of my membership in this organization, I have signed an agreement that prohibits me from sharing the training materials with persons who are not approved and registered with AFAC. I would decline to comment to Mr. Tower, and suggested

over and over that he either attend a training session, offered several times every year, or contact Ms. Shell directly if he had need of assistance.

Mr. Tower ignored my insistence that he attend training, and continued to call and attempted several ploys to try to gain my help to secure the information. He went to the extreme of challenging me with various statements of disbelief that Ms. Shell's material was even her own. He railed over and over that her listing of some of his AFRA associates on a consumer advisory page on her website was unfair. He protested that Ms. Shell was dishonest in requiring that her materials be purchased from her. He even inferred that her training and materials should be freely accessible; she had no right to withhold information that could save families from destruction. He suggested that she cares more about her own profits than about helping families stay together. He did not seem capable of grasping that her expenses had to be reimbursed, and kept insisting that she was profiting. At one juncture, he told me he would not consider flying to Colorado for a training seminar without being able to review the course materials before attending. He tried to convince me that I should send him the Colorado-specific course materials so that he could judge the quality of this training for himself. I declined.

When I realized that Ms. Shell would be in California, and in the same general area as Mr. Tower, I suggested that they should meet. He had been given a large amount of false information about her, had never met or spoken with her, had made several disparaging public remarks and accusations about her and had formed some opinions based on poor information. I suggested that he should reserve his opinion until he had met and spoken with her. I had hopes that he would be able to realize that the information that he had heard was false. At that time, I still had hope that Mr. Tower would attend training in Colorado to enhance his efforts to establish advocacy in California.

I am a FRAI trained and certified family advocate. I now train and supervise other advocates. In the entire history of my involvement with FRAI and Suzanne Shell, I have heard her repeatedly instruct new advocates that they are prohibited from charging a family for assistance, and that if an advocate is asking a client family for money, it is the red flag that the advocate is not legitimate. I have heard her repeatedly warn advocates that charging a client for services would result in instant revocation of their certification. Knowing her and working with her over the course of nearly five years, I can assure anyone who questions her integrity that Suzanne Shell has incredibly high personal and professional standards, that she is rigidly unwilling to bend those ethics and that she expects and demands that other people who are associated with her maintain professional standards and ethics which are commensurate with her own. I shared all of these things with Mr. Tower many times. After several months of conversations and phone calls, I began having my family deflect Mr. Tower's phone calls because they were redundant and pointless, wasting my fairly valuable time.

The FRAI organization is located in Colorado. Although Ms. Shell is hired to speak at various functions around the country, and is engaged to teach her advocacy training and Continuing Legal Education courses in other states, and for other organizations, FRAI is located in Colorado, and is the only home of the business offices and activity. There are no "branches" of FRAI or of Suzanne Shell's business ventures. Ms. Shell accepts paid speaking engagements, and produces written and documentary pieces for sale. She is a published author, and has books for sale to the public. Mr. Tower attempted many times to circumvent the need to attend the training, sign the required non-compete/non-disclosure agreements, and pay the sponsoring organizations' fees for the training by attempting to convince me that he had a legitimate need to "review" the materials. He attempted to gain access to Ms. Shell's legal education and seminar content and advocate

training materials by manipulation and poorly cloaked claims to need to know various information in order to help clients. He resisted my many requests to attend training by making excuses for his inability to travel to Colorado, and later, by refusing to pay the additional tuition for those seminars which is charged to AFRA members. After repelling his attempts to circumvent the FRAI policies for several months, while continuing to insist that he should attend training, I finally gave up and began to refuse his calls. I have continued to avoid contact with him because he did not seem to grasp my steadfast refusals, and his calls became irritating and harassing in nature.

Mr. Tower has, for at least two years, possibly much longer, been vested in the AFRA effort to discredit and defame Ms. Shell because they perceive that she should not have the right to recover her expenses for this altruistic endeavor to bring accountability to family courts and intervention agencies. She was their hero as long as she flew all over the country teaching these classes and absorbing her own expenses for flights, car travel, food, vehicle, printing, etal. When she became unable to do this work without requiring that her expenses be reimbursed, she was accused of profiteering. Mr. Tower, while pretending to be a neutral operative, has clandestinely supported several members of the AFRA association who have continued to malign and undermine Suzanne Shell. He and his associates have made similar false statements to law enforcement agencies and other officials for several months in retaliation for Ms. Shell's refusal to retract her assessments of their business practices. They have even gone to the extreme of contacting attorneys representing counties where Shell associates do business in attempts to influence specific cases. Mr. Tower has been instrumental in this effort clandestinely, while claiming to remain neutral and uninvolved.

This attempt is yet the latest of many. His statements are untrue. If he testifies to these things under oath, I would believe he would stand open to prosecution for perjury. There is no way that he could misconstrue the facts to the extent necessary to claim these statements were simple misunderstanding. They are pure malicious fabrication. I had withdrawn from active participation in the AFRA association in mid-2005. I have recently removed myself from all involvement with that organization because of the appointment of Bill Tower to succeed the founder as their president.

I attest that the foregoing statement is true and correct to the best of my knowledge under penalty of perjury.

_Christine M. Korn_  5-5-06

Christine M. Korn                                                                 Date

State of Colorado
County of El Paso
Signed before me This 5Th day of May, 2006

Troy Kowalski
Notary Public



My Commission Expires 05/31/2009

Suzanne Shell - pro se
dsshell@ix.netcom.com
14053 Eastonville Rd.
Elbert, CO 80106
Telephone: (719)749-2971
Fax: (719)749-2972

Defendant

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNET ARCHIVE<br><br>Plaintiff and Counterclaim Defendant<br><br>v.<br><br>SUZANNE SHELL<br><br>Defendant and<br><br>Counterclaim Plaintiff and<br><br>Third Party Plaintiff<br><br>v.<br><br>AND RELATED COUNTERCLAIMS<br>AND THIRD PARTY CROSS CLAIMS | CASE NO. C 06 0397 JSW<br><br>**AFFIDAVIT IN SUPPORT OF MOTION TO APPEAR TELEPHONICALLY** |

I, Suzanne Shell, do hereby state under oath as follows:

1. I am the defendant in the above referenced matter.
2. I live at 14053 Eastonville Road in Elbert, Colorado. I have been a resident of Colorado for 24 years.
3. As a resident of Colorado, I stand as femme sole (under C.R.S. 14-2-201 et seq.) and am solely responsible for any legal action involving me and exercise my right

4. to contract, and to sue and be sued in my own capacity.
4. I am not employed. I have not been employed for over 8 years. I operate a private charity which has no earnings. I am paid no salary for this strictly volunteer work. I have no income from sales of my intellectual property because people keep taking it without paying me for it.
5. I own no property, nor any stock or bonds or other investments.
6. I am supported by the charity of friends and family.
7. The Clerk has noticed me for a Motions hearing on May, 19, 2006 in San Francisco at 9 am. I received this notice on Saturday, April 15, 2006 in the afternoon mail.
8. I do not have the resources to fly to San Francisco for a brief hearing. It would cost me over $500.00 for airfare, rental car and hotel for a one short appearance in court. This expense imposes an extreme financial burden on me and my household.
9. I do not own nor do I have access to a car that would survive a trip of that distance.
10. I appear without an attorney because I cannot afford to pay one.
11. The expense of having to travel for this hearing would severely impair my ability to meet upcoming expenses of this litigation.

Signed under the pains and penalties of perjury April 17, 2006

_____
Suzanne Shell - pro se
14053 Eastonville Rd.
Elbert, CO 80106
719-749-2971

## INDIVIDUAL ACKNOWLEDGMENT

State/Commonwealth of **Colorado**

County of **El Paso** } ss.

On this the **17th** day of **April**, **2006**, before me, **Elishia Chavaria**, the undersigned Notary Public, personally appeared **Suzanna Shell**

☐ personally known to me — OR —

☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same for the purposes therein stated.

WITNESS my hand and official seal.

*Elishia Chavaria*
Signature of Notary Public

**Elishia Chavaria**
Other Required Information (Printed Name of Notary, Residence, etc.)

Place Notary Seal and/or Any Stamp Above

—————————— OPTIONAL ——————————

Although the information in this section is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Right Thumbprint of Signer**
Top of thumb here

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

© 2002 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org
Item No. 5936                    Reorder: Call Toll-Free 1-800 US NOTARY (1-800-876-6827)

| | |
|---|---|
| MAINE SUPREME JUDICIAL COURT<br>Decision:   2002 ME 31<br>Docket:     Som-01-445<br>Submitted<br>on briefs:  December 4, 2001<br>Decided:    February 21, 2002 | Reporter of Decisions |

Panel:   SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

IN RE MELISSA T. et al.

CLIFFORD, J.

[¶1]   The father of Melissa T., William T. III, and Patricia T. and the mother of William T. III and Patricia T. appeal from a final protection order entered in the District Court (Skowhegan, *Clapp, J.*), pursuant to 22 M.R.S.A. § 4035 (1992 & Supp. 2001), finding jeopardy as to the children, and placing them in the custody of the Department of Human Services.  The issues raised by the father are without merit, and warrant little discussion.  Although we are sympathetic with the contention of the mother that the court improperly denied her the opportunity to meaningfully participate in the disposition phase of the jeopardy hearing concerning her children, because the mother failed to file a proper notice of appeal, we dismiss her appeal.

[¶2]   On January 25, 2001, the Department filed a petition for child protection order concerning the children, alleging, in part, an "ongoing pattern" of domestic abuse.  On March 12, 2001, through counsel, the mother consented to the entry of a final protection order.  That order found jeopardy as to William and Patricia and placed custody of the children with the

2

Department. The father denied the allegations in the petition and a jeopardy hearing as to him was scheduled.

[¶3] At the hearing on the final protection order as to the three children, the mother was allowed to state her position and testify as a witness on behalf of the father. The court refused, however, to allow the mother to present evidence of her own and barred her from affirmatively advocating for a position on the disposition of the children upon a finding of jeopardy as to the father. The court found all three of the father's children to be in jeopardy and determined that custody should be with the Department. The father filed a notice of appeal. Although the mother filed an appellate brief, she failed to file a notice of appeal.

[¶4] Contrary to the father's assertions, the evidence was sufficient to find jeopardy, In re David W., 568 A.2d 513, 515 (Me. 1990) (a finding of jeopardy for one child can be founded on actions toward another child based on competent evidence in the record); the state has a compelling interest to seek to protect his children from jeopardy, Rideout v. Riendeau, 2000 ME 198, ¶ 23, 761 A.2d 291, 300-01 (threat of harm is a compelling interest); and the trial judge properly refused to recuse, In re Michael M., 2000 ME 204, ¶ 14, 761 A.2d 865, 868 (judge should recuse if the judge cannot discharge responsibilities neutrally or if impartiality may be reasonably questioned).

[¶5] In her appellate brief, the mother contends that the District Court improperly denied her the opportunity to advocate for her wishes in the disposition phase of the jeopardy hearing concerning her children. Although

3

the mother's contention appears to have some merit,[1] she has not filed any notice of appeal or cross appeal as required by M.R. App. P. 2. Accordingly, we lack jurisdiction to review her claim and dismiss her appeal. *See Rice v. Amerling*, 433 A.2d 388, 390 (Me. 1981) ("compliance with [M.R. App. P. 2] is mandatory and jurisdictional for purposes of appeal"); *Littlefield v. Littlefield*, 292 A.2d 204, 207-08 (Me. 1972) (in order for an appellee to attack an order or judgment and do more than defend the judgment, the appellee must file a cross appeal).

The entry is:

> Judgments affirmed. Appeal of the mother is dismissed.

---

1. The mother has a substantial interest in her family's integrity and as to where her children are placed. *In re Nikolas E.*, 1998 ME 243, ¶ 10, 720 A.2d 562, 565; *In re Sabrina M.*, 460 A.2d 1009, 1016 (Me. 1983). She has standing to meaningfully participate in proceedings affecting the placement of her children.

Attorney for appellant:

Anthony P. Shusta II, Esq.
P O Box 170
Madison, ME 04950

Attorneys for appellee:

G. Steven Rowe, Attorney General
Matthew Pollack, Asst. Attorney General
Pat Stevens, Asst. Attorney General
6 State House Station
Augusta, ME 04333-0006

Guardian *ad Litem*:

Michelle Dolley, Esq.
24 Boston Avenue
Winslow, ME 04901

Attorneys for mothers:

Ferdinand A. Slater, Esq.
5 School Street
Ellsworh, ME 04605
(for Anne T.)

Michael Wiers, Esq.
P O Box 395
Hartland, ME 04950
(for Nancy T.)