RECEIVED OCT - 6 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action no.___06-CV-01726-LTB-CBS

INTERNET ARCHIVE
      Plaintiff and Counterclaim Defendant

v.

SUZANNE SHELL
      Defendant and
      Counterclaim Plaintiff and
      Third Party Plaintiff

v.

BREWSTER KAHLE - an individual
RICK PRELINGER - an individual
KATHLEEN BURKE - an individual
      Third Party Defendants

---

## SECOND AMENDED ANSWER and
## COUNTERCLAIM and
## THIRD PARTY CLAIM

---

I am the Defendant Suzanne Shell and herein submit my **SECOND AMENDED ANSWER and COUNTERCLAIM and THIRD PARTY CLAIM** to correct the case caption as shown above and make the corresponding corrections to the body of this pleading, to add Brewster Kahle, Rick Prelinger, and Kathleen Burke as Third Party Defendants to this case.

### ANSWER

### The Parties

1.     In answer to paragraph 1, I lack sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, deny same.

2.     Admit that Defendant Suzanne Shell is an individual. I reside in El Paso County, Colorado. I appear *pro se*. The court shall construe the pleadings and papers of a pro se litigant liberally.

## Jurisdiction and Venue

3.      Admit that the United States District Court has jurisdiction over the subject matter of this action as described in paragraph 3.

4.      This item has been rendered moot and therefore requires no response.

## Intra District Assignment

5.      Deny that a substantial part of the events giving rise to the claims occurred in California as described in paragraph 5.

## Factual Background

6.      In answer to paragraph 6, I lack sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, deny same.

7.      In answer to paragraph 7, I lack sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, deny same.

8.      In answer to paragraph 8, I lack sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, deny same.

9.      Admit that Internet Archive removed my  web site from the Wayback Machine at my request as described in paragraph 9, but deny the rest of the paragraph.

## FIRST CAUSE OF ACTION

10.     In answer to paragraph 10, show the court that said paragraph is introductory and requires no response.

11.     Admit the allegations in paragraph 11, with the caveat that this action was legal and fully within my exclusive rights as copyright owner of the intellectual property in question and in accordance with the Copyright Notice and Security Agreement published on profane-justice.org (See attached Exhibit A).

12.     Admit the allegation in paragraph 12, with the caveat that this action was legal and fully within my exclusive rights as copyright owner of the intellectual property in question.

13.     Admit the allegation in paragraph 13 with the caveat that Internet Archive's removal of my web site from its Wayback Machine did not remedy six years of infringement injury

caused to me nor remedy the original thefts of my property and did not satisfy the terms of the contract Internet Archive entered into when it copied my web site and did not remedy the thefts of my property.

14.    Deny the allegation in paragraph 14.

15.    Deny the allegations in paragraph 15 as an outright lie. Internet Archive did NOT act in good faith to negotiate or settle this matter, but attempted to bully me into withdrawing her demand in order to absolve it of liability.

16.    In answer to paragraph 16, I lack sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, deny same.

17.    Deny the allegations in paragraph 17.

18.    Admit the allegation in paragraph 18 only that I offer a reward for copyright infringement to protect my intellectual property, as is my right. Deny that this reasonable protective action constitutes a 'history of being litigious.'

19.    In answer to paragraph 19, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained herein, and on that basis, denies same.

20.    Deny allegations in paragraph 20.

21.    Deny the allegation in paragraph 21.

22.    Deny the allegation in paragraph 22.

23.    Wherefore, I demand the plaintiff's Complaint for Declaratory Relief of Copyright Non-Infringement be denied; that it be held liable for copyright infringement; and declare Internet Archive did not make fair and permissible use of profane-justice.org and deny it's request for attorney fees and costs for bringing this action.

## COUNTERCLAIM AND THIRD PARTY CLAIM

### Jurisdiction and Venue

24.    Colorado has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §

1331 and § 1338(a), as this action arises under the copyright laws of the United States 17 U.S.C. §§ 101 et seq.

25. Pursuant to 28 U.S.C. § 1400(a) and  § 1391(b) (1) and (2), Colorado is the proper venue because the defendant in this case is Shell, (1) I reside in Colorado, and (2) I conduct my business primarily in Colorado, and (3) that a substantial part of the events giving rise to the claims occurred in Colorado e.g. the theft of the property was committed in Colorado and the contract was executed in Colorado, and (4) a substantial part of the property that is the subject of the action was originally, and is, situated in Colorado, the conduct complained of was directed at Colorado and the injury suffered occurred in Colorado. Furthermore, the burden of litigating this claim long distance would severely impair my ability to avail myself of the protection of the courts.

26. Pursuant to Colorado Revised Statutes § 13-1-124, Internet Archive purposely availed itself of the privilege of acting in Colorado or of causing important consequences here; the cause of action arises from the consequences to me in Colorado of Internet Archive's activities; the activities of Internet Archive or the consequences of those activities have a substantial enough connection with Colorado to make the exercise of Colorado's jurisdiction over Internet Archive reasonable. Internet Archive transacted business in Colorado and committed tortious acts in Colorado, therefore, jurisdiction and venue is proper in Colorado.

27. This counterclaim and third party claim is also brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961 et seq., and various other Colorado statutes and common law doctrines.  Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

28. Because counterclaims and third party claims brought under Colorado law, are so related to my federal counterclaims, over which the Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution, the United States District Court for the District of Colorado also has jurisdiction over my

Colorado common law and statutory claims pursuant to 28 U.S.C. § 1367.

## Parties

29.     Plaintiff in the counterclaim is the defendant in this action, Suzanne Shell. I reside in El
        Paso County, Colorado. I own and maintain a web site at www.profane-justice.org (aka
        profane-justice.org and under other aliases which direct to www.profane-justice.org )
        which contains my copyrighted intellectual property. My web site is registered with the
        United States Copyright Office (registrations attached). My web site contains the requisite
        copyright notices mandated in Title 17 of the United States Code governing copyright.
        My web site also contains explicit license limitations and license fees. The published
        terms for license fees to obtain a copy of my web site is clearly published on every page
        at the rate of $5000 per printed page per copy, payable in advance. The intellectual
        property published on my web site is the product of 15 years of intensive research,
        experience, expertise and testing, and during which time I did not receive any
        remuneration for my efforts. I am now exploiting my intellectual property for my benefit,
        as is my exclusive right. I own no assets other than her intellectual property. I appear *pro
        se*. The court shall construe the pleadings and papers of a pro se litigant liberally.

30.     Defendant in the Counterclaim is the plaintiff in this action, Internet Archive, a California
        501(c)(3) non-profit corporation located at The Presidio of San Francisco, 116 Sheridan
        Ave., San Francisco CA 94129-1711.

31.     Defendants in the Third Party Claim for the RICO claims only are Internet Archive's
        board of directors:

        a.      Brewster Kahle, Board Chair, individually,  whose address is 513B Simonds
                Loop, San Francisco, California, 94129-1449; and

        b.      Kathleen Burch, Board Secretary, individually, whose business address is Internet
                Archive, Presidio of San Francisco, P.O. Box 2924, San Francisco, California,
                94129; and

        c.      Rick Prelinger, Board President, individually, whose business address is 301 8TH

St., Ste 215, San Francisco California, 94103-4427.

**Factual Background**

32.    As a country, our most valuable asset is innovation. Our constitution and our laws specifically protects innovation of those who have a specific talent via copyright, trade secret and patent protections and remedies.

33.    The Internet provides historically unparalleled opportunity for authors to market and publish their creative works with minimal expense and maximum public exposure. Works published on the Internet enjoy the same copyright protection as other works. There is no legal requirement that a copyright holder take steps to secure or sequester material in order to claim protection. The onus of avoiding infringement is on users, not on copyright holders - an infringement is an infringement whether the material was publicly available or password protected.

34.    Anyone wanting to make 'fair use' of a copyrighted online work need only follow the same steps as he or she would for books, periodicals or other similar publications; buy or rent a copy, subscribe to a transmission thereof or borrow a copy from a library.

35.    It is not the role of the courts to tell copyright holders the best way for them to exploit their copyrights. Market power does not impose on the intellectual property owner an obligation to license the use of that property to others. Copyright owners enjoy complete discretion in deciding whether or not to charge permission license fees and how much to charge. Nothing in the copyright statutes would prevent an author from hoarding all of his works during the term of the copyright.

36.    Unauthorized copying and distribution of works of intellectual property, such as web sites, is becoming a pervasive problem on the Internet. The basic nature of the copyright infringement (i.e., unauthorized copying and distributing) is familiar; given the speed and ease of reproducing and widely distributing information on the Internet, however, the potential harm to copyright owners is exponentially greater than the threat posed by traditional acts of infringement.

37.    The extensive misuse of the Internet for unlawful purposes is in part due to the nature of the medium. The ease with which information can be copied to and from Internet sites, the simplicity of efficiently downloading ever-larger files based on improved data compression technologies, and the relatively minor cost to a user of communicating with an audience of millions create unparalleled opportunities for copyright infringement. The relative anonymity with which Internet communications may be conducted further facilitates illegal conduct.

38.    Unscrupulous Internet users can covertly copy and transmit to the Internet copyrighted web site properties (in which they have no rights and which they have no authority to copy or distribute) thereby making available to a worldwide audience, identical reproductions of copyrighted works that can be and are further copied, distributed and used by others in virtually unlimited, and entirely uncontrolled, fashion.

39.    With the explosive growth of the Internet, and with the pervasive public sense of free entitlement to intellectual properties published on the Internet, online infringement at issue in this case will continue unchecked unless the acts of copying and distribution of copyrighted works is deterred by the courts, applying well-established principles of copyright law to infringing online conduct.

40.    The United State Attorney General encourages victims of intellectual property theft to pursue their claims civilly.

41.    Copyright is a strict liability statute.

42.    The intellectual property known as profane-justice.org is registered with the United States copyright office, and that said registration is prima facie evidence of the validity of the copyright in litigation for copyright infringement. (Registrations attached). It is undisputed that I am the copyright owner of profane-justice.org.

43.    It is undisputed that the literary content of all versions of profane-justice.org is the creation of original works by me and is fixed in a tangible medium of expression and are works that contains substantial amount of material created by my own skill, labor and

judgment and that subject matter of the work is copyrightable under laws of United States.

44.   The web site profane-justice.org has always displayed a copyright notice. Later versions also included posted limitations on use, and established license fees and terms for copying, displaying or distributing.

45.   As copyright owner, it is undisputed that I possess exclusive rights to reproduce the work (e.g., to make copies), to prepare derivative works (e.g., translation, abridgment, condensation, adaptation), to distribute copies to the public (e.g., publish, sell, rental, lease, license, or lending), to perform the work publicly, to display the work publicly.

46.   The property, profane-justice.org, was situated on a computer, computer system or computer network located in Colorado during the time frame of this complaint. This property is not transmitted to Internet patrons. Internet patrons must actively and deliberately access the computer, computer system or computer network in Colorado in order to access the web pages.

47.   The use of this property is also protected by a security agreement contract (exhibit A) and a clear advisement of that contract is published on every web page which states:

> IF YOU COPY OR DISTRIBUTE ANYTHING ON THIS SITE -
> YOU ARE ENTERING INTO A CONTRACT. READ THE
> CONTRACT BEFORE YOU COPY OR DISTRIBUTE. YOUR
> ACT OF COPYING AND/OR DISTRIBUTING OBJECTIVELY
> AND EXPRESSLY INDICATES YOUR AGREEMENT TO AND
> ACCEPTANCE OF THE FOLLOWING TERMS: *(the words
> 'following terms' contain a hyperlink to the text of the terms).*

This contract is executed in Colorado upon the user's deliberate and intentional act of copying or distributing, regardless of where the user is located.

48.   I have a single market for my web site at profane-justice.org, and that single market is the Internet.

49.   Internet Archive also serves the Internet market.

50.   Internet Archive has admitted to copying and publicly displaying my web site. (See attached list of my web site versions displayed on Internet Archive Wayback Machine -

Exhibit B - AND attached list of approximately 2006 of my copyrighted .txt pages available for display on Internet Archive Wayback Machine - Exhibit C - AND attached list of approximately 217 of my copyrighted .pdf pages available for display on Internet Archive Wayback Machine - Exhibit D)

51.  Internet Archive covertly, surreptitiously and stealthily copied my entire web site approximately 87 times between May, 1999 and October, 2004 without seeking or obtaining my permission and without paying license fees.

52.  Internet Archive publicly displayed my entire web site daily between May, 1999 and December, 12, 2005 without seeking or obtaining my permission and without paying license fees for that public display.

53.  Internet Archive knowingly and wilfully infringed my copyright when it covertly, stealthily and without notice to me, without my permission or knowledge and without my participation or permission, illegally converted electronic and/or digital copies of my web site to its own use, without paying the posted license fees, on multiple occasions, and reproduced multiple versions of my web site in permanent storage on its Wayback Machine and publicly displayed those stolen web sites and made those stolen reproductions freely available to the public on the Internet.

54.  Internet Archive knowingly and wilfully did *not* disable the copy, print, save or print screen functions of the stolen web site profane-justice.org when it publicly displayed the stolen web sites, which enabled others to infringe my copyright on a wholesale basis.

55.  Internet Archive copied my entire web site 1 time in 1999; 10 times in 2000; 12 times in 2001; 18 times in 2002; 31 times in 2003; and 15 times in 2004. This constitutes 87 instances of criminal copyright infringement in the past six years. Copyright infringement is a crime to punish and deter the misappropriation of intellectual property that an author -- who may have no means to prevent copying -- invested time, energy and money to create. Internet Archive willfully stored, reproduced or distributed profane-justice.org  on a wholesale basis.

56.    I discovered the infringement of my copyrighted intellectual property by Internet Archive on December 12, 2005, and immediately sent a cease and desist and demand letter to Internet Archive.

57.    Internet Archive honored my demand to remove the web site profane-justice.org from the Wayback Machine, a tacit admission that it did not possess the rights to display that web site without my permission. If Internet Archive truly did believe that it was engaged in fair use, it would not have removed the web site profane-justice.org when I demanded.

58.    It is undisputed that Internet Archive refused my demand to pay license fees for her intellectual property which it acquired illegally, copied and publicly displayed without permission of the copyright owner.

59.    Various versions of my web site were, in fact, knowingly and intentionally reproduced in their entirety and knowingly and intentionally publicly displayed on the Wayback Machine and full public access was provided on the Internet without comment or discussion. The illegally obtained copies of profane-justice.org were not used for purposes such as criticism, comment, news reporting, teaching, scholarship, or research. Internet Archive's use was not a transformative use of my property. This is akin to reprinting a hard copy book in its entirety, including all editions, and making that illegal reprint available to the public without charge.

60.    Internet Archive is profiting from its wholesale infringing conduct and any claim that it is not profiting is specious. Each time it infringes by stealing a copy of intellectual property and converting it to its own use, it is unjustly enriched in various ways at the expense of the copyright owner. Internet Archive is profiting from its actions, and it is facilitating the theft and infringement of intellectual property from its creator by knowingly providing free and unlimited access to my property on its Wayback Machine.

61.    By the aforementioned actions, Internet Archive assumed and exercised impermissive control over my exclusive rights as copyright owner and subsumed my ability exercise my exclusive rights to my intellectual property, especially in my target market, in favor of

Internet Archive. In effect, Internet Archive became my competitor, and took over my market by giving away for free, my intellectual property over which I had labored for 15 years without remuneration, thereby stealing the fruits of my labor. In this case, my web site works have been copied in their entirety, and the wide availability of the free, pirated copies have a drastic effect on the potential market for the author's legitimate works.

### FIRST CAUSE OF ACTION

(Copyright Infringement 17 U.S.C. §§ 101 et seq.)

62.   I repeat and re-allege the allegations of the preceding paragraphs of the Second Amended Answer and Counterclaim and Third Party Claim as if fully set forth herein. Copyright laws govern only the elements of mere reproduction or the like, and do not address the method or legality of original acquisition of the intellectual property, however, the original acquisition of the property, if acquired by theft, fraud or deceit, can give rise to the denial of fair use protections for Internet Archive's subsequent use of that property under the unclean hands doctrine and under the doctrine of equitable estoppel.

63.   Internet Archive knowingly and wilfully infringed my copyright 87 times when it copied my web site on various dates between May, 1999 and October, 2004 without my permission and without paying the posted license fees for that copying, in direct violation of her properly displayed copyright notice and license fees and terms. Between January 2002 and December 2005, it infringed my copyright 64 times.

64.   Internet Archive knowingly and wilfully infringed my copyright every day from May, 1999 to December, 2005 when it knowingly and intentionally publicly displayed its stolen copies of my entire web site on the Wayback Machine and when it maintained copies of all versions of my web site in its permanent storage in three locations around the world, including San Francisco, Egypt and the Netherlands.

65.   Internet Archive knowing and wilfully contributed to and facilitated long-term wholesale infringement and ongoing infringement of my web site when it knowingly and intentionally publicly displayed its stolen copies of my entire web site on the Wayback

Machine without disabling the copy, print, save and print screen functions for my web site thereby enabling the worldwide Internet community to infringe my copyright without her knowledge.

66. Internet Archive is precluded from arguing fair use immunity under the unclean hands doctrine and under the doctrine of equitable estoppel because its purported 'fair use' was predicated solely upon its covert and stealthy, intentional and wilful theft of the original copies of my web site. He who seeks equity, must do equity.

67. Alternatively, Internet Archive expressly waived fair use protections on 13 occasions when it copied my website pursuant to the Copyright Notice/Security Agreement displayed on my web site.

68. Alternatively, Internet Archive's use of my intellectual property is inconsistent with fair use for the following reasons:

   a. **Purpose and Character of use:** Simply because a use is allegedly educational and not for profit does not insulate it from a finding of infringement. The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price. I assert that Internet Archive *is* profiting from its wholesale infringing conduct and any claim that it is not profiting is specious. Each time it infringes by stealing a copy of intellectual property and converting it to its own use, it is unjustly enriched in various ways at the expense of the copyright owner by virtue of obtaining the property without paying for it. It also profits by virtue of the grants and donations it solicits and obtains to commit and expand its infringing acts and acquire more intellectual property.

   b. Internet Archive receives "financial gain" as defined in the No Electronic Theft Act for its infringing conduct, including receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works.

c.      Additionally, Internet Archive's use was totally devoid of commentary, instruction
or discussion thereby rendering its use strictly non-transformative. The essence of
"character and purpose" test for fair use is the transformative value, that is,
productive use, of the secondary work compared to the original. Because Internet
Archive merely republished my web site for the same intrinsic purpose as the
original publication, Internet Archive's use cannot be categorized as anything
other than a mere repackaging.

d.      **Nature of the Copyrighted Work:** My web site literary content is singularly
creative, containing insightfully unique results of her research which is not
available from any other source, as well as containing editorial commentary,
discussion, analysis and legal documents which are not generally available
anywhere else. Taken in totality, this content represents a high degree of original
and subjective thought, the unique results of 15 years of dedicated qualitative
research, and goes far beyond the realm of mere factual works.

e.      **The Amount and Substantiality of the Portion Used:** Internet Archive's use
infringed not only a substantial portion of my intellectual property, but in fact,
infringed by illegally copying and publicly displaying and by making publicly
available for further infringement, 87 stolen versions of my entire web site -
which constituted my *entire inventory of or 100%* of Internet published property
for six years . Additionally, during Internet Archive's infringement, the original
web site content continued to be published by me and accessible on the Internet by
going to www.profane-justice.org.

f.      **The Effect of the Use on Potential Markets for or Value of the Copyrighted
Work:** This factor has been held to be "undoubtedly the single most important
element of fair use." Internet Archive did not pay for the property, which deprived
me of the income from the license fees for that property and Internet Archive was
unjustly enriched by the value of those license fees by obtaining that property

illegally. Internet Archive copied my works in the manner described so that it didn't have to buy the original or additional copies of the original, or did so to avoid having to pay license fees to the author. Additionally, Internet Archive's use has caused overwhelming and irreparable harm upon the potential market for or the value of my copyrighted Internet work. Internet Archive possesses illegal copies of profane-justice.org by virtue of theft, publicly displays and allows full public access to and use of my entire inventory of intellectual property published on the Internet for free, unfettered by the license fees, exclusions and terms I imposed pursuant to my exclusive rights as copyright owner. Why would anyone purchase from me what they can obtain from Internet Archive for free - or obtain it for free from someone who obtained it from Internet Archive for free?

g.    In this case an important additional factor is the fact that Internet Archive has effectively created a new forum allied to the online publishing industry by usurping all web site authors' copyrights and profits, notwithstanding the fact that Internet Archive does not charge for its permanent storage, use and display of anyone's web sites. This cannot be sustained as its result is complete frustration of the intent of the copyright law which has been the protection of intellectual property and, more importantly, the encouragement of creative expression. Under these circumstances, if the copyright laws fail to protect my intellectual property rights, my only other option is to cease creative expression and publishing on the Internet.

h.    In fact, Internet Archive does not argue that it's use is fair use when asked to remove a web site nor insists on continuing it's use, instead, it complies with the cease and desist demand submitted by the copyright owner without question, a tacit admission that it recognizes it's use has not been consistent with fair use.

69.    By it's own admissions in its complaint, Internet Archive's infringements have been committed willfully, and have been and are being engaged in with total disregard for my

intellectual property rights.

70.    Internet Archive is in fact acting egregiously and is not merely engaged in technical violations of the law. Factors to show that Internet Archive was acting egregiously include: (1) Internet Archive engaged in a significant amount of infringement as proven by its own admission of obtaining and possessing 55 billion web pages, which is comprised of a large percentage for which it paid no license fees nor obtained prior permission to possess, and in the subject case, illegally obtaining, possessing and displaying 87 versions of my web site over six years, without my permission and without paying license fees; (2) the infringing activity occurred repeatedly over a lengthy period of time, by its own admission since 1996; and since 1999 involving 87 instances theft of my entire web site and daily infringement between May, 1999 and December 12, 2005, by placing copies of my web site in it's permanent storage and publicly displaying it; (3) Internet Archive is so involved in wholesale infringement as to lead unavoidably to the conclusion that its actions were willful; (4) Internet Archive's admissions on its own Complaint for Declaratory Relief of Copyright Non-Infringement, and its published communications and disclaimers on its web site reflect its knowledge of the illegality of its conduct, and/or malice or other criminal intent; and (5) Internet Archive refused to pay license fees demanded by me for the property it acquired in violation of my exclusive rights as copyright owner, (6) the copyrighted works that are the subject of this complaint belong to a much smaller company or single individual, namely me, whose sole assets consist of my intellectual property inventory and whose profitability has certainly been jeopardized by Internet Archive's conduct.

71.    As a direct cause of this infringement, I have suffered continued, ongoing and far-reaching copyright infringement, effectuation of new and further infringements, depreciation in the value of and ability to sell and license my work, lost profits and/or opportunities, and damage to my goodwill and reputation.

72.    As a direct cause of this infringement, I have suffered actual and statutory damages.

## SECOND CAUSE OF ACTION

(Civil Theft and/or Conversion)

73.    I repeat and re-allege the allegation of the preceding paragraphs of the Second Amended

Answer  and Counterclaim and Third Party Claim as if fully set forth herein. Relevant

state law violations are predicated upon Internet Archive committing acts incorporating

elements beyond mere reproduction or the like, including but not limited to Internet

Archive's method of initially acquiring the property through acts of computer crime

and/or the theft/conversion of my property, therefore my rights involved are not

equivalent and preemption will not occur; and this cause of action does not provide a

substitute rule of law, but merely an additional means of recovery.

74.    Between the dates of and between May, 1999 and October, 2004, on approximately 87

occasions, Internet Archive electronically and/or digitally entered the computer, computer

system or computer network, located in Colorado and/or leased by my business which

operates in Colorado, wherein successive versions of my copyrighted web site profane-

justice.org were situated in electronic and/or digital format, and surreptitiously, covertly

and stealthily and without notice to me, electronically and/or digitally copied my entire

web site and assumed unauthorized control of those stolen copies, and transmitted the

stolen copies of my entire web site back to Internet Archive computers for permanent

storage, without my permission, knowledge or consent, and without paying license fees

for that intentional copying, and wilfully concealing from me that it had taken copies, and

without paying license fees for its intended subsequent public display of my stolen web

sites, and wilfully concealing from me that it intended to publicly display its stolen

copies, and converted my intellectual properties to its own use and purpose, and refused

my demand to pay license fees for the intellectual property it acquired,  thereby

permanently depriving me of the use or benefit of my property.

75.    I discovered this theft of my intellectual property on December 12, 2005.

76.    As a direct cause of this theft, I have suffered lost profits and/or opportunities.

77.   As a direct cause of this theft, I have suffered actual damages. Assuming these damages
      are computed based on my actual published license fees for the stolen copies of only <u>one</u>
      of the 87 thefts consisting of the latest stolen version of my entire web site, the actual
      damages would be $1,035,000. A search of Internet Archive Wayback Machine archives
      on December 12, 2005 revealed a purported 2223 stolen pages from profane-justice.org
      stored on the Wayback Machine (see exhibits C & D). Pursuant to Colorado Revised
      Statutes §18-4-405, I am entitled to triple damages for civil theft as well as attorney fees
      and costs.

### THIRD CAUSE OF ACTION

(Breach of Contract)

78.   I repeat and re-allege the allegation of the preceding paragraphs of the Second Amended
      Answer and Counterclaim and Third Party Claim as if fully set forth herein. Breach of
      Contract claims are not preempted because Internet Archive's violations are predicated
      upon acts incorporating elements beyond mere reproduction or the like, therefore, my
      rights involved are not equivalent and preemption will not occur; and this cause of action
      does not provide a substitute rule of law, but merely an additional means of recovery.

79.   Internet Archive expressly entered into a contract, defined and published on my web site
      as "Copyright notice/security agreement" (see exhibit A), with me. The security
      agreement contained an offer to copy or distribute the web site profane-justice.org in
      exchange for pre-payment of posted license fees. Internet Archive expressly accepted the
      offer of copying my web site profane-justice.org when it affirmatively performed the act
      of copying my web site, profane-justice.org on 13 occasions between March 25, 2004 and
      October 16, 2004. Dates it entered into this contract include:

      a.   March, 25, 2004

      b.   March 29, 2004

      c.   April 11, 2004

      d.   May 19, 2004

Second Amended Answer & Counter Claim & Third Party Claim  - Case No. 06-CV-01726-LTB-CBS        17

    e.      May 23, 2004

    f.       June 6, 2004

    g.      June 7, 2004

    h.      June 14, 2004

    i.       June 15, 2004

    j.       July 22, 2004

    k.      September 25, 2004

    l.       September 26, 2004

    m.    October 16, 2004

80.    Internet Archive possesses the capacity and authority to enter into contracts.

81.    Internet Archive did not seek, did not receive and does not possess the requisite written permission from the copyright owner as defined in the security agreement.

82.    Internet Archive did not prepay the permission license fees for copying the web site profane-justice.org as required by the notice of license fee schedule published on every web page at profane-justice.org and as required by the security agreement which was hyperlinked to the notice of license fee schedule.

83.    Internet Archive received the offered consideration as a result of that transaction, specifically, copies of my intellectual property, the web site profane-justice.org.

84.    I did not receive the express promised consideration from Internet Archive, e.g. prepayment of posted license fees or damages and penalties cited in the security agreement therefore Internet Archive was unjustly enriched when it acquired my intellectual property.

85.    The security agreement contract is in written form, therefore Internet Archive is bound by its terms regardless of whether Internet Archive read it or not.

86.    Internet Archive cannot argue that the posted license fees for copying profane-justice.org are unreasonable or too high under the principle that a party to a contract cannot escape the consequences of bad negotiation.

87.　Internet Archive breached the security agreement contract when it harmed me and my property, and when it used the property for commercial gain as defined in the contract, and when it failed to seek or obtain permission of the copyright owner prior to copying, and when it failed to prepay posted license fees for copying, and when it failed to fulfil other terms of the security agreement prior to copying my web site and it breached the contract when it refused my demand for payment upon my discovery of its copying.

88.　As a direct cause of Internet Archive's breach of contract, I have suffered lost profits and actual damages totaling a minimum of $3,900,000 pursuant to the terms of the security agreement which specifies damages:

   a.　. . . in the sum certain amount of $250,000.00 per each occurrence of unauthorized use of the aforementioned copyrighted material or the appropriate license fees as posted on copyright notice, whichever is greater, and imposes a penalty for failure to pre-pay posted license fees in the sum-certain amount of $50,000.00 per each occurrence of failure to pre-pay license fees, plus costs, plus triple damages;

## FOURTH CAUSE OF ACTION

(Racketeering or RICO)

89.　I repeat and re-allege the allegations of the preceding paragraphs of the Second Amended Answer and Counterclaim and Third Party Claim as if fully set forth herein. Racketeering claims are not preempted because Internet Archive's violations are predicated upon acts incorporating elements beyond mere reproduction or the like, therefore, my rights involved are not equivalent and preemption will not occur; and this cause of action does not provide a substitute rule of law, but merely an additional means of recovery.

### Defendant Persons

90.　Named as RICO defendant on the Counterclaim is the plaintiff in this action, Internet Archive, a 501(c)(3) public non-profit organization.

91.　Also named as RICO defendants on the Third Party Claim are Brewster Kahle, an individual holding the position of Internet Archive Board Chair who is also the founder of Internet Archive, and Kathleen Burch, an individual holding the position of Internet

Archive Board Secretary, and Rick Prelinger, an individual holding the position of
Internet Archive Board President.

## Victims

92.    Victim of Internet Archive's pattern of racketeering activity in this action is Suzanne
Shell.

93.    Victims not named in this complaint also include any or all of the copyright owners and
authors of the purported 55 billion web pages currently or historically published or
permanently stored at the Internet Archive Wayback Machine. Internet Archive has been
previously sued by at least one other alleged victim of copyright infringement.

## The Enterprise

94.    The subject enterprise is a published association-in-fact between - including but not
necessarily limited to - the following independent persons and/or entities:

    a.    Internet Archive, the Internet Archive Wayback Machine, and Internet Archive's
board of directors and its agents and employees

    b.    Prelinger Archives

    c.    Alexa Internet

    d.    Library of Congress

    e.    Smithsonian Institute

## Defendant's Operation or Management of the Enterprise

95.    The Enterprise is operated and managed by Internet Archive under the direction,
management and control of it's board of directors, and has been in operation since 1996.
According to its web site:

> "The original idea for the Internet Archive Wayback Machine
> began in 1996, when the Internet Archive first began archiving the
> web. Now, five years later, with over 100 terabytes and a dozen
> web crawls completed, the Internet Archive has made the Internet
> Archive Wayback Machine available to the public. . . .The Internet
> Archive Wayback Machine is owned and operated by the Internet
> Archive."

96.     Internet Archive is engaged in the business of obtaining and archiving online intellectual

        property, purportedly obtaining it legally. Internet Archive provides  technology and

        mechanisms whereby copyright owners can voluntarily donate a copy of their intellectual

        properties to Internet Archive for inclusion in the Internet Archive Wayback Machine.

        Some of the content of the Wayback Machine is legally obtained through these

        mechanisms.

97.     The Enterprise, under the management of Internet Archive, also obtains vast amounts of

        intellectual property illegally, which it publishes in the same manner as the legally

        acquired intellectual property on the Internet Archive Wayback Machine as described on

        the Internet Archive web site:

> "The Internet Archive Wayback Machine contains approximately 1
> petabyte of data and is currently growing at a rate of 20 terabytes
> per month. This eclipses the amount of text contained in the
> world's largest libraries, including the Library of Congress. If you
> tried to place the entire contents of the archive onto floppy disks
> (we don't recommend this!) and laid them end to end, it would
> stretch from New York, past Los Angeles, and halfway to Hawaii."

98.     The Enterprise, under the management of Internet Archive, then makes the illegally

        acquired intellectual property available to the public as described on its web site:

> "The Archive makes the collections available at no cost to
> researchers, historians, and scholars. At present, it takes someone
> with a certain level of technical knowledge to access collections in
> a way other than our web site, but there is no requirement that a
> user be affiliated with any particular organization."

> "Now, five years later, with over 100 terabytes and a dozen web crawls
> completed, the Internet Archive has made the Internet Archive Wayback
> Machine available to the public."

Second Amended Answer & Counter Claim & Third Party Claim - Case No. 06-CV-01726-LTB-CBS          21

99.    Internet Archive also describes its associations in this endeavor:

> "The Archive collaborates with institutions including the Library of Congress and the Smithsonian."

> "The Internet Archive has relied on donations of web crawls, technology, and expertise from Alexa Internet and others."

100.   Internet Archive Board of Directors Brewster Kahle, Kathleen Burch and Rick Prelinger had knowledge of the pattern of racketeering activity, and participated in, devised and oversaw the pattern of racketeering activity, and possessed the power, ability and authority to compel Internet Archive to cease engaging in the pattern of racketeering activity.

## **The Pattern**

101.   According to Internet Archive's web site, using Alexa Internet technology and other donated technology, the Enterprise, under the auspices of Internet Archive, illegally and impermissibly acquires intellectual property using "automated crawlers" which covertly and stealthily collect publicly accessible Web pages and return a copy of the pages collected to the Internet Archive Wayback Machine computers for permanent storage, public display and public access. Internet Archive boasts that it has completed twelve complete Web crawls since 1996.

102.   Upon information and belief, the covert and stealth automated copying, collection and transmission of intellectual property is performed by Internet Archive without notice to the copyright owners, and without their consent or permission, and frequently without their knowledge.

103.   Upon information and belief, Internet Archive's covert and stealth automated copying,

collection, transmission and permanent storage of intellectual property is performed

without seeking, purchasing or otherwise obtaining a license to legally obtain the first

copy, to permanently store or to publicly display the collected pages, and without seeking

permission from the copyright owner in advance and without negotiating for license fee

reductions or waivers.

104.   Internet Archive states that it "[is] proceeding with documenting the growth and content

of the Internet, using libraries as our model." However, unlike libraries who <u>purchase</u>

their original copies of books, periodicals, and audio/video recordings before making

them freely available to the public. The Enterprise, under the management of Internet

Archive, utilizes web crawlers that  automatically, covertly and stealthily transmit

electronic and/or digital instructions to other computers, computer systems and/or

computer networks, which enables Internet Archive to literally ***steal*** a copy of any digital

and/or electronic intellectual property from any location on the Internet and transmit that

stolen copy back to Internet Archive for ultimate inclusion in the permanent storage of

and display on the Internet Archive Wayback Machine, all without ever leaving Internet

Archive offices in San Francisco and without the knowledge of the copyright owners.

105.   Internet Archive offers multiple methods of 'opting out' of inclusion in the Wayback

Machine, which establishes that Internet Archive is well aware that its stealth and covert

copying and collection of web pages activities are unlawful and proves its wilfulness. In

fact, Internet Archive does not argue that it's use is fair use when asked to remove a web

site nor insists on continuing it's use. Instead, it complies with the cease and desist

demand by the copyright owner without question, a tacit admission that it recognizes it's

use has not been consistent with fair use. Internet Archive's own Terms of Service

clickwrap agreement also clearly indicates that it understands copyright law, because it

requires its users, as a condition of using the Wayback Machine, to agree to not engage in

the same infringing conduct that Internet Archive engages in.

106.    Internet Archive refuses legitimate demands by copyright owners to pay license fees for

the original copies of web sites that it has impermissibly or illegally acquired by means of

its automatic, covert, stealth web crawlers.

107.    The aforementioned acts constitute knowing and wilful copyright infringement on a

massive scale.

108.    The aforementioned infringement is a direct cause of harm to copyright owners'

properties and businesses.

109.    The Enterprise, under the management of Internet Archive, has been engaged in this

pattern of intellectual property theft and copyright infringement since 1996. It has

publicly made it clear that it intends to continue in the same pattern.

### Racketeering Activity and Predicate Acts

110.    Regardless of whether a RICO claim is predicated upon state or federal criminal

violations (or a combination of both), the defendant need not be criminally convicted

before a civil plaintiff can sue for treble damages under RICO. The statute requires only

that the criminal activities are "chargeable" or "indictable" under state or federal law, not

that the defendant has already been charged or indicted.

111.  Internet Archive is an individual "person," and Brewster Kahle, Kathleen Burch and Rick

Prelinger are individual "persons," within the meaning of 18 U.S.C. §§ 1961(3) and

1962(c) and (d), and Colorado Revised Statutes § 18-17-103(4) and § 18-17-104(3) who

associated with and/or participated in the conduct of said enterprise's affairs.

112.  Between 1996 and the present, and with regard to me for the purposes of this

Counterclaim and Third Party Claim between May 8, 1999 and December12, 2005,

Internet Archive,  Brewster Kahle, Kathleen Burch and Rick Prelinger conducted,

participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of

the affairs of the enterprise through a pattern of racketeering activity within the meaning

of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c) and (d) and within the meaning of

Colorado Revised Statutes §§ 18-17-103(3), 18-17-103(5) and 18-17-104(3), Internet

Archive's pattern of racketeering activity consisted of :

a.  **Mail and Wire Fraud e.g. 18 U.S.C. § 1343. Fraud by wire, radio, or**

**television and § 1341. Frauds and swindles:** Internet Archive, Brewster Kahle,

Kathleen Burch and Rick Prelinger have devised or intended to devise a scheme

or artifice for acquiring intellectual property and maintaining interest and control

in the illegally acquired intellectual property by means of false or fraudulent

pretenses, representations or promises; which scheme to defraud includes material

misrepresentations, or the omission or concealment of material facts, including

conduct which fails to conform to standards of moral uprightness, fundamental

honesty, and fair play, and including conduct calculated to deceive, whether it be by direct falsehood or by innuendo, by speech or silence, by word of mouth, by look, or by gesture, including the suppression of the truth, wherein fraud and deceit arose from Internet Archive's silence where there was an affirmative legal and moral duty to seek permission from the copyright owner prior to acquiring copyrighted intellectual property; and where Internet Archive's silence associated with its acquisitions of intellectual property was wilful and intentional fraud in order to avoid paying permission license fees or obtaining permission from the copyright owners thereby causing injury to the copyright owners and their intellectual property and businesses, when the Counterclaim and Cross Claim Defendants covertly, secretly and stealthily transmitted or caused to be transmitted by means of wire or other communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice of finding and acquiring said intellectual property by means of wire or other communication and to covertly, secretly and stealthily transmit the stolen copy of that property to Internet Archive for its own use and purposes, and to transmit multiple copies of the illegally acquired properties to multiple computers in various locations for permanent storage.

b.   **18 U.S.C. § 2319. Criminal infringement of a copyright 17 U.S.C. § 506.**
Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger infringed my copyrights between 1999 and 2005, and the copyrights of other copyright

owners between 1996 and 2006, willfully for purposes of commercial advantage

or private financial such as acquiring continuing grant awards, donations, unjust

enrichment, and the expectation of acquiring additional intellectual property, etc. -

including but not limited to illegally copying, distributing, displaying and using

infringed and stolen intellectual property - or by the reproduction or distribution,

including by electronic means, during any 180-day period, of 1 or more copies of

1 or more  copyrighted works, which have a total retail value of more than $1,000;

c.      **§ 18-4-401  C.R.S. Theft**. On approximately 87 occasions between May, 1999

and October, 2004, Internet Archive, Brewster Kahle, Kathleen Burch and Rick

Prelinger electronically and/or digitally entered my computer, computer system or

computer network located in Colorado and/or licensed by my business which

operates in Colorado, wherein successive versions of my copyrighted intellectual

property, profane-justice.org were situated in electronic and/or digital format, and

surreptitiously, stealthily and covertly and without notice to me, copied my entire

web site and deceptively assumed control of those copies without authorization,

and electronically and/or digitally transmitted the stolen digital or electronic

copies of my entire web site back to Internet Archive computers for permanent

storage, without my permission, knowledge or consent, and without paying

license fees to me for that intentional theft and unauthorized copying and wilfully

concealing from me that it had taken unauthorized copies, and without paying

license fees for its intended subsequent public display of me web site, and wilfully

concealing from me that it intended to publicly display its stolen copies and did in fact display its stolen copies, and converted my intellectual properties to its own use and purpose, and refused to pay demanded license fees for those stolen copies thereby permanently depriving me of the use or benefit of my property.

d.    **§ 18-5.5-102(a) C.R.S. Computer crime.** On approximately 87 occasions between May, 1999 and October, 2004, Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger accessed the computer, computer network, or computer system or any part thereof which was situated in Colorado and wherein my web site was situated and exceeded authorized access to that computer, computer network, or computer system or any part thereof; or used a computer, computer network, or computer system or any part thereof without authorization or in excess of authorized access; illegally copying my web site which exceeded their published authority to do so, and transmitted or caused to be transmitted the stolen copies of my intellectual property to Internet Archive's computers.

e.    **§ 18-5.5-102 (d) C.R.S. Computer Crime.** On approximately 87 occasions between May, 1999 and October, 2004, Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger accessed the computer, computer network, or computer system, or any part thereof, which computer was situated in Colorado and which hosted my web site, to commit theft of my intellectual property e.g. my web site profane-justice.org.

These acts all occurred after the effective date of RICO and more than two such

acts occurred within ten years of one another.

113.    At all relevant times, the enterprise alleged herein was engaged in, and their activities

affected, interstate commerce and foreign commerce.

114.    All of the predicate acts described herein were related so as to establish a pattern of

racketeering activity, within the meaning of 18 U.S.C. § 1962(c) and (d) and § 18-17-

104(3) C.R.S., in that their common purpose was to infringe copyrights and acquire

intellectual properties by theft and/or fraud; their common result was to infringe

copyrights, including but not limited to my copyright, and acquire intellectual property,

including but not limited to my intellectual property, by theft and/or fraud; Internet

Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger, personally or through their

actors or agents, directly or indirectly, participated in all of the acts and employed the

same or similar methods of commission; I was the victim of the acts of racketeering;

and/or the acts of racketeering were otherwise interrelated by distinguishing

characteristics and were not isolated events.

115.    All of the predicate acts described herein were continuous so as to form a pattern of

racketeering activity in that:

a.    Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger engaged in

the predicate acts over a substantial period of time; or

b.    The patterns of racketeering activity engaged in by Internet Archive, Brewster

Kahle, Kathleen Burch and Rick Prelinger continues or threatens to continue

because the such conduct has become a regular way of conducting Internet

Archive's on-going business activities.

116.    As a direct and proximate result of, and by reason of, the activities of Internet Archive,

Brewster Kahle, Kathleen Burch and Rick Prelinger and their conduct in violation of 18

U.S.C. §§ 1962(c) and (d) and  § 18-17-104(3)  C.R.S., I have been injured in my

business or property, within the meaning of 18 U.S.C. § 1964(c) and § 18-17-106(7)

C.R.S.  Among other things, I have suffered damages to the extent Internet Archive

infringed my copyright, and illegally obtained my intellectual property by theft, and

exercised dominion and control over that property, and refused to pay license fees for the

acquisition and use of that property and deprived me of the use and benefit of that

property and harmed my business and property. I am, therefore, entitled to recover

threefold the damages I have sustained together with the cost of the suit, including

reasonable attorneys' and experts' fees.

### RELIEF

(Damages and Injunctive Relief)

Wherefore, I demand trial by jury and judgment from the Court as follows:

a.      To join  Brewster Kahle, Kathleen Burch and Rick Prelinger to this action as

persons needed for just adjudication pursuant to Fed.R.Civ.P. 19.

b.      To award damages against Internet Archive, for copyright infringement, vicarious

copyright infringement  and contributory copyright infringement for a sum of

money equal to the amount of damages and/or losses I have sustained or will

sustain; or

c.   In lieu thereof, should I elect an award of statutory damages, pursuant to 17

U.S.C. § 504(c) against Internet Archive, to be increased to the maximum

permitted by law, for each act of willful, copyright infringement, vicarious

copyright infringement  and contributory copyright infringement;

d.   To award me damages against Internet Archive, Brewster Kahle, Kathleen Burch

and Rick Prelinger, jointly and severally, for a sum of money equal to the amount

of damages and/or losses I have sustained or will sustain, for engaging in a pattern

of racketeering activity, and to treble the amount of said damages pursuant to 18

U.S.C. § 1964(c) and C.R.S. § 18-17-106(7).

e.   To award me actual and treble damages against Internet Archive for civil theft

pursuant to § 18-4-405  C.R.S. ;

f.   To award me damages in the amount of $11,700,000 against Internet Archive, for

breach of contract pursuant to the security agreement it expressly entered into with

me by virtue of Internet Archive's copying of and distribution of my web site;

g.   To award punitive damages pursuant to Colorado statutory or common law;

h.   To enjoin Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger,

from all future copyright infringement and theft of intellectual property, and to

require them to pay license fees or to negotiate reductions or waivers of license

fees for its original acquisitions like libraries do, and to obtain written permission

from and/or to establish an affirmative 'opt-in' policy and technology which is

executed solely by the copyright owner, before copying, storing or publicly

displaying anyone's intellectual property in any format;

i.    Issue appropriate orders pursuant to 18 U.S.C. §1964, including, but not limited

to: ordering Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger,

to divest themselves of any interest, direct or indirect, in the enterprise known as

the Internet Archive and the Internet Archive Wayback Machine; imposing

reasonable restrictions on the future activities or investments of Internet Archive,

Brewster Kahle, Kathleen Burch and Rick Prelinger, including, but not limited to,

prohibiting Internet Archive, Brewster Kahle, Kathleen Burch and Rick Prelinger,

from engaging in the same type of endeavor as they have been engaged in, the

activities of which affect interstate or foreign commerce; or ordering dissolution

or reorganization of Internet Archive;

j.    To award prejudgment interest on the amount of damages and/or losses that I have

sustained;

k.    To award all costs of litigation incurred by me, including my reasonable attorneys'

fees and experts' fees, pursuant to 18 U.S.C. § 1964(c) and § 18-17-106(7)

C.R.S. ;

l.    To provide me with opportunity to correct deficiencies or errors associated with

my pro se pleadings in the interests of justice;

  m.  To award such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

_____ October 4, 2006

Suzanne Shell, Defendant  - pro se
14053 Eastonville Rd, Elbert, CO 80106
Phone: (719)749-2971
Fax: (719)749-2972
Email: dsshell@ix.netcom.com

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the attached document **MOTION TO AMEND and SECOND AMENDED ANSWER** and **COUNTERCLAIM** and **THIRD PARTY CLAIM** were placed in the United States Mail, first class mail, postage prepaid on October 4, 2006

Perkins Coie, LLP
4 Embarcadero Center, Suite 2400
San Francisco, CA 94111

_____ October 4, 2006

Suzanne Shell