IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No.:  06-cv-01726-LTB-CBS

---

INTERNET ARCHIVE, a California 501(c)(3) non-profit organization,

     Plaintiff and Counterclaim Defendant,

v.

SUZANNE SHELL, a Colorado resident,

     Defendant and Counterclaimant.

---

INTERNET ARCHIVE'S MOTION TO DISMISS COUNTERCLAIMS

---

**<u>Introduction</u>**

After threatening plaintiff and counterclaim-defendant Internet Archive, a non-profit digital library, with a baseless lawsuit challenging the Archive's mission of creating a historical record of the Internet that is accessible to the public (a practice that has recently been held lawful with respect to other archivists by at least two courts), defendant and counterclaimant Suzanne Shell ("Shell") has now attempted to turn up the heat on this non-profit organization with a series of far-fetched and legally inapposite counterclaims.  With the exception of her copyright infringement claim (which is substantively without merit but probably properly alleged), Shell's counterclaims fail to state a claim on which relief can be granted.

In particular, Shell has brought claims for conversion and civil theft (though she conflates the two) based on the allegation that "Internet Archive … entered the computer… wherein successive versions of [Shell's] copyrighted website profane-justice.org were situated … and … copied [Shell's] entire website."  [Second Amended Answer and Counterclaim ("Counterclaim"),

¶ 74].  Shell has not alleged and cannot allege that Internet Archive exercised dominion or control over her website, an essential element of both of these claims, and she fully admits that her website was just as available to her after Internet Archive's purported infringements, so she was never deprived of it.  [*See* Counterclaim, ¶ 68(e)].  More fundamentally, these claims seek redress for the very same acts of reproduction of purportedly copyrighted materials as her copyright infringement claim, and are therefore preempted by the federal Copyright Act.

Shell's breach of contract claim is even more flawed.  Shell contends that Internet Archive's automated "crawler" entered into a written contract, entitled "Copyright Notice" but which also purports to be a "Self-executing Contract/Security Agreement in Event of Unauthorized Use," which provided that Internet Archive could not copy or otherwise use pages from Shell's website "without the prior, express written consent and acknowledgment of the Copyright owner's signature in red ink."  [*See* Counterclaim, ¶ 47, Exh. A].  The "Copyright Notice/Security Agreement," which Shell admittedly did not provide to Internet Archive, goes on to state that absent express written consent, any use "constitutes unauthorized use, counterfeiting, and infringement of the copyrighted material."  *Id*.  Notably, Shell has not alleged—because she cannot—that Internet Archive ever knowingly accepted these terms, or even that a binding agreement was formed.  Moreover, even setting aside the formation or enforceability of this "agreement" (or lack thereof), it is apparent from Shell's papers that this "breach of contract" claim is nothing more than a thinly disguised copyright infringement claim.  Accordingly, this claim, should also be dismissed because is it preempted by the Copyright Act.

Finally, in her most creative act of pleading, Shell purports to assert a claim against Internet Archive (as well as certain of its directors[1]) for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO").  Here, Shell alleges that Internet Archive and its cohorts

---

[1]  Internet Archive understands that Shell has not yet served the individual defendants.  As a result, the claims against the individual defendants will be addressed in separate papers.

engaged in racketeering by collecting and providing public access to a historical library of the Internet.  While Shell may have devoted eleven pages to this "claim," she failed to properly plead conduct constituting any of the "predicate acts" required by the RICO statute, failed to articulate the allegedly unlawful conduct with sufficient particularity, and did not even allege the existence of a racketeering enterprise.

Accordingly, Internet Archive respectfully requests that Shell's Second, Third and Fourth Counterclaims be dismissed with prejudice.

### Statement of Facts

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT INTERNET ARCHIVE**

Internet Archive is a non-profit organization that was founded in 1996 to build an Internet library (located at www.archive.org), with the purpose of providing permanent access for researchers, historians, and scholars to the digital world.  [*See* Complaint for Declaratory Relief of Copyright Non-Infringement ("Complaint"), ¶ 1].  Internet Archive's Wayback Machine provides public access to archived website content, and it can be used to access over 55 billion Web pages archived as early as 1996.  Collaborating with institutions such as the Library of Congress and the Smithsonian, Internet Archive is working to preserve a record of modern society's history and culture for generations to come.  [*See* Complaint, ¶ 7].

Open and free access to literature and other written materials has long been considered essential to the education and maintenance of an open society.  Public and philanthropic enterprises have supported such access through the ages.  To that end, the Internet Archive is working to prevent the Internet—a modern medium with profound historical significance—and the 'born-digital' materials from which it is comprised from disappearing into the past. [ *See* Complaint, ¶ 6].

As Stewart Brand, President of the Long Now Foundation noted:  "The Internet Archive is a service so essential that its founding is bound to be looked back on with the fondness and

respect that people now have for the public libraries seeded by Andrew Carnegie a century ago…. Digitized information, especially on the Internet, has such rapid turnover these days that total loss is the norm. Civilization is developing severe amnesia as a result; indeed it may have become too amnesiac already to notice the problem properly. The Internet Archive is the beginning of a cure – the beginning of complete, detailed, accessible, searchable memory for society, and not just scholars this time, but everyone." [*See* Complaint, ¶ 8].

The automated crawlers that collect data for the Internet Archive are controlled by, and are fully compliant with, standard web protocols. Indeed, these crawlers respect the well-known robots.txt standard, which is the most popular method for controlling the behavior of automated crawlers.[2] Moreover, and in an effort to accommodate website authors who do not want a historical record made of their sites, Internet Archive provides information on its website advising website owners of the steps that they should to take to remove websites from the historical archives. Internet Archive also removes documents from the Wayback Machine upon request by the website author or publisher. [*See* Complaint, ¶ 9].

**DEFENDANT AND COUNTERCLAIMANT SUZANNE SHELL**

Defendant and counterclaimant Suzanne Shell is an individual residing in Elbert, Colorado. Shell promotes herself as an advocate for, and consultant to, individuals accused of child abuse or neglect. Shell is active on the Internet and maintains an Internet website at www.profane-justice.org, through which she markets herself, her services, and publications. [*See* Complaint, ¶ 2].

Shell is no stranger to the litigation process, as described in an article entitled "Beyond Contempt," which was published at URL http://www.westword.com/issues/2005-02-

---

[2] The robots.txt protocol is a convention to prevent cooperating web crawlers from accessing all or part of a website. The information specifying the parts that should not be accessed is located in a file in the top-level directory of the website. The protocol is purely advisory and relies on the voluntary cooperation of the web crawler. *See* http://en.wikipedia.org/wiki/Robots.txt

10/news/features.html.  According to the Westword.com article, Shell is under an injunction from the State Supreme Court of Colorado for the unauthorized practice of law in connection with her advocacy on behalf of individuals accused of child abuse and neglect.  [*See* Complaint, ¶ 17].  Moreover, Shell seeks out copyright litigation, as she offers a "reward" in the form of a percentage of any payment received, or damages awarded to, anyone reporting copyright infringement of the materials posted on her www.profane-justice.org website.  [*See* Complaint, ¶ 18; Counterclaim, ¶ 18].

Throughout her counterclaims, Shell touts the Copyright Notice that appears on her website, and that purports to be a "Self-executing Contract/Security Agreement."  [*See* Counterclaim, Exh. A].  Among the terms included in this "Notice" are that by "copying" her website, an act which necessarily occurs every time someone visits her website through the routine operation of the visitor's Internet browser, a "User" consents to, among other things, a "Security Agreement, wherein User is debtor and Suzanne Shell is Copyright owner, and … User; (1) grants Copyright owner a security interest in all the User's assets, land and personal property, and all User's interests in assets, land and personal property, in the sum certain amount of $250,000.00 per each occurrence of unauthorized use of the aforementioned copyrighted material or the appropriate license fess as posted on copyright notice, whichever is greater, and imposes a penalty for failure to pre-pay posted license fees in the sum-certain amount of $50,000.00 per each occurrence of failure to pre-pay license fees, plus costs; plus triple damages."  "User" also "pledges all User's assets, land, consumer goods, farm products, inventory, money, gold, silver, diamonds, investment property, commercial tort claims, letters of credit, letter of-credit rights, chattel paper, instruments, deposit accounts, documents, and general intangibles, and all of User's interest in all such foregoing property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located, as collateral for securing User's contractual obligation in favor of Copyright owner for User's unauthorized use of

Copyright owner's copyrighted property." "User" also consents "not [to] claim that any [of the filings required] is bogus, frivolous or vexatious;" "User" "waives all defenses" and "[a]ppoints Copyright owner as Authorized Representative for User … granting Copyright owner full authority and power for engaging in any and all actions on behalf of User including, …. directing the disposition of … funds in said deposit account by acting as signatory on said account without further consent of User." Shell's "Self-executing Contract" also claims that "User" agrees that "all 'Fair Use' exceptions or affirmative defenses shall not apply," and "authorizes Copyright owner's immediate non-judicial strict foreclosure on any and all remaining property and interest in property."

## BACKGROUND OF THE DISPUTE

On December 12, 2005, Internet Archive's Copyright Agent received an email from Shell asserting that she owned a registered copyright in the website www.profane-justice.org and complaining about Internet Archive's inclusion of Web pages from the www.profane-justice.org website in its historical archive. [Complaint, ¶ 11; *see also* Counterclaim, ¶ 11]. In that email, Shell threatened to sue Internet Archive for copyright infringement and to seek damages, including any additional liability created by third parties who accessed the www.profane-justice.org website through the Wayback Machine. [Complaint, ¶ 12; *see* Counterclaim, ¶ 12].

In response to the December 12, 2005 email, Internet Archive immediately removed the website from the Wayback Machine. As a result, the www.profane-justice.org website is no longer available through the Wayback Machine and has not been for nearly a year. [Complaint, ¶ 13; *see* Counterclaim, ¶¶ 13, 59].

Not satisfied with Internet Archive's rapid and reasonable response, Shell reiterated her threat to sue Internet Archive if it was unwilling to offer her a monetary settlement. Specifically, Shell advised Internet Archive that she would file suit unless the Internet Archive pays her the sum of $100,000.00. [Complaint, ¶ 14].

Prior to filing this action, and faced with growing threats, Internet Archive contacted Shell in an effort to determine whether there was something short of monetary compensation that would satisfy her concerns.  Shell curtly responded that unless Internet Archive would pay her, she intended to file suit.[3]  [Complaint, ¶ 15].

As a result of Shell's demands, threats of litigation, and litigious reputation, Internet Archive filed the present suit for a declaratory relief of copyright non-infringement on January 20, 2006 in the Northern District of California.  Shell filed her original answer and her original counterclaims on March 10, 2006, and she filed her amended answer and amended counterclaims on March 13, 2006.  The parties later stipulated to transfer the case to the District of Colorado, and the Complaint was re-filed with this Court on August 31, 2006.

On October 6, 2006, Shell filed a Motion to Amend her Complaint to add Individual Defendants Brewster Kahle, Kathleen Burch and Rick Prelinger to her RICO Counterclaim, which Internet Archive did not oppose.  On November 1, 2006, this Court granted that unopposed Motion.  There is a Scheduling and Planning Conference on calendar for December 20, 2006.

<u>Argument</u>

## I.    LEGAL STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted without leave to amend if it appears that the plaintiff cannot plead a set of facts in support of its claim that would entitle it to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  While in the context of ruling on motion to dismiss, facts well-pleaded must be taken as true, the Court is not bound to accept as true statements that are merely conclusory.  *Coburn v. Nordeen*, 72 Fed.Appx. 744, 746 (10th Cir.

---

[3]  Now, by her Counterclaims, Shell seeks "damages" in excess of tens of millions of dollars from the non-profit Archive.  [*See* Counterclaim, pp. 38-41.]

2003).  Similarly, "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them" may likewise be disregarded.  *Bryson v. City of Edmond,* 905 F.2d 1386, 1390 (10th Cir. 1990).

**B.      Copyright Act Preemption.**

The Copyright Act grants authors the exclusive right "to reproduce the copyrighted work in copies," "to prepare derivative works based upon the copyrighted work," to distribute copies … to the public," and "to display the copyrighted work publicly."  17 U.S.C. § 106. Where a state law cause of action raises issues that is equivalent to or falls within these protections afforded by the Copyright Act, they are preempted as set forth in 17 U.S.C. § 301(a):

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright … are governed exclusively by this title.

In the Tenth Circuit, a state law cause of action is preempted by the Copyright Act if two elements are present:  *(i)* the work involved must fall within the "subject matter" of the Copyright Act, and *(ii)* the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act.  *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985), *cert. denied*, 479 U.S. 820, 107 S. Ct. 86 (U.S. Oct. 6, 1986) (finding plaintiff's conversion claim preempted by federal copyright law because *(i)* the notes taken and copied were the subject of copyright and *(ii)* plaintiff did not seek the return of the physical copies, but rather to recover damages flowing from their reproduction and distribution).

## II.   THE COUNTERCLAIMS ASSERTED BY SHELL FOR CIVIL THEFT / CONVERSION, BREACH OF CONTRACT, AND RACKETEERING MUST BE DISMISSED.

### A.   Shell Has Not Properly Stated A Claim For Civil Theft / Conversion, And Such Claim, If Properly Stated, Would Be Preempted By The Copyright Act.

#### 1.   Shell has failed to state a claim for conversion.

Under Colorado law, conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Itin v. Ungar*, 17 P.3d 129, 131 (Colo. 2000).  Moreover, a successful claim for conversion depends on an allegation that the owner demanded a return of property, and that the controlling party refused to return it.  *Glenn Arms Associates v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo.App. 1984).

Nowhere in Shell's counterclaim has she alleged that Internet Archive exercised dominion or control over her personal property, as required by Colorado law to state a valid conversion claim.  *Byron v. York Inv. Co.*, 133 Colo. 418 (1956).  Even if she had, it would not matter.  Conversion of intangible intellectual property is simply logically impossible.[4]  Indeed, the Supreme Court itself has explained that a copyright owner "holds no ordinary chattel," and that "interference with copyright does not easily equate with theft, conversion and fraud." *Dowling v. United States*, 473 U.S. 207, 217 (1985) (holding that bootlegged records were not "stolen, converted or taken by fraud" under the National Stolen Property Act because the "property rights of a copyright holder have a character distinct from the possessory interest of the owner of simple goods, wares or merchandise.")

---

[4]  While Colorado courts have slightly expanded the law of conversion to cover certain types of intangible personal property, they have refused to extend it beyond "the kind of intangible rights which are customarily merged in, or identified with some document." *See, e.g., University of Colorado Foundation, Inc. v. American Cyanamid,* 880 F.Supp. 1387, 1395 (D.Colo.1995), *aff'd in part and vacated in part*, 196 F.3d 1366 (Fed. Cir. Colo., Nov. 19, 1999), *cert. denied*, 529 U.S. 1130 (U.S. May 22, 2000) (refusing to expand conversion law to cover the intangible intellectual property rights of inventors in a patent).

Shell merely claims that Internet Archive copied her website and then "assumed unauthorized control of those stolen copies." [*See* Counterclaim, ¶ 74]. But Shell also admits that she could make precisely the same use of her profane-justice.org website before and after the alleged interference. Specifically, she asserts that "during Internet Archive's infringement, the original website content continued to be published by me and accessible on the Internet by going to www.profane-justice.org." [*See* Counterclaim, ¶ 68(e)]. Accordingly, Shell has failed to allege an essential element of conversion.

Additionally, Shell has not alleged that she demanded the return of her property precisely because she was not deprived of any.[5] Moreover, there would be nothing for Internet Archive to "return" even if Shell were to make such a demand, because Shell's website is now, as it has always been, completely under her own dominion and control. *See, e.g., Stauffer v. Stegemann*, 2006 WL 2435031, *4 (Colo. App. August 24, 2006) (denying claim of conversion where there was no distinct act of dominion or ownership over intangible information contained in unauthorized printouts made from plaintiff's computer).

Accordingly, Shell has failed to state a claim for conversion, and that claim must be dismissed as a matter of law.

### 2. Even if properly stated, Shell's conversion claim is preempted.

Even if Shell had properly stated a claim for conversion, it would be preempted by the Copyright Act. Shell conclusorily alleges that the rights she seeks to redress are "not equivalent" and thus not preempted by the Copyright Act. [*See* Counterclaim, ¶ 73]. Saying so does not make it so, and this is not the standard by which the Court must determine whether her claim is

---

[5] Shell does allege that Internet Archive "refused my demand to pay license fees … thereby permanently depriving me of the use or benefit of my property." [*See* Counterclaim, ¶ 74]. However, failure to pay for the use of property is obviously quite different from causing actual deprivation of that property.

preempted.  Rather, the Court must undertake the two-pronged analysis set forth by the Tenth Circuit.  *Ehat*, 780 F.2d at 878.

As Shell sets forth in her Counterclaims, her allegedly infringed website comes within the subject matter of copyright protection, satisfying the first prong of the preemption analysis.  *Ehat*, 780 F.2d at 878.  Specifically, the Counterclaim states that "[t]he intellectual property known as profane-justice.org is registered with the United States copyright office."  [*See* Counterclaim, ¶ 42].  Shell goes on to state that "[i]t is undisputed that the literary content of all versions of profane-justices.org is the creation of original works by me and is fixed in a tangible medium of expression and are works that contains [sic] substantial amount [sic] of material created by my own skill, labor and judgment and that subject matter of the work is copyrightable under law of United States."  [*See* Counterclaim, ¶ 43].  Thus Shell herself admits that her "original works of authorship" fall within the "[s]ubject matter of copyright."  17 U.S.C. § 102(a); *see also Ehat* , 780 F.2d at 878 (finding the first prong of the preemption test satisfied if the work in question is an original work of authorship fixed in any tangible medium of expression).

The second prong of the preemption analysis looks to whether there is any qualitative difference between what a plaintiff is seeking to redress by its state law claims versus what it is seeking to redress by its copyright claims.  *Ehat*, 780 F.2d at 878.  In making this determination, courts look to whether the state law claim being asserted incorporates elements "beyond mere reproduction" that change the nature of the plaintiff's action.  *Id*.

The substance of Shell's conversion claim shows that the exact same conduct is at issue in both the copyright and conversion allegations.  Specifically, Shell claims that "Internet Archive … entered the computer … wherein successive versions of [her] copyrighted website profane-justice.org were situated … and … copied [her] entire website."[6]  [*See* Counterclaim, ¶ 74].  It is

---

[6]  Indeed, Shell's allegations seem to misunderstand the technology at issue here.  Specifically, Shell claims that Internet Archive "entered" her computer to affirmatively make a copy of her website.  However, the automated crawlers do not physically enter any computer.  Instead, a

this alleged conduct, and this conduct alone, that forms the basis for all of Shell's causes of action and requests for relief.  The Tenth Circuit noted in *Ehat v. Tanner*, however, when a defendant seeks to recover for damage flowing from the reproduction and distribution of a work, rather from the deprivation of a specific copy of that work, as Shell does here, there can be "no distinction between such a state right and those exclusive rights encompassed by the federal copyright laws." *Ehat*, 780 F.2d at 878 (finding conversion claim preempted where plaintiff did not allege that the defendant had failed to return actual physical works).  The conduct Shell has alleged, i.e., Internet Archive's reproduction and distribution of her website, constitutes interference with an intangible property right equivalent to copyright and is accordingly preempted.  *Id.*

Here, Shell's conversion claim is based solely on alleged copyright infringement, and lacks allegations that Internet Archive took possession of tangible property or that Shell sought the return of any tangible property.  Therefore, Shell's state law conversion claim is qualitatively indistinguishable from the protection of Shell's copyright interests because compensating Shell for the harm caused by the alleged use and sale of her website falls within the exclusive rights granted by the Copyright Act.  *See* 17 U.S.C. § 106 (reproduction of the copyrighted work are among the exclusive rights granted by the Copyright Act).  Accordingly, the rights Shell seeks to enforce through her conversion claim are equivalent to her copyright claim, and it must be dismissed as a matter of law because it is preempted.

### 3.    Shell's civil theft claim is not properly pled and is preempted.

Shell's civil theft claim is premised on Colorado Revised Statute § 18-4-405, which provides that property "obtained by theft" shall be "restored to the owner" and permits the owner to maintain an action for treble damages.  § 18-4-405 C.R.S.  Under Colorado law, a person commits theft when he  knowingly obtains or exercises control over anything of value of another

---

crawler makes a request for a copy of the website, and the host server either grants or denies that request.  If the request is granted, the host server makes the copy and transmits it to the crawler.

without authorization, or by threat or deception, and (a) intends to *deprive the other person permanently* of the use or benefit of the thing of value; or (b) knowingly uses, conceals, or abandons the thing of value in such manner as to *deprive the other person permanently* of its use or benefit; or (c) uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will *deprive the other person permanently* of its use and benefit; or (d) demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.  § 18-4-401 C.R.S. (emphasis added).

Shell has not alleged that Internet Archive has demanded any consideration to which it is not entitled for the return of her website.  And each of the other theft elements requires that Shell allege that Internet Archive has deprived her permanently of her property.  While Shell makes the conclusory statement that Internet Archive has done so, she admits elsewhere in her counterclaims that she did not even discover the alleged infringement until Dec 12, 2005 – well after the dates upon which she alleges Internet Archive "permanently deprived" her of her property.  [*See* Counterclaim, ¶ 75].  Moreover, she admits that "during Internet Archive's infringement, the original web site content continued to be published by me and accessible on the Internet by going to www.profane-justice.org."  [*See* Counterclaim, ¶ 68(e)].  She therefore fully admits that she was not deprived, permanently or otherwise, of her property.  Accordingly, Shell has not properly pled a claim for civil theft and cannot maintain a claim for treble damages under Colorado Revised Statute § 18-4-405.

Finally, this claim is premised on the exact same conduct that her conversion claim is, i.e., that Internet Archive "entered" her computer and "copied [her] entire website."  Accordingly, as discussed above in the context of the conversion claim, even if Shell had properly pled her civil theft claim, it would be preempted because the rights she seeks to enforce by her civil theft claim are equivalent to her claim under the Copyright Act.

**C.      Shell Has Not Properly Stated A Claim for Breach of Contract, And Such Claim, If Properly Stated, Would Also Be Preempted By The Copyright Act.**

**1.      Shell has not alleged the existence of a binding contract.**

Elements for breach of contract claim are: *(i)* existence of a contract; *(ii)* performance by plaintiff or some justification for nonperformance; *(iii)* failure to perform contract by defendants; and *(iv)* damages to plaintiff.  *Western Distributing Co. v. Diodosio*, 841 P.2d 1053 (Colo. 1992).

Shell has not, because she cannot, demonstrated that the parties ever entered into a binding contract and so fails on the very first element.  Shell claims that Internet Archive "expressly entered into a contract … when it affirmatively performed the act of copying my website…"  [*See* Counterclaim, ¶ 79 and Exh. A at 1].  As an initial matter, it is unclear how a robot that automatically crawls websites (*i.e.*, not a human being) can ever "accept" an offer because the formation of a contact requires mutual assent, i.e., a "meeting of the minds," with regard to specific terms.  *See Schmidt v. Frankewich*, 819 P.2d 1074, 1077 (Colo. App. 1991) (finding no contract existed because of a lack of a meeting of the minds and mutual assent).

Further, one cannot magically transform a Copyright Notice (as the document to which Shell refers is in fact titled) into an agreement that binds another party into paying extortionist fees simply by saying "if you copy or distribute anything on this site – you are entering into a contract."[7]  [*See* Counterclaim, ¶ 79 and at Exh. A at 1].  In addition, the Copyright Notice states that a contract is formed by prepayment of the posted license fees – one must pay fees before copying, and once one copies, one has entered into an agreement.  [*See id.*].  Since those fees were never paid, no contract was formed in that manner.  Accordingly, Shell has not alleged that Internet Archive ever knowingly accepted Shell's terms or that it entered into a binding agreement with her, no contract between the parties ever existed.

---

[7]  It is unclear how a contract can be formed when the act that allegedly manifests assent is the same as the act of breach – *i.e.*, copying.

Moreover, there is precedent that indicates that so-called "browsewrap" agreements such as Shell's should generally be found unenforceable.[8]  The Second Circuit has explained that a person's clicking on a "download" button on a website does not constitute assent to contractual terms, if the offer does not make clear to the consumer that clicking on the download button would signify assent to the terms.  *Specht v. Netscape Communications*, 306 F.3d 17, 29-30 (2nd. Cir. 2002) (holding that users did not agree to be bound by software's license terms by acting upon invitation to download software free from producer's webpage, even though notice of existence of license terms was on next scrollable screen because a reasonably prudent Internet user would not have known or learned of the license terms before responding to invitation to download the software).  Here, the act of downloading (that is, copying Shell's website to a local computer) is a prerequisite to even seeing the contract she claims both binds downloaders and renders them liable for breach.  It is tautological nonsense.

Once one even sees the alleged contract (styled as a copyright notice) there is no way to tell, without drilling down into the fine print of the notice that the act of copying supposedly manifests agreement to the terms contained therein.  [*See* Counterclaim, ¶ 79 and at Exhibit A at 1].  Even in cases where a clickwrap agreement was held to be enforceable, as in *Register.com, Inc. v. Verio, Inc.*, there must be some indication that a human being read and understood the terms offered.  356 F.3d 393, 401 (2d Cir. 2004) ("Verio admits that it knew perfectly well what terms Register demanded.")  Shell does not allege that any human being at Internet Archive ever

---

[8]  There is a legal distinction to be made between "browsewrap" agreements, such as the one on Shell's website and so-called "clickwrap" agreements, where the user of a website is affirmatively asked to click on an "I Agree" button to accept the terms of the website.  Clickwrap agreements have been more regularly enforced than browsewrap agreements.  *See e.g.*, *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007 (D.C. 2002) (upholding forum selection clause of online service agreement, where user had clicked an "I agree" button at the end of a clickwrap agreement); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) (holding that software shrinkwrap licenses are enforceable unless their terms are objectionable on grounds applicable to contracts in general).

saw the document, let alone that any human being understood, assented to and agreed to its terms.[9]

In sum, Shell does not, because she cannot, allege that Internet Archive knew what the terms were and accepted them.[10]  Simply put, there was no contract to breach.  Accordingly, Shell has failed to properly plead a claim for breach of contract.

### 2.    Shell's claim of breach of contract, if properly pled, is preempted.

In the unlikely event that the Court finds that a valid contract was in existence, Shell's breach of contract claim as set forth in her counterclaims is preempted by the Copyright Act.  As previously stated, federal copyright law preempts a state law claim only when there is a qualitative difference between what a plaintiff is seeking to redress by its state law claims versus what it is seeking to redress by its copyright claims.  *Ehat*, 780 F.2d at 878; *see also, Evolution v. Suntrust Bank*, 342 F. Supp. 2d 943, 960 (D. Kan. 2004) (finding plaintiff's breach of contract claim preempted by federal copyright law because it did not assert any extra element beyond rights protected by Section 106).

Shell's breach of contract claim is in no way qualitatively different from her copyright claim.  Shell has only alleged that Internet Archive breached its agreement with Shell when it "harmed me and my property … when it failed to seek permission of the copyright owner prior to copying and when it failed to prepay the posted license fees for copying."  [*See* Counterclaim, 87].  Moreover, Shell's "Self-executing contract/Security Agreement" itself equates breach of the contract with copyright infringement, stating that "any use of the copyrighted material … other

---

[9]  Internet Archive further believes that the alleged contract, in the unlikely event that the Court finds one does exist, especially under the circumstances here, is both procedurally and substantively unconscionable.  *See, e.g.*, *Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo.1986) (finding contract terms unenforceable because they were unconscionable).

[10]  Indeed, that Internet Archive immediately removed the profane-justice.org content from the Wayback Machine when it learned that Shell wished the content not to be archived further supports the fact that it did not have prior knowledge of the terms of the alleged contract.  *See* Complaint, ¶¶ 11-13.

than authorized personal, non-commercial use… constitutes … *infringement* of the copyrighted material." [*See* Counterclaim, Exh. A (emphasis added)]. As was true for Shell's conversion / civil theft claim, the only conduct upon which her claims are based is copying, and Shell herself states that breach of the contract is the same as copyright infringement.

Because protection against "copying" is the exact same right that she would be granted under Section 106 of the Copyright Act (*i.e.*, the right to protect her work from unlawful copying or reproduction), Shell's breach of contract claim is preempted by the Copyright Act and must be dismissed as a matter of law.

        **D.       Shell's Claim for Racketeering Must Be Dismissed.**

To be held civilly liable under RICO, a plaintiff must allege and prove four elements: *(i)* conduct by a person *(ii)* of an enterprise *(iii)* through a pattern *(iv)* of racketeering activity. 18 U.S.C. § 1962(c); *see also United States v. Turkette*, 452 U.S. 576, 580 (1981). The second RICO element, an enterprise, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Despite the apparent breadth of the definition of "enterprise," to properly plead RICO claim, the "enterprise" element must be very specifically alleged. The complaint must allege at least three components: *(i)* that there is "an ongoing organization with a decision-making framework or mechanism for controlling the group," *(ii)* "that various associates function as a continuing unit," and *(iii)* "that the enterprise exists separate and apart from the pattern of racketeering activity." *Kearney v. Dimanna*, 2006 WL 2501414 (10th Cir. August 30, 2006) (upholding district court's dismissal of RICO claim for failure to allege an enterprise with any purpose outside of the alleged racketeering activity) (*citing United States v. Smith*, 415 F.3d 1253, 1266-1267 (10th Cir. 2005)).

RICO claims require close scrutiny, and courts "must be mindful of the devastating effect" that the racketeering allegations may have on the defendant (here, a non-profit library). *Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.,* 156 F.Supp. 2d 376, 380 (S.D.N.Y. 2001). Because of its stigmatizing effect and the availability of treble damages, "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (dismissing RICO claim for lack of particularity) (quotation omitted), *aff'd,* 113 F.3d 1229 (2d Cir. 1997). Courts, therefore, "should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir. 1990) (affirming dismissal of RICO claims for "vague references" to mail and wire fraud).

Here, while close scrutiny is certainly called for, the defects in Shell's RICO claim are glaring. Shell has not alleged and cannot allege a claim that would satisfy either the pleading requirements or the statutory purpose of the RICO statute. While Shell may have successfully pled a few of the many basic requirements of the RICO statute (such as use of wires in interstate commerce), Shell has failed to properly state a RICO claim for a host of other reasons. Specifically, Shell has failed to properly plead that Internet Archive has engaged in any underlying criminal activity that constitutes the necessary "predicate act" under the statute, or even that Internet Archive has participated in the affairs of an "enterprise."

      **1.**      **Shell has failed to properly plead that Internet Archive has violated any "predicate act" and has thus failed to allege a pattern of racketeering activity.**

The RICO Statute defines more than sixty predicate acts which can constitute a "racketeering activity." 18 U.S.C. § 1961(1). Among those which can be used to establish a pattern of racketeering activity, are murder, kidnapping drug-dealing, and white-collar criminal offenses such as mail and wire fraud or criminal copyright infringement. *Id*. The only potentially

applicable predicate acts here fail, and Shell has not properly alleged that Internet Archive has engaged in any criminal conduct.

> **a.    Shell has not properly pled a violation of the mail or wire fraud statutes.**

To prove a violation of the mail fraud statute, Shell must prove three things: *(i)* the devising of a scheme or artifice either (a) to defraud or (b) for obtaining money by means of false or fraudulent pretenses, representations, or promises, *(ii)* the specific intent to defraud, and *(iii)* the use of the United States mails to execute the scheme.  18 U.S.C. § 1341.  Nowhere in Shell's counterclaims has she alleged, nor could she allege, that Internet Archive mailed a *single* document in furtherance of Internet Archive's creation of its historical archive of the Internet. Accordingly, Shell's mail fraud claim fails as a matter of law.

Shell's wire fraud allegations also fail.  Not only has Shell failed to plead fraud with the level of particularity required by Federal Rule of Civil Procedure 9(b), as explained below, but she has failed to plead that Internet Archive had the specific intent to defraud Shell into giving up her property.  *See, e.g., Garbade v. Great Divide Min. and Mill. Corp.*, 645 F.Supp. 808, 815 (D.Colo. 1986), *aff'd* 831 F.2d 212 (10th Cir. Oct. 15, 1987) (holding that complaint making only conclusory allegations of a scheme to defraud did not allege specific intent necessary to sustain a RICO claim).  Indeed, with respect to intent, Shell makes only the conclusory statement that Internet Archive "devised or intended to devise a scheme or artifice for acquiring intellectual property."  *See* Counterclaim, ¶ 112(a).  This does not amount to an allegation that Internet Archive specifically intended to defraud Shell of her website as required by the statue and by caselaw.  18 U.S.C. §§ 1341, 1343;  *Garabade*, 645 F.Supp. at 815.

Further, Rule 9(b) requires a pleader of fraud to detail with particularity each act of fraud, plus the role of each defendant in each scheme.  Fed. R. Civ. P. 9(b).  Rule 9(b) also governs the pleading of a RICO predicate offense involving fraud. *Farlow v. Peat, Marwick, Mitchell & Co.*,

956 F.2d 982, 990 (10th Cir. 1992) (quotation omitted) (upholding district court's dismissal of plaintiff's RICO claim for failure to plead predicate act mail and wire fraud with particularity.)

Specifically, Shell must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity.  Shell must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof … to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based."  *Koch v. Koch Industries, Inc.,* 203 F.3d 1202 (10th Cir. 2000), *cert. denied*, 531 U.S. 926 (U.S. Oct. 10, 2000) (internal citations omitted) (holding complaint insufficient under Rule 9(b) for failure to allege the time, place and contents of the false statements).

Shell's *only* allegation regarding the existence of an enterprise is where she claims that the existence of an enterprise "including but not necessarily limited to" Internet Archive and its directors, agents, and employees, Alexa Internet, the Library of Congress, and the Smithsonian Institute.  [*See* Counterclaim, ¶  94].  This vague assertion falls far short of the specific allegations required by the Tenth Circuit.  These amorphous allegations provide no information whatsoever regarding the time, place, or manner of the alleged fraud, let alone the role of the named defendants in the purportedly fraudulent and/or unlawful scheme, a failure sufficient in and of itself to warrant dismissal of Shell's RICO claim.  *See In re Lewis*, 2006 WL 1308352, *21 (10th Cir. May 4, 2006) (holding failure to plead facts showing how each defendant fit within the framework of an alleged enterprise fatal to RICO claim).

   **b.**    **Shell has failed to properly plead criminal copyright infringement.**

Shell has similarly failed to properly allege that Internet Archive engaged in criminal copyright infringement.  To prove that Internet Archive engaged in criminal copyright infringement, Shell must show that Internet Archive *(i)* willfully infringed Shell's copyright *(ii)* for

the purposes of commercial advantage or private financial gain; or *(iii)* by the reproduction or distribution … of one or more copies of one or more copyrighted works, which have a total retail value of more than $1,000.  17 U.S.C. § 506(a).  Shell's allegations do little more than parrot back the language of the statute and fail to allege any facts to satisfy basic pleading standards. [*See* Counterclaim, ¶ 112(b)]; *see also Bryson,* 905 F.2d at 1390 (courts may disregard unsupported conclusions of law).

Beyond her conclusory allegations, there is nothing.  First, the notion that Internet Archive— a *non-profit* digital library—has infringed Shell's copyright for the "purpose of commercial advantage or private financial gain" as Shell asserts in her counterclaims is not only absurd, but in direct contravention of case law.  The court in *United States v. LaMacchia*, 871 F. Supp. 535, 539 (D. Mass. 1994) explained that the concept of differentiating criminal from civil copyright violations stems from the infringement being for the purposes of commercial exploitation.  The court further specifically noted Senator Hatch's statement in support of the statute that the "copying must be undertaken to make money" in order to be criminalized.  *Id*. at 540, fn 8.

In *LaMacchia*, an MIT student and "computer hacker" used his school's network to set up an electronic bulletin board for the posting of free copies of popular software programs, generating "worldwide traffic" to his board.  *Id*. at 536.  He was indicted for allegedly devising a scheme to defraud software owners by the illegal copying and distribution of copyrighted software, causing the loss of more than one million dollars to the owners.  *Id.*  The court found this behavior, while reprehensible, did not constitute criminal copyright infringement because it was not undertaken for profit.[11]  *Id*. at 545.

---

[11]  Congress later passed the No Electronic Theft Act which broadened criminal infringement activity slightly to include the willful reproduction or distribution of copyrighted works having a total retail value of more than $1,000.  However, even that provision requires some level of reciprocal benefit to be received by the alleged infringer.  *See e.g., U.S. v. Rothberg*, 222 F.Supp. 2d 1009, 1018 (N.D. Ill. 2002) (explaining that the heartland of cases contemplated by the No

Shell's idea of "commercial advantage" as set forth in her counterclaim is that Internet Archive has acquired grants and donations, has been unjustly enriched, and maintains the "expectation of acquiring additional intellectual property."  [*See* Counterclaim, ¶ 112(b)].  Not one of these assertions, however, explains any *commercial* advantage enjoyed by Internet Archive, because there could be none in the context of a *non-profit* library.  Shell has not alleged, nor could she, that Internet Archive has any customers or competitors to which any such advantage could pertain or that the creation of the Archive was undertaken for the purpose of making money.  To the contrary, Internet Archive's purpose is to preserve the historical record in digital form. [*See* Complaint, ¶ 6].  Shell's allegations as to Internet Archive's activities are a far cry from meeting the requirements of criminal copyright infringement.

Accordingly, Shell's criminal copyright claim fails as a matter of law and cannot, in turn, support Shell's RICO claim.

### c.    Shell has failed to properly plead violation of § 18-4-401 C.R.S. theft.

As fully detailed above, Shell has not properly alleged any of the elements of the Colorado state theft statute, or even that Internet Archive has deprived her of any property.  Specifically she failed to plead that Internet Archive: "intends to deprive [Shell] permanently of the use or benefit of the thing of value," "knowingly uses, conceals, or abandons the thing of value in such manner as to deprive [Shell] permanently of its use or benefit," or "uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive [Shell] permanently of its use and benefit."  *See* Colo. Rev. Stat. § 18-4-401.  This claim also fails as a matter of law.

---

Electronic Theft Act were offenses "motivated by a desire for financial gain-either personally or commercially.")  Since Internet Archive has not received any reciprocal benefit for the alleged infringement of Shell's copyrighted website content, the No Electronic Theft Act is similarly inapplicable here.

2.      **Shell has failed to properly allege the existence of a racketeering enterprise.**

Shell has failed to properly allege the existence of an enterprise as defined by 18 U.S.C. § 1961(4).  Specifically, she has not plead that *(i)* that there is "an ongoing organization with a decision-making framework or mechanism for controlling the group," *(ii)* "that various associates function as a continuing unit," and *(iii)* "that the enterprise exists separate and apart from the pattern of racketeering activity."  *Kearney ,* 2006 WL 2501414 at *2.

While Shell has vaguely alleged at Paragraph 94 of her Counterclaim an enterprise that is an association-in-fact "including but not necessarily limited to" Internet Archive and its directors, agents, and employees, Alexa Internet, the Library of Congress, and the Smithsonian Institute," she offers none of the specific allegations regarding a "decision-making framework or mechanism for controlling the group" required by the Tenth Circuit.  *Id*.  Rather, Shell generically claims that the purported enterprise is "operated and managed" by Internet Archive, but makes no specific allegations as to how this is done.  [*See* Counterclaim, ¶ 95].  In fact, Shell contradicts the existence of any hierarchical mechanism for controlling the group by stating that the Archive "*collaborates* with institutions including the Library of Congress and the Smithsonian" and that it has "relied on donations of web crawls, technology and expertise from Alexa and others."  [*See* Counterclaims, ¶ 99 (emphasis added)].  Unfortunately for Shell, collaboration and cooperation do not a racketeering enterprise make.  Accordingly, her allegations fail to meet the first prong of the enterprise test.

Secondly, Shell's counterclaims do not contain allegations, even in conclusory form, that there was a common purpose among the purported collaborators to conduct the enterprise's affairs on a continuing basis.  *See Burnett v. Amrein,* 2006 WL 2859625, *5 (D.Colo. 2006) (dismissing RICO allegations that failed to support the existence of an enterprise with shared or common purposes, continuity of structure and personnel, and a structure distinct from that inherent in the alleged pattern of racketeering activity.)  At most, Shell has alleged that "the

Enterprise, under the management of Internet Archive, has been engaged in this pattern … since 1996." [*See* Counterclaim, ¶ 109]. This statement does little more than reiterate information from Internet Archive's website about when it began archiving digital history. It in no way supports the existence of a continuing enterprise for the purposes of RICO. Shell's allegations fail on the second prong as well.

Finally, Shell has failed to properly allege that the enterprise, comprised of Internet Archive and the purported collaborators, among others, exists as an entity that is "separate and apart" from the pattern of activity in which it engages. Indeed, under RICO, the "person" and the "enterprise" engaged in racketeering activities must be different entities. *See Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1146 (10th Cir. 1998) (holding that a parent-subsidiary relationship was insufficient to support an enterprise that was "separate and apart"). While Shell has alleged some loose tie between Internet Archive and a few other entities, each and every one of Shell's claims implicates Internet Archive's activities alone. Her allegations do not sufficiently differentiate Internet Archive's activities (as the defendant "person") from that of the purported enterprise. *Id*. Shell's enterprise claim thus fails on the third prong as well. Shell's failure to properly allege the existence of a racketeering enterprise constitutes a separate and independent basis for dismissing Shell's RICO claim.

Indeed, Shell's claims fail to such an extent as to call into question the true motive for bringing them at all. Shell's RICO irresponsibly plead and inadequately considered allegations should be dismissed with prejudice. *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D.Colo. 1995) (dismissing RICO claims for failure to state a claim and cautioning that "[i]rresponsible or inadequately considered allegations should be met with severe sanctions pursuant to Rule 11.")

## Conclusion

For the foregoing reasons, Shell's Counterclaims for civil theft / conversion, breach of contract, and racketeering against Internet Archive should be dismissed with prejudice.

Respectfully submitted,

Date:  November 16, 2006

s/  Kenneth B. Wilson
KENNETH B. WILSON
STEFANI E. SHANBERG
MICHAEL H. RUBIN
LILA I. BAILEY
PERKINS COIE LLP
4 Embarcadero Center, Suite 2400
San Francisco, California  94111
Telephone:     (415) 344-7000
Facsimile:     (415) 344-7050
Email:          kwilson@pekrinscoie.com

Attorneys for Plaintiff and Counterclaim-Defendant
INTERNET ARCHIVE

CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2006 I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system and certify that I have served the foregoing on the following nonparticipating parties via U.S. Mail:

**Kathleen Burch**
Internet Archive
Presidio of San Francisco
P.O. Box 2924
San Francisco, CA 94129

**Brewster Kahle**
513 B Simonds Loop
San Francisco, CA 94129-1449

**Rick Prelinger**
301 8th Street, suite 215
San Francisco, CA 94103-4427

**Suzanne Shell**
14053 Eastonville Rd.
Elbert, CO 80106

                              s/  Kenneth B. Wilson
                              KENNETH B. WILSON
                              STEFANI E. SHANBERG
                              MICHAEL H. RUBIN
                              LILA I. BAILEY
                              PERKINS COIE LLP
                              4 Embarcadero Center, Suite 2400
                              San Francisco, California  94111
                              Telephone:    (415) 344-7000
                              Facsimile:    (415) 344-7050
                              Email:        kwilson@pekrinscoie.com

                              Attorneys for Plaintiff and Counterclaim-
                              Defendant
                              INTERNET ARCHIVE