## Appendix of Cases Pursuant to D.C. COLO. LCivR 7.1D

1.    *Burnett v. Amrein,* 2006 WL 2859625 (D.Colo. 2006)

2.    *Kearney v. Dimanna*, 2006 WL 2501414 (10th Cir. August 30, 2006)

3.    *In re Lewis*, 2006 WL 1308352  (10th Cir. May 4, 2006)

4.    *Stauffer v. Stegemann*, 2006 WL 2435031 (Colo. App. August 24, 2006)

Dockets.Justia.com

**1**

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**


**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.


United States District Court,
D. Colorado.
Fred Mark and Carol Ann BURNETT, Plaintiffs,
v.
Robert L. AMREIN, an individual, Karen L.
Amrein, an individual, B. Doug
George, an individual, and Daniel P. Powell, an
individual, Defendants.
**Civil Case No. 06-cv-00564-REB-CBS.**

Oct. 3, 2006.
Fred Mark Burnett, Antonito, CO, pro se.

Carol Ann Burnett, Antonito, CO, pro se.

Matthew Kirk Hobbs, Eugene L. Farish, P.C.,
Monte Vista, CO, B. Douglas George, Doug George
, Attorney at Law, Alamosa, CO, Daniel Ray
McCune, Miles Leachman Buckingham, Kennedy
Childs & Fogg, PC, Denver, CO, for Defendants.

**ORDER APPROVING AND ADOPTING
RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

BLACKBURN, J.

**\*1** This matter is before me on the
**Recommendation of United States Magistrate
Judge** [# 99], filed September 12, 2006. The
Magistrate Judge recommends that
   1. "Defendant Daniel Powell's Motion [to]
   Dismiss Pursuant to Fed. R. Civ. Pro. 9(b) and
   12(b)(6)" (filed August 3, 2006) (doc. # 76) be
   GRANTED;
   2. "Defendant George's Renewed Motion for

Summary Judgment" (filed August 3, 2006) (doc.
# 74) be GRANTED IN PART;
   3. "Plaintiff Burnetts' Motion this court under
   Authority of F.R. Civ. P. R 60(B)(4) for Vacation
   of the Judgments/Order in Colorado State Court
   Cases 2001 C5 and 2004CV03 [sic]" (filed July
   6, 2006) (doc. # 62) be DENIED;
   4. "Defendants Robert L. and Karen L. Amrein's
   Motion for Summary Judgment" (filed June 6,
   2006) (doc. # 41) be GRANTED IN PART;
   5. "Defendant Daniel Powell's Motion for
   Summary Judgment" (filed May 31, 2006) (doc. #
   34) be GRANTED IN PART;
   6. "Defendant Doug B. George's Renewed
   Motion for Summary Judgment ..." (filed May 4,
   2006) (doc. # 19) be GRANTED IN PART;
   7. In light of this Recommendation, "Plaintiffs'
   Burnetts' Motion to Lift Order Staying Discovery
   and Grant Leave to Engage in Discovery ..."
   (filed August 30, 2006) (doc. # 94) be DENIED;
   and
   8. This civil action be DISMISSED WITH
   PREJUDICE.
*See* Recommendation at 21.

On September 22, 2006, plaintiffs filed objections
[# 106] to the recommendation. On October 2,
2006, defendant Powell filed a response [# 114] to
plaintiffs' objections. I overrule plaintiffs' objections
and approve and adopt the recommendation.

As required by **28 U.S.C. § 636(b),** I have
reviewed *de novo* all portions of the
recommendation to which objections have been
filed, and have considered carefully the
recommendation, plaintiffs' objections, defendant
Powell's response, and the applicable case law. In
addition, because plaintiffs are proceeding *pro se,* I
have construed their pleadings more liberally and
held them to a less stringent standard than formal
pleadings drafted by lawyers. *See* **Haines v. Kerner,**
104 U.S. 519, 520-21 (1972), **Hall v. Belmon,** 935
F.2d 1106, 1110 (10th Cir.1991). I find plaintiffs'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

objections to be without merit. The recommendation is detailed, circumstantiated, and well-reasoned. Therefore, I approve, adopt, and incorporate the reasons stated, arguments advanced, and authorities cited, together with the findings of fact, conclusions of law, and recommendations proposed by the Magistrate Judge.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Recommendation of United States Magistrate Judge** [# 99], filed September 12, 2006, **IS APPROVED AND ADOPTED** as the order of this court;

2. That "Defendant Daniel Powell's Motion [to] Dismiss Pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6)" [# 76] filed August 3, 2006, **IS GRANTED;**

3. That "Defendant George's Renewed Motion for Summary Judgment" [# 74] filed August 3, 2006, **IS GRANTED IN PART;**

**\*2** 4. That "Plaintiff Burnetts' Motion this court under Authority of F.R. Civ. P. R 60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001 C5 and 2004CV03 [*sic* ]" [# 62] filed July 6, 2006, **IS DENIED;**

5. That "Defendants Robert L. and Karen L. Amrein's Motion for Summary Judgment" [# 41] filed June 6, 2006, **IS GRANTED IN PART;**

6. That "Defendant Daniel Powell's Motion for Summary Judgment" [# 34] filed May 31, 2006, **IS GRANTED IN PART;**

7. That "Defendant Doug B. George's Renewed Motion for Summary Judgment ..." [# 19] filed May 4, 2006, **IS GRANTED IN PART;**

8. That "Plaintiffs' Burnetts' Motion to Lift Order Staying Discovery and Grant Leave to Engage in Discovery ..." [# 94] filed August 30, 2006, **IS DENIED;** and

9. That this action **IS DISMISSED WITH PREJUDICE.**

CRAIG B. SHAFFER, Magistrate Judge.

RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE

This civil action comes before the court on:

1. "Defendant Daniel Powell's Motion [to] Dismiss Pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6)" (filed August 3, 2006) (doc. # 76);

2. "Defendant George's Renewed Motion for Summary Judgment" (filed August 3, 2006) (doc. # 74);

3. "Plaintiff Burnetts' Motion this court under Authority of F.R .Civ. P. R 60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001 C5 and 2004CV03 [sic]" (filed July 6, 2006) (doc. # 62);

4. "Defendants Robert L. and Karen L. Amrein's Motion for Summary Judgment" (filed June 6, 2006) (doc. # 41);

5. "Defendant Daniel Powell's Motion for Summary Judgment" (filed May 31, 2006) (doc. # 34);

6. "Defendant Doug B. George's Renewed Motion for Summary Judgment ..." (filed May 4, 2006) (doc. # 19); and

7. "Plaintiffs' Burnetts' Motion to Lift Order Staying Discovery and Grant Leave to Engage in Discovery ..." (filed August 30, 2006) (doc. # 94).

Pursuant to the Order of Reference dated March 30, 2006 (doc. # 2) and the memoranda dated May 8, 2006 (doc. # 20), June 1, 2006 (doc. # 37), June 7, 2006 (doc. # 44), August 4, 2006 (doc. # 79), and September 6, 2006 (doc. # 96), these motions were referred to the Magistrate Judge. The court has reviewed the motions, the corresponding responses and replies (docs. # 51, # 55, # 61, # 70, # 71, # 72, # 78, # 86, # 91, and # 95), the entire case file, and the applicable law and is sufficiently advised in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

premises. [FN1]

> FN1. On August 24, 2006, the District Judge afforded the Burnetts until September 8, 2006 to re-file their reply to the Defendants' Responses (docs. # 70, # 71, and # 72). (*See* Minute Order (doc. # 92)). The Burnetts filed their "First Amended Consolidated Reply" on September 5, 2006. (*See* doc. # 95).

I. Statement of the Case

The Amreins and the Burnetts are owners of adjoining land in the Aspen Springs subdivision in Conejos County, Colorado. (*See Burnett v. Amrein* (Colo.App. No. 05CA1212, June 15, 2006) (not published pursuant to C.A.R. 35(f)) (Exhibit A-13 (doc. # 82))). Defendants George and Powell are attorneys who represented the Amreins in litigation in the County and State Courts. On January 12, 2001, the Amreins brought a civil action, Case No.2001 C 05, in the County Court for the County of Conejos seeking a preliminary and permanent injunction against the Burnetts for violation of certain protective covenants which run with the land located within the subdivision. (Exhibit B to doc. # 35 at p. 1). "Specifically, the Amreins alleged that the Burnetts were in violation of two provisions of the Covenants pertaining to the keeping of livestock, and pertaining to the use of reserved easements within the subdivision." (Exhibit B to doc. # 35 at p. 1). The County Court ruled that it had subject matter jurisdiction over the keeping of livestock issue raised in the Complaint. (Exhibit E to doc. # 35 at p. 3). The County Court permanently enjoined the Burnetts "from keeping horses upon property located within the subdivision." (Exhibit E to doc. # 35 at p. 3). That Order was not appealed by the Burnetts. (Exhibit E to doc. # 35 at p. 3).

*3 The County Court further ruled that it did not have subject matter jurisdiction over the easement encroachment issue. (Exhibit E to doc. # 35 at p. 3). On May 24, 2002, the Conejos County District Court overruled the County Court, holding that the County Court had subject matter jurisdiction over the easement encroachment issue. (Exhibit E to doc.

# 35 at p. 4). The District Court's ruling was not appealed by the Burnetts. (Exhibit E to doc. # 35 at p. 4).

On November 5, 2003, at the conclusion of a trial in Case No.2001 C 05, the County Court ruled that it had subject matter jurisdiction to enforce the covenants under C.R.S. § 13-6-105(1)(f), ordered the Burnetts to remove all fences, gates and other obstructions from the easement area, and permanently enjoined the Burnetts from erecting any obstruction that may encroach upon the easement. (Exhibit E to doc. # 35 at pp. 4, 11). On or about January 15, 2004, the County Court awarded attorney fees and costs against the Burnetts in the amount of $21,500.28 "given that [the Burnetts'] defense in this action was substantially frivolous, substantially groundless and substantially vexatious; and inasmuch as [the Burnetts']violations of the relevant Aspen Springs subdivision Protective Covenants in this respect were willful, knowing, not in good faith, and continued with full knowledge of the violations before this litigation began and throughout this litigation." (Exhibit F to doc. # 35 at p. 1). "The Burnetts filed an appeal in the Conejos County District Court, Case No.2004 CV 03." (Exhibit B to doc. # 35 at p. 3).

"On August 12, 2004, the Burnetts filed a Complaint in the Conejos County District Court, Case No.2004 CV 27, seeking an Order vacating the Judgment of the County Court entered on November 18, 2003...." (Exhibit B to doc. # 35 at p. 4). On November 22, 2004, the District Court stayed the proceedings in Case No.2004 CV 27, pending a ruling in Case No.2004 CV 03. (Exhibit B to doc. # 35 at p. 4).

On March 3, 2005, the District Court affirmed the County Court in Case No.2004 CV 03 in all respects, with the exception of a portion of the attorney fees the County Court awarded to the Amreins. (Exhibit G to doc. # 35 at p. 1). On remand, on September 13, 2005, the County Court entered judgment for attorney fees and costs against the Burnetts in the amount of $29,039.26 plus interest. (Exhibit J to doc. # 35).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

The District Court granted summary judgment against the Burnetts in Case No.2004 CV 27 on April 29, 2005. (Exhibit K to doc. # 35). On June 10, 2005, the District Court denied the Burnetts' Motion for Reconsideration. (Exhibit B to doc. # 35 at p. 5). The Burnetts appealed the judgment in Case No.2004 CV 27 by filing a Notice of Appeal in 05CA1212. (*See* Exhibit A-13 (doc. # 82)). The Colorado Court of Appeals affirmed the District Court on June 15, 2006. (*See* Exhibit A-13 (doc. # 82)). As of the date of this Recommendation, the time period for filing a petition for certiorari has not expired.

*4 The Burnetts appealed the judgment in Case No.2004 CV 03 by filing a Notice of Appeal in 05CA0674. (Exhibit B to doc. # 35 at p. 4). On May 18, 2005, the Colorado Court of Appeals dismissed the appeal for lack of jurisdiction. (Exhibit H to doc. # 35). The Burnetts filed a petition for a stay in the Colorado Supreme Court (Case No.2005 SC 0191) that was denied on July 6, 2005. (Exhibit I to doc. # 35).

The Burnetts appealed the County Court judgment for attorney fees and costs in the amount of $29,039.26 (Exhibit J to doc. # 35) by filing Case No.2005 CV 49 in the District Court for Conejos County. (*See* Exhibit D to doc. # 35 at ¶ 5). The Amreins filed a motion to dismiss that appeal based upon the Burnetts' failure to file an appeal bond. The District Court directed the Burnetts to post bond pursuant to C.R.C.P. 411(a) in the sum of $29,039.26 within 30 days of March 3, 2006. (*See* Exhibit D to doc. # 35 at ¶ 10). Case No.2005 CV 49 in the District Court for Conejos County is still ongoing.

The Burnetts commenced this civil action on March 28, 2006 by filing a *pro se* Complaint alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Title 18 U.S.C. §§ 1964(a) and (c). The Burnetts filed an Amended Complaint on April 4, 2006 (doc. # 3). With leave of court, the Burnetts filed a Second Amended Complaint ("SAC") on July 20, 2006 (doc. # 67). The Burnetts allege that Defendants violated §§ 1964(a) and (c) by their attempts to

collect the judgment for approximately $30,000.00 dollars of attorney fees and costs. (SAC at p. 1). Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and for summary judgment pursuant to Fed.R.Civ.P. 56.

II. Standard of Review

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Ramirez v. Dep't of Corrections,* 222 F.3d 1238, 1240 (10th Cir.2000) (citation omitted). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramirez,* 222 F.3d at 1240 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Under Fed.R.Civ.P. 56(c),
> summary judgment is proper only if the evidence, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. A material" fact is one that might affect the outcome of the suit under the governing law, and a genuine issue is one where the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Stearns v. McGuire,* 354 F.Supp.2d 1188, 1189 (D.Colo.2004) (internal quotation marks and citations omitted), *aff'd,* 154 Fed. Appx. 70 (10th Cir.2005). [FN2]

> FN2. In more than one filing, the Burnetts have asked the court to take judicial notice of facts. (*See* docs. # 87, # 58). Pursuant to Fed.R.Evid. 201, "[j]udicial notice is when a judge recognizes the truth of certain facts, which from their nature are not properly the subject of testimony, or which are universally regarded as established by common knowledge. The recognition of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

certain facts by the judge is proper without proof because such facts are not subject to reasonable dispute." *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 895 (10th Cir.19940 (footnote omitted). "Judicial notice is appropriate where a matter is 'verifiable with certainty.' " *York v. American Tel & Tel. Co.,* 95 F.3d 948, 958 (10th Cir.1996).
    The facts to which the Burnetts refer in their Notices are not appropriate for judicial notice because they are subject to dispute. Further, judicial notice of the factual matters recited by the Burnetts is unnecessary because the court has and will consider all of the evidence presented by the parties as it relates to this civil action. The Burnetts' request that the court take judicial notice of the referenced facts is inappropriate and unnecessary.

## III. RICO

**\*5** The RICO statute, 18 U.S.C. §§ 1961-1968, provides for civil and criminal remedies for racketeering activities. "RICO allows private parties to bring civil suits for treble damages." *Deck v. Engineered Laminates,* 349 F.3d 1253, 1256-57 (10th Cir.2003) (citing 18 U.S.C. § 1964(c)). "Racketeering activity" encompasses a number of crimes identified in the statute, including mail fraud. 18 U.S.C. § 1961(1). "These underlying acts are referred to as predicate acts, because they form the basis for liability under RICO ." *Tal v. Hogan,* 453 F.3d 1244, 1261 (10th Cir.2006) (internal quotation marks and citation omitted). Section 1962 defines the criminal violations necessary for the recovery of civil damages under § 1964(c). A person need not "be formally convicted of any predicate act before liability under 18 U.S.C. § 1962(b) may attach." *Tal,* 453 F.3d at 1262 (internal quotation marks and citation omitted). "To state a RICO claim, a plaintiff must allege that the defendant violated the substantive RICO statute, 18 U.S.C. § 1962, by setting forth four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Deck,* 349 F.3d at 1256-57 (internal quotation marks and citations omitted).

## A. Failure to Allege a RICO Violation

The Burnetts appear to allege violation of § 1962(b) . (*See* SAC at ¶ 1).
    It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
18 U.S.C. § 1962(b).

## 1. RICO Enterprise

"The first rule of pleading a RICO claim is that the plaintiff must identify the enterprise." *Jennings v. Emry,* 910 F.2d 1434, 1439-40 (7th Cir.1990). *See also American Buying Ins. Services, Inc. v. S. Kornreich & Sons, Inc.,* 944 F.Supp. 240, 246 (S.D.N.Y.1996) (RICO plaintiff must adequately allege an enterprise in order to state a claim under either Section 1962(b) or (c)). An "enterprise" is defined under RICO to include "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise "is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to [hierarchal] or consensual decision-making." *Jennings,* 910 F.2d at 1440 (citations omitted). *See also United States Fire Insurance Co. v. United Limousine Service, Inc.,* 303 F.Supp.2d 432, 446 (S.D.N.Y.2004) ("An enterprise is defined as an entity, ... a group of persons associated together for the common purpose of engaging in a course of conduct") (internal quotation marks and citations omitted).

"To allege an enterprise within the meaning of RICO, there must be a group of persons associated together for a common purpose of engaging in a course of conduct ... [It is] proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Seidl v. Greentree Mortgage Co.,* 30 F.Supp.2d 1292, 1305 (D.Colo.1998) (internal quotation marks and citation omitted). "Any RICO

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

Page 6

enterprise must consist of more than a group of people who get together to commit a pattern of racketeering activity." *Starfish Investment Corp. v. Hansen,* 370 F.Supp.2d 759, 769 (N.D.Ill.2005) (citation omitted). "A RICO complaint must allege that the defendants were conducting the enterprise's affairs, rather than their own affairs." *Starfish,* 370 F.Supp.2d at 771.

*6 The SAC does not contain allegations, even in conclusory form, that there was a common purpose among the Defendants or any sort of decision-making mechanism for conducting an enterprise's affairs on a continuing basis. At best, the SAC alleges that George and Powell attempted to collect a judgment that the Burnetts allege is invalid. These allegations do not support the existence of an enterprise with shared or common purposes, continuity of structure and personnel, and a structure distinct from that inherent in the alleged pattern of racketeering activity. *See United States v. Turkette,* 452 U.S. 576, 583 (1981) (enterprise must be an "entity separate and apart from the pattern of racketeering activity in which it engages"); *United States v. Irizarry,* 341 F.3d 273, 286 (3d Cir.2003) (requiring that the enterprise be an ongoing organization with a framework for making or carrying out decisions, that the various associates function as a continuing unit, and that the enterprise is separate and apart from the pattern of racketeering activity) (citation omitted), *cert. denied,* 540 U.S. 1140 (2004); *United States v. Parise,* 159 F.3d 790, 795 (3d Cir .1998) (enterprise must maintain a shared organizational pattern and system of authority) (citation omitted). Even "conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir.2000). "Further, an attorney does not participate in the operation or management of an enterprise by offering legal advice or otherwise represent[ing] a client. *Seidl,* 30 F.Supp.2d at 1305 (citation omitted). The activity alleged in the SAC may be interpreted as nothing more than a legitimate and singular endeavor to collect a judgment. In sum, the SAC does not allege

an enterprise under RICO.

2. Pattern of Racketeering under § 1962

"[T]he complaint must demonstrate sufficient relationship and continuity among the predicate acts to qualify as a pattern of racketeering activity within the meaning of the RICO statute." *Starfish,* 370 F.Supp.2d at 771 (citation omitted). "[A] complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct--one indicating the threat of continuing criminal activity--reasonably may be inferred." *Jennings,* 910 F.2d at 1439. *See also St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 439 (5th Cir.2000) ("to state a RICO claim there must be: (1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise* ") (emphasis in original) (internal quotation marks and citation omitted). "In order to demonstrate a pattern of racketeering under 18 U.S.C. § 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity." *Protter v. Nathan's Famous Systems, Inc.,* 925 F.Supp. 947, 953 (E.D.N.Y.1996). "A pattern of racketeering activity must include commission of at least two predicate acts." *Deck,* 349 F.3d at 1256-57 (citation omitted).

*7 Several related "predicate acts" do not establish a pattern when they are part of an alleged "single effort" to effectuate one wrong, such as the obtaining of a contract or an act of insurance fraud. *See Scottsdale Insurance Co. v. Dorman,* 153 F.Supp.2d 852, 857 (E.D.La.2001) (granting motion to dismiss RICO claim where all alleged predicate acts were part of or directed toward a single scheme of insurance fraud against one insurer over a period of 6 months). The Burnetts allege that each of the predicate acts was perpetrated solely to allow the Defendants to collect a judgment that the Burnetts contend is invalid. Attempts to collect one judgment do not "constitute a distinct threat of long-term racketeering activity." *Tal,* 453 F.3d at 1268 (internal quotation marks and citation omitted). Further, the SAC is devoid of factual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 7

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

allegations as to any conduct engaged in by the Amreins that would qualify as predicate acts within the meaning of 18 U.S.C. § 1961. Because the SAC does not allege a "pattern" of racketeering activity, it is properly dismissed.

3. Fraud under RICO

All of the predicate acts pled in the SAC are based upon fraud. (*See* SAC at ¶¶ 14-38). "Rule 9(b) is applicable to RICO predicate acts based on fraud." *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989). *See also In Re Sattler's,* 73 B.R. 780, 786 (S.D.N.Y.1987) ( "the pleading of predicate acts for a RICO claim must meet the particularity requirements of Rule 9(b), Fed.R.Civ.P., where the acts are based in fraud") (citations omitted).

> "[W]e believe that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts. We believe this is particularly important in cases where the predicate fraud allegations provide the only link to federal jurisdiction. Thus, we hold that Rule 9(b) requires particularity in pleading RICO mail and wire fraud."

*Cayman Exploration,* 873 F.2d at 1362.

Fed.R.Civ.P. 9(b) requires that

> [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

To meet the Rule 9(b) standard, a plaintiff must identify the circumstances constituting the fraud. *Broadview Financial, Inc. v. Entech Management Services Corp.,* 859 F.Supp. 444, 449 (D.Colo.1994) (citation omitted). Specifically, a plaintiff must (1) identify the particular individuals with whom he dealt; (2) designate the occasion on which the fraudulent statements were made, and by whom; and (3) describe what misstatements and half-truths were expressed and how. *Id. See also Brooks v. Bank of Boulder,* 891 F.Supp. 1469, 1476 ("In pleading a claim under RICO, ... Plaintiffs must set forth the time, place and contents of the false

representation, the identity of the party making the false statement and the consequences thereof") (internal quotation marks and citation omitted); *Kaiser v. Bowlen,* 181 F.Supp.2d 1200, 1203 (D.Colo.2002) ("The complaint must contain allegations of the specific representations alleged to be fraudulent, where and when the statements were made, the particular defendant making the misrepresentations, and what was false about them") (citation omitted).

*\*8* The Burnetts have not adequately pled the elements of fraud. The SAC lacks specific allegations regarding the time, place, and content of the alleged fraud. The Burnetts have not alleged what documents were sent, to whom the documents were sent, the contents of the documents, or how the documents were fraudulent. There are no specific allegations of fraud against the Amreins. The Burnetts' allegations are stated in the most vague and conclusory manner. This is insufficient to meet the requirements that a RICO claim based on fraud be stated with particularity as to each defendant. Because the SAC does not allege fraud with the particularity required in pleading RICO claims, it is properly dismissed.

4. Mail Fraud

The Burnetts allege that Defendants engaged in mail fraud. (*See* SAC at ¶¶ 8, 9, 11). "The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v.. Welch,* 327 F.3d 1081, 1104 (10th Cir.2003) (citation omitted). *See also BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1102 (10th Cir.1999) (same) (internal quotation marks and citation omitted).

The particularity requirement of Rule 9(b) applies to civil RICO claims for which mail fraud is the predicate illegal act. *Tal,* 453 F.3d at 1263 (citations omitted). In order to satisfy the particularity requirements of Rule 9(b) where, as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 8

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

here, mail fraud is alleged as a predicate act of a RICO claim, "the plaintiff must specify the time, place, and content of the alleged false representation and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transactions furthered the fraudulent scheme." *Weizmann v. Kirkland and Ellis,* 732 F.Supp. 1540, 1546 (D.Colo.1990). "In addition, a plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent." *Kashelkar v. Rubin & Rothman,* 97 F.Supp.2d 383, 393 (S.D.N.Y.2000) (citation omitted).

Mail fraud is not committed simply by sending false statements through the mail. Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses. *Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F .2d 986, 991 (8th Cir.1989). The absence of specific intent to defraud is a complete defense to mail fraud. *United State v. Ashman,* 979 F.2d 469, 480 (7th Cir.1993) (citation omitted. *See also United States v. Dunn,* 961 F.2d 648, 650 (7th Cir.1992) ("Good faith, or the absence of an intent to defraud, constitutes a complete defense to a charge of mail fraud") (citation omitted). General allegations such as that transfers of funds were accomplished through the use of the mail or that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b). *In Re Sattler's,* 73 B.R. at 786 (citation omitted). The SAC does not satisfy the requirements for alleging mail fraud under RICO. The Burnetts merely allege that unidentified mailings were false. The allegations do not specify what each Defendant is alleged to have communicated, how those communications were false, and how, if at all, the Burnetts relied on them. *See Kashelkar,* 97 F.Supp.2d at 393 (allegations giving no particulars about what were the alleged statements, who made them, when and where they were made, what role they played in the scheme, or any facts which give rise to an inference of fraudulent intent" failed to satisfy pleading requirements of a RICO claim) (citation omitted).

*9 The Burnetts do not specifically allege predicate acts of mail fraud. (*See* SAC at ¶¶ 1438 (Defendants George and Powell "conduct[ed] fraud" and "intent to defraud")). There is no allegation that the Amreins used the mail to defraud Plaintiffs. The SAC does not allege with particularity how otherwise routine mailings furthered a fraudulent scheme. *See BancOklahoma,* 194 F .3d at 1102 (activities that would have been performed in normal course of business failed to establish that title companies directed activities of or participated in operations of alleged RICO enterprise).

Among the predicate acts of fraud and mail fraud alleged by the Burnetts is the preparation by George and Powell of documents "alleging that Burnetts were liable to Amreins [sic]." (SAC at ¶ 14). The allegations in the SAC do not support a claim that George's and Powell's actions were other than completely lawful, legitimate conduct of attorneys representing their clients in pending litigation. *See D'Orange v. Feely,* 877 F.Supp. 152,156 (S.D.N.Y.1995) (dismissing RICO claims against attorneys who had allegedly sent fraudulent accountings through the mail and holding that the attorney's actions "cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation"); *Morin v.. Trupin,* 711 F.Supp. 97, 105 (S.D.N.Y.1989) (holding that letter sent by attorney-defendants to plaintiffs demanding payment on notes which defendants allegedly knew to be unenforceable could not constitute RICO predicate act of mail fraud and that "Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation") (internal quotation marks and citation omitted); *Paul S. Mullin & Associates v. Bassett,* 632 F.Supp. 532, 540 (D.Del.1986) (finding "absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud") (citation omitted).

The court will not imply or read mail fraud into the SAC where it is not specifically alleged. *Giuliano v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

*Fulton,* 399 F.3d 381, 388 (1st Cir.2005) (quoting *Fleet Credit Corp. v. Sion,* 893 F.2d 441, 444 (1st Cir.1990) (we have "no duty to conjure up unpled allegations in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss") (internal quotation marks omitted)). The SAC does not adequately allege mail fraud and accordingly does not state a claim for violation of RICO, the only basis for this civil action.

5. Reliance Requirement under RICO

Reliance is an element of a civil RICO claim. *See City of New York v. Cyco.Net, Inc.,* 383 F.Supp.2d 526, 559 (S.D.N.Y.2005) (in order to establish the required causal connection in the context of an alleged RICO violation based on an act of mail fraud, plaintiffs must demonstrate that they relied on the alleged misrepresentations) (citations omitted); *Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539 (5th Cir.2001) (in civil RICO claims in which fraud is alleged as a predicate act, reliance on the fraud must be shown) (citations omitted); *VanDenBroeck,* 210 F.3d at 701 (under RICO, an element of both mail fraud and wire fraud is reliance on the fraudulent representation).

**\*10** The SAC includes a single conclusory allegation that the Burnetts relied on the alleged misrepresentations by Defendants. (*See* SAC at ¶ 9). Throughout the extensive underlying and ongoing litigation in state court, the Burnetts have challenged the collection of the judgment against them, belying any allegation of their reliance on Defendants' alleged misrepresentations. For this reason also, the SAC is properly dismissed.

6. Section 1962(b)

The first element of a Section 1962(b) claim "requires sufficient allegations of an interest in or control of an enterprise ." *Tal,* 453 F.3d at 1268 (internal quotation marks omitted). " 'Interest in or control of' requires more than a general interest in the results of its actions, or the ability to influence the enterprise through deceit." *Id.* (citation omitted). "Rather, it requires some ownership of the enterprise or an ability to exercise dominion over

it." *Id.* "To survive a motion to dismiss, the complaint must specify the connection between defendants' racketeering activity and their interest in the ... enterprise." *Protter,* 925 F.Supp. at 955 (internal quotation marks and citations omitted).

The SAC lacks any allegations regarding acquisition or maintenance of an interest in an enterprise. The Burnetts have not pled any specific facts that Defendants acquired or maintained an enterprise through illegitimate acquisitions. The SAC does not allege a nexus between control of a named enterprise and alleged racketeering activity. The SAC does not allege any "facts would establish either that the individual defendants had acquired or maintained control of [an enterprise] through a pattern of racketeering." *Protter,* 925 F.Supp. at 955 . For this reason, the Burnetts' RICO claims pursuant to § 1962(b) are properly dismissed.

IV. Conclusion

The SAC does not state any claim upon which relief may be granted. The SAC is the Burnetts' third attempt to comply with the rules of this court and the Federal Rules of Civil Procedure. Defendants raised numerous legal challenges to the Amended Complaint. Even after Defendants filed motions to dismiss and for summary judgment addressed to the Amended Complaint, the court afforded the Burnetts an opportunity to further amend their claims. At the hearing held on July 6, 2006, the court notified the Burnetts of the legal deficiencies of their claims. After ample warning of the deficiencies of their claims, the Burnetts filed a SAC that suffers from the same deficiencies.

Under the circumstances of this case, it is appropriate for the court to recommend dismissal of the SAC on the merits and with prejudice. Even *pro se* parties are not permitted an infinite number of attempts to comply with the rules of the court. The Burnetts do not appear willing or able to prepare a proper complaint. Defendants have offered legitimate reasons why the SAC should be dismissed. When the state court "proceedings are final," the federal court will likely lack of subject matter jurisdiction under the *Rooker-Feldman*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

doctrine. [FN3] For these reasons, the court recommends that the SAC be dismissed with prejudice. [FN4]

> FN3. Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear appeals from final judgments of state courts." *Guttman v. Khalsa,* 401 F.3d 1170, 1173 (10th Cir.), *judgment vacated on other grounds,* 126 S .Ct. 321 (2005). The United States Supreme Court recently stated that the *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005).
> The Burnetts "plainly" have "repaired to federal court to undo" the Colorado judgment against them. *Exxon Mobil,* 544 U.S. at 293. *See, e.g.,* "Plaintiff Burnetts' Motion this Court under Authority of F.R.CIV.P. R 60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001 C5 and 2004CV03" (doc. # 62) (Burnetts ask federal court "to vacate Colorado state court judgments/orders, November 18th 2003, January 20th 2004, March 7th 2005 and July 13th, 2005 in matters 2001 C5 and 2004CV03").
> However, "[t]he *Rooker-Feldman* doctrine only applies to cases brought after the state proceedings have ended." *Guttman,* 446 F.3d at 1031 (internal quotation marks and citation omitted). The Burnetts have appealed the County Court judgment for attorney fees and costs in the amount of $29,039.26 (Exhibit J to doc. # 35) by filing Case No.2005 CV 49 in the District Court for Conejos County. (*See* Exhibit D to doc. # 35 at ¶ 5). Case No.2005 CV 49 is not yet concluded in the state courts.

> FN4. In light of this Recommendation, the

court does not reach the alternative arguments presented in the Defendants' Motions.

### V. Burnetts' Motion to Vacate

**\*11** The Burnetts ask this court, apparently pursuant to Fed.R.Civ.P. 60(b)(4), to vacate "void" judgments entered by the state courts. (*See* Burnett's Motion (filed July 6, 2006) (doc. # 62), Burnetts' Notice (filed July 19 2006) (doc. # 66)). The Burnetts argue that the state courts did not have jurisdiction to enter the judgments against them. ( *See id.*).

Fed.R.Civ.P. 60(b) provides in part:
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void.

Rule 60(b)(4) provides for relief from a judgment on the ground that "the judgment is void." Fed.R.Civ.P. 60(b)(4). "A judgment is void ... if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *United States v. Buck,* 281 F.3d 1336, 1344 (10th Cir.2002) (quotation omitted).

The Burnetts seek relief in the federal district court for a judgment that was rendered in state court. Rule 60(b) does not authorize a federal district court to relieve the Burnetts of a judgment entered in state court. The Burnetts have raised in the state courts the same arguments raised in their Motion to Vacate. A motion under Rule 60(b) cannot be used as a substitute for appeal. *Morris v. Adams-Millis Corp.,* 758 F.2d 1352, 1357 (10th Cir.1985). The Motion to Vacate is not properly brought in this court.

Further, the *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

those judgments." *Exxon Mobil Corp.,* 544 U.S. at 284. "The Rooker-Feldman doctrine is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1142-43 (10th Cir.2006) (internal quotation marks and citation omitted). "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Bolden,* 441 F.3d at 1145. "Appellate review--the type of judicial action barred by Rooker-Feldman--consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law." *Bolden,* 441 F.3d at 1143. "A suit in federal district court to litigate the issue already decided by the [Colorado courts] in essence would be an attempt to obtain direct review" of the decisions in the Colorado courts. *Bolden,* 441 F.3d at 1144 (internal quotation marks and citation omitted). The Burnetts' motion to vacate "void" judgments entered by the state courts is essentially an appeal of state court judgments. The relief sought by the Burnetts runs afoul of the *Rooker-Feldman* doctrine.

*\*12 Accordingly, IT IS RECOMMENDED that:

1. "Defendant Daniel Powell's Motion [to] Dismiss Pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6)" (filed August 3, 2006) (doc. # 76) be GRANTED;

2. "Defendant George's Renewed Motion for Summary Judgment" (filed August 3, 2006) (doc. # 74) be GRANTED IN PART;

3. "Plaintiff Burnetts' Motion this court under Authority of F.R. Civ. P. R 60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001 C5 and 2004CV03 [sic]" (filed July 6, 2006) (doc. # 62) be DENIED;

4. "Defendants Robert L. and Karen L. Amrein's

Motion for Summary Judgment" (filed June 6, 2006) (doc. # 41) be GRANTED IN PART;

5. "Defendant Daniel Powell's Motion for Summary Judgment" (filed May 31, 2006) (doc. # 34) be GRANTED IN PART;

6. "Defendant Doug B. George's Renewed Motion for Summary Judgment ..." (filed May 4, 2006) (doc. # 19) be GRANTED IN PART;

7. In light of this Recommendation, "Plaintiffs' Burnetts' Motion to Lift Order Staying Discovery and Grant Leave to Engage in Discovery ..." (filed August 30, 2006) (doc. # 94) be DENIED; and

8. This civil action be DISMISSED WITH PREJUDICE.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *In re Griego,* 64 F.3d 580, 583 (10th Cir.1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego,* 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma,* 73 F.3d 1057, 1060 (10th Cir.1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 12

Slip Copy, 2006 WL 2859625 (D.Colo.)

**(Cite as: 2006 WL 2859625 (D.Colo.))**

the district court or for appellate review." *One Parcel of Real Property,* 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers,* 195 F.3d 573, 579-80 (10th Cir.1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property,* 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.,* 52 F.3d 901, 904 (10th Cir.1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States,* 980 F.2d 1342, 1352 (10th Cir.1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS,* 418 F.3d 1116, 1122 (10th Cir.2005) (firm waiver rule does not apply when the interests of justice require review).

Slip Copy, 2006 WL 2859625 (D.Colo.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 2703607 (Trial Motion, Memorandum and Affidavit) Defendant George's Renewed Motion for Summary Judgment (Aug. 12, 2006)Original Image of this Document (PDF)

·• 1:06cv00564 (Docket) (Mar. 28, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2

**Westlaw.**

Slip Copy                                                                                  Page 1

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

**C**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
James F. KEARNEY,
Plaintiff-Appellee-Cross-Appellant,
v.
Vincent DIMANNA; Ken A. Overman; Mark
Haney; Frank J. Vessa, Sr.; Anthony P.
Iacovetta; Jimmy J. Gose; Thomas S. Lahey; James
R. Smith; Kenneth C. Padgett;
George A. Gray; Steven W. Panck; Paul M. Pazen;
Jesus Quinones; Douglas Brader;
Andrew A. Ramirez; David Neil, individually and
as Director of the Police
Protective Association of the City and County of
Denver; martin vigil,
individually and as Director of the Police Protective
Association of the City
and County of Denver; Jonathyn Priest; Amy
Martin, M.D.; David J. Bruno; Bruno,
Bruno & Colin, P.C.; Michael Stack, individually
and as an Officer and Director
of the Police Protective Association of the City and
County of Denver; Bernardo
Arabalo, individually and as an Officer and Director
of the Police Protective
Association of the City and County of Denver; John
Wyckoff, individually and as
an Officer and Director of the Police Protective
Association of the City and
County of Denver; Kirk Miller, individually and as
an Officer and Director of

the Police Protective Association of the City and
County of Denver; Kenneth
Chavez, individually and as an Officer and Director
of the Police Protective
Association of the City and County of Denver;
Marco K. Vasquez; Michael
Quinones; Thomas David Sanchez; David Abrams;
Gerald R. Whitman; Timothy Leary;
David Thomas; Steven Evans; William Mitchell,
Defendants-Cross-Appellees,
and
Police Protective Association of the City and
County of Denver, Defendant-
Appellant-Cross-Appellee.
**Nos. 04-1439, 04-1443.**

Aug. 30, 2006.

**Background:** Private investigator brought action under Racketeer Influenced and Corrupt Organizations Act (RICO) and state law alleging that police officers, law firm, and police association filed defamation suit against him to punish him for accusing officers of covering up shooting. The United States District Court for the District of Colorado dismissed complaint and denied association's motion for sanctions. Investigator and association appealed.

**Holdings:** The Court of Appeals, Ebel, Circuit Judge, held that:
(1) investigator failed to properly plead enterprise, and
(2) district court improperly evaluated motion for Rule 11 sanctions.
Affirmed in part, reversed in part, and remanded.

**[1] Racketeer Influenced and Corrupt Organizations** ⛗0

319Hk0 k.
Private investigator alleging that police officers, law firm, and police association filed defamation suit

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

against him to punish him for accusing officers of covering up shooting failed to properly plead enterprise, and thus failed to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO), where there was no indication that alleged enterprise had any existence or purpose outside of alleged malicious prosecution and intimidation of investigator to prevent him from continuing to expose supposed illegal activity and cover-up. 18 U.S.C.A. §§ 1961(4), 1962.

**[2] Federal Civil Procedure** 🔑0
170Ak0 k.
District court could not decline to impose Rule 11 sanctions following dismissal of plaintiff's federal law claims on ground that his pendent state law claims were meritorious, but instead was required to evaluate whether federal claims were frivolous without reference to state law claims, even if state law claims were at heart of his federal claims. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.
Michael Whelan, San Francisco, CA, Brice A. Tondre, Lakewood, CO, for Plaintiff-Appellee.

J. Andrew Nathan, Nathan, Bremer, Dumm & Myers, Denver, CO, Susan Prose, Jefferson County Attorney's Office, Golden, CO, for Defendants.

Before BRISCOE, McKA Y, and EBEL, Circuit Judges.

**ORDER AND JUDGMENT** [FN*]

DAVID M. EBEL, Circuit Judge.

*1 James Kearney, a private investigator, brought this civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, against thirty-four individual defendants, a law firm, and a non-profit corporation (collectively, "Defendants"). The district court granted motions by all Defendants to dismiss for failure to state a claim, but denied a motion by one Defendant for sanctions against Kearney. We affirm the dismissal of Kearney's claims but reverse and remand on the issue of sanctions.

**I. BACKGROUND** [FN1]

On September 29, 1999, a SWAT team from the Denver Police Department entered Ismael Mena's residence pursuant to a "no-knock" search warrant that mistakenly listed Mena's address instead of the "crack house" next door. During the raid, Mena was shot and killed. Although there was an initial cover-up, the fact that the SWAT team had raided the wrong house was anonymously leaked to the media and publicized in November 1999.

An attorney for Mena's family hired Plaintiff Kearney, a former F .B.I. agent, to investigate the killing. Kearney investigated and concluded that Mena had been unarmed and that the SWAT team members had initially shot him solely because they overreacted to the situation. Kearney further concluded that when the SWAT team members realized that they had raided the wrong house and nearly killed an unarmed man, they decided to cover up the truth: the SWAT team shot Mena again, killing him, then altered the crime scene to look as if Mena had been shooting at them. According to Kearney, the police department then engaged in a two-month cover-up of the true nature of Mena's death.

Kearney attempted to convince both a special prosecutor and the F .B.I. of his conspiracy theory, but was essentially ignored. He therefore began to publicize his allegations during appearances on a Denver radio talk show. Defendants realized that Kearney posed a threat as a potential expert witness against them and began to discuss how to silence him. Eventually, the Police Protective Association of the City and County of Denver ("PPA") and its members conspired with attorney David Bruno and his law firm to intimidate Kearney by filing a defamation lawsuit against Kearney, the talk show host, and the radio station. The PPA funded the lawsuit, Bruno represented the defamation plaintiffs, and many Defendants participated by giving false or misleading deposition testimony. After the radio station and talk show host agreed to settle the case, Defendants voluntarily dismissed the entire defamation lawsuit, including all claims against Kearney--who had refused to settle. Kearney nonetheless alleges that the lawsuit "injured him professionally, personally, and economically, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 3

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

his [sic] business and business reputation."

Kearney thereafter filed the present suit against Defendants, alleging RICO, RICO conspiracy, and state law claims. The district court granted Defendants' motions to dismiss Kearney's RICO claims under Rule 12(b)(6) because: (1) he "failed to show that he has standing to pursue the RICO claims"; (2) his "definition of the criminal enterprise is not different from his allegations of a pattern of racketeering activity"; (3) he lacked "support for a valid claim of an effect on interstate commerce"; and (4) "[t]he conspiracy claim is insufficient because the ... RICO violations ... have not been adequately alleged." Because there were no remaining federal claims, the district court dismissed Kearney's state law claims under Rule 12(b)(1) for lack of jurisdiction.

**\*2** During the litigation, Defendant PPA sought Rule 11 sanctions against Kearney. The district court, however, declined to separate the federal claims from the unresolved state law claims for sanctions purposes and therefore denied the request. PPA appeals the denial of its motion for sanctions and Kearney cross-appeals the dismissal of his RICO and RICO conspiracy claims.

**II. DISCUSSION**
**A. Dismissal of Kearney's RICO Claims**

As explained above, the district court dismissed Kearney's RICO and RICO conspiracy claims (together, "RICO claims") on numerous grounds. Because we agree that Kearney failed to plead an enterprise distinct from the pattern of racketeering activity, we need not address the other grounds for dismissal.

**1. Standard of review**

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim. *Sutton v. Utah State Sch. for the Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). In our review, we accept all well-pleaded factual allegations as true and view them in the light most favorable to the nonmoving party. *Id.* at 1236. "A 12(b)(6) motion

should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

**2. Enterprise**

Subsection 1962(c) of RICO makes it
  unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c). Subsection 1962(d) makes it "unlawful for any person to conspire to violate" subsection 1962(c). *Id.* § 1962(d). RICO provides a private civil cause of action for those who are injured by violations of § 1962 and allows for recovery of treble damages, costs, and attorney fees. *Id.* § 1964(c).

"To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir.2002) (quotation omitted). The second RICO element, an enterprise, "includes any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Despite the apparent breadth of this definition, to properly plead an enterprise a plaintiff must allege three components: (1) that there is "an ongoing organization with a decision-making framework or mechanism for controlling the group," (2) "that various associates function as a continuing unit," and (3) "that the enterprise exists separate and apart from the pattern of racketeering activity." *United States v. Smith,* 413 F.3d 1253, 1266-67 (10th Cir.2005) (quotations omitted).

**\*3** We conclude that Kearney has failed to allege the third component-- existence of an enterprise "separate and apart from the pattern of activity in which it engages." *United States v. Turkette,* 452

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 4

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Kearney's amended complaint merely states, in relevant part:

This Complaint's foundational claims are abuse of legal process and malicious prosecution of KEARNEY by the SWAT Team defendants with the direct assistance and aid of the other defendants....

At all relevant times, the defendants acted as a group of persons associated together in fact for the common purpose of maliciously prosecuting KEARNEY, and thereby abusing legal process, obstructing justice, and conspiring to commit and committing perjury. Therefore, their conduct as such constitutes an association-in-fact "enterprise" within the meaning of RICO....

Compl. at 49-50.

[1] It is clear from these assertions that the alleged enterprise and the alleged pattern of racketeering activity are the same. Kearney claims that the Defendants associated in fact to obstruct justice by maliciously prosecuting him, but there is no indication that the "association" had any existence or purpose outside of the alleged malicious prosecution and intimidation of Kearney to prevent him from continuing to expose the supposed illegal activity and cover-up pertaining to Mena's death. *See United States v. Cianci,* 378 F.3d 71, 82 (1st Cir.2004) ("[C]riminal actors who jointly engage in criminal conduct that amounts to a pattern of 'racketeering activity' do not automatically thereby constitute an association-in-fact RICO enterprise simply by virtue of having engaged in the joint conduct. Something more must be found--something that distinguishes RICO enterprises from ad hoc one-time criminal ventures."); *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 427 (5th Cir.1987) ("[I]ndividuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two [or more] predicate acts during the commission of this offense, because their relationship to one another has no continuity."). Simply put, Kearney's allegations fail to show that, in the absence of the alleged malicious prosecution and scheme of intimidation against him, there would

have been any association-in-fact at all among the Defendants. *See Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir.1997) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation."). Therefore, Kearney has failed to properly plead an enterprise, [FN2] and his RICO claims were properly dismissed. [FN3]

**B. Rule 11 Sanctions**

We now turn to the second issue in this case: whether the district court properly denied Defendant PPA's motion for sanctions against Kearney. We conclude that the denial was improper and remand for further consideration.

**1. Standard of review**

*4 "All aspects of the district court's Rule 11 determination are reviewed for abuse of discretion, which is shown if the district court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Barrett v. Tallon,* 30 F.3d 1296, 1301 (10th Cir.1994) (quotation omitted).

**2. Analysis**

The district court denied PPA's motion for sanctions against Kearney, concluding that

[t]he insufficiency of the federal claims does not warrant a determination that sanctions should be imposed. That would require a separation of the federal claims from the state claims and this court has no basis for determining that none of the state claims made against PPA could be supported by evidence if those claims were fully litigated. This court has no basis for making a Rule 11 determination with respect to the state law claims and is unwilling to separate them for this purpose.

We agree with the PPA that the district court made "the erroneous legal assumption that the sanction analysis for the dismissed federal claims ... was somehow dependent on either the validity or the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                        Page 5

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

adjudication of the state law claims."

Subdivision (b) of Rule 11 provides, in relevant part, that

[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

...

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;....

Fed.R.Civ.P. 11(b). Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." *Id.* at 11(c).

In *Dodd Insurance Services, Inc. v. Royal Insurance Company of America,* 935 F.2d 1152 (10th Cir.1991), we noted a circuit split as to the proper interpretation of Rule 11:

Some courts have interpreted Rule 11 narrowly, suggesting that sanctions are inappropriate when a pleading contains both valid and frivolous claims. *See, e.g., FDIC v. Tekfen Constr. & Installation Co.,* 847 F.2d 440, 444 n. 6 (7th Cir.1988) ("[E]ven if this minor argument were off the mark, the fact that one argument in an otherwise valid paper is not meritorious" does not warrant Rule 11 sanctions.); *Burull v. First Nat'l Bank of Minneapolis,* 831 F.2d 788, 789 (8th Cir.1987) (lawsuit containing meritless and factually groundless claims did not mandate Rule 11 sanctions because complaint, "taken as a whole, was legally and factually substantial enough to reach a jury"), *cert. denied,* 485 U.S.

961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986) ("Rule [11] permits the imposition of sanctions only when the 'pleading, motion, or other paper' itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous."). Other courts interpret Rule 11 more broadly, finding that it may be violated by a pleading containing a single frivolous claim. *See, e.g., Cross & Cross Properties v. Everett Allied Co.,* 886 F.2d 497, 504 (2d Cir.1989) ("[T]o adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established reading of Rule 11."); *Patterson v. Aiken,* 841 F.2d 386, 387 (11th Cir.1988) ("Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions."); *Frantz v. United States Powerlifting Fed'n,* 836 F.2d 1063, 1067 (7th Cir.1987) ("Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing.").

**\*5** *Id.* at 1158. We chose in *Dodd* to follow the broader interpretation of Rule 11 and therefore held "that a pleading containing both frivolous and nonfrivolous claims may violate Rule 11." *Id.* We firmly stated that "[t]o conclude otherwise would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions." *Id .* (quotation omitted).

[2] We conclude that *Dodd* is controlling in this case. The district court essentially declined to consider whether the insufficiency of Kearney's RICO claims merited sanctions because it was unwilling to "separat[e]" those claims from Kearney's other--potentially meritorious--state-law claims. Yet *Dodd* specifically held that proper application of Rule 11 requires evaluating claims individually for sanctions purposes. This comports

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 6

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

with the plain language of the Rule, which speaks in terms of "claims" and "legal contentions." Fed.R.Civ.P. 11(b)(2). Each claim must be individually evaluated and the merit, or potential merit, of one legal claim does not diminish the command of Rule 11 that *each* claim have the necessary legal support.

Kearney argues that the district court's refusal to separate the claims was proper because his state-law claims were "at the heart" of his RICO claims. We do not think that relatedness matters. Although there are, not surprisingly, many similarities between the state and federal causes of action asserted by Kearney, RICO contains special requirements that do not apply to the state law claims. Therefore, even if Kearney were to prevail on his state-law claims, that would be quite irrelevant to the question of whether the federal claims-- with their unique requirements--were warranted and nonfrivolous.

We emphasize that our decision, of course, should not be taken as a conclusion that sanctions are merited in this case; that is a decision for the district court to make in the first instance. Our conclusion is simply that the district court "based its ruling on an erroneous view of the law," *Barrett*, 30 F.3d at 1301 (quotation omitted), and thereby abused its discretion. Consequently, we remand for the district court to address whether sanctions are merited.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Kearney's RICO claims but REVERSE the district court's decision on sanctions and REMAND for a determination of whether sanctions are merited.

> FN* This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

> FN1. Because the district court granted

Defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6), we recite the facts as alleged in the complaint and assume for purposes of this appeal that they are true. *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co. .*, 407 F.3d 1091, 1123 (10th Cir.2005).

> FN2. In his response to Defendants' motions to dismiss, Kearney claimed that "the Denver Police Department and those closely affiliated with it is the enterprise." On appeal, he asserts that there were *four* enterprises: the Bruno law firm, the PPA, the Denver Police Department, and the association-in-fact of all Defendants. We decline to consider these claims because they were not pleaded in the complaint. "It is well-established ... that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir.1995); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

> FN3. Because dismissal of Kearney's § 1962(c) claim was proper, dismissal of his RICO conspiracy claim was therefore also proper. *See Tal v. Hogan*, 453 F.3d 1244 at 1270 (10th Cir.2006) ("By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)."); *Condict v. Condict*, 826 F.2d 923, 927 (10th Cir.1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 7

Slip Copy, 2006 WL 2501414 (10th Cir.(Colo.)), RICO Bus.Disp.Guide 11,130

**(Cite as: 2006 WL 2501414 (10th Cir.(Colo.)))**

### Briefs and Other Related Documents (Back to top)

• 2005 WL 2124385 (Appellate Brief) Appellee's Reply Brief on Cross-Appeal (May 26, 2005)Original Image of this Document (PDF)

• 2005 WL 441590 (Appellate Brief) Appellant's Opening Brief (Jan. 18, 2005)Original Image of this Document (PDF)

• 04-1443 (Docket) (Oct. 22, 2004)

• 04-1439 (Docket) (Oct. 21, 2004)

• 2004 WL 3481276 (Appellate Brief) Defendants/Appellees David Thomas' and Steven Evans' Answer Brief on Cross Appeal (Sep. 21, 2004)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3

Westlaw.

342 B.R. 384 (Table)                                                                                          Page 1

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

**H**

NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "United
States Bankruptcy Appellate Panel for the Tenth
Circuit Decisions Without Reported Opinions" table
appearing in the Bankruptcy Reporter. Use FI
CTA10 BAP Rule 8018-6 for rules regarding the
citation of unpublished opinions.)


United States Bankruptcy Appellate Panel for the
Tenth Circuit.
In re Redie Bell LEWIS, Debtor.
Redie Bell LEWIS, Plaintiff--Appellant,
v.
BNC MORTGAGE, INC., Option One Mortgage,
Corp., First Union National Bank,
Kozeny and McCubbin LC., Miller Enterprises,
Inc., Jeffrey Miller, Adamson and
Associates Inc., and Maplewood Mortgage Inc,
Defendants--Appellees.
**No. KS-05-022, 03-41515-13, 03-7068.**

May 4, 2006.

Appeal from the United States Bankruptcy Court
for the District of Kansas.

Before BOHANON, MICHAEL, and MCNIFF,
Bankruptcy Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not
binding precedent, except under the
doctrines of law of the case, res judicata,
and collateral estoppel. 10th Cir. BAP L.R.
8018-6(a).

MCNIFF, Bankruptcy Judge.

**1 The Debtor, Redie Lewis, timely appeals the
bankruptcy court's July 8, 2004 Memorandum and
Order, March 11, 2005 Memorandum and Order,
and March 11, 2005 Judgment (collectively,
Judgment) dismissing the Debtor's adversary
proceeding with prejudice. The Debtor also timely
appeals the bankruptcy court's March 11, 2005
Order Granting Motion to Withdraw by Plaintiff's
Counsel (Withdrawal Order). The Debtor also
contends that several other bankruptcy court's
orders (entered in the adversary proceeding and the
underlying bankruptcy case) should be reversed: a
November 10, 2004 Stipulated Protective Order to
Clerk; an October 29, 2003 minute order requiring
the Debtor to make adequate protection payments to
First Union National Bank in lieu of stay relief; a
July 13, 2004 Order to Debtor to Pay Trustee; a
December 31, 2003 Order Authorizing
Disbursement to Option One Mortgage Corp.; and a
February 12, 2004 Order Staying Discovery
Pending Resolution of Motion to Abstain
(collectively, Miscellaneous Orders). [FN1]

FN1. By Order dated September 30, 2005,
a Motions Panel of this Court referred to
this Court the issue of the unauthorized
Response to Appellant's Reply Brief filed
by First Union National Bank and the
Reply to Response Brief and Request for
Permission to Respond to the Sur-Reply
Brief both filed by Appellant Redie Lewis.
The pleadings are hereby stricken and the
Request is denied.

I. Jurisdiction and Standard of Review

The Debtor filed a timely Notice of Appeal of the
Judgment and Withdrawal Order, and no party
elected to have the appeal heard by the United
States District Court for the District of Kansas.
Therefore, this Court has jurisdiction over the
appeals of the Judgment and the Withdrawal Order.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

28 U.S.C. § 158(a)(1), (b)-(c); Fed. R. Bankr.P. Rule [Interim] 8001(a) & (e); Fed. R. Bankr.P. 8002(a); 10th Cir. BAP L.R. 8001-1.

The failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Aspect Tech. v. Simpson (In re Simpson),* 215 B.R. 885, 886 (10th Cir. BAP1998) (per curiam). Because the Debtor did not file a notice of appeal of the Miscellaneous Orders, all such appeals are dismissed.

The Court reviews *de novo* the bankruptcy court's dismissal of the Debtor's adversary proceeding for failure to state a claim and the entry of summary judgment on res judicata and statute of limitations grounds. *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1550 (10th Cir.1992). The Withdrawal Order is reviewed for abuse of discretion. *U.S. v. Johnson,* 961 F.2d 1488, 1490 (10th Cir.1992). Under the abuse of discretion standard of review:

[A] trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (citation and quotation omitted).

II. Background

The Debtor purchased a home constructed by Appellees Miller Enterprises, Inc. and Jeffrey Miller (collectively, Miller) at a closing held on February 18, 2000. Appellee Adamson & Associates (Adamson) appraised the home prior to the closing. Appellee BNC Mortgage, Inc. (BNC) was the original lender, assigning its mortgage rights to Appellee First Union National Bank (First Union). Appellee Option One Mortgage Corp. (Option One) was BNC's servicing agent. Appellee Maplewood Mortgage Inc. (Maplewood) was not

served in the adversary proceeding and was subsequently dismissed on that basis. Appellee Kozeny and McCubbin LC (Kozeny) is the law firm that represented First Union in a foreclosure action (Foreclosure Action) filed against the Debtor based on a default in payments. Neither Option One, Maplewood, or Kozeny responded on this appeal.

**\*\*2** On July 19, 2000 the Debtor filed a complaint against BNC with the United States Department of Housing and Urban Development (HUD) alleging discriminatory lending practices. HUD issued a Determination of No Reasonable Cause on February 7, 2001 from which the Debtor took no further action.

First Union commenced the Foreclosure Action against the Debtor on September 22, 2000. The District Court of Johnson County, Kansas granted First Union summary judgment and entered a judgment of foreclosure (Foreclosure Judgment) against the Debtor on November 20, 2002. The Debtor did not appeal the Foreclosure Judgment.

The Debtor filed a voluntary chapter 13 case in the United States Bankruptcy Court for the District of Kansas--Topeka Division on November 27, 2002, case no. 02-24485. The case was dismissed on May 12, 2003.

On May 30, 2003, through counsel, the Debtor filed a second chapter 13 petition for relief. The Debtor filed her *pro se* adversary proceeding (Complaint) on August 4, 2003. On September 26, 2003, Timothy A. Toth entered his appearance in the adversary proceeding on behalf of the Debtor/Plaintiff. On November 24, 2003, Mr. Toth filed an Amended Complaint.

Count I of the Amended Complaint alleged negligence by Kozeny and First Union on the grounds that BNC had not assigned the mortgage to First Union at the time the Foreclosure Action was commenced. Count II alleged Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.,* violations stemming from the construction, marketing, financing, sale and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                                                     Page 3

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

foreclosure of real properties, including the Debtor's home. Count III alleged fraud and misrepresentations by Miller, Adamson, and Maplewood pertaining to the construction, quality and financing of her home. Count IV alleged violations by BNC and First Union of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.,* that occurred before the closing took place. Count V alleged that BNC, First Union, Miller, and Option One discriminated against the Debtor in violation of TILA.

Each Appellee moved to dismiss the Amended Complaint under Fed. R. Bankr.P. 7012, incorporating Fed.R.Civ.P. 12(b)(6), on statute of limitations grounds and because the RICO claim failed to state a claim under Fed. R. Bankr.P. 7009, incorporating Fed.R.Civ.P. 9(b). First Union also moved for summary judgment alleging that the Foreclosure Judgment precluded the Debtor's claims on the ground of res judicata.

On July 8, 2004 the bankruptcy court entered the Memorandum and Order. The bankruptcy court dismissed with prejudice the claims for negligence (Count I), fraud (Count III), TILA violations (Count IV) and discrimination (Count V), concluding all of those claims for relief were time-barred. The bankruptcy court gave the Debtor until September 8, 2004 to file a second Amended Complaint on the remaining RICO claim (Count II) to meet the pleading requirements of RICO with particularity. The bankruptcy court also lifted its previous order staying discovery and set a 60-day discovery deadline on the RICO claim.

**\*3** On October 18, 2004 Mr. Toth filed the Debtor's Second Amended Complaint. Each remaining defendant (Miller, First Union, Kozeny, Option One, BNC and Adamson) filed a motion to dismiss the Second Amended Complaint based on a failure to plead the RICO claim with the requisite particularity. Mr. Toth filed the Debtor's Response to the motions to dismiss on November 23, 2004. At that time, the motions were fully briefed and before the bankruptcy court for a decision.

On December 17, 2004 Mr. Toth, a solo practitioner, filed an Emergency Motion to Withdraw as the Debtor's counsel due to health reasons. The motion set forth Mr. Toth's health problems in detail. Mr. Toth alleged that the Debtor needed additional time to secure counsel prior to the pretrial conference. The Debtor did not oppose the Motion to Withdraw.

The bankruptcy court held a hearing on the Motion to Withdraw, at which the Debtor was present with Mr. Toth. The bankruptcy court took the motion under advisement with the motions to dismiss and pending the submission of the final pretrial order by Mr. Toth.

On March 11, 2005 the bankruptcy court entered its Withdrawal Order, noting that the motion was unopposed by the Debtor. The bankruptcy court found that although Mr. Toth had not submitted a proper pretrial order, the Debtor had sufficient time to have retained substitute counsel. Because the bankruptcy court simultaneously dismissed the Second Amended Complaint, no further proceedings necessitating a pretrial order were contemplated. Mr. Toth is not a named party to this appeal and did not appear.

Also on March 11, 2005 the bankruptcy court entered the Memorandum and Order, dismissing the Second Amended Complaint and the adversary proceeding under Rule 12(b)(6) on the grounds that the RICO claim did not allege facts sufficient to state a claim with the particularity required by RICO under Rule 9(b). The Memorandum and Order granted First Union's motion for summary judgment, holding that the claims were barred by the issue and claim preclusive effect of the final Foreclosure Judgment. The Debtor, acting *pro se,* filed a Notice of Appeal from the Judgment and the Withdrawal Order.

III. Discussion

The Debtor seeks a remand to the bankruptcy court to obtain counsel, conduct discovery, and prosecute the RICO claim. The Debtor did not address in her

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                                                    Page 4

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

pleadings or at oral argument the legal issues or alleged errors upon which this sought remand should be predicated and failed to address the legal standards upon which the bankruptcy court's orders were based.

*1. The Withdrawal Order*

An order permitting the withdrawal of counsel is reviewed for an abuse of discretion. We conclude the bankruptcy court did not abuse its discretion when it entered the Withdrawal Order.

The Debtor did not oppose the Motion to Withdraw. By the time the Motion to Withdraw was filed, the motions to dismiss were fully briefed and the Debtor had been granted 60 days to conduct discovery. Further, between the time the Motion to Withdraw was filed and the Withdrawal Order was entered, the Debtor had a three-month period to obtain substitute counsel. The only matter remaining when the Withdrawal Order was entered was for the Debtor to file a timely notice of appeal, which she did *pro se.* The record shows no prejudice to the Debtor, but rather considerable deference from the bankruptcy judge. The Withdrawal Order is affirmed.

*2. The Judgment*

**\*\*4** This Court concurs with the bankruptcy court's legal analysis contained in the two Memorandum and Orders. For the reasons stated in the bankruptcy court's well reasoned orders attached as Appendix A & B hereto, we AFFIRM.

APPENDIX A
MEMORANDUM AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS AND
FOR SUMMARY
JUDGMENT, IN PART, AND DENYING
DEFENDANTS' MOTIONS TO DISMISS AND
FOR SUMMARY
JUDGMENT, IN PART

KARLIN, Bankruptcy Judge.

This matter is before the Court on Motion of BNC Mortgage to Dismiss Amended Complaint (Doc. 55), Motion of Option One Mortgage to Dismiss Counts I, II, III, IV and V of the Amended Complaint (Doc. 56), Motion of First Union National Bank for Summary Judgment and Motion to Dismiss (Doc. 60), [FN2] Motion of Miller Enterprises and Jeffrey Miller to Dismiss Amended Complaint (Doc. 71), and Motion of Adamson and Associates to Dismiss Counts II and III of the Amended Complaint (Doc. 72).

> FN2. Defendant First Union National Bank filed a motion that sought both an entry of summary judgment and dismissal of the Amended Complaint. The Motion for Summary Judgment is based upon res judicata and collateral estoppel, and the Motion to Dismiss is based upon plaintiff's failure to state a claim upon which relief can be granted and the applicable statute of limitations. Because the Motion for Summary Judgment involves completely different legal issues than the Motion to Dismiss, it will be dealt with separately by the Court in this Memorandum and Order.

The Court has jurisdiction to hear this case as it is related to the bankruptcy case that arises under Title 11 of the United States Code, and the parties have all consented to the Court hearing and determining the issues involved in this case and entering all appropriate orders and judgments. [FN3]

> FN3. 28 U.S.C. § 1334 and 28 U.S.C. § 157(c)(2).

I. FINDINGS OF FACT

The Court makes the following findings of fact based upon the allegations made in the Amended Complaint (Doc. 44), or upon the additional facts provided in the parties' briefs, resolving all factual disputes in favor of Plaintiff. [FN4]

> FN4. *See Lafay v. HMO Colo.,* 988 F.2d 97, 98 (10th Cir.1993) (holding that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                                                          Page 5

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Court "must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to plaintiff").

**A. Facts Concerning the Involvement of the Parties**

All of Plaintiff's claims in this case involve the construction, purchase, financing, and subsequent foreclosure of her home. Plaintiff purchased a home that was constructed by Defendant Miller Enterprises, Inc. ("Miller Enterprises"), whose president is Defendant Jeffrey Miller ("Miller"). Miller Enterprises also carried a second mortgage on the property. Defendant Adamson & Associates ("Adamson") provided an appraisal of the property. Defendant Maplewood Mortgage, Inc. ("Maplewood") apparently served as the closing agent on the property. [FN5] Defendant BNC Mortgage, Inc. ("BNC") was the underwriter for the first mortgage on the house, with Defendant Option One Mortgage Corp. ("Option One") acting as a servicing agent for BNC. The mortgage and deed rights were eventually assigned to Defendant First Union National Bank ("First Union"), who was represented by Defendant Kozeny & McCubbin, L.C. ("McCubbin"), a law firm, in a foreclosure action in state court against Plaintiff's house.

> FN5. Plaintiff has not obtained service of process on Defendant Maplewood in this proceeding, and Maplewood's exact involvement in the events surrounding the purchase of the home are not clear. The 120 day period to serve Maplewood, as well as the "John Doe" Defendants, required by Fed.R.Civ.P. 4(m), incorporated into this proceeding by Rule 7004(a), has long expired, as Plaintiff's Amended Complaint was filed November 25, 2003. In addition, Plaintiff had over 120 days to determine the identities of, and obtain service upon, the John Doe Defendants before the Court stayed discovery on February 12, 2004 (Doc. No. 86).

**B. Relevant Dates**

As discussed in more detail below, Defendants have moved to dismiss several of the counts in the Amended Complaint on the basis that the statute of limitations has expired. Therefore, certain dates are critical to the resolution of the motions to dismiss.

As noted above, Plaintiff purchased her home in 2000. Although the parties do not provide the exact date Plaintiff entered into the contract to purchase the home, the parties do agree that the closing date on the purchase of the home was February 18, 2000. On July 19, 2000, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that Miller Enterprises had engaged in discriminatory lending practices and failed to properly correct construction defects in the house. Although Miller Enterprises disagreed with the allegations, it nonetheless agreed to release its second mortgage on the property, and made certain repairs to the property on April 4, 2001.

**5 In September 2000, McCubbin filed a petition for foreclosure on behalf of First Union. In her answer to that petition, filed April 27, 2001, Plaintiff notified McCubbin and First Union that there had not been an assignment of the mortgage and deed to First Union. According to Plaintiff, BNC did not assign the mortgage and deed to First Union until July 2001.

Plaintiff filed her Chapter 13 bankruptcy proceeding on May 20, 2003. She filed this adversary proceeding on August 4, 2003, and her Amended Complaint on November 25, 2003. For purposes of this motion, the Court will use the August 4, 2003 filing date as the date all the claims were initiated against all Defendants in this case.

**C. Claims Brought by Plaintiff**

Plaintiff sets out five causes of action in her Amended Complaint. In Count I, Plaintiff claims that McCubbin and First Union were negligent in filing the foreclosure proceeding against Plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

property because BNC had not assigned the mortgage to First Union before the foreclosure was filed. In Count II, Plaintiff claims that all Defendants have engaged in an illegal enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In Count III, Plaintiff contends that (1) Miller, and his company Miller Enterprises, committed fraud and misrepresentation concerning the quality and construction of the house; (2) Adamson and Maplewood furthered the false representations concerning the quality and construction of the house; and (3) Miller made misrepresentations concerning the financing of the purchase, and failed to disclose certain facts about the financing to Plaintiff. In Count IV, Plaintiff claims that BNC and First Union violated the Truth in Lending Act by failing to make certain disclosures prior to the closing on the property. Finally, in Count V, Plaintiff claims that BNC, First Union, Miller, Miller Enterprises and Option One discriminated against her in connection with the purchase of the house in violation of the Truth in Lending Act.

Additional facts will be discussed below, when necessary.

II. CONCLUSIONS OF LAW

A. Counts I, III, IV and V are all dismissed based upon the motions to dismiss filed by the various defendants.

1. Standards for a Motion to Dismiss

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the movant must demonstrate beyond a doubt that there is no set of facts in support of plaintiff's theory of recovery that would entitle plaintiff to relief. [FN6] All well-pleaded allegations will be accepted as true and will be construed in the light most favorable to Plaintiff. [FN7]

FN6. *Jacobs, Visconsi & Jacobs, Co. v.*

*City of Lawrence, Kansas,* 927 F.2d 1111, 1115 (10th Cir.1991).

FN7. *In re American Freight System, Inc.,* 179 B.R. 952, 956 (Bankr.D.Kan.1995).

2. Counts I, III, IV and V are all barred by the applicable statute of limitations.

Various defendants have moved to dismiss the claims for negligence (Count I), fraud (Count III), TILA violations (Count IV) and discrimination (Count V) on the basis that the claims were brought outside the applicable statute of limitations. For the reasons set forth below, the Court finds that each of these claims is time-barred and must be dismissed.

a. The negligence claim contained in Count I is barred by the two-year statute of limitations.

**\*\*6** In Count I of her Amended Complaint, Plaintiff contends that Defendants McCubbin and First Union were negligent in filing a foreclosure proceeding against her property at a time when First Union had not yet received an assignment of the mortgage and deed rights from BNC. Plaintiff also contends that Option One was negligent because it claimed to be the servicer of the mortgage, but had failed to notify Plaintiff that there was an assignment of rights.

Defendants contend that the negligence claim is barred by the applicable statute of limitations. Because Plaintiff is a Kansas resident and thus her claim for negligence arises under Kansas law, it is governed by the Kansas statute of limitations. [FN8] Pursuant to K.S.A. 60-513(a)(4), a claim based upon negligence must be commenced within two years from the date the cause of action accrues . [FN9] A negligence cause of action is not deemed to have accrued "until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party...." [FN10]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN8. *See Blackwell v. Harris Chemical North America, Inc.,* 11 F.Supp.2d 1302, 1306-07 (D.Kan.1998) (applying state statute of limitations statute to state law causes of action) and *Cowdrey v. City of Eastborough, Kan.,* 730 F.2d 1376, 1379 (10th Cir.1984) (applying Kansas statute of limitations to state law claims brought in federal court).

FN9. *Biritz v. Williams,* 262 Kan. 769, 770 (1997).

FN10. K.S.A. 60-513(b) (1994).

McCubbin filed the foreclosure petition on behalf of First Union with Johnson County District Court on September 22, 2000. According to the Amended Complaint in this proceeding, Plaintiff notified McCubbin and First Union with her answer filed April 27, 2001 that there had not been an assignment of the mortgage and deed. [FN11] Therefore, the act giving rise to the negligence cause of action took place on September 22, 2000, and Plaintiff clearly knew of the alleged wrongful act no later than April 27, 2001, when she notified Defendants of their alleged misdeed in her state court answer. Pursuant to K.S.A. 60- 513, the negligence cause of action thus arose no later than April 27, 2001, and must have been filed no later than April 27, 2003, to be timely. Because this action was not brought until August 4, 2003, over three months later, it clearly falls outside the two-year statute of limitations.

FN11. Although the Amended Complaint does not indicate the date the state court answer was filed, Plaintiff included a file stamped copy of that answer as an attachment to the Amended Complaint in this case and specifically incorporated it into her Amended Complaint. Therefore, the Court can consider this additional information without treating this Motion to Dismiss as a motion for summary judgment. *See Hill v. Bellman,* 935 F.2d 1106, 1112 (10th Cir.1991) (holding that

"[a] written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal").

Plaintiff's response to Defendant's statute of limitations defense is set forth, in full, as follows:

Finally, as to the issue of the statute of limitations, the continuing actions of Defendant First Union National Bank tolls the statute of limitations as indicated previously in this response.

At no point does Plaintiff provide any legal support for her contention that "the continuing actions" of this, or any other defendant, tolls the applicable statute of limitations on this negligence claim. Similarly, Plaintiff completely fails to provide any factual analysis of what acts continue, or how these alleged continuing actions would justify the tolling of the statute of limitations, even if there was some legal basis to support the tolling of the negligence claim. The Court has the authority to disregard this claim on this basis alone. [FN12] However, in an effort to protect Plaintiff from any potential harm caused by her failure to properly address this issue, the Court has reviewed applicable Kansas law to determine if there is any basis, based upon the facts contained in the pleadings, to toll the statute of limitations on the negligence claim in this case based upon any alleged continuing actions of Defendants.

FN12. *See Smith v. Barber,* 195 F.Supp.2d 1264, 1280 n. 9 (D.Kan.2002) (declining to even address claims raised by defendants because they provided no support for their assertions).

**7** Kansas does recognize the theory of a continuing tort in negligence cases, which appears to be the only possible legal theory that Plaintiff is attempting to employ to survive the statute of limitations defense. "Under Kansas law, where a cause of action is predicated on numerous acts occurring over an extended period, the cause of action accrues anew with each act, at least until the injury becomes permanent." [FN13] The Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

finds, however, that this theory provides no relief to Plaintiff in this case.

> FN13. *Cordon v. Trans World Airlines, Inc.,* 442 F.Supp. 1064, 1066 (D.Kan.1977) (citing *Henderson v. Talbott,* 175 Kan. 615 (1954) and *Simon v. Neises,* 193 Kan. 343 (1964)).

First, Count I of the Amended Complaint is based upon very specifically alleged actions--the filing of the foreclosure petition before the assignment of the mortgage and the deed--not upon numerous acts occurring over an extended period of time. Second, even if Count I were based upon continuing actions, Kansas law dictates that the cause of action accrues at the time of each act causing damage. In other words, the cause of action relating to the filing of the petition before the assignment accrued, at the latest, at the time Plaintiff learned of the allegedly improper actions, and any claim based upon the filing of the petition must have been brought within two years of that date. If Defendants have engaged in further acts of negligence that harmed Plaintiff, those additional acts may have created new causes of action which could have been filed at a later date, but they do not extend the time for bringing a claim based upon the filing of the foreclosure petition.

The Court finds that Count I of the Amended Complaint is barred by Kansas' two-year statute of limitations relating to negligence claims. The claim clearly arose, at the latest, on April 27, 2001, when Plaintiff demonstrated her awareness of the alleged wrongdoing. Any action on those facts had to be filed within two years from that date. Because the Complaint in this case was not filed until August 4, 2003, and there is no apparent legal basis to toll the applicable statute of limitations, the claim is untimely and will be dismissed.

b. The fraud claim contained in Count III of the Amended Complaint is barred by the two-year statute of limitations.

Count III of the Amended Complaint alleges that Defendants Miller, Miller Enterprises, Maplewood

Mortgage and Adamson committed fraud against Plaintiff. Liberally construing the allegations contained in the Amended Complaint, Plaintiff appears to allege that the following fraudulent statements were made to her detriment: [FN14]

> FN14. The Amended Complaint does not set out the alleged fraudulent statements in any sort of clear manner, and includes allegations against parties against whom no relief is sought in the prayer for relief for Count III. The Court has attempted, out of an abundance of caution, to filter out every possible allegedly fraudulent statement contained in the Amended Complaint. In doing so, the Court is in no way making a finding that any of these alleged fraudulent statements have been pled with the specificity required for a fraud claim.

1. Defendants Jeffrey Miller and Miller Enterprises represented to Plaintiff that when the house was finished, it would be built up to building code standards and would have certain qualities;
2. Defendants Adamson and Maplewood made representations about the house's quality and falsely indicated that the work was completed in a professional, workmanlike manner;
3. Jeffrey Miller instructed Plaintiff that he would tell the lender that he was going to carry a $29,000 note, but drafted and recorded a note for $59,900;
**\*\*8** 4. Jeffrey Miller did not disclose to Plaintiff the identity of the underwriters;
5. Plaintiff did not receive notice from Defendant BNC that it would be the primary lender on the property until the first day of closing;
6. At the time of closing, on or about February 18, 2000, Jeffrey Miller and Miller Enterprises reassured Plaintiff that the construction would be completed and up to specification and code, and promised to provide her with a fully functional and aesthetically pleasing home.

Under Kansas law, the statute of limitations for a fraud claim is two-years. [FN15] "The statute of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

limitations for fraud begins to run when the injured party has actual knowledge of the fraud or when the fraud could have been discovered with reasonable diligence." [FN16]

> FN15. *Paulsen v. Gutierrez,* 962 F.Supp. 1367, 1369 (D.Kan.1997) (citing K.S.A. 60-513(a)(3)).

> FN16. *Andale Equipment, Inc. v. Deere & Co.,* 985 F.Supp. 1042, 1046 (D.Kan.1997) (citing *Wolf v. Brungardt,* 215 Kan. 272 (1974)).

Plaintiff does not dispute that she was aware of the alleged fraud more than two years prior to the filing of this adversary proceeding. In fact, she raised most, if not all, of these issues in her answer to the state court foreclosure proceeding as well as in and the complaint she filed with HUD against Defendants Miller and Miller Enterprises in July, 2000. Instead, Plaintiff again attempts to utilize a "continuing tort" theory to toll the statute of limitations in this case.

The first theory advanced by Plaintiff is that (1) because Miller has allegedly not complied with the contractual requirements of the HUD enforcement agreement and (2) because other Defendants are continuing to take tortious action against her, the statute of limitations has not yet been triggered. In other words, Plaintiff is claiming that the statute of limitations for bringing the fraud claim against Defendants contained in Count III should be tolled based upon an alleged subsequent breach of contract and because other Defendants in this case continue to engage in tortious conduct against Plaintiff. Once again, Plaintiff provides no legal basis for this claim. The Court has again undertaken the task of reviewing Kansas law in an effort to determine if Plaintiff's claim has any legal basis, and again the Court has found no support for Plaintiff's position.

Plaintiff also claims that when she first realized that she had been harmed, she filed an administrative complaint with HUD. Again, Plaintiff provides no

legal or factual analysis to explain how this fact could possibly extend the statute of limitations in this case, and the Court has been unable to find any legal support for Plaintiff's position.

Kansas law is clear that the statute of limitations for a fraud claim "begins to run when the injured party has actual knowledge of the fraud or when the fraud could have been discovered with reasonable diligence." [FN17] The fact that the party perpetrating the fraud may also have harmed the injured party by breaching a subsequent contract, or that other defendants in a case may continue committing torts against the injured party, is no basis for tolling the statute of limitations of the fraud claim. Similarly, the fact that a defendant may be in breach of a contract between the parties has no effect on the running of the statute of limitations for the fraud claim. Plaintiff clearly knew of the alleged fraudulent conduct more than two years prior to filing this adversary proceeding and, therefore, the fraud claims contained in Count III of her Amended Complaint are barred by the two-year statute of limitations.

> FN17. *Andale Equipment,* 985 F.Supp. at 1046 (citing *Wolf v. Brungardt,* 215 Kan. 272 (1974)).

c. The TILA claims contained in Count IV of the Amended Complaint are barred by the one-year statute of limitations.

**\*\*9** In Count IV of the Amended Complaint, Plaintiff seeks damages against Defendants BNC and First Union for alleged violations of the Truth in Lending Act (TILA). Plaintiff claims that BNC committed the following violations of the TILA:
1. BNC failed to notify Plaintiff that it was going to be the lender on the purchase agreement at least three days prior to closing in violation of 15 U.S.C. § 1638; and
2. BNC failed to take into consideration Plaintiff's ability to repay the indebtedness, including her current and expected income, current obligations, and employment in violation of 15 U.S.C. § 1639(h).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                                                          Page 10

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Plaintiff claims First Union is liable for the TILA violations as an assignee of BNC.

To bring an action under the TILA, Plaintiff must bring the action within one year from the date of the occurrence of the violation. [FN18] In this case, the statute of limitations began to run on the date of the closing, February 18, 2000, which is the date the alleged violations of the TILA occurred. [FN19] However, the statute of limitations is not jurisdictional, and may be subject to equitable tolling under appropriate circumstances. [FN20] Therefore, unless some legal basis exists for tolling the statute of limitations in this case, the statute of limitations expired on these TILA claims on February 18, 2001, more than two years before the filing of the Complaint in this case.

> FN18. 15 U.S.C. § 1640(e).

> FN19. *See Morris v. Lomas and Nettleton Co.,* 708 F.Supp. 1198, 1203 (D.Kan.1989).

> FN20. *See Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir.1998); *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499 (3rd Cir.1998); and *King v. State of Cal.,* 784 F.2d 910 (9th Cir.1986).

Plaintiff alleges two basis for tolling the statute of limitations on this claim. First, Plaintiff alleges "the ongoing and continuing action to pursue foreclosure through the state court action tolls the statute of limitations." Once again, Plaintiff fails to provide any legal support or factual analysis to support this claim. A review of relevant federal law revealed no legal basis for tolling the statute of limitations on a TILA claim on the basis that the offending party may have engaged in other misconduct at a later time.

Plaintiff also claims that she "preserved her answer and defenses in the state court action" and, therefore, "her claims have not expired." As with Plaintiff's other attempts to avoid the statute of

limitations, she fails to provide any legal support or factual analysis to support this allegation. The Court finds that even if Plaintiff did raise these TILA claims in the state court foreclosure proceeding, that act does not serve to toll the statute of limitations on a future affirmative action against Defendants. [FN21]

> FN21. If anything, Plaintiff's admission that she raised these claims in the state court foreclosure proceeding only serves to strengthen Defendants' position that these claims are also barred by principles of claim preclusion. However, because the Court finds that the claims are barred by the statute of limitations, it does not reach the claim preclusion defense.

The one-year statute of limitations for TILA violations began to run in this case on February 18, 2000. Because there is no legal basis to toll the statute of limitations in this case, Plaintiff's cause of action expired on February 18, 2001, more than two years before the filing of the Complaint in this case. Therefore, the TILA claims contained in Count IV of the Amended Complaint are time-barred and will be dismissed.

d. The discrimination claims contained in Count V of the Amended Complaint are barred by the two-year statute of limitations.

**\*10** Plaintiff, in Count V of the Amended Complaint, alleges that Defendants BNC, Miller, Miller Enterprises, First Union and Option One violated the Equal Credit Opportunity Act (ECOA) by discriminating against her based on her race in violation of 15 U.S.C. § 1 691. All of the alleged discriminatory conduct involves actions that she contends took place prior to the closing on her home on February 18, 2000.

Defendants also claim that any alleged violations of ECOA are barred by the statute of limitations. All claims for violations of ECOA must be brought within two years of the date of the occurrence of the violation. [FN22] Although no specific details or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                                                              Page 11

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

dates are provided by Plaintiff, it is clear, based upon the factual allegations contained in her Amended Complaint, that all alleged acts of discrimination took place prior to the closing of the purchase of Plaintiff's house on February 18, 2000. Therefore, the statute of limitations on these claims expired, at the latest, on February 18, 2002, which was prior to the filing of the Complaint in this case.

> FN22. 15 U.S.C. § 1691e(f).

Plaintiff alleges the same two bases for tolling the statute of limitations on this claim as she did for her TILA claim. First, Plaintiff alleges "the ongoing and continuing action to pursue foreclosure through the state court action tolls the statute of limitations." Second, Plaintiff claims that she "preserved her answer and defenses in the state court action" and, therefore, "her claims have not expired." Once again, Plaintiff fails to provide any legal support or factual analysis to support these claims, and instead relies upon the bare assertions that the statute of limitations should be tolled. A review of relevant federal law revealed no legal basis for tolling the statute of limitations on a ECOA claim on either of these bases.

The two-year statute of limitations for ECOA violations began to run in this case no later than February 18, 2000. Because Plaintiff has presented no legal or factual basis to toll the statute of limitations in this case, Plaintiff's cause of action expired no later than February 18, 2002, more than a year before she filed her Complaint in this case. Therefore, the discrimination claims under the ECOA contained in Count IV of the Amended Complaint are time-barred and will be dismissed.

B. Count II of the Amended Complaint fails to contain the specificity required to bring a RICO claim.

Count II of the Amended Complaint alleges that all the Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") [FN23] resulting in damages to Plaintiff. Each of the Defendants has moved to dismiss Count II pursuant to Fed.R.Civ.P. 12(b)(6), [FN24] on the basis that it fails to plead the elements of the RICO claim with the particularity required by Fed.R.Civ.P. 9(b). [FN25]

> FN23. 18 U.S.C. § 1961, et seq.

> FN24. Fed.R.Civ.P. 12(b)(6) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7012(b).

> FN25. Fed.R.Civ.P. 9(b) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7009.

In order to survive a Rule 12(b)(6) motion, a RICO claim must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. [FN26] Plaintiff is required to allege with particularity each element of a RICO violation and its predicate acts of racketeering. [FN27] In requiring the specificity of pleading in a RICO case, the Tenth Circuit recognized the policy of notice pleadings under the Federal Rules of Civil Procedure "requires a court to read Rule 9(b)'s requirements in harmony with Rule 8's call for a 'short and plain statement of the claim' which presents 'simple, concise, and direct' allegations." [FN28] However, the Tenth Circuit found that "that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts." [FN29] To that end, courts have found that " 'the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby." ' [FN30]

> FN26. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN27. *Hall v. Doering,* 997 F.Supp. 1445, 1453 (D.Kan.1998) (citing *Farlow v. Peat, Marwick Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992)).

FN28. *Cayman Exploration,* 873 F.2d at 1362.

FN29. *Id.*

FN30. *Hall v. Doering,* 997 F.Supp. 1445, 1453 (D.Kan.1998) (quoting *Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 975-76 (D.Kan.1986)).

**11 Furthermore, as the requirements relate to corporate defendants, the rule requires that plaintiffs identify the specific individuals acting for the corporation who made the alleged misrepresentations. [FN31] Courts have also noted that "while [the] plaintiff need only give fair notice in her complaint, the list of elements is deceptively simple ... because each concept is a term of art which carries its own inherent requirements of particularity. For example, 'conduct' embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through (d)." [FN32]

FN31. *Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d 1212, 1218 (D.Kan.1999).

FN32. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d 1109, 1120 (D.Kan., 2003) (internal quotations omitted).

The Court finds that Count II of the Amended Complaint fails to contain the specificity required of a properly pled RICO claim. The Amended Complaint contains numerous general allegations concerning the alleged roles of most, though not all, of Defendants in this alleged enterprise, but does not provide any of the specific information required by the Court of Appeals for the Tenth Circuit. The Amended Complaint lacks any specifics as to time, place, and contents of false representations and, in

regard to the corporate defendants, entirely fails to identify those persons who allegedly conducted the improper activities or who made the allegedly fraudulent representations on behalf of the corporations. Similarly, the Amended Complaint fails to give Defendants clear notice of the particulars of the predicate acts that support her claim. In fact, the Amended Complaint fails to even specify which specific provisions of RICO the Defendants have allegedly violated.

Although the Court finds that the Amended Complaint fails to meet the specificity requirements for a RICO claim, the Court will not dismiss Count II at this time. Instead, the Court will grant Plaintiff another opportunity to amend her Complaint to comply with the requirements for bringing a RICO claim. [FN33] Plaintiff will be given until September 8, 2004 to file a second Amended Complaint that complies with the specificity requirements for bringing a RICO claim. [FN34] The Court has given this extended period because the Court wishes to ensure that its decision to stay discovery, entered February 12, 2004, does not deprive Plaintiff of her opportunity to discover the facts necessary to plead this RICO claim with the required particularity. The Court cautions Plaintiff's counsel to properly draft the second Amended Complaint so that it is in conformity with the specificity requirements for bringing a RICO claim, as it is unlikely the Court will grant leave for a fourth attempt to bring the pleadings within the requirements of the law. [FN35]

FN33. *See Cayman Exploration,* 873 F.2d at 1362-63 (holding that a trial court has the discretion to allow amendments to the pleadings to comply with the specificity requirements of a RICO claim).

FN34. Because the Court has found that Counts I, III, IV and V are all to be dismissed based upon the pertinent statute of limitations, Plaintiff is barred from including those counts in her second Amended Complaint. The Court orders that by doing so, Plaintiff is in no way

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

waiving her right to appeal the Court's decision as it relates to the dismissal of those claims and is not deemed to have abandoned those claims. The Court simply believes it would be a waste of Defendants' time, as well as this Court's time, to prepare and review answers to the second Amended Complaint that include the four counts that are dismissed with this order.

FN35. The Court further cautions Plaintiff not to include in her Second Amended Complaint any additional claims for which the statute of limitations has expired. In a recent response to Option One and Kozeny & McCubbins Motions for Sanctions, Plaintiff threatens to file a claim for "malicious prosecution and abuse of prosecution claims against Defendants McCubbin, Option One and First Union." If these claims are based on the Johnson County foreclosure proceeding, it would seem at first blush that those claims would also be time-barred.

C. Summary Judgment is not appropriate at this time as to Count II on the grounds of res judicata and collateral estoppel.

In addition to seeking dismissal of Count II on the grounds that it fails to plead the RICO claim with the required particularity, First Union also seeks summary judgment on this claim on the basis of res judicata and issue preclusion.

1. Standard for Summary Judgment

**\*\*12** Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that the moving party is "entitled to a judgment as a matter of law." [FN36] The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." [FN37] The substantive law identifies which facts

are material. [FN38] A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant . [FN39] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." [FN40]

> FN36. Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed. R. Bankruptcy. Proc. 7056(c).

> FN37. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

> FN38. *Id.* at 248.

> FN39. *Id.*

> FN40. *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. [FN41] The movant may discharge its burden "by 'showing'-- that is, pointing out to the ... court--that there is an absence of evidence to support the nonmoving party's case." [FN42] The movant need not negate the nonmovant's claim. [FN43] Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. [FN44] The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. [FN45] Rule 7056(c) requires the Court enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. [FN46]

> FN41. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993).

> FN42. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN43. *Id.* at 323.

FN44. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

FN45. *Celotex,* 477 U.S. at 324.

FN46. *Id.* at 322.

2. Analysis of First Union's Summary Judgment Motion.

First Union claims that Plaintiff's RICO claim was a compulsory counterclaim to the foreclosure proceeding in state court, and that some of the issues raised by Plaintiff were already raised and decided by the state court, thus barring her from now bringing those claims. For res judicata to apply, four conditions must be met: "(1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made." [FN47] A judgment issued by a court of competent jurisdiction is preclusive as to all of the matters actually raised, and those matters which should have been raised. [FN48]

FN47. *O'Keefe v. Merrill Lynch & Co.,* 32 Kan.App.2d 474 (2004) (citing *Jackson Trak Group, Inc. v. Mid States Port Authority,* 242 Kan. 683 (1998).

FN48. *Id.*

Plaintiff contends that res judicata or claim preclusion is inapplicable for two reasons. First, Plaintiff claims the state court did not have proper jurisdiction, thus rendering the judgment void. Second, Plaintiff claims that her RICO count includes actions by First Union that took place after the entry of the state court judgment, thus resulting in a claim that had not arisen prior to the state court judgment.

a. Plaintiff is barred from raising any claims that

were previously decided by the state court in the foreclosure proceeding.

**13** Plaintiff claims that the state court judgment is void because that court lacked jurisdiction to enter a judgment and because First Union did not have standing to bring the claim. The basis for these claims is that First Union was not the proper party to bring the foreclosure action because it was not the real party in interest. It is undisputed that Plaintiff raised this issue before the state court, which ultimately rejected Plaintiff's claims and entered a judgment in favor of First Union. Plaintiff did not appeal the state court judgment, and the time for doing so has long passed. The Court finds that Plaintiff is barred from now collaterally attacking that state court judgment in this proceeding.

The *Rooker-Feldman* doctrine, established by two Supreme Court decisions handed down 60 years apart, provides that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States [trial] court." [FN49] Section 1257 of Title 28 of the United States Code provides that the proper court in which to obtain such review is the United States Supreme Court. [FN50] The Tenth Circuit Bankruptcy Appellate Panel has recognized the applicability of the *Rooker-Feldman* doctrine to bankruptcy courts. [FN51]

FN49. *Johnson v. De Grandy,* 512 U.S. 997, 1005-1006 (1994) (citing to *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)).

FN50. *Feldman,* 460 U.S. at 476.

FN51. *In re Abboud,* 237 B.R. 777, 780 (10th Cir. B.A.P.1999). *See also Goetzman v. Agribank, FCB (In re Goetzman),* 91 F .3d 1173 (8th Cir.1996) (holding that the bankruptcy court lacked subject matter jurisdiction to determine the amount of a debt that had been previously

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

determined in state trial court) and *In re Beardslee,* 209 B.R. 1004 (Bankr.D.Kan.1997).

The Court finds that the *Rooker-Feldman* doctrine is applicable to the issue of whether First Union was the proper party in interest to bring the foreclosure action. The state court made the following specific findings in regard to the foreclosure proceeding:
 1. it had jurisdiction over all of the parties;
 2. it had jurisdiction over the subject matter of the case;
 3. First Union was the true owner of the note and mortgage; and
 4. First Union was entitled to the relief prayed for in the foreclosure petition.
As mentioned above, Plaintiff did not appeal any of these findings to a state appellate court. Instead, Plaintiff is asking this Court to, in essence, overturn the findings made by the state court and rule that it lacked jurisdiction over the parties and that First Union was in fact not the proper party. It is this type of collateral attack, which seeks reversal of a state court judgment by a federal trial court, that the *Rooker-Feldman* doctrine prohibits. Plaintiff's relief from any incorrect or improper rulings by the state trial court was to the Kansas Court of Appeals, and this Court will not, and in fact cannot, sit in the place of those appellate courts.

Alternatively, rules of preclusion apply in bankruptcy actions. [FN52] As the Supreme Court noted in *Marrese v. American Academy of Orthopaedic Surgeons,* [FN53] the preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." [FN54] This statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered.

FN52. *Cf. Grogan v. Garner,* 498 U.S. 279, 284-85, n. 11 (1991) (stating that

collateral estoppel principles apply in discharge proceedings).

FN53. 470 U.S. 373, 380 (1985).

FN54. 28 U.S.C. § 1738.

**\*\*14** The threshold constitutional question, whether Plaintiff had a full and fair opportunity to be heard, is easily determined in the affirmative. Under the principles of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. [FN55] Plaintiff clearly raised the issues concerning First Union's standing to bring the claim in state court and contested the issue of whether First Union was the proper party in interest.

FN55. *See Grimmett v. S & W Auto Sales Co., Inc.,* 26 Kan.App.2d 482, 487 (1999).

The full faith and credit statute requires this Court to analyze state law to determine whether that judgment has preclusive effect. In *Indiana University Foundation v. Reed (In re Estate of Reed),* [FN56] the Court held:

FN56. 236 Kan. 514 (1985).

The doctrine of res judicata is a bar to a second action upon the same claim, demand or cause of action. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction.... [R]es judicata forbids a suitor from twice litigating a claim for relief against the same party. The rule is binding, not only as to every question actually presented, considered and decided, but also to every question which might have been presented and decided.... [Res judicata] requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action....

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

This rule is one of public policy. It is to the interest of the state that there be an end to litigation and an end to the hardship on a party being vexed more than once for the same cause. [FN57]

> FN57. *Id.* at 519 (citations omitted and emphasis added).

Contrary to Plaintiff's position, claim preclusion applies to issues of jurisdiction, both personal and subject matter. [FN58] Because the state court heard and decided the issues concerning First Union's standing to bring the claim, the rules of preclusion bar Plaintiff from relitigating those issues in this action.

> FN58. *See Insurance Corp. Of Ireland, Ltd. V. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982) (holding "It has long been the rule that principles of res judicata apply to jurisdictional determinations-- both subject matter and personal.").

b. Summary judgment in favor of First Union on the RICO claim is premature.

Although the Court finds that any RICO claim based upon actions that arose prior to the filing of the foreclosure action are barred, summary judgment is not appropriate at this time. Plaintiff alleges in her response to the summary judgment motion that First Union took actions in furtherance of the alleged illegal scheme by the defendants after the entry of the state court judgment. If the RICO claim is based, at least in part, on actions by First Union that took place following the judgment in the state court proceeding, *res judicata* and issue preclusion would not operate to bar the RICO claim. [FN59]

> FN59. *See Waddell & Reed Financial, Inc. v. Torchmark Corp.,* 292 F.Supp.2d 1270 (D.Kan.2003).

As noted above, the Amended Complaint lacks the required specificity for a RICO claim. The use of

broad allegations and lack of necessary information makes it impossible for the Court to determine at this time if Plaintiff's claim is valid that First Union engaged in illegal conduct after the conclusion of the state court proceeding, which could create a RICO cause of action that is not barred by rules of preclusion. Therefore, First Union's summary judgment motion must be denied without prejudice, pending the filing of a second Amended Complaint by Plaintiff.

**\*\*15** The Court cautions Plaintiff to carefully examine the law concerning *res judicata* and issue preclusion in determining whether to continue pursuing a RICO claim against First Union. It appears to the Court, based upon the information that has been presented to this point, that any RICO claim against First Union is likely to be barred based upon the prior lawsuit involving these two parties. However, without the benefit of a properly drafted Complaint, the Court is unable to make that determination. Given the benefit of the Court's analysis in this order, combined with the arguments raised by First Union in its motion for summary judgment, the Court will not look favorably upon any further attempt to include First Union in a RICO claim that is barred by the rules of preclusion. The Court is not, in any way, attempting to dissuade plaintiff from bringing a valid, timely claim against First Union in her Second Amended Complaint, but will not hesitate to provide appropriate remedies to First Union should plaintiff's second Amended Complaint contain a claim against First Union that plaintiff should have known was barred by *res judicata* or other similar rules of preclusion. The Court's decision to allow Plaintiff to amend her complaint should not be viewed as an opportunity to continue pursuing an invalid RICO claim against First Union, or any other party.

III. SCHEDULING ORDER

The Court lifts the stay of discovery as to the only remaining claim--the RICO claim. Any party may conduct discovery on this claim, even before the Second Amended Complaint is filed, until

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

November 3, 2004. This allows, after amendment, eight additional weeks to conclude discovery. A final pretrial conference will be held December 8, 2004 at 1:40 P.M. at the United States Bankruptcy Court, 444 S.E. Quincy, Room 215, Topeka, Kansas 66683. Plaintiff shall be responsible for submitting one agreed pretrial order, covering all parties and all claims, after consultation with Debtors' counsel, no later than December 3, 2004. The pretrial order form can be accessed on the Court's website at www.ksb.uscourts.gov under "Judges' Corners."

IV. CONCLUSION

The Court finds that Counts I, III, IV and V of the Amended Complaint are all barred by the applicable statute of limitations and are dismissed. Plaintiff's reliance on a continuing tort theory to toll the statute of limitations in each of those counts is without merit. In addition, the Court finds that Plaintiff has failed to provide the required specificity for a RICO claim in Count II, but will give Plaintiff another opportunity to amend her complaint to bring it into compliance with the pleading requirements for a RICO claim in the Tenth Circuit.

The Court denies First Union's Motion for Summary Judgment, without prejudice. Summary judgment is not appropriate at this time because plaintiff has alleged that the RICO claim against First Union involves activity that occurred following the state court judgment in the foreclosure proceeding. First Union is free to raise these issues again in the event Plaintiff's second Amended Complaint contains a claim against First Union that is barred by *res judicata* or other rules of preclusion.

**\*16** The Court also requires Plaintiff to show cause within ten (10) days why Defendant Maplewood Mortgage, Inc. and John Does 1-100 should not be dismissed from this proceeding based upon her failure to properly serve those Defendants within the 120 day period required by Fed. R. Bankr.P. 7004(a), which incorporates Fed. R. Civ.

Proc. 4(m). Failure to show cause will result in the dismissal of all claims against those Defendants.

IT IS, THEREFORE, BY THIS COURT ORDERED that the Motion of BNC Mortgage to Dismiss Amended Complaint (Doc. 55), Motion of Option One Mortgage to Dismiss Counts I, II, III, IV and V of the Amended Complaint (Doc. 56), Motion of First Union National Bank to Dismiss (Doc. 60), Motion of Miller Enterprises and Jeffrey Miller to Dismiss Amended Complaint (Doc. 71), and Motion of Adamson and Associates to Dismiss Counts II and III of the Amended Complaint (Doc. 72) are granted in part and denied in part. Counts I, III, IV and V are barred by the statute of limitations and are dismissed, with prejudice. Plaintiff shall have until September 8, 2004 to file a second Amended Complaint, containing only the RICO Count from the First Amended Complaint, and it must meet the pleading requirements for bringing a RICO claim. First Union National Bank's Motion for Summary Judgment (Doc. 60) is denied, without prejudice.

IT IS FURTHER ORDERED that Plaintiff shall show cause within ten (10) days why Defendants Maplewood Mortgage, Inc. and John Does 1-100 should not be dismissed from this proceeding based upon lack of service of process.

IT IS SO ORDERED.

APPENDIX B
MEMORANDUM AND ORDER
This matter is before the Court on Motions to Dismiss Plaintiff's Second Amended Complaint filed by the following Defendants: (1) Miller Enterprises, Inc. and Jeffrey Miller; (2) First Union National Bank; (3) Kozeny & McCubbin, L.C.; (4) Option One; (5) BNC Mortgage, Inc.; and (6) Adamson and Associates, Inc. [FN60] The Court has jurisdiction to hear this case as it is related to the bankruptcy case that arises under Title 11 of the United States Code, and the parties have all consented to the Court hearing and determining the issues involved in this case and entering all appropriate orders and judgments. [FN61]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

FN60. Docs. 131, 132, 144, 145, 146 and 149.

FN61. 28 U.S.C. § 1334 and 28 U.S.C. § 157(c)(2). *See also* Doc. No. 117, an order entered June 16, 2004, confirming that all parties have provided written consent to allow this Court to hear and determine this case and enter all appropriate orders and judgments pursuant to 28 U.S.C. § 157(c)(2), subject to review under 28 U.S.C. § 158.

As a preliminary matter, the only Defendants who have not filed a Motion to Dismiss are Maplewood Mortgage, Inc. and "Does 1-100." [FN62] These Defendants have never been served with process, and on July 8, 2004, after this case had been pending almost a year, this Court gave Plaintiff ten days to show cause why each of these Defendants should not be dismissed as a result of her failure to serve them within the time allowed by Fed. R. Bankr.P. 7004(a), which incorporates Fed.R.Civ.P. 4(m). [FN63] Plaintiff filed nothing in response, and so the Court did dismiss each of these parties on July 28, 2004. [FN64]

FN62. The Court assumes Plaintiff is trying to name entities or persons, the identities of whom are unknown to her, which many plaintiffs commonly call "John Doe." In addition, in paragraphs 2-9 of Plaintiff's Second Amended Complaint, which section she entitled "PARTIES," she outlines who each of the defendants are. "Does 1-100" are never mentioned, and at no other point are they mentioned in the Complaint (including in the prayer for relief), except in the caption.

FN63. *Lewis v. BNC Mortgage, Inc. (In re Lewis)*, 2004 WL 2191602, *11 (Bankr.D.Kan. July 8, 2004), which is Doc. No. 120, herein.

FN64. Doc. No. 121.

When Plaintiff filed her Second Amended Complaint on September 9, 2004, she once again named these once-dismissed parties as Defendants. Yet another 120 days have expired, and she still has not served any of these Defendants with this Second Amended Complaint. For the same reason these Defendants were originally dismissed, the Court will again dismiss Defendants Maplewood Mortgage, Inc. and "Does 1-100." "Does 1-100" are also dismissed because Plaintiff's Second Amended Complaint never mentions them except in the caption, and thus by definition, Plaintiff has failed to state a claim against them upon which relief can be granted under Fed. R. Bankr.P. 7012(b)(6).

I. FINDINGS OF FACT

**\*\*17** Plaintiff initially filed this adversary proceeding on August 4, 2003, pro se. Several Defendants filed Motions to Dismiss her original Complaint. Thereafter, she hired counsel and he filed, on her behalf, a First Amended Complaint on November 25, 2003. On July 8, 2004, this Court granted motions to dismiss filed by all Defendants (except for those who have never been served) on all counts contained in Plaintiff's First Amended Complaint, except for one count. The only count not dismissed was one brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). [FN65] Out of an abundance of caution, the Court granted Plaintiff one last opportunity to amend her complaint to properly allege a RICO cause of action.

FN65. 18 U.S.C. § 1961, *et seq.*

The Court's July 8, 2004 order provided Plaintiff a road map with the requirements for properly pleading a RICO action, since her first two Complaints had been blatantly deficient in pleading a RICO claim. The Court also allowed Plaintiff two months after the date of the Court's opinion to file the Second Amended Complaint so that if she needed to conduct additional discovery in order to plead her RICO complaint with the requisite detail, she would have adequate time to do that discovery.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                      Page 19

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Plaintiff's Second Amended Complaint, just like the former two, involves the construction, purchase, financing, and subsequent foreclosure of her home. Plaintiff purchased a home that was constructed by Defendant Miller Enterprises, Inc. ("Miller Enterprises"), whose president is Defendant Jeffrey Miller ("Miller"). Miller Enterprises also carried a second mortgage on the property. Defendant Adamson & Associates ("Adamson") provided an appraisal of the property. Defendant Maplewood Mortgage, Inc. ("Maplewood") apparently served as the closing agent on the property. Defendant BNC Mortgage, Inc. ("BNC") was the underwriter for the first mortgage on the house, with Defendant Option One Mortgage Corp. ("Option One") acting as a servicing agent for BNC. The mortgage and deed rights were eventually assigned to Defendant First Union National Bank ("First Union"), who was represented by Defendant Kozeny & McCubbin, L.C. ("McCubbin"), a law firm, in a state court foreclosure action against Plaintiff, seeking foreclosure of her home.

Although the specific factual allegations contained in Plaintiff's Second Amended Complaint will be discussed in more detail below as they relate to each element of her claim, the Court finds a brief overview of the Plaintiff's claim will be helpful. Plaintiff claims that each of the Defendants jointly engaged in an illegal enterprise wherein they sought out high risk buyers, required high down payments because those buyers were, by definition, unable to meet the requirements for a smaller down payment provided to more credit-worthy borrowers, doctored loan amounts so that a high rate of interest could be justified, reduced the amount of carry-backs so that the buyers could close on the property, inflated the value of poorly constructed homes and then pursued foreclosure on the mortgage and note, at which time they would bid in the property for an amount less than the house was worth, and resell it at an inflated value. Plaintiff contends that in perpetuating this scheme, Defendants' conduct violated RICO and mail fraud statutes. [FN66]

> FN66. Although Plaintiff cited to 18 U.S.C. § 1343 (relating to wire fraud), the

Court assumes she intended to cite 18 U.S.C. § 1341, which relates to mail fraud, since there is no allegation that Defendants used wire, radio or television transactions to conduct the alleged scheme.

## II. STANDARDS FOR EVALUATING MOTIONS TO DISMISS

**\*\*18** Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the movant must demonstrate beyond a doubt that there is no set of facts in support of plaintiff's theory of recovery that would entitle plaintiff to relief. [FN67] All well-pleaded allegations will be accepted as true and will be construed in the light most favorable to plaintiff. [FN68]

> FN67. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1115 (10th Cir.1991).

> FN68. *In re American Freight System, Inc.,* 179 B.R. 952, 956 (Bankr.D.Kan.1995).

## III. ANALYSIS

Plaintiff's Second Amended Complaint alleges that all Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") resulting in damages to Plaintiff. Each of the Defendants who has received service of process has moved to dismiss this Complaint pursuant to Fed.R.Civ.P. 12(b)(6), [FN69] on the basis that it fails to plead the elements of a RICO claim with the particularity required by Fed.R.Civ.P. 9(b). [FN70]

> FN69. Fed.R.Civ.P. 12(b)(6) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7012(b).

> FN70. Fed.R.Civ.P. 9(b) is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7009.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

As this Court previously set out in great detail in its July 8, 2004 order, in order to survive a Rule 12(b)(6) motion, a RICO claim must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. [FN71] Plaintiff is required to allege with particularity each element of a RICO violation and its predicate acts of racketeering. [FN72] In requiring the specificity of pleading in a RICO case, the Tenth Circuit recognized the policy of notice pleadings under the Federal Rules of Civil Procedure "requires a court to read Rule 9(b)'s requirements in harmony with Rule 8's call for a 'short and plain statement of the claim' which presents 'simple, concise, and direct' allegations." [FN73] However, the Tenth Circuit found "that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts." [FN74] To that end, courts have found that " 'the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby." ' [FN75]

> FN71. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

> FN72. *Hall v. Doering,* 997 F.Supp. 1445, 1453 (D.Kan.1998) (citing *Farlow v. Peat, Marwick Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992)).

> FN73. *Cayman Exploration,* 873 F.2d at 1362.

> FN74. *Id.*

> FN75. *Hall v. Doering,* 997 F.Supp. at 1453 (quoting *Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 975-76 (D.Kan.1986)).

Furthermore, as the requirements relate to corporate defendants, the rule requires that plaintiffs identify the specific individuals acting for the corporation who made the alleged misrepresentations. [FN76] Courts have also noted that "while [the] plaintiff need only give fair notice in her complaint, the list of elements is deceptively simple ... because each concept is a term of art which carries its own inherent requirements of particularity. For example, 'conduct' embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through (d)." [FN77]

> FN76. *Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d 1212, 1218 (D.Kan.1999) (holding "the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby," and "[in] the context of corporate defendants, plaintiffs must identify the specific individuals who made the alleged misrepresentations).

> FN77. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d 1109, 1120 (D.Kan.2003) (internal quotations omitted).

Although each Defendant has filed a separate motion to dismiss the Second Amended Complaint, each of the motions raise essentially the same arguments for dismissal. To the extent the motions raise the same legal and factual issues, the Court will jointly address them for simplicity.

A. Plaintiff's claims against First Union are barred by *res judicata* and issue preclusion.

**\*\*19** First Union's Motion to Dismiss contains a defense not shared by the other Defendants, and therefore the Court will address its motion independently. Defendant First Union brought a state court foreclosure action against Plaintiff in September 22, 2000, seeking to foreclose its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

mortgage on the subject real estate. Plaintiff had the opportunity in that proceeding to raise, as a defense to the foreclosure, and by way of affirmative counterclaims, any claim or cause of action she had against First Union.

Plaintiff failed to plead a RICO claim against First Union in the state court proceeding. This Court has already held that the final state court judgment between First Union and Plaintiff precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. Thus, to the extent Plaintiff's RICO claim against First Union existed before the completion of the foreclosure proceeding commenced, or at least by the last date for filing counterclaims, she was required to file a compulsory counterclaim against First Union in that proceeding. This she failed to do.

In the Court's July 8, 2004 Memorandum and Order, it noted that to the extent First Union had engaged in RICO acts *after* the conclusion of the state court proceeding that had damaged Plaintiff, she might be able to pursue an action against it. The court noted, as follows:

> Although the Court finds that any RICO claim based upon actions that arose prior to the filing of the foreclosure action are barred, summary judgment is not appropriate at this time. Plaintiff alleges in her response to the summary judgment motion that First Union took actions in furtherance of the alleged illegal scheme by the defendants after the entry of the state court judgment. If the RICO claim is based, at least in part, on actions by First Union that took place following the judgment in the state court proceeding, *res judicata* and issue preclusion would not operate to bar the RICO claim. [FN78]

> FN78. *Lewis v. BNC Mortgage, Inc. (In re Lewis),* 2004 WL 2191602 at *11.

The Court thus granted Plaintiff leave to amend her petition to specifically plead that First Union had committed RICO violations after the conclusion

of the state court action.

In her Second Amended Complaint, Plaintiff alleges First Union committed one post-state court act in violation of RICO. That purported RICO violation was First Union's filing of a proof of claim in the underlying bankruptcy case; she contends this act was done in furtherance of the alleged RICO enterprise. Although the Court has serious doubts whether filing a proof of claim in a bankruptcy could be viewed as conduct that could support a RICO claim, the Court need not decide that issue because Plaintiff's allegation is simply untrue. Had Plaintiff reviewed the Claims Register in the Plaintiff's Chapter 13 bankruptcy case, [FN79] she would easily note that First Union never filed a proof of claim. Accordingly, the single post-state court action that Plaintiff contends First Union committed, which purportedly serves to keep that Defendant in the case, simply did not occur.

> FN79. This Court takes judicial notice of the proofs of claim filed in Plaintiff's Chapter 13 case. *See In re Applin,* 108 B.R. 253, 257 (Bankr.E.D.Cal.1989) (holding that the judicial notice of basic filings in the bankruptcy case is permissible to fill in gaps in the evidentiary record of a specific adversary proceeding or contested matter).

**\*\*20** In her response to First Union's motion to dismiss, Plaintiff simply ignores First Union's argument that it did not commit the one and only post-foreclosure act Plaintiff has claimed it did --- file a proof of claim. Plaintiff also ignores the findings contained in this Court's July 8, 2004 Order concerning the issues of *res judicata* and claim preclusion as they applied to First Union.

Plaintiff has not plead that First Union engaged in any conduct that forms a basis for the RICO claim following the entry of judgment in the state court foreclosure proceeding, notwithstanding being given months to do so. For the reasons set forth in the Court's Memorandum and Order dated July 8, 2004, the Court finds that the Plaintiff's RICO claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

against First Union is barred by *res judicata* and issue preclusion. [FN80] Therefore, First Union's Motion to Dismiss is granted, with prejudice.

> FN80. Although she did not bother to make this argument in opposition to First Union's Motion to Dismiss, Plaintiff has argued, in response to First Union's motion for sanctions, that the state court proceeding cannot be a basis for *res judicata* because the state court order is not a final judgment, as the appeal time had not run on that judgment when she filed this Chapter 13 proceeding. Plaintiff claims that the filing of her bankruptcy petition stayed the state court proceeding and that her deadline for filing an appeal was tolled by the automatic stay. This argument is completely without merit, as it is well established in the Tenth Circuit that the automatic stay provision of 11 U.S.C. § 362(a)(1) "does not prevent a debtor from commencing or continuing [her] own appeal." *Mason v. Oklahoma Turnpike Authority,* 115 F.3d 1442, 1450 (10th Cir.1997) (citing *Chaussee v. Lyngholm (In re Lyngholm),* 24 F.3d 89, 91- 92 (10th Cir.1994)).

B. Plaintiff's Second Amended Complaint is insufficient to state a claim for relief under RICO against the remaining movants.

Each Defendant has raised numerous issues concerning deficiencies in Plaintiff's Second Amended Complaint. Defendants contend, *inter alia,* that Plaintiff has failed to plead facts that could prove an enterprise existed, including the identity of corporate officers who were acting on behalf of the corporate defendants, that she has failed to establish a pattern of racketeering activity, and that she has failed to even identify what sections of the RICO statute Defendants have allegedly violated.

As noted above, in order to properly plead a claim under RICO, Plaintiff must allege (1) conduct, (2)

of an enterprise, (3) through a pattern, (4) of racketeering activity. [FN81] Plaintiff is required to allege with particularity each element of a RICO violation and its predicate acts of racketeering. "If plaintiff does not allege facts sufficient to establish any one of these elements, the complaint must be dismissed." [FN82]

> FN81. *Cayman Exploration,* 873 F.2d at 1362 (citing *Sedima, S.P .R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

> FN82. *B urdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d at 1121.

1. Plaintiff has failed to properly plead an enterprise within the meaning of RICO.

The Court finds that Plaintiff's Second Amended Complaint does not contain sufficient facts to allege an enterprise within the meaning of RICO. According to Congress, an "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." [FN83] To plead the existence of an enterprise, Plaintiff must allege facts sufficient to show "(1) 'an ongoing organization with a decision-making framework or mechanism for controlling the group;' (2) 'various associates function as a continuing unit;' and (3) 'that the enterprise is separate from the pattern of racketeering activity." ' [FN84] " 'A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." ' [FN85]

> FN83. 18 U.S.C. § 1961(4).

> FN84. *Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d at 1219 (quoting *United States v. Sanders,* 928 F.2d 940, 943-44 (10th Cir.1991)).

> FN85. *Id.* (quoting *States v. Rogers,* 89 F.3d 1326, 1337 (7th Cir.1996)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Although Plaintiff added a substantial number of new paragraphs to the "facts" included in her Second Amended Complaint, in an attempt to establish that the various Defendants were somehow functioning as a continuing unit, the Court finds the Second Amended Complaint is devoid of factual allegations that could establish that Defendants had any sort of "decision-making framework or mechanism for controlling the group." There are no allegations that a singular organization existed "in a manner amenable to hierarchical or consensual decision-making." In addition, it appears the entire enterprise alleged by Plaintiff consists of the parties' alleged racketeering activity. [FN86] There is no allegation by the Plaintiff that "the enterprise is separate from the pattern of racketeering activity."

> FN86. The Court further notes that when Plaintiff defines the "enterprise" in her Second Amended Complaint, conspicuously absent as members of the "enterprise" are Defendants Kozeny & McCubbin and Jeffrey Miller. *See* Plaintiff's Second Amended Complaint, paragraph 12. Since Plaintiff thus tacitly admits they are not part of the "enterprise," by definition Plaintiff has failed to state a claim against those two Defendants for a RICO violation. This failure continues in Plaintiff's prayer for relief. Again, conspicuously absent is any request for damages against Kozeny & McCubbin, L.C.

**\*\*21** Plaintiff also variously claims different entities constitute the leadership of the purported "enterprise." First, she claims that First Union National Bank, Option One and/or BNC are "at the top of the hierarchy." [FN87] Then she claims that "Miller Enterprises, Inc., Maplewood Real Estate, Inc. (not a party defendant), and Maplewood Mortgage, Inc. were at the core of the "enterprise...." " [FN88] Although there are additional inconsistent factual allegations, this example serves to point out the stark deficiency in the Second Amended Complaint, and the unfairness such pleading poses to the named Defendants. A

plaintiff alleging a RICO claim must know what her claim is when she files it. She cannot sue now and discover later what her claim is. [FN89]

> FN87. *See* Plaintiff's Second Amended Complaint. Doc. No. 130, ¶ 14.

> FN88. *Id.* at ¶ 13.

> FN89. *Cf. Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d at 989. Ironically, this Court has, out of an abundance of caution, tacitly allowed Plaintiff to violate this rule by allowing her two separate opportunities to amend her Complaint and do discovery before each amendment so she in fact was allowed to "discover" her claim after she filed the Complaint.

Plaintiff has also wholly failed, at least as to Defendants First Union National Bank, Option One, BNC Mortgage, Adamson & Adamson, Miller Enterprises, Inc. and Maplewood Mortgage, to plead which corporate employee or officer acted on their behalf in conducting or directing this "enterprise." [FN90] This is yet another example of a deficiency contained in Plaintiff's First Amended Complaint, and which this Court specifically coached Plaintiff to correct in her Second Amended Complaint. [FN91] She has chosen not to identify which individuals did which *illegal* acts on behalf of any of the Defendant corporations, and this is also fatal to her claim against the corporate Defendants.

> FN90. Plaintiff's Second Amended Complaint indicates that Shirley Wheeler is one agent of Maplewood Mortgage (¶ 22), but never indicates that Shirley Wheeler was the Maplewood representative who engaged in the purportedly illegal RICO acts. Similarly, Plaintiff indicates that Jeffrey Miller "was employed by" Miller Enterprises but "also acted independently of Miller Enterprises." (¶ 7) Plaintiff also indicated that Ronda

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Van Quaethem is an agent of Adamson & Associates, but never indicates she engaged in purportedly illegal acts. In fact, all she is alleged to have done on behalf of Adamson & Associates was to use two Miller Enterprise houses for "comparables" on an appraisal. (¶ 32). These paragraphs constitute the only attempts by Plaintiff to plead illegal acts by employees of the corporate members of the "enterprise." These allegations are insufficient to meet the requirement that corporate fraud allegations be accompanied by the identity of the corporate officials who actually conducted the fraud.

FN91. *Lewis v. BNC Mortgage, Inc,* 2004 WL 2191602 at *16 (wherein this Court noted that "the rule requires that plaintiffs must identify the specific individuals who made the alleged misrepresentations," and provided citation to additional authority).

The Court finds that Plaintiff has also failed to properly plead that the Defendants constituted an enterprise in the context of a RICO case. Plaintiff has certainly attempted to weave Defendants into a collective group that acted in a manner she contends harmed her, but that is insufficient to bring a claim under RICO. Instead, what Plaintiff has plead is that each Defendant acted individually (if at all), and not as a cog in the enterprise wheel. She doesn't even indicate who had an ownership in the alleged enterprise. RICO has very specific statutory requirements and is aimed at a particular type of enterprise. Plaintiff has wholly failed to plead facts that could show that these Defendants fit within the framework of a RICO enterprise.

2. Plaintiff has failed to plead, with the required specificity, that Defendants engaged in conduct sufficient to establish a RICO violation.

Each Defendant has noted that Plaintiff has failed to plead what section of the RICO statute they violated by their purported actions. This Court

appraised Plaintiff in its July 8, 2004 order that this failure was one of the many deficiencies of her First Amended Complaint. In her response to the various Motions to Dismiss, Plaintiff summarily dismisses this deficiency. This Court, again, disagrees. Plaintiff's failure to identify which provision of RICO each Defendant is alleged to have violated is sufficient to sustain the Defendants' motions to dismiss. As noted by the Court, above, "conduct," which is a specific element of a RICO claim, "embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through (d)." [FN92]

> FN92. *Burdett v. Harrah's Kansas Casino Corp.,* 260 F.Supp.2d at 1120 (internal quotations omitted).

**\*\*22** Section 1962 contains four distinct subsections, each of which creates civil liability based upon different actions and different legal bases than the other subsections. For example, § 1962(a) makes it illegal for racketeers to use profits from illegal activities to invest in or purchase controlling interests in legitimate businesses that are engaged in, or whose activities affect, interstate commerce. Section 1962(b) prohibits the takeover of a legitimate business that is engaged in, or whose activities affect, interstate commerce through a pattern of racketeering activity. Section 1962(c) prohibits the operation of a legitimate business or association that is engaged in, or whose activities affect, interstate commerce through a pattern of racketeering activity. Section 1962(d) makes it illegal for anyone to conspire to violate subsections (a) through (c).

Because each of the potential violations of RICO require Defendants to have committed different acts, it is imperative that Plaintiff provide Defendants with notice of which provisions of 18 U.S.C. § 1962 each Defendant has allegedly violated. For example, if Plaintiff intended to rely on § 1962(b), she is required to plead that the purported enterprise affected interstate or foreign commerce. Neither these words--nor even the concept --- ever appear in her Second Amended Complaint. This

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

Court will not require Defendants to proceed with this case, defending against any and all of the provisions of § 1962, with its prejudicial title and its potential for treble damages, in hope that Plaintiff, some day, will decide (and inform Defendants) which provision she believes each has violated.

This Court pointed out this deficiency in its July 8, 2004 Memorandum and Order, believing Plaintiff would heed the Court's advice in properly drafting her Second Amended Complaint. For reasons unknown to the Court, Plaintiff has decided not to identify what provisions of § 1962 she contends each Defendant has allegedly violated. In so doing, Plaintiff has again clearly failed to allege what "conduct" forms a basis for her RICO claim. Defendants' motions to dismiss are also granted on that basis.

3. Plaintiff fails to identify, with sufficient particularity, the alleged racketeering activity of each Defendant.

The Court also finds that Plaintiff has failed to plead, with sufficient particularity, in what alleged racketeering activity each Defendant has purportedly engaged. "Racketeering activity," for purposes of RICO litigation, is defined in 18 U.S.C. § 1961(1). Among the extensive list of actions that can constitute "racketeering activity" are any actions that are indictable under federal mail fraud statutes [FN93] and federal wire fraud statutes. [FN94] Although Plaintiff generically alleges that Defendants committed mail fraud, [FN95] Plaintiff neglected to provide sufficient facts to comply with the heightened pleading requirements of a RICO claim.

> FN93. 18 U.S.C. § 1341. This 21 page, 75 paragraph complaint mentions "mail fraud" twice. First, in paragraph 17, it states that "[t]hese entities consistently utilized the U.S. mails and wires to accomplish the goals of their schemes in violation of 18 U.S.C. § 1343 and the Racketeering (sic) Influenced and Corrupt organizations Act,

18 U.S.C. §§ 1961 et. seq. Second, in paragraph 75, it states that there was a "purpose of executing such scheme in violation of the RICO statutes 18 U.S.C. §§ 1961 et seq. and Mail Fraud Statutes 18 U.S.C. § 1343(sic)."

> FN94. 18 U.S.C. § 1343.

> FN95. Plaintiff alleges that Defendants committed mail fraud, but cites to the federal wire fraud statute in so doing. The Court will assume that the Plaintiff intended to rely on the mail fraud statutes for purposes of this motion, but notes that the result would be the same if Plaintiff in fact intended to cite and rely on the wire fraud statute to establish racketeering activity. That is because she has similarly failed to properly plead any concrete examples of wire fraud.

In the context of a RICO claim based upon mail or wire fraud, "[a] complaint must delineate the specifics of each purported use of the mail and wires, including the time, place, speaker, and content of the alleged fraudulent misrepresentations, as well as the manner in which the misrepresentations were fraudulent." [FN96] "The elements of the offense of mail fraud are: '(1) the devising of a scheme or artifice to defraud or take money or property by false pretenses, representations or promises; (2) the specific intent to defraud; and (3) the use of the United States Mails for the purpose of executing the scheme." ' [FN97] Plaintiff is also required to describe how the particular mailing or transaction furthered the fraudulent scheme. [FN98]

> FN96. *Scheiner v. Wallace,* 832 F.Supp. 687, 699-700 (D.S.D.N.Y.1993) (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2nd Cir.1986); *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2nd Cir.1987)).

> FN97. *Kaplan v. Reed,* 28 F.Supp.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table)                                                                                    Page 26

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

1191, 1206 (D.Colo.1998) (quoting *United States v. Kennedy,* 64 F.3d 1465, 1475 (10 th Cir.1995)).

FN98. *Id. See also Gottstein v. National Ass'n for Self Employed,* 53 F.Supp.2d at 1218-19 (dismissing RICO claim, holding that bare allegation that a defendant "used mails to defraud customers," without specific references to time and content of such representations, is insufficient).

**\*\*23** Plaintiff's bare, conclusory allegations that Defendants have violated federal mail fraud statutes, without sufficiently detailing the facts to support the alleged violations, are insufficient to satisfy the pleading requirements of a RICO claim. Simply stating, generically, that Defendants violated 18 U.S.C. § 1343, without providing detailed factual allegations as to which of them used the mails for what purpose at what time, is no more proper in pleading a RICO claim than if Plaintiff had simply plead that Defendants violated RICO without the conclusory "mail" allegation. Plaintiff has failed to plead, with sufficient particularity, that Defendants engaged in "racketeering activity" as defined by Congress in 18 U.S.C. § 1961.

4. Plaintiff has failed to properly plead that Defendants engaged in a pattern of racketeering activity.

Congress has defined a "pattern of racketeering activity" as "at least two acts of racketeering activity...." [FN99] Because Plaintiff has failed to properly plead that Defendants engaged in *any* alleged racketeering activity, the Court must, by definition, find that Plaintiff has failed to plead a pattern of such activity. Although Plaintiff has developed fairly lengthy and detailed facts showing various actions by the Defendants as they relate to Plaintiff, the Court finds those facts do not establish a pattern of racketeering activity for purposes of a RICO claim.

FN99. 18 U.S.C. § 1961(5).

C. Plaintiff's RICO complaint should be dismissed with prejudice.

Certain factors must be considered before dismissing a complaint with prejudice, including (1) the degree of actual prejudice to the defendants, (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions. [FN100] A court must provide its reasoning for dismissing an action. [FN101]

FN100. *Krueger v. I.R.S.,* 2001 WL 1572322, \*1 (D.N.M.2001) (citing *Jones v. Thompson,* 996 F.2d 261, 264 (10th Cir.1993); *Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir.1992)).

FN101. *Id.* (citing *Dimond v. Allsup's Convenience Stores, Inc.,* 182 F.3d 931 (10 th Cir.1999)).

This adversary proceeding has been pending for over 19 months, and its pendency has delayed confirmation of Debtor/Plaintiff's Chapter 13 Plan. All her creditors have been stayed from pursuing collection against her--while they received no disbursement [FN102] from the Chapter 13 Trustee--for over 19 months while she failed to plead with specificity. This is prejudicial to the system, and to those creditors who have been stayed while she pursues this action.

FN102. The Court did condition Plaintiff's continued occupancy of the subject real estate, and continued existence of the Chapter 13 proceeding, on making a payment to the Trustee in an amount equal to her mortgage payment. No other creditor is receiving anything while this bankruptcy pends, awaiting the resolution of these claims.

In addition, and probably most importantly, Plaintiff was specifically warned by the Court in its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

July 2004 order dismissing her first amended complaint that her seconded amended complaint had to conform to certain pleading requirements for RICO claims. The Court gave her considerable additional time to discover, then plead, her RICO claims. In addition, this Court carefully outlined what she had to do to successfully plead a RICO claim, yet she knowingly filed a Second Amended Complaint that failed to conform. Most of the defendants in this case have expended extensive litigation resources, because most have had to file three separate motions to dismiss, one after each successive complaint filed. They have had to appear numerous times for hearings in Topeka, where Plaintiff chose to file, notwithstanding that she resides in Kansas City, the real estate that is the subject of the adversary is in the Kansas City area, and most counsel are from the Kansas City area.

**24** Although Plaintiff amended her complaint and added certain facts, the Second Amended Complaint is still plagued with the same generalities that the Court previously noted, and that would make defending against that complaint completely unfair to Defendants. Due to the substantially unimproved nature of plaintiff's Second Amended Complaint, the Court has no reason to believe that allowing Plaintiff an additional opportunity to amend the complaint would cure the numerous defects that permeate her pleading. Plaintiff has had months to conduct discovery so that she might have the necessary details to properly plead a RICO cause of action, including two months after the Court denied her First Amended Complaint. The Court can only conclude that the requisite detail does not exist, or Plaintiff would have plead it, since she was fairly warned she would likely not be given another opportunity.

The Court finds if Plaintiff was unable, even after the road map provided by the Court, and after well over a year of discovery, to properly plead a RICO claim in her third attempt in doing so, that it is not fair to Defendants to provide yet another opportunity under the circumstances of this case. In light of the additional resources that would have to be expended by Defendants, as well as by this

Court, in any attempt to decipher the purported wrongs complained of, the Court is simply unwilling to afford Plaintiff a fourth chance to finally articulate a viable theory. Accordingly, after a full review of the *Ehrenhaus* [FN103] factors, the Court concludes that, at this juncture, granting Plaintiff leave to amend yet again would be futile and prejudicial to Defendants. [FN104]

> FN103. *Ehrenhaus v. Reynolds,* 965 F.2d at 921.

> FN104. Another example of the prejudice that continuing delay will cause specifically relates to Defendant First Union. It brought a foreclosure action as a result of Debtor's non-payment in 2000, and received a judgment of foreclosure. It has been prevented from conducting a judicial sale of the property, and realizing the value of the pledged collateral, because Debtor filed two successive bankruptcy cases (the first of which was previously rather summarily dismissed by another court), and thus the automatic stay has prevented the foreclosure sale. Plaintiff continues to live in the real property. The Court cannot reward Debtor for her failures to properly plead her RICO case by granting yet another opportunity for an amended complaint in light of the five years of delay, and likely thousands of dollars of attorney fees, that she has already caused to First Union. If she had a RICO complaint against First Union, she was compelled to bring it years ago, within the confines of the state court foreclosure proceeding.

IV. CONCLUSION

The Court finds that Plaintiff's Second Amended Complaint fails to state a claim for relief under RICO, and should be dismissed. Although the failure to plead any one of the four elements of a RICO claim with the required specificity would have been fatal to Plaintiff's claim, the Court finds

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.))
**Unpublished Disposition**

**(Cite as: 342 B.R. 384, 2006 WL 1308352 (10th Cir.BAP (Kan.)))**

that Plaintiff failed to properly plead any of the four elements. In addition, Plaintiff's claim against First Union is also dismissed because it is barred by the principles of issue preclusion and *res judicata.*

Plaintiff has now had three opportunities to file a RICO claim with sufficient particularity to withstand a motion to dismiss. The last of those opportunities occurred after this Court directed her counsel to the pertinent case law and statutory law that governed RICO claims. Furthermore, the Court fairly warned Plaintiff that it was unlikely the Court would allow yet another attempt to amend, given the length of time that has passed since the original Complaint was filed, and given the information provided by the Court, itself, to educate Plaintiff's counsel on the required elements.

Therefore, the Court hereby dismisses Plaintiff's Second Amended Complaint, without leave to amend, and thus with prejudice, rather than allowing an additional opportunity to amend her pleadings. Defendants have been required to defend against three deficient complaints over an extended length of time, and Plaintiff has shown an inability to properly plead.

**\*\*25** IT IS, THEREFORE, BY THIS COURT ORDERED that Miller Enterprises, Inc. and Jeffrey Miller's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 131), First Union National Bank's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 132), Kozeny & McCubbin, L.C.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 144), Option One's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 145), BNC Mortgage, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 146), and Adamson and Associates, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 149) are all granted, with prejudice to Plaintiff filing yet another amended complaint. The Court once again dismisses Plaintiff's Second Amended Complaint against Defendant Maplewood Mortgage, Inc. and "Does 1-100" as a result of Plaintiff's failure to serve the Second Amended Complaint on them

within the 120 day period allowed by Fed.R.Civ.P. 4(m), which is incorporated into this proceeding by Rule 7004(a), and by her total failure to allege any illegal acts by the "Does 1-100."

IT IS FURTHER ORDERED that this adversary proceeding is dismissed, with prejudice, in its entirety except for the pending motions for sanctions brought by each of the Defendants, which will be decided by later order.

IT IS FURTHER ORDERED the foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58 after the Court enters a ruling on the pending motions for sanctions against Plaintiff and her counsel.

342 B.R. 384 (Table), 2006 WL 1308352 (10th Cir.BAP (Kan.)) Unpublished Disposition

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**4**

Westlaw.

2006 WL 2435031                                                                                              Page 1

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

**H**
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. A PETITION
FOR REHEARING IN THE COURT OF
APPEALS OR A PETITION FOR CERTIORARI
IN THE SUPREME COURT MAY BE PENDING.

Colorado Court of Appeals,
Div. III.
Dr. Christine F. STAUFFER; A Woman's Place
Healing Center, P.L.L.P.; A Woman's
Center, P.C.; and John Stauffer,
Plaintiffs-Appellants,
v.
Cara J. STEGEMANN, Peter Dusbabek, and
Pamela Roys, Defendants-Appellees.
No. 05CA0965.

Aug. 24, 2006.
As Modified on Denial of Rehearing Nov. 2, 2006.

**Background:** In litigation concerning the
dissolution of a medical practice, plaintiff doctor
and others filed a complaint to assert claims against
attorneys and office manager for conversion,
invasion of privacy, wrongful disclosure of patient
information and breach of privacy, and outrageous
conduct. Attorneys moved to dismiss, and the
District Court, Larimer County, Jolene Carman Blair
, J., granted the motion. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Taubman, J.,
held that:
(1) evidence failed to support claim for
conversion;
(2) claim for civil conspiracy against office
manager was subject to dismissal; and
(3) attorney fees were properly awarded.
Affirmed and remanded.

**[1] Pretrial Procedure** ⟜**679**

307Ak679 Most Cited Cases

**[1] Pretrial Procedure** ⟜**681**
307Ak681 Most Cited Cases
In analyzing a motion to dismiss for failure to state
a claim upon which relief may be granted, a court
considers only those matters stated in the complaint,
accepting them as true and viewing them in the light
most favorable to the plaintiff. Rules Civ.Proc.,
Rule 12(b)(5).

**[2] Pretrial Procedure** ⟜**681**
307Ak681 Most Cited Cases
In ruling on a motion to dismiss for failure to state a
claim upon which relief could be granted, the trial
court, in litigation involving the dissolution of a
medical practice, properly considered a four-page
printout that contained records and was attached to
plaintiffs' complaint, in ruling on the motion. Rules
Civ.Proc., Rule 12(b)(5).

**[3] Pleading** ⟜**312**
302k312 Most Cited Cases
When documents are attached to a complaint, the
legal effect of the documents is determined by their
contents rather than by allegations in the complaint.

**[4] Pleading** ⟜**312**
302k312 Most Cited Cases
Referred
A trial court is not required to accept legal
conclusions or factual claims at variance with the
express terms of documents attached to the
complaint.

**[5] Appeal and Error** ⟜**422**
30k422 Most Cited Cases
Plaintiffs in litigation concerning the dissolution of
a medical practice had no standing to appeal from
the dismissal of claims on behalf of unnamed
plaintiffs for invasion of privacy, wrongful

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 2435031

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

disclosure of patient information, and other claims, based on the trial court's determination that it lacked jurisdiction over these claims, where the ruling was not appealed, and the unnamed parties were not listed on the notice of appeal.

**[6] Attorney and Client** ☞26
45k26 Most Cited Cases
Alleged acts of office manager for former medical practice, who had become office manager for physician who was defendant in underlying action brought by plaintiff physician in connection with dissolution of practice, including manager's viewing, at request of defendant's attorneys, information related to plaintiff physician's new practice, manager's printing out of such information, and attorneys' refusal to return printout to plaintiff, did not amount to conversion of printed document by attorneys, as there was no distinct, unauthorized act of dominion or ownership exercised by attorneys or manager over personal property belonging to plaintiff; discovery order in underlying litigation provided that all partnership files and documents, including both electronic and hard copy records, be made available by parties for inspection and copying by other parties, and nothing in printed document, which listed various medical services provided and amounts charged during specified dates, indicated that document was not responsive to the discovery order.

**[6] Trover and Conversion** ☞23
389k23 Most Cited Cases
Alleged acts of office manager for former medical practice, who had become office manager for physician who was defendant in underlying action brought by plaintiff physician in connection with dissolution of practice, including manager's viewing, at request of defendant's attorneys, information related to plaintiff physician's new practice, manager's printing out of such information, and attorneys' refusal to return printout to plaintiff, did not amount to conversion of printed document by attorneys, as there was no distinct, unauthorized act of dominion or ownership exercised by attorneys or manager over personal property belonging to plaintiff; discovery order in underlying litigation provided that all partnership files and

documents, including both electronic and hard copy records, be made available by parties for inspection and copying by other parties, and nothing in printed document, which listed various medical services provided and amounts charged during specified dates, indicated that document was not responsive to the discovery order.

**[7] Trover and Conversion** ☞4
389k4 Most Cited Cases
Conversion is defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.

**[8] Appeal and Error** ☞893(1)
30k893(1) Most Cited Cases
The appellate court reviews the trial court's grant of a motion for summary judgment de novo.

**[9] Conspiracy** ☞19
91k19 Most Cited Cases
Claim for civil conspiracy against office manager in litigation concerning the dissolution of a medical practice was subject to dismissal for failure to state a claim upon which relief could be granted; allegations of misconduct of office manager with regard to cancellation of insurance contracts and phone service were not supported by plaintiffs' own affidavits or the allegations of the amended complaint. Rules Civ.Proc., Rule 12(b)(5).

**[10] Conspiracy** ☞1.1
91k1.1 Most Cited Cases
A claim for civil conspiracy has the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as the proximate result thereof.

**[11] Costs** ☞194.48
102k194.48 Most Cited Cases
Attorney fees were properly awarded to attorneys in litigation concerning the dissolution of a medical practice, following the dismissal of claims for failure to state a claim upon which relief could be granted, notwithstanding that some claims were still pending as to other defendants at the time of the dismissal. West's C.R.S.A. § 13-17-201.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

**[12] Costs ☜252**
102k252 Most Cited Cases
Attorneys were entitled to an award of attorney fees
incurred in successfully defending against appeal
from dismissal of claims in litigation concerning the
dissolution of a medical practice. West's C.R.S.A. §
13-17-201.
Anne Whalen Gill, LLC, Anne Whalen Gill, Castle
Rock, Colorado, for Plaintiffs-Appellants.

White and Steele, P.C., John M. Palmeri, Franz
Hardy, Denver, Colorado, for Defendant-Appellees
Cara J. Stegemann and Peter Dusbabek.

Thomas R. French, P.C., Thomas R. French, Fort
Collins, Colorado, for Defendant-Appellee Pamela
Roys.

Opinion by Judge TAUBMAN.

*1 Plaintiffs, Dr. Christine F. Stauffer (Dr.
Stauffer); A Woman's Place Healing Center,
P.L.L.P.; A Woman's Center, P.C.; and John
Stauffer, appeal the trial court's judgment
dismissing their claims against defendants, Cara J.
Stegemann and Peter Dusbabek (collectively
attorneys) and Pamela Roys. We affirm and remand
for an award of appellate attorney fees.

This action arises out of a discovery dispute that
occurred in underlying litigation concerning the
dissolution of a medical practice involving Dr.
Stauffer and Dr. Hayes, the latter of whom is not a
party to this appeal. That litigation was stayed while
the parties pursued arbitration.

During the arbitration, the arbitrator issued a
discovery order that required that all files and
documents of the partnership be made available by
the parties for inspection and copying by the other
party. The order specified production of both
electronic and hard copy records, in whatever form
they existed.

Pursuant to that order, Stegemann, as defense
counsel for Dr. Hayes, arranged with John Stauffer,
Dr. Stauffer's husband, to review records at Dr.
Stauffer's new medical office. Stegemann and Roys,

who had worked as office manager for both Dr.
Stauffer and Dr. Hayes in the prior practice and
then worked as office manager for Dr. Hayes in her
new medical practice, went to Dr. Stauffer's office,
viewed records on her office computer, and printed
out one four-page document. John Stauffer
demanded the return of the document, claiming that
it was not covered by the discovery order.
Dusbabek, another attorney for Dr. Hayes,
subsequently appeared at the office, and after
consulting with Stegemann and Roys, explained that
they were entitled to the document under the
discovery order and that they would not return the
document to John Stauffer, but they provided him
with a copy of it.

As a result of this incident, plaintiffs and various
unnamed patients filed an amended complaint to
assert claims against defendants for conversion,
invasion of privacy, wrongful disclosure of patient
information and breach of privacy, and outrageous
conduct. The amended complaint referenced and
attached various exhibits, including the partnership
agreement, affidavits by John Stauffer and the
person whose computer was used, the discovery
order, and the four-page printout.

The attorneys moved to dismiss the claims against
them. They argued that plaintiffs had failed to state
a claim for conversion because the discovery order
gave them the authority to obtain the four-page
document. The attorneys also argued that they had
absolute immunity because the alleged improper
conduct occurred during the course of litigation,
that is, the arbitration. The trial court agreed with
the attorneys' arguments and granted their motion to
dismiss.

The attorneys then sought attorney fees pursuant to
§ 13-17-201, C.R.S.2005. In response, plaintiffs
argued that attorney fees should not be awarded
because the order did not dismiss the entire lawsuit.
The trial court rejected plaintiffs' argument and
granted in part the request for attorney fees.

*2 Roys also moved to dismiss the claims against
her. She argued, as did the attorneys, that her
conduct was allowed by the arbitrator's discovery

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 2435031                                                                                    Page 4

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

order and that she was not liable under any of the claims brought by plaintiffs.

The trial court treated Roys' motion as a motion for summary judgment based on its consideration of affidavits filed by the parties. The court determined that, even assuming that all allegations of the amended complaint and the affidavits were true, plaintiffs had failed to establish that they were entitled to relief.

### I.

Plaintiffs contend that the trial court erred in dismissing their claims against the attorneys for failure to state a claim for relief. We are not persuaded.

### A.

[1] A complaint may be dismissed when it fails to state a claim upon which relief may be granted. *See* C.R.C.P. 12(b)(5). In analyzing a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief may be granted, a court considers only those matters stated in the complaint, accepting them as true and viewing them in the light most favorable to the plaintiff. *See Coors Brewing Co. v. Floyd,* 978 P.2d 663 (Colo.1999).

[2] However, when, as here, the plaintiff attaches documents to the complaint, the court may consider those documents in ruling on a motion to dismiss. *Hall v. Bellmon,* 935 F.2d 1106 (10th Cir.1991); *Vaughn v. Krehbiel,* 367 F.Supp.2d 1305 (D.Colo.2005); *see* C.R.C.P. 10(c) (an exhibit to a document is a part thereof for all purposes); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1327 (3d ed.2004) (noting that numerous cases throughout the federal court system hold that the contents of any attached writing may be considered by the court in a motion to dismiss for failure to state a claim for relief); *cf. Yadon v. Lowry,* 126 P.3d 332 (Colo.App.2005) (trial court's consideration of an order attached to an amended answer which was referred to in, but not attached to, the complaint, the authenticity of which was not disputed, did not convert the motion to dismiss into a motion for summary judgment).

While plaintiffs concede in their reply brief that the trial court may consider documents attached to their complaint, they nevertheless argue that the trial court must also consider the allegations of the complaint as true and in the light most favorable to plaintiffs, even if they conflict with the attached documents. We disagree.

[3][4] When documents are attached to a complaint, the legal effect of the documents is determined by their contents rather than by allegations in the complaint. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936 (10th Cir.2002); *Droppleman v. Horsley,* 372 F.2d 249 (10th Cir.1967). Further, a trial court is not required to accept legal conclusions or factual claims at variance with the express terms of documents attached to the complaint. *Olpin v. Ideal Nat'l Ins. Co.,* 419 F.2d 1250 (10th Cir.1969).

*3 Accordingly, here, the trial court properly considered the four-page printout and its legal effect, including that it contained the name and address of Dr. Stauffer's new medical office, but billing dates of the old partnership.

Accordingly, we conclude that the trial court properly considered the documents attached to plaintiffs' complaint.

### B.

[5] To the extent plaintiffs appeal the dismissal of the claims against defendants for invasion of privacy, wrongful disclosure of patient information and breach of privacy, and outrageous conduct, we note that these claims were asserted on behalf of the unnamed plaintiffs and that the trial court subsequently determined that it lacked subject matter jurisdiction over these claims. In reaching that conclusion, the court determined that the action did not involve the exceptional circumstances required for allowing the unnamed plaintiffs to proceed under pseudonyms.

Because this ruling has not been appealed, and the unnamed parties were not listed on the notice of appeal, we conclude that plaintiffs do not have standing to assert claims on behalf of the unnamed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

### C.

[6] In light of the foregoing, we need only address plaintiffs' contention that the trial court erred in dismissing their claim for conversion against the attorneys. We conclude that the court properly dismissed this claim.

[7] Conversion is defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. *See Glenn Arms Assocs. v. Century Mortgage & Inv. Corp.,* 680 P.2d 1315 (Colo.App.1984); *see also* Restatement (Second) of Torts § 222A(1) (1965) (providing that "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel").

Here, the amended complaint alleged that Roys, at the request of the attorneys, viewed information on the computer that was clearly marked "A Woman's Center, P.C.," the name of Dr. Stauffer's new practice. The complaint also alleged that Roys printed out hard copies of and took with her information that was contained on the computer. The complaint further alleged that defendants refused to return the hard copy printout, but agreed to photocopy it and provided John Stauffer with a four-page document, which plaintiffs attached to their complaint.

The discovery order provided that all files and documents of the partnership, including both electronic and hard copy records, be made available by the parties for inspection and copying by the other party. The four-page document listed various services provided by Dr. Stauffer, as well as the amounts charged, from January 23 until August 28, 2002. As set forth in the amended complaint, the last service was provided shortly before Dr. Hayes allegedly breached the partnership agreement on August 30, 2002. Although the bottom of each page contained the notation: "This program is registered to A WOMAN'S CENTER, P.C.," nothing otherwise indicated that the document was not responsive to the discovery order. In addition, the allegations of the complaint fail to demonstrate that defendants had improperly exercised dominion and control over other information maintained by plaintiffs.

\*4 Therefore, because the allegations of the complaint and the attached document fail to demonstrate any distinct, unauthorized act of dominion or ownership exercised by defendants over the personal property belonging to plaintiffs, we conclude that the trial court properly dismissed plaintiffs' claim for conversion against the attorneys. *See Glenn Arms Assocs. v. Century Mortgage & Inv. Corp., supra.*

### D.

In light of our determination, we need not address the trial court's application of the doctrine of absolute immunity to bar plaintiffs' claims against the attorneys.

### II.

Plaintiffs also contend that the trial court erred in granting summary judgment in favor of Roys. We disagree.

### A.

[8] Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814 (Colo.2004). We review the trial court's grant of a motion for summary judgment de novo. *McIntyre v. Bd. of County Comm'rs,* 86 P.3d 402 (Colo.2004).

### B.

Plaintiffs asserted claims against Roys for conversion, invasion of privacy, wrongful disclosure of patient information and breach of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

privacy, outrageous conduct, civil conspiracy, and breach of duty. However, in light of our determination in part I B that the trial court properly dismissed plaintiffs' claims for invasion of privacy, wrongful disclosure of patient information and breach of privacy, and outrageous conduct for lack of subject matter jurisdiction, we need not address those claims here.

### C.

Next, for the same reasons stated in part I for our conclusion that plaintiffs' conversion claim against the attorneys failed to state a claim for relief, we also conclude that the trial court properly dismissed this claim against Roys. In short, Roys' conduct in reviewing and printing the four-page document was authorized by the discovery order and did not support a claim for conversion.

### D.

[9] With regard to plaintiffs' remaining claim for civil conspiracy, we also conclude that the trial court properly dismissed this claim.

[10] A claim for civil conspiracy has the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as the proximate result thereof. *See Nelson v. Elway,* 908 P.2d 102 (Colo.1995).

In support of their claim for civil conspiracy and breach of duty, plaintiffs alleged in the amended complaint that Dr. Hayes enlisted the aid of Roys to engage in improper conduct, including unauthorized canceling of insurance contracts, interference with employees at the office, and canceling of telephone service.

The trial court found that plaintiffs failed to establish that Roys participated in the alleged conduct. In particular, the court noted that Dr. Stauffer stated in her affidavit that a representative of a phone company informed her that Dr. Hayes had authorized the cancellation of her phone service. In addition, John Stauffer, in his affidavit, averred that an insurance company representative informed him that Dr. Hayes had terminated the

insurance contracts. Consequently, the court found that plaintiffs had failed to set forth an "unlawful overt act" on the part of Roys. We agree with that determination.

*5 As the trial court noted, the allegations of misconduct of Roys with regard to the cancellation of insurance contracts and phone service are not supported by plaintiffs' own affidavits or the allegations of the amended complaint, which attributed the alleged improper conduct to Dr. Hayes. In addition, plaintiffs failed to set forth any facts supporting the allegation that Roys interfered with office employees. Accordingly, we are unable to conclude that a genuine issue of material fact is present regarding whether Roys engaged in an unlawful overt act sufficient to support a claim for civil conspiracy.

Therefore, we conclude that the trial court did not err in granting summary judgment in favor of Roys.

### III.

[11] Plaintiffs further contend that the trial court erred in awarding attorney fees to the attorneys pursuant to § 13-17-201 because claims were still pending as to other defendants at the time of dismissal and, thus, the entire lawsuit had not been dismissed. However, this same argument was rejected by a division of this court in *Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App.1996).

Section 13-17-201 provides that in certain tort actions where "the defendant" moves for and is granted pretrial dismissal under C.R.C.P. 12(b), "such defendant" shall have an award of attorney fees.

In *Smith,* the division held that by using the term "defendant" in the singular, § 13-17-201 necessarily applies to each defendant who has an action against it dismissed pursuant to C.R.C.P. 12(b)(1). Thus, the division concluded that because the entire action against the town had been dismissed, the town could obtain its attorney fees under § 13-17-201.

We agree with the decision in *Smith* and conclude

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

**(Cite as: 2006 WL 2435031 (Colo.App.))**

that the trial court properly awarded the attorneys their attorney fees. *State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo.1998), relied on by plaintiffs, is distinguishable. There, the supreme court held that § 13-17-201 applies to the dismissal of an entire tort action, rather than a single tort claim. However, the *Golden's Concrete* court did not address the issue presented in *Smith*--the applicability of the statute when all claims against a defendant are dismissed.

IV.

[12] The attorneys also request an award of the attorney fees they incurred in defending against this appeal. We conclude that such an award is appropriate. *See Wark v. Bd. of County Comm'rs,* 47 P.3d 711 (Colo.App.2002)(a party who successfully defends an appeal of an action that was dismissed on a pretrial motion to dismiss under the Governmental Immunity Act is entitled to recover its reasonable appellate attorney fees pursuant to § 13-17-201). However, because the trial court is in a better position to determine the reasonable attorney fees incurred by the attorneys on appeal, we remand the case for further proceedings on that issue. *See* C.A.R. 39.5; *Camelot Invs., LLC v. LANDesign, LLC,* 973 P.2d 1279 (Colo.App.1999).

**\*6** The judgment is affirmed, and the case is remanded to the trial court to determine and award the reasonable attorney fees the attorneys incurred in defending against this appeal.

Judge FURMAN and Justice ROVIRA [FN\*] concur.

> FN\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2005.

--- P.3d ----, 2006 WL 2435031 (Colo.App.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.