IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No.:  06-cv-01726-LTB-CBS

INTERNET ARCHIVE, a California 501(c)(3) non-profit organization,

    Plaintiff and Counterclaim Defendant,

v.

SUZANNE SHELL, a Colorado resident,

    Defendant and Counterclaimant.

## INTERNET ARCHIVE'S REPLY TO SUZANNE SHELL'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

### Introduction

Suzanne Shell's Opposition to Internet Archive's Motion to Dismiss her Counterclaims presents little that is actually in opposition to the arguments Internet Archive's Motion raises, nor does it address the myriad pleading defects Internet Archive identifies.  Instead, Ms. Shell spends fully nine pages arguing the merits of her copyright counterclaim – the sole counterclaim Internet Archive did not move to dismiss.  With respect to Ms. Shell's counterclaims for conversion/civil theft, breach of contract and racketeering, the claims Internet Archive is actually seeking to have dismissed, Ms. Shell's Opposition literally fails to address any of the substantive legal deficiencies raised in Internet Archive's Motion to Dismiss.

Specifically, Ms. Shell fails to how she has pled that Internet Archive committed any act of dominion or ownership over her website content – an element required to state a claim for conversion.  Nor does she establish that her conversion and civil theft claims are qualitatively distinct from her copyright claims and thus not preempted by federal Copyright law.  Similarly,

Ms. Shell does not explain how her Counterclaims can survive Internet Archive's Motion to Dismiss because she cannot explain how an automatic web crawling program could ever accept the terms of the Copyright Notice/Self-executing Security Agreement buried on her website. Without first adequately pleading the formation of a binding agreement between herself and the Internet Archive, Ms. Shell cannot move on the to the next step to argue that she has plead breach of that never-formed contract. Moreover, and just as with her conversion claim, Ms. Shell's breach of contract claim is nothing more than a restatement of her copyright claims, and is thus preempted by the Copyright Act. Finally, Ms. Shell has failed to plead that Internet Archive engaged in any RICO predicate act or the existence of a racketeering enterprise, and thus has not stated a claim for a violation of RICO.

It is against the background of these substantial and fatal pleading flaws that Ms. Shell asks to be excused because she is *pro se*. Indeed, she appears to assert that the Court must "construe the pleadings and papers of a *pro se* litigant liberally." [Shell's Opposition to Internet Archive's Motion to Dismiss ("Opposition"), ¶ 1]. While courts may make some allowances for *pro se* litigants, the 10th Circuit has "repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)) (upholding dismissal of *pro se* litigant's appeal from the dismissal of his RICO complaint, because it consisted of mere conclusory allegations with no citations to the record or legal authority).

Accordingly, because Ms. Shell's claims are facially deficient—under the standard applicable to *all* parties—Internet Archive respectfully requests that Ms. Shell's Second, Third and Fourth Counterclaims be dismissed with prejudice.

**Argument**

I. **Ms. Shell's Conversion and Civil Theft Claims Are Not Properly Pled and Are Preempted.**

Ms. Shell's Opposition fails to address any of the specific, on-point legal authority cited by Internet Archive regarding her conversion claim and does not address Internet Archive's arguments about her deficient civil theft claim at all. Instead, Ms. Shell relies upon legally inapposite authority from other jurisdictions to demonstrate that the content of her website is "tangible."[1] However, Internet Archive does not dispute that it is *possible* to fix a digital work in a tangible medium. But that, of course, is not the point and whether or not the profane.justice.org website is tangible or intangible, in and of itself, does not answer the question of whether or not Ms. Shell has adequately pled a claim for conversion. Rather, the issue is whether Internet Archive committed an act of "unauthorized dominion or ownership" over property belonging to Ms. Shell, and whether Ms. Shell properly demanded return of that property.

Simply saying that Internet Archive "exercised dominion and control" over her website does not magically make it so, without further factual allegations. [Opposition, ¶ 58]. Far from making the needed additional statements, Ms. Shell actually directly contradicts her own allegation when she claimed that her website "continued to be published by [Ms. Shell] and

---

[1] Shell cites to *American Multi-Cinema, Inc. v. City of Westminster*, 910 P.2d 64, 65 (Colo. App. 1995), a state court decision regarding the propriety of a use tax on copyright films for the non-controversial proposition that a copyright creates "an incorporeal property right that exists separately and independently from the tangible property, such as a book, a magazine or a film, upon which the copyrighted material appears." [Opposition, ¶ 59]. However, *City of Westminster* has nothing whatsoever to do with conversion. Shell also cites to *May Broadcasting Co. v. Boehm*, 241 Neb. 660 (Neb. 1993), which concerns whether a satellite transmission should be subject to a use tax, but has nothing to do with either copyright law, conversion or preemption. Rounding out her authority on this issue, Shell cites to an even less relevant Tax Court decision. *See Northwest Corp. v. Commissioner*, 111 T.C. 105 (U.S.T.C. 1998) (consolidated cases involving determinations by respondent of deficiencies in petitioner's Federal income taxes. In sum, Shell's wildly off-point citations do not address, much less refute, the controlling authority cited and discussed by Internet Archive in its opening papers.

accessible on the Internet by going to www.profane-justice.org" after Internet Archive's purported copying. [Counterclaim, ¶ 68(e)].

It is precisely this sort of fact—that making a *copy* of something cannot in an of itself deprive the owner of the original—that lead the Supreme Court to caution that claims for copyright infringement do not easily translate into claims for conversion. *Dowling v. United States*, 473 U.S. 207, 217 (1985) (holding that creating a bootlegged record did not amount to conversion of copyrighted material).

Moreover, Ms. Shell has not addressed Tenth Circuit authority that requires a demand for the return of the physical property that was taken coupled with a refusal of that demand in order to properly state a claim for conversion. *Glenn Arms Associates v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984). Instead, Ms. Shell reiterates that Internet Archive refused her demands for *payment for use* of the property allegedly taken, which is naturally not the same as demanding return of the property itself. In fact, when the Internet Archive learned that Ms. Shell did not wish Internet Archive to maintain her website in its digital library, it immediately removed the profane-justice.org website from the Wayback Machine. [Complaint, ¶¶ 11-13]. Accordingly, although there was nothing to return: Internet Archive had relinquished the copy housed in its Wayback Machine.

Further, Ms. Shell attempts to confront Internet Archive's preemption argument by asserting that her conversion claim "includes elements beyond copying" because it involves the unauthorized "taking of a material object."[2] [Opposition, ¶ 59]. However, as fully explained in Internet Archive's moving papers, this simply does not satisfy the two pronged preemption

---

[2] Indeed, Shell's mere demand for payment for the Internet Archive evidences that this claim is also preempted by the Copyright Act. Shell is seeking compensation for an alleged infringement of her copyright. Thus, as set forth in Internet Archive's opening papers, Shell's claim for conversion is simply a re-styled version of her copyright claim that seeks to enforce rights qualitatively indistinguishable from those provided by the Copyright Act. *See Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985).

analysis required by the Tenth Circuit. Specifically, Ms. Shell's website "falls within the subject matter of copyright protection" and because she is seeking recompense for the same exact conduct at issue in her copyright infringement claims, i.e., that Internet Archive "entered the computer … and copied [her] entire website," there is no qualitative difference between the two claims. Accordingly, Ms. Shell's conversion claim, even if properly stated, is preempted. *See Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985) (holding conversion claim was preempted by the Copyright Act).

**II.    Ms. Shell's Breach of Contract Claim is Not Properly Pled and Is Preempted.**

   **A.    Ms. Shell failed to allege the existence of a binding contract.**

Ms. Shell's Opposition fails to address the incurable deficiencies in the pleading of her breach of contract claim, or the arguments raised in Internet Archive's opening papers. Instead, Ms. Shell merely restates the elements of the claim, and baldly asserts that "browsewrap agreements like this have been found to be binding contracts,"[3] citing to *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2nd Cir. 2004), a case that Internet Archive already sufficiently distinguished from the circumstances here. [Compare Motion to Dismiss at p. 4 *with* Opposition at ¶ 61]. Ms. Shell argues that Internet Archive entered into an agreement with her by "performance of the requested act," *i.e.*, by copying and distributing the content of her website. [Opposition, ¶ 68]. However, Ms. Shell herself admits elsewhere in her papers that it is "absurd" to assert that "a web crawler accepted the contract published on her web site." [Opposition, ¶ 8]. Internet Archive agrees.

Ms. Shell's argument presupposes that someone – some *person* – read and understood her request, and then chose to perform an act that would manifest assent. Yet, even she admits that this

---

[3]    Shell also fails to address *Specht v. Netscape Communications*, 306 F.3d 17, 29-30 (2nd Cir. 2002), the authority cited by Internet Archive that draws the opposite conclusion. [Compare Motion to Dismiss at p. 15 *with* Opposition at pp. 14-15].

did not happen. Accordingly, Internet Archive never entered into any agreement with Ms. Shell and her breach of contract claim fails as a matter of law.

      **B.     Ms. Shell's breach of contract claim is preempted by the Copyright Act.**

Ms. Shell also fails to advance a single argument to counter that presented by Internet Archive showing that her contract claim is preempted by the Copyright Act. Ms. Shell relies instead on a litany of inapplicable case law without any discussion of her Counterclaims. For example, Ms. Shell relies on *Bowers v. Baystate Technologies, Inc.*, 320 F.3d 1317 (Fed. Cir. 2003), which held that a breach contract claim was not preempted. That case is easily distinguishable, however, and its analysis actually serves to support Internet Archive's position, not that of Ms. Shell. In *Baystate Technologies*, the Federal Circuit explained that "not every extra element of a state law claim will establish a qualitative variance between the rights protected by the federal copyright law and those protected by state law." *Id.* at 1324 (internal citations omitted). The court went on to note that the "mutual assent and consideration required by a contract claim render that claim qualitatively different from copyright infringement." *Id*. at 1325 (internal citations omitted). The inescapable conclusion is that if there is no mutual assent—indeed can be no mutual assent—as here, that extra element cannot and does not exist.

A Copyright Notice cannot transform into a binding agreement without mutual assent, so the violation of the purported agreement is simply an alleged infringement of her copyright. Indeed, Ms. Shell's own purported "Self-executing contract/Security Agreement" equates breach of that contract with copyright infringement. [*See* Motion to Dismiss, pp. 16-17; *see also* Counterclaim, ¶ 87]. Accordingly, because protection against "copying" is the exact same right that she would be granted under the Copyright Act, Ms. Shell's breach of contract claim is preempted and must be dismissed as a matter of law.

### C. Ms. Shell's racketeering claim is not properly pled and must be dismissed.

Ms. Shell's Opposition demonstrates that she cannot plead a violation of the RICO statute. The Tenth Circuit has admonished litigants seeking to bring RICO claims that the technical requirements of the statute must be strictly adhered to, given the difficulties courts have faced in interpreting the provisions of RICO and the exposure to treble damages faced by defendants. *Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1306, FN5 (D. Colo. 1984) (granting motion to dismiss RICO claims for failure to plead the elements of the charge with adequate particularity). Indeed, in order to place both the court and the defendant on clear notice of the elements constituting a RICO charge, those elements must be pled with the same level of particularity as are fraud claims under Fed.R.Civ.P. 9(b). *Id*. ("A charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud.") Ms. Shell's counterclaims fall far short of meeting this standard, her Opposition does nothing to help, and her RICO counterclaim should be dismissed.

Notably, Ms. Shell did not address Internet Archive's arguments in her Opposition because facts do not exist to fix the fatal defects in her pleading. Even the *Bledsoe* case on which she relies in her Opposition plainly explains that the primary intent of Congress in enacting the RICO statute was "to prevent organized crime from infiltrating businesses and other legitimate economic entities." *United States v. Bledsoe, et al.*, 674 F.2d 647, 662 (8th Cir. 1981) citing *United States v. Turkette*, 452 U.S. 576 (1981). Given this intent, asserting a RICO claim against a non-profit digital library for the very business it was created to conduct is a questionable endeavor. How Ms. Shell has gone about it here shows just how dangerous specious RICO claims can be. The Tenth Circuit has expressly cautioned that a RICO defendant "needs to be protected from unscrupulous claimants lured by the prospect of treble damages" and, further, that irresponsible and inadequately considered RICO allegations "should be met

with severe sanctions pursuant to Rule 11." *Saine v. A.I.A., Inc.*, 582 F. Supp. at 1306 fn 5. *See also Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D.Colo. 1995).

Ms. Shell's Opposition fails to meaningfully respond to Internet Archive's arguments. Specifically, Ms. Shell has not demonstrated that Internet Archive has committed any of the underlying predicate criminal acts required by RICO or forth facts that could amount to an allegation of the existence of a racketeering enterprise, as required by the RICO statute. Moreover, Ms. Shell fails to meet the heightened pleading requirements of RICO as explained above, and for her underlying fraud claims pursuant to Fed.R.Civ.P. 9(b).

### 1. Ms. Shell has failed to properly plead a violation of any RICO "predicate act."

In her Counterclaims, Ms. Shell accuses Internet Archive of mail and/or wire fraud, criminal copyright infringement and theft under Colorado state law. Internet Archive's Motion to Dismiss shows that she has not adequately pled a single one of these crimes, and her Opposition does little more than parrot statutory language and case law, without referencing a single specific fact from her pleading.

Specifically, Ms. Shell spells out that her fraud claim rests on the exact same conduct that all of her others rest on: Internet Archive allegedly copying the content on her website and subsequently allowing public access to that content, precisely as Ms. Shell had done herself by publishing her website on the Internet. It defies reason, however, to imagine how such conduct could amount to fraud. Indeed, Ms. Shell's herself fails to identify any specific fraudulent misrepresentation to suggest that it was fraud. Accordingly, Ms. Shell's Opposition does nothing to show that her RICO claim alleged fraud with the particularity required by Rule 9(b), so her mail and wire fraud claims fail as a matter of law. *See* Fed. R. Civ. P. 9(b) (requiring a pleader of fraud to detail with particularity each act of fraud, plus the role of each defendant in each scheme); *see also Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 990 (10th Cir. 1992) (quotation

omitted) (upholding district court's dismissal of plaintiff's RICO claim for failure to plead predicate act mail and wire fraud with particularity.)

Further, although Internet Archive cites to authority that effectively guts Ms. Shell's claim that Internet Archive has engaged in criminal copyright infringement,[4] Ms. Shell nonetheless restates the statutory language. Ms. Shell states that such conduct is established by her "allegation that Internet Archive the reproduced or distributed, [sic.] including by electronic means, during any 180-day period, of 1 or more copies of her copyrighted works, which have a total retail value of more than $1,000." [Opposition, ¶ 75]. Ms. Shell is simply mistaken. Courts have held, and Congress has stated, that copying must be "undertaken to make money" in order to be considered criminal. *United States v. La Macchia*, 871 F. Supp. 535, 540 (D. Mass. 1994). Ms. Shell has not alleged, nor can she, that Internet Archive undertook any copying of her website for the purpose of making money. Her criminal copyright infringement claim thus fails.

Finally, Ms. Shell's reliance on theft as a predicate act is similarly unsuccessful. Ms. Shell failed to plead, and her Opposition fails to address, that Internet Archive ever intended to "deprive [Ms. Shell] permanently of the use or benefit of a thing of value" because she admits that she was never deprived of the use or benefit of her website. [Counterclaim, ¶ 75].

Accordingly, Ms. Shell has not adequately pled a single predicate act upon which to base her RICO claim. It should therefore be dismissed as a matter of law.

---

[4] And to the extent that Shell's counterclaims also implicate government entities as part alleged "enterprise," i.e., the Library of Congress and the Smithsonian, the criminal copyright infringement action fails on jurisdictional grounds. While Congress has provided that a work protected by the Copyright laws can be "infringed by the United States," the exclusive jurisdiction in which such a claim may be brought is the Federal Court of Claims. 28 U.S.C. 1498(b) § (1994). Accordingly, in the extremely unlikely event that a copyright action does exist, this Court does not have jurisdiction to hear it.

**2.     Ms. Shell's RICO claim must be dismissed because she has failed to properly allege the existence of a racketeering enterprise.**

Ms. Shell's Opposition is noticeably void of Tenth Circuit authority on RICO. Thus, while Internet Archive has clearly set forth the standards that this Court must follow in making its determinations, Ms. Shell has failed to address any of them. To be clear, Ms. Shell must plead that (*i*) there is an ongoing organization with a decision making framework or mechanism for controlling the group," (*ii*) "that various associates function as a continuing unit," and (*iii*) that the enterprise separate and apart from the pattern of racketeering activity." *Kearney v. Dimanna*, 2006 WL 2501414, *2 (10th Cir. August 30, 2006).

Indeed, outside of her litany of out-of-Circuit legal citations, Ms. Shell makes only three factual assertions regarding the existence of a racketeering enterprise, as follows: (*i*) that the enterprise, consisting of Internet Archive and its employees, Alexa Internet, the Library of Congress and the Smithsonian Institute "possesses an administrative hierarchy or command structure," (*ii*) that because the Defendant persons named, *i.e.*, Internet Archive, Brewster Kahle, Rick Prelinger and Kathleen Burch are not the same as the Enterprise, listed above, the enterprise is distinct from the defendant persons, and (*iii*) that because Internet Archive provides technology whereby copyright owners can voluntarily donate copies of their works to the digital library that is different from the mechanism that is used to "illegally acquire intellectual properties," the enterprise is separate and distinct from the racketeering activity.[5]

Taking each in turn, it is clear that Ms. Shell has fallen far short of pleading the existence of a racketeering enterprise. *First*, Ms. Shell's claim that the enterprise possesses a command structure is vague and conclusory and does not meet the high pleading standards of RICO. *Saine v. A.I.A., Inc.*, 582 F. Supp. at 1306, FN5. And besides accusing Alexa Internet, the Library of

---

[5] As an aside, Internet Archive feels obligated to point out that Shell's characterization of its technology is wildly inaccurate, and in some instances completely false.

Congress and the Smithsonian Institute of being *part* of the Enterprise, Ms. Shell's counterclaims and opposition do no more than contend that these entities collaborated with or donated to Internet Archive.  [Counterclaim, ¶¶ 95, 99].  She fails to explain any "mechanism for controlling the group" by which decisions are made and carried out, as is required by the on-point case law cited by Internet Archive.  [*See* Motion to Dismiss p. 23]; *see also Kearney,* 2006 WL 2501414 at *2.  Who does she contend issues commands?  And who carries them out?  Ms. Shell has not, because she cannot, plead the existence of a chain of command among these entities.  Accordingly, Ms. Shell's Opposition does not show that she has pled the first requirement of a racketeering enterprise.

*Second*, Ms. Shell's assertion that the Defendant person named is distinct from the enterprise, is similarly unhelpful and unavailing.  While Internet Archive agrees that Ms. Shell has listed a number of entities that are indeed "distinct" from the Archive and its individual board members, Ms. Shell has not shown how, if at all, those "distinct" entities play any role whatsoever in the purported enterprise.[6]  Indeed, all of her factual allegations relate solely to Internet Archive to such an extent that it is clear that this is the only entity she views as participating in the purported racketeering activities.  This claim, to the extent it is even a relevant consideration in the 10th Circuit, also fails to establish the existence of a racketeering enterprise.

Similarly, her third claim that the distinction between the "legal" and "illegal" technologies used by Internet Archive serve to demonstrate an enterprise that is "separate" from the racketeering enterprise, also misses the point of the "separateness" requirement.  What this

---

[6] It should be noted that Shell also asserts that Internet Archive, Brewster Kahle, Rick Prelinger and Kathleen [Burch] "play <u>some</u> part in directing the enterprise's affairs" (emphasis in the original).  However, it is unclear whether this is an attempt to plead fraud with particularity, or to establish their role in the purported enterprise.  Either way, this assertion is so vague as to be virtually meaningless.

requirement goes to is the legal distinction between different entities – not the legal vs. illegal activities of the same entity. Ms. Shell's allegations do not sufficiently differentiate between the Internet Archive's activities from the purported racketeering activity of the enterprise. *See Saine v. A.I.A., Inc.*, 582 F. Supp. at 1306. The allegation that the "association in fact" between Internet Archive and the other various entities Ms. Shell has named constitutes a racketeering enterprise must therefore be dismissed.

## Conclusion

For the foregoing reasons, Ms. Shell's Counterclaims for civil theft / conversion, breach of contract, and racketeering against Internet Archive should be dismissed with prejudice.

Respectfully submitted,

Date:  December 26, 2006              s/  Kenneth B. Wilson
                                                          KENNETH B. WILSON
                                                          STEFANI E. SHANBERG
                                                          MICHAEL H. RUBIN
                                                          LILA I. BAILEY
                                                          PERKINS COIE LLP
                                                          4 Embarcadero Center, Suite 2400
                                                          San Francisco, California  94111
                                                          Telephone:    (415) 344-7000
                                                          Facsimile:     (415) 344-7050
                                                          Email:           kwilson@pekrinscoie.com

                                                          Attorneys for Plaintiff and Counterclaim-Defendant
                                                          INTERNET ARCHIVE

CERTIFICATE OF SERVICE

   I hereby certify that on December 26, 2006 I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system and certify that I have served the foregoing on the following nonparticipating parties via U.S. Mail:

**Suzanne Ms. Shell**
14053 Eastonville Rd.
Elbert, CO 80106

              s/  Kenneth B. Wilson
              KENNETH B. WILSON
              STEFANI E. SHANBERG
              MICHAEL H. RUBIN
              LILA I. BAILEY
              PERKINS COIE LLP
              4 Embarcadero Center, Suite 2400
              San Francisco, California  94111
              Telephone: (415) 344-7000
              Facsimile: (415) 344-7050
              Email:  kwilson@pekrinscoie.com

              Attorneys for Plaintiff and Counterclaim-Defendant
              INTERNET ARCHIVE