**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Lewis T. Babcock, Chief Judge**

Civil Action No. 06-cv-01726-LTB-CBS

INTERNET ARCHIVE,

       Plaintiff and Counterclaim Defendant,

v.

SUZANNE SHELL,

       Defendant and Counterclaimant,

v.

BREWSTER KAHLE,
RICK PRELINGER, and
KATHLEEN BURKE

       Third Party Defendants.

---

**Order**

---

       Plaintiff and Counterclaim Defendant Internet Archive moves to dismiss counterclaims by Defendant and Counterclaimant Suzanne Shell ("Shell") for conversion, civil theft, breach of contract and violations of the Racketeering Influence and Corrupt Organizations act ("RICO"), 18 U.S.C. § 1961, *et. seq.,* and the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-101 *et seq.,* involving Internet Archive's use of an automatic web browser to reproduce the contents of Shell's website. For the reasons discussed below Internet Archive's motion is GRANTED, in part and DENIED, in part.

## I.  BACKGROUND

Internet Archive is a San Francisco, California non-profit organization devoted to preserving a comprehensive record of all websites, documents and other information contained on the internet as a resource for future generations. It employs a technology called the Wayback machine to systematically browse the entire world wide web, reproducing content from websites and placing them in an internet archive. Neither the Wayback Machine nor Internet Archive actively seek the permission of website owners prior to reproducing website content, but according to Internet Archive, the Internet Archive website explains how website owners can remove material from the archive. Additionally, Internet Archive removes material on request from website owners.

Shell, a resident of El Paso County, Colorado, owns a website, www.profane-justice.org ("Profane Justice,") devoted to providing information, services and other advocacy on behalf of individuals accused of child abuse or neglect. Shell's website is registered with the U.S. Copyright Office. Shell's website contains a Copyright Notice, stating that

> "IF YOU COPY OR DISTRIBUTE ANYTHING ON THIS SITE – YOU ARE ENTERING INTO A CONTRACT. READ THE CONTRACT BEFORE YOU COPY OR DISTRIBUTE. YOUR ACT OF COPYING AND/OR DISTRIBUTING OBJECTIVELY AND EXPRESSLY INDICATES YOUR AGREEMENT TO AND ACCEPTANCE OF THE FOLLOWING TERMS:"

These terms include charging the user $5,000 for each individual page copied "in advance of printing," granting Shell a perfected security interest of $250,000 "per each occurrence of unauthorized use" of the website in all of the user's land, assets and personal property, the user agreeing to pay "$50,000 per each occurrence of failure to pre-pay" for use of the website, "plus costs and triple damages," and agreeing to waive numerous defenses in any claims by Shell against

2

the user.

This Copyright Notice is accessible through an icon located on Shell's website. According to Internet Archive, it does not pop up as a separate screen that a user must "click-through" in order to access web material and does not require users to agree to these terms before accessing material. Internet Archive states that the terms of this agreement, including the claim that copying website material creates a binding contract, appears to the user only after he has copied material. The record is not clear on what statement actually appears on the opening screen of Shell's website or where precisely this statement is located on the website. The record also is not clear on how a user, after having copied website materials, will be informed of the existence or terms of the Copyright Notice.

This dispute arose when Shell discovered that the Wayback machine had reproduced and archived the contents of her website. According to Shell, the Wayback machine contacted and reproduced the contents of her web site approximately 87 times between May of 1999 and October of 2004, and displayed her entire website to the public daily during that time period. On December 12, 2005, Shell emailed Internet Archive requesting that her website contents be removed from the Wayback machine. Internet Archive did so. Shell also demanded payment of $100,000 from Internet Archive and threatened to sue if Internet Archive  failed to pay. Internet Archive, anticipating a lawsuit, filed a Declaratory Judgment Action in the U.S. District Court of the Northern District of California on January 20, 2006 seeking a judicial determination that Internet Archive did not violate Shell's copyright, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

Shell filed her Answer February 10, 2006, and also filed Counterclaims against Internet Archive for copyright infringement, conversion, civil theft, breach of contract and racketeering under RICO and COCCA. For the racketeering claims only, Shell added as Third Party defendants Brewster Kale, Rick Prelinger and Kathleen Burke, members of the Board of Directors of Internet Archive. The parties stipulated to transfer the case to the District of Colorado, and the case was re-filed in this court on August 31, 2006.

On November 16, 2006, Internet Archive moved under Fed. R. Civ. P. 12(b)(6) to dismiss Shell's counterclaims of conversion, civil theft, breach of contract and RICO for failure to state a claim. Internet Archive's motion applies only to these claims as they apply to Internet Archive, not to the Third Party defendants.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.*  In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

Fed. R. Civ. P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed. R. Civ. P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which sets forth the requirements for pleading a claim in federal court.

4

Federal R. Civ. P 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 335 U.S. at 47. A plaintiff is not required to state precisely each element of the claim. *See* 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154-59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

Allegations of fraud or mistake are governed by the stricter requirements of Fed. R. Civ. P. 9(b), which requires that "the circumstances of fraud or mistake shall be stated with particularity." As I discuss in more detail below, this heightened pleading requirement applies in part to Shell's RICO claims.

Shell argues additionally that, since she is proceeding *pro se*, I must construe her pleadings even more liberally than I would typically in response to a Rule 12(b)(6) motion. It is true that "a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir 1991). "If the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* At the same time, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005). Ultimately, despite some

allowance for technical errors, "pro se parties follow the same rules of procedure that govern other litigants." *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  DISCUSSION

Internet Archive moves to dismiss Shell's claims of conversion, civil theft, breach of contract, and RICO for failure to state a claim.

A.      Conversion

1.      Failure to State a Claim

Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Glenn Arms Associates v. Century Mortg. & Inv. Corp.,* 680 P.2d 1315, 1317 (Colo. Ct. App. 1984).  "Predicates to a successful claim for conversion are the owner's demand for the return of the property, and the controlling party's refusal to return it." *Id.*  Even if Shell's demand that Internet Archive remove her website from the Wayback machine is a demand for the return of property, it is undisputed that Internet Archive complied with her request. Shell's claim therefore lacks an essential element of a claim for conversion, and necessarily fails.

Additionally, Shell has failed to allege facts showing that Internet Archive exercised dominion or control over her website, since Shell's complaint states explicitly that she continued to own and operate the website while it was archived on the Wayback machine. Shell identifies no authority supporting the notion that copying documents is by itself enough of a deprivation of use to support conversion.

Conversely, numerous circuits have determined that it is not. The Seventh Circuit concluded that "The possession of copies of documents – as opposed to documents themselves –

6

does not amount to an interference with the owner's property sufficient to constitute conversion." *FMC Corp. v. Capital Cities/ABC, Inc.,* 915 F.2d 300, 303 (7th Cir. 1990). The Second Circuit has similarly stated that "Merely removing one of a number of copies of a manuscript (with or without permission) for a short time, copying parts of it, and returning it undamaged, constitutes far too insubstantial an interference with property rights to demonstrate conversion." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 201 (2nd Cir. 1983), *rev'd on other grounds,* 467 U.S. 539, 105 S. Ct. 2218, 85 L.Ed.2d 588 (1985). Likewise, the D.C. Circuit Court of Appeals, declared that a defendant who removes documents "from the files at night," photocopies them and returns them "to the files undamaged before office operations resumed in the morning" has not committed a sufficiently substantial deprivation of use to represent conversion. *Pearson v. Dodd,* 410 F.2d 701, 707 (D.C. Cir. 1969).

Applying this law, I conclude that Shell has failed to state a claim for conversion.

2.    Copyright Act Preemption

Internet Archive contends that the Copyright Act preempts even a properly plead claim for conversion. Under section 301 of the Copyright Act, state law claims are preempted if "(1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of the federal copyright as set out in 17 U.S.C. § 106." *Ehat v. Tanner,* 780 F.2d 876, 878 (10th Cir. 1985). This second element is satisfied when "a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like." *Id.* (quoting *Harper & Row,* 723 F.2d at 200.)  "If a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of

7

action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 847 (10th Cir. 1993).

The parties here do not dispute that Shell's website is within the "subject matter of copyright." The only question is whether the conversion claim contains an element not contained within the Copyright Act itself.

Internet Archive asserts that Shell's conversion claim lacks an extra element because it is based on the copying and reproduction of her website, the precise same conduct underlying her copyright claim. However, preemption analysis "compares the elements of the causes of action, not the facts pled to prove them." *Harold Stores, Inc. v. Dillard Dept. Stores, Inc.* 82 F.3d 1533, 1543 (10th Cir. 1996). As discussed above, a claim for conversion requires actual dominion over the property of another, a demand by the owner for return of the property, and refusal of the demand by the other party. Without question, these elements are not present in a claim for copyright infringement. Accordingly, the Copyright Act would not preempt a properly pled claim for conversion. This conclusion is reinforced by *Ehat*, where the Tenth Circuit observed that the Copyright Act preempted plaintiff's claim because the plaintiff did not "allege a state law claim of conversion to recover for physical deprivation" of his property, but only "sought to recover for damage flowing from (the) reproduction and distribution" of the property. *Ehat,* 780 F.2d at 878. The fact that conversion is not preempted is of little help to Shell, however, because she has not pled the elements of conversion. Accordingly, her claim for conversion fails.

B.    Civil Theft

Shell claims that Internet Archive's reproduction of her website constitutes civil theft,

entitling her to triple damages, attorney fees and costs pursuant to Colo. Rev. Stat. § 18-4-405.

While Colorado statutes do not define "civil theft," Colorado courts only grant triple damages for

civil theft under § 18-4-405 when a plaintiff has proven conduct that satisfies the statutory

definition of criminal theft under Colo. Rev. Stat. § 18-4-401. *Itin v. Ungar,* 17 P.3d 129, 133

(Colo. 2000).

In Colorado a person commits theft when he:

> "[K]nowingly obtains or exercises control over anything of value of
> another without authorization, or by threat or deception, and:
> (a) Intends to deprive the other person permanently of the use or benefit
> of the thing of value; or (b) Knowingly uses, conceals or abandons the
> thing of value in such manner as to deprive the other person permanently
> of its use or benefit; or (c) Uses, conceals, or abandons the thing of value
> intending that such use, concealment or abandonment will deprive the
> other person permanently of its use and benefit; or (d) Demands any
> consideration to which he is not legally entitled as a condition of
> restoring the thing of value to the other person."

Colo. Rev. Stat. § 18-4-401

Shell's complaint does not allege that Internet Archive ever deprived her permanently of

the use of her property. On the contrary, her complaint states that she continued to operate her

website during the period the copies of her website were stored in the WayBack machine. Shell

has also not alleged that Internet Archive ever demanded consideration from Shell in exchange for

removing her website from the Wayback machine. Shell has failed to allege the essential elements

of a claim for civil theft, so this claim fails.

Internet Archive argues as well that Shell's claim for theft is pre-empted by the Copyright Act. However, as explained above, the Copyright Act only preempts a claim for theft if theft has no elements separate from a claim for copyright infringement. *Gates,* 9 F.3d at 847. Here, theft necessarily involves the permanent deprivation of the owner's property, a claim that is not part of copyright infringement.  The Copyright Act would not pre-empt a properly pled claim for theft.

C.    Breach of Contract

1.    Failure to State a Claim

Shell contends that Internet Archive formed a contract with her when it reproduced her website contents, and then breached this contract when it failed to pay her the prescribed fees. Internet Archive argues that it never entered into a contract with Shell. It is undisputed that the parties did not form an explicit contract. Rather, Shell states that Internet Archive entered a contract with her by its conduct in reproducing her web materials.

While the parties do not address whether the putative contract is governed by the UCC or the common law, under both bodies of law parties' conduct may constitute a meeting of the minds sufficient to form a contract. The Colorado UCC looks for "mutuality of assent as manifested by the conduct of the parties" in determining intent to form a contract. *Cargill v. Stafford,* 553 F.2d 1222, 1225 (10th Cir. 1977). Similarly, under the common law agreement to the essential terms of a contract "may be inferred from the conduct and declarations of the parties." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 888 (Colo. 1986).

Internet Archive argues that Shell fails to state a claim for breach of contract because it only learned of the terms of Shell's Copyright Notice after it copied the information, and also that Shell's complaint fails to state that a human being at Internet Archive (as opposed to its

10

automated web browser) was ever aware that this agreement existed.  Internet Archive cites to two Second Circuit cases that lend some support to its argument. In *Specht v. Netscape Communications Corp.,* 306 F.3d 17 (2nd Cir. 2002), the court found a website's terms of use unenforceable where a user had unimpeded access to the website contents and could only become aware of the terms of use by clicking on a separate icon located elsewhere on the website. *Id.* at 35. The court contrasted this kind of agreement to cases where the user had to affirmatively click "I agree" to the terms of use before viewing or copying website materials. *Id.* at 32-33. The Second Circuit elaborated this doctrine in *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 401-402 (2nd Cir. 2002), which considered a website where the terms of use were displayed only after each use, but where the same user made multiple contacts with the website. *Id.* at 401. The court reasoned that while the user might have been unaware of the terms of use the first time it accessed the website, it was certainly aware on all subsequent uses. *Id.*  Moreover, in *Verio* the user did not dispute his actual awareness of the terms of use, a factor critical to the Court's conclusion that the user was bound by the website's terms. *Id.* at 402.

Internet Archive argues that while its web browser accessed Shell's website multiple times, as in *Verio,* it was not in fact aware of the terms of use, and Shell has not alleged that it was. Absent such actual knowledge, Internet Archive contends, there cannot be a contract even within the broader doctrine of *Verio.*  The flaw in this argument is that it requires  factual determinations that are premature at this stage of the case. Shell's complaint states that an advisement of the contract "is published on every page" of the website. The factual record is silent on the specific location of the purported contract, how a user reaches it, and when a user becomes aware of its existence. While Internet Archive alleges that the terms of use do not appear until

after the website is reproduced, this allegation is contained in Internet Archive's motion to dismiss. For the purposes of Rule 12(b)(6), I examine the facts as stated in the pleadings, not the facts as stated in a motion to dismiss. The allegations in Shell's complaint are sufficient to put Internet Archive on notice of the nature of her claim, and satisfy the requirements of Rule 12(b)(6). *See Conley,* 335 U.S. at 47.

Similarly, while Internet Archive states that no human being from Internet Archive actually knew of the terms of use of Shell's website, Shell has alleged that Internet Archive expressly entered into a contract with Shell through her Copyright Notice, and that Internet Archive "possesses the capacity and authority to enter into contracts." Shell does not have to allege in her complaint every fact necessary to prove breach of contract. *See Conley,* 335 U.S. at 47. While Internet Archive may be correct that the absence of human consent to this contract dooms Shell's claims, Shell has not had the opportunity to develop a factual record on this point. Shell has alleged the existence of a contract, breach and damages, which is sufficient to make out a claim for breach of contract.

2.     Copyright Act Preemption

Additionally, Internet Archive argues that the Copyright Act preempts Shell's claim for breach of contract.  As stated above, the Copyright Act does not preempt a state law claim if the state law claim contains an element in addition to the rights protected by the Copyright Act, "copying, preparation of derivative works, performance, distribution or display." *Gates,* 9 F.3d at 847. A state cause of action containing such an extra element is "qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Id.* Also, as discussed above, I analyze the elements of the claim, and not the conduct

underlying the claim, to ascertain if a contract claim is "qualitatively different" from a claim under the Copyright Act. *Harold Stores,* 82 F.3d at 1543.

The Tenth Circuit has not addressed Copyright Act preemption of contract claims. Most circuits that have considered this issue have concluded that the Copyright Act does not, generally, preempt contract claims. *See Wrench, LLC v. Taco Bell Corp.,* 256 F.3d 446, 456-458 (6th Cir. 2001), *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir. 1996), *National Car Rental Rental System, Inc., v. Computer Associates International, Inc.*, 991 F.2d 426, 433 (8th Cir. 1993), *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir. 1990) and *Acorn Structures, Inc. v. Swantz,* 846 F.2d 923, 926 (4th Cir. 1988). These circuits have concluded that contracts that require payment for use of copyrighted material protect a right beyond the rights protected in Copyright Act, and so establish the extra element necessary to thwart preemption. For example, the Sixth Circuit in *Wrench* concluded that a contract claim is for "breach of an actual promise to pay" for the use of creative work. *Wrench,* 256 F.3d at 456. This right to receive payment places the contract claim outside of the scope of rights protected by copyright, since the "the right to be paid for the use of the work is not one of those rights (protected by the Copyright Act.)" *Id.* "The qualitative difference (in the contract claim) includes the requirement of proof of an enforceable promise and a breach thereof which requires, *inter alia,* proof of mutual assent and consideration, as well as proof of the value of the work and appellee's use thereof." *Id.*

Similarly, the Seventh Circuit in *ProCD* concluded that a contract creates rights outside of the rights protected by the Copyright Act because the Copyright Act binds the general public, creating "a right against the world," while contracts "generally affect only their parties; strangers may do as they please." *ProCD,* 86 F.3d at 1454. The Seventh Circuit described situations where

a contract constrains the rights of a user and extends the rights of a copyright holder far more than does the Copyright Act itself. *Id.* For example, when a customer rents a video under a contract to return the video in two days, the Copyright Act does not render the contract unenforceable and allow the customer to keep the video. *Id.*

The logic of these cases is persuasive here. Assuming a contract exists, Internet Archive has contracted for the use of Shell's material, and agreed to pay "$5,000 per printed page" for the website contents, and Internet Archive agreed not to use this material for commercial or financial purposes. Failure to meet these terms grants Shell a security interest in the user's assets and goods, as well as triple damages. These requirements and damages lie well beyond the protections Shell receives through the Copyright Act. Were Internet Archive to stumble across pages of Shell's website in the public domain, these contract terms would not apply, but Shell would still be protected in a more limited manner via the Copyright Act.

Internet Archive argues that the underlying breach Shell alleges is indistinguishable from her copyright infringement claim. However, as discussed above, it is the elements of a claim, not the conduct underlying the claim, that is the basis of a preemption analysis. *Harold Stores,* 82 F.3d at 1543. Internet Archive also argues that since there has been no offer and acceptance, no extra elements are present and the claim is preempted. Since I do not conclude that Shell has failed to state a claim for breach of contract, this argument is not a basis for preemption. Accordingly, the contract here potentially protects rights beyond those protected in the Copyright Act, and the Copyright Act does not preempt Shell's claim for breach of contract.

Finally, Internet Archive contends that the severe terms of this contract render it unconscionable under Colorado law. In Colorado, a finding of unconscionability requires

14

"evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party." *Davis v. M.L.G. Corp.,* 712 P.2d 985, 991 (Colo 1986). Internet Archive states only, in a footnote, that the alleged contract is "both procedurally and substantively unconscionable" but provides no additional argument as to Shell's unequal bargaining power, Internet Archive's absence of meaningful choice, or why these terms are overly favorable to Shell. At this stage of the case, absent further factual findings, I cannot conclude that this contract is unconscionable.

D.   Racketeering Under RICO and COCCA

1.   RICO

Internet Archive moves to dismiss Shell's claims under RICO, 18 U.S.C. §§ 1961(c) and (d). A claim for liability under § 1962(c) requires that plaintiff allege and prove four elements: (i) conduct by a person, (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *See U.S. v. Turkette,* 452 U.S. 576, 580, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). Section 1962(d) creates liability for conspiring to violate another section of RICO. Internet Archive alleges that Shell has failed to meet two essential predicates of a RICO claim: she has not sufficiently plead that Internet Archive engaged in any activity constituting a predicate act of racketeering, and she has not sufficiently plead the existence of an enterprise

a.   Predicate Acts

RICO identifies numerous federal violations that can serve as predicate acts of racketeering, including mail fraud, wire fraud, and criminal copyright infringement. 18 U.S.C. §

1961(1)(B). RICO also defines racketeering as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

Shell alleges mail fraud, wire fraud, criminal copyright infringement, and state law claims of theft and computer crime as RICO predicate offenses. These state law claims are not embraced in RICO's definition of predicate offenses. Also, Shell has not satisfied the elements of theft, which are the same as those for criminal theft. (See above).  Shell has not alleged any use of the mails in her complaint, a necessary element for mail fraud under 18 U.S.C. § 1341. Shell's remaining claims that may serve as RICO predicates are wire fraud under 18 U.S.C. § 1343 and criminal Copyright Infringement under 17 U.S.C. § 506.

A claim for wire fraud requires "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises," and (2) "that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." *Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir. 2006). Claims for wire fraud as a RICO predicate must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Id.*  Rule 9(b) requires a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* A plaintiff must also "identify the purpose" of the use of the wires within the fraudulent scheme. *Id.*  "When a plaintiff is dealing with more than one defendant, he or she is under a Rule 9(b) obligation to specify which defendant told which lie and under what circumstances." *Brooks v. Bank of Boulder,* 891 F. Supp. 1469, 1477 (D. Colo. 1995).

16

Shell's Second Amended Complaint states, in relation to wire fraud, that Internet Archive and the individual defendants' scheme to defraud consisted, essentially, of their actions in using the Wayback machine to reproduce and store Shell's website without her knowledge or permission. While Shell provides the dates on which the Wayback machine allegedly contacted her website, Shell does not provide the "time, place and contents" of any specific false representation, or who specifically made any false representation. Shell's complaint states only that "fraud and deceit arose from Internet Archive's silence where there was an affirmative legal and moral duty to seek permission from the copyright owner prior to acquiring copyrighted intellectual property" and that this silence constituted "willful and intentional fraud in order to avoid paying permission license fees or obtaining permission from the copyright owners." (Answer and Counterclaim, ¶ 112 (a).)  Shell's failure to allege any specific false or fraudulent statement renders her complaint insufficient to meet the heightened pleading requirement of Rule 9(b). Shell has failed to state a claim for wire fraud as a RICO predicate act.

A person commits criminal copyright infringement under 17 U.S.C. § 506(a)(1) if the person infringes a copyright

> "(A) for purposes of commercial advantage or private financial gain;
> (B) by the reproduction or distribution, including by electronic means,
> during any 180-day period, of 1 or more copies or phonorecords of 1
> or more copyrighted works, which have a total retail value of more than
> $1,000; or (C) by the distribution of a work being prepared for commercial
> distribution, by making it available on a computer network accessible to
>  members of the public, if such person knew or should have known that the
> work was intended for commercial distribution."

Internet Archive contends that Shell's claim for criminal copyright infringement fails because Internet Archive, as a non-profit organization, did not use the copyrighted material for

"commercial advantage or private financial gain." The Copyright Act defines financial gain as including "receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works." 17 U.S.C. § 101. Shell states in her complaint that Internet Archive  received pecuniary benefit from the material it copied from her website by "acquiring continuing grant awards, donations, unjust enrichment and the expectation of acquiring additional intellectual property."  This allegation, while disputed by Internet Archive, is sufficient to satisfy this element of criminal copyright infringement.

Additionally, Shell states in her complaint that Internet Archive infringed her copyright "by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or ore copyrighted works, which have a total retail value of more than $1,000," an alternate basis for asserting criminal copyright violation, under 17 U.S.C. § 506(a)(1)(B).  Internet Archive does not address this aspect of Shell's claim. I conclude that Shell has sufficiently plead a claim for criminal copyright infringement as a RICO predicate.

b.     Enterprise

Finally, Internet Archive argues that Shell has failed to properly assert the existence of a racketeering enterprise.  To claim enterprise liability, a plaintiff must allege (1) "an ongoing organization with a decision-making framework or mechanism for controlling the group," (2) "that various associates function as a continuing unit," and (3) "that the enterprise exists separate and apart from the pattern of racketeering activity." *U.S. v. Smith,* 413 F.3d 1253, 1266-1267 (10th Cir. 2005).  A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" and requires evidence "of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

18

*Seidl v. Greentree Mortg. Co.,* 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998) (quoting *Turkette,*

452 U.S. at 583.)

Shell's complaint fails to allege sufficiently the existence of an enterprise under RICO.

While Shell alleges that Internet Archive "collaborates" and relies on various donations from

Alexa Internet, the National Archives, the Library of Congress and the Smithsonian, she has not

alleged that these entities and Internet Archive function with a decision-making framework, have

a mechanism for making decisions or function as a continuing unit.

Absent the participation of the other entities, Shell's allegation of an enterprise rests on an

enterprise relationship between  Internet Archive the defendant and Internet Archive acting with

its directors as the enterprise. But it is well-established in the Tenth Circuit that "the defendant

person must be an entity distinct from the alleged enterprise." *Brannon v. Boatmen's First Nat.*

*Bank of Oklahoma,* 153 F.3d 1144, 1146 (10th Cir. 1998). Enterprise liability under RICO

"depends on showing that the defendant conducts or participates in the conduct of the enterprise's

affairs, not just its own affairs." *Id.* For Internet Archive to be liable under RICO, its liability must

be based on its association with an enterprise possessing "an existence and purpose distinct" from

itself. *Board of County Commissioners of San Juan County v. Liberty Group,* 965 F.2d 879, 885

(10th Cir. 1992). "A separate enterprise is not demonstrated by the mere showing that the

corporation committed a pattern of predicate acts in the conduct of its own business." *Id.*

In *Brannon,* the Tenth Circuit concluded that an enterprise could not consist of a parent

corporation and its subsidiary because these are not separate entities under RICO, and expressed

concern that such an interpretation would "allow the application of RICO in every fraud case

against a corporation." *Id.* at 1147. This logic is applicable here, where the only conduct Shell

alleges against these defendants is the actions of Internet Archive itself and their role as Internet Archive directors. If a corporation and its directors can constitute a RICO enterprise separate from the defendant corporation, then any corporation by definition can satisfy the definition of a RICO enterprise. The Tenth Circuit in *Brannon* rejected this expansion of RICO enterprise liability, and so do I.  Shell's allegations that Internet Archive and its Directors constitute an enterprise does not meet the threshold requirements of RICO, and Shell's RICO claim fails.

     2.       COCCA

Shell also makes a racketeering claim against Internet Archive under COCCA, alleging that Internet Archive engaged in a "pattern of racketeering activity" under Colo. Rev. Stat. § 18-17-104(3). Internet Archive's motion does not address Shell's COCCA claim, nor does Shell's response. Under COCCA, unlike RICO, Shell's state law claims are viable predicate offenses [see Colo. Rev. Stat § 18-17-103(5)(b)]. However, Colorado courts interpret COCCA to require the enterprise to be a separate entity from a COCCA individual defendant, relying in part on Tenth Circuit interpretations of RICO.  *See Ferris v. Bakery, Confectionery and Tobacco Union,* 867 P.2d 38, 46 (Colo. Ct. App. 1993) (citing *Liberty Group* for the proposition that "the enterprise and the person cannot be the same entity for purposes of a COCCA violation.")  Accordingly, Shell's COCCA claim, like her RICO claim, fails to sufficiently allege the existence of an enterprise, and her COCCA claim fails.

     It is so Ordered that Internet Archive's motion to dismiss counterclaims (docket # 20) is GRANTED, in part and DENIED, in part, as follows:

     1) Internet Archive's motion to dismiss Shell's counterclaim for conversion and civil theft (Second Cause of Action) is GRANTED,

2) Internet Archive's motion to dismiss Shell's counterclaim for breach of contract (Third

Cause of Action) is DENIED;

3) Internet Archive's motion to dismiss Shell's counterclaim for Racketeering under

RICO and COCCA (Fourth Cause of Action) is GRANTED.

DONE and ORDERED, this ___13th___ day of February, 2007 at Denver, Colorado.

      s/Lewis T. Babcock_____
United States District Chief Judge