# EXHIBIT C

Westlaw.

195 Fed.Appx. 717
195 Fed.Appx. 717, 2006 WL 2501414 (C.A.10 (Colo.)), RICO Bus.Disp.Guide 11,130
(Cite as: 195 Fed.Appx. 717)

Page 1

C

Briefs and Other Related Documents
Kearney v. DimannaC.A.10 (Colo.),2006.This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
James F. KEARNEY, Plaintiff-Appellee-Cross-Appellant,
v.
Vincent DIMANNA; Ken A. Overman; Mark Haney; Frank J. Vessa, Sr.; Anthony P. Iacovetta; Jimmy J. Gose; Thomas S. Lahey; James R. Smith; Kenneth C. Padgett; George A. Gray; Steven W. Panck; Paul M. Pazen; Jesus Quinones; Douglas Brader; Andrew A. Ramirez; David Neil, individually and as Director of the Police Protective Association of the City and County of Denver; Martin Vigil, individually and as Director of the Police Protective Association of the City and County of Denver; Jonathyn Priest; Amy Martin, M.D.; David J. Bruno; Bruno, Bruno & Colin, P.C.; Michael Stack, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; Bernardo Arabalo, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; John Wyckoff, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; Kirk Miller, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; Kenneth Chavez, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; Marco K. Vasquez; Michael Quinones; Thomas David Sanchez; David Abrams; Gerald R. Whitman; Timothy Leary; David Thomas; Steven Evans; William Mitchell, Defendants-Cross-Appellees,
andPolice Protective Association of the City and County of Denver, Defendant-Appellant-Cross-Appellee.
Nos. 04-1439, 04-1443.

Aug. 30, 2006.

**Background:** Private investigator brought action under Racketeer Influenced and Corrupt Organizations Act (RICO) and state law alleging that police officers, law firm, and police association filed defamation suit against him to punish him for accusing officers of covering up shooting. The United States District Court for the District of Colorado dismissed complaint and denied association's motion for sanctions. Investigator and association appealed.

**Holdings:** The Court of Appeals, David M. Ebel, Circuit Judge, held that:

(1) investigator failed to properly plead enterprise, and

(2) district court improperly evaluated motion for Rule 11 sanctions.

Affirmed in part, reversed in part, and remanded.
West Headnotes
[1] Racketeer Influenced and Corrupt Organizations 319H €—38

319H Racketeer Influenced and Corrupt Organizations
   319HI Federal Regulation
      319HI(A) In General
         319Hk33 Enterprise
            319Hk38 k. Separateness from Predicate Acts, Pattern, or Persons. Most Cited Cases
Private investigator alleging that police officers, law firm, and police association filed defamation suit against him to punish him for accusing officers of covering up shooting failed to properly plead enterprise, and thus failed to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO), where there was no indication that alleged enterprise had any existence or purpose outside of alleged malicious prosecution and intimidation of investigator to prevent him from continuing to expose supposed illegal activity and cover-up. 18 U.S.C.A. §§ 1961(4), 1962.

[2] Federal Civil Procedure 170A €—2830

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(E) Proceedings
         170Ak2830 k. Determination; Order. Most

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cited Cases
District court could not decline to impose Rule 11 sanctions following dismissal of plaintiff's federal law claims on ground that his pendent state law claims were meritorious, but instead was required to evaluate whether federal claims were frivolous without reference to state law claims, even if state law claims were at heart of his federal claims. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

*718 Michael Whelan, San Francisco, CA, Brice A. Tondre, Lakewood, CO, for Plaintiff-Appellee.
J. Andrew Nathan, Nathan, Bremer, Dumm & Myers, Denver, CO, Susan Prose, Jefferson County Attorney's Office, Golden, CO, for Defendants.

Before BRISCOE, McKAY, and EBEL, Circuit Judges.

### ORDER AND JUDGMENT[FN*]

FN* This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.DAVID M. EBEL, Circuit Judge.

**1 James Kearney, a private investigator, brought this civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, against thirty-four individual defendants, a law firm, and a non-profit corporation (collectively, "Defendants"). The district court granted motions by all Defendants to dismiss for failure to state a claim, but denied a motion by one Defendant for sanctions against Kearney. We affirm the dismissal of Kearney's claims but reverse and remand on the issue of sanctions.

### I. BACKGROUND[FN1]

FN1. Because the district court granted Defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6), we recite the facts as alleged in the complaint and assume for purposes of this appeal that they are true. See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1123 (10th Cir.2005).

**1 On September 29, 1999, a SWAT team from the Denver Police Department entered Ismael Mena's residence pursuant to a "no-knock" search warrant that mistakenly listed Mena's address instead of the "crack house" next door. During the raid, Mena was shot and killed. Although there was an initial cover-up, the fact that the SWAT team had raided the wrong house was anonymously leaked to the media and publicized in November 1999.

**1 An attorney for Mena's family hired Plaintiff Kearney, a former F.B.I. agent, to investigate the killing. Kearney investigated and concluded that Mena had been unarmed and that the SWAT team members had initially shot him solely because *719 they overreacted to the situation. Kearney further concluded that when the SWAT team members realized that they had raided the wrong house and nearly killed an unarmed man, they decided to cover up the truth: the SWAT team shot Mena again, killing him, then altered the crime scene to look as if Mena had been shooting at them. According to Kearney, the police department then engaged in a two-month cover-up of the true nature of Mena's death.

**1 Kearney attempted to convince both a special prosecutor and the F.B.I. of his conspiracy theory, but was essentially ignored. He therefore began to publicize his allegations during appearances on a Denver radio talk show. Defendants realized that Kearney posed a threat as a potential expert witness against them and began to discuss how to silence him. Eventually, the Police Protective Association of the City and County of Denver ("PPA") and its members conspired with attorney David Bruno and his law firm to intimidate Kearney by filing a defamation lawsuit against Kearney, the talk show host, and the radio station. The PPA funded the lawsuit, Bruno represented the defamation plaintiffs, and many Defendants participated by giving false or misleading deposition testimony. After the radio station and talk show host agreed to settle the case, Defendants voluntarily dismissed the entire defamation lawsuit, including all claims against Kearney-who had refused to settle. Kearney nonetheless alleges that the lawsuit "injured him professionally, personally, and economically, and his [sic] business and business reputation."

**1 Kearney thereafter filed the present suit against Defendants, alleging RICO, RICO conspiracy, and state law claims. The district court granted

Defendants' motions to dismiss Kearney's RICO claims under Rule 12(b)(6) because: (1) he "failed to show that he has standing to pursue the RICO claims"; (2) his "definition of the criminal enterprise is not different from his allegations of a pattern of racketeering activity"; (3) he lacked "support for a valid claim of an effect on interstate commerce"; and (4) "[t]he conspiracy claim is insufficient because the ... RICO violations ... have not been adequately alleged." Because there were no remaining federal claims, the district court dismissed Kearney's state law claims under Rule 12(b)(1) for lack of jurisdiction.

**\*2** During the litigation, Defendant PPA sought Rule 11 sanctions against Kearney. The district court, however, declined to separate the federal claims from the unresolved state law claims for sanctions purposes and therefore denied the request. PPA appeals the denial of its motion for sanctions and Kearney cross-appeals the dismissal of his RICO and RICO conspiracy claims.

## II. DISCUSSION

### A. Dismissal of Kearney's RICO Claims

**\*2** As explained above, the district court dismissed Kearney's RICO and RICO conspiracy claims (together, "RICO claims") on numerous grounds. Because we agree that Kearney failed to plead an enterprise distinct from the pattern of racketeering activity, we need not address the other grounds for dismissal.

#### 1. Standard of review

**\*2** We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim. *Sutton v. Utah State Sch. for the Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). In our review, we accept all well-pleaded factual allegations as true and view them in the light most **\*720** favorable to the nonmoving party. *Id.* at 1236. "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

#### 2. Enterprise

**\*\*2** Subsection 1962(c) of RICO makes it
**\*\*2** unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**\*\*2** 18 U.S.C. § 1962(c). Subsection 1962(d) makes it "unlawful for any person to conspire to violate" subsection 1962(c). *Id.* § 1962(d). RICO provides a private civil cause of action for those who are injured by violations of § 1962 and allows for recovery of treble damages, costs, and attorney fees. *Id.* § 1964(c).

**\*\*2** "To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir.2002) (quotation omitted). The second RICO element, an enterprise, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Despite the apparent breadth of this definition, to properly plead an enterprise a plaintiff must allege three components: (1) that there is "an ongoing organization with a decision-making framework or mechanism for controlling the group," (2) "that various associates function as a continuing unit," and (3) "that the enterprise exists separate and apart from the pattern of racketeering activity." *United States v. Smith,* 413 F.3d 1253, 1266-67 (10th Cir.2005) (quotations omitted).

**\*\*3** We conclude that Kearney has failed to allege the third component-existence of an enterprise "separate and apart from the pattern of activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Kearney's amended complaint merely states, in relevant part:
**\*\*3** This Complaint's foundational claims are abuse of legal process and malicious prosecution of KEARNEY by the SWAT Team defendants with the direct assistance and aid of the other defendants....
**\*\*3** At all relevant times, the defendants acted as a group of persons associated together in fact for the common purpose of maliciously prosecuting KEARNEY, and thereby abusing legal process, obstructing justice, and conspiring to commit and committing perjury. Therefore, their conduct as such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

195 Fed.Appx. 717 Page 4
195 Fed.Appx. 717, 2006 WL 2501414 (C.A.10 (Colo.)), RICO Bus.Disp.Guide 11,130
**(Cite as: 195 Fed.Appx. 717)**

constitutes an association-in-fact "enterprise" within the meaning of RICO....

**\*\*3** Compl. at 49-50.

**\*\*3** [1] It is clear from these assertions that the alleged enterprise and the alleged pattern of racketeering activity are the same. Kearney claims that the Defendants associated in fact to obstruct justice by maliciously prosecuting him, but there is no indication that the "association" had any existence or purpose outside of the alleged malicious prosecution and intimidation of Kearney to prevent him from continuing to expose the supposed illegal activity and cover-up pertaining to Mena's death. See *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir.2004) ("[C]riminal actors who jointly engage in criminal conduct that amounts to a pattern of 'racketeering activity' do not automatically thereby constitute\*721 an association-in-fact RICO enterprise simply by virtue of having engaged in the joint conduct. Something more must be found- something that distinguishes RICO enterprises from ad hoc one-time criminal ventures."); *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987) ("[I]ndividuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two [or more] predicate acts during the commission of this offense, because their relationship to one another has no continuity."). Simply put, Kearney's allegations fail to show that, in the absence of the alleged malicious prosecution and scheme of intimidation against him, there would have been any association-in-fact at all among the Defendants. See *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir.1997) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation."). Therefore, Kearney has failed to properly plead an enterprise, [FN2] and his RICO claims were properly dismissed.[FN3]

FN2. In his response to Defendants' motions to dismiss, Kearney claimed that "the Denver Police Department and those closely affiliated with it is the enterprise." On appeal, he asserts that there were *four* enterprises: the Bruno law firm, the PPA, the Denver Police Department, and the association-in-fact of all Defendants. We decline to consider these claims because they were not pleaded in the complaint. "It is well-established ... that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir.1995); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

FN3. Because dismissal of Kearney's § 1962(c) claim was proper, dismissal of his RICO conspiracy claim was therefore also proper. See *Tal v. Hogan*, 453 F.3d 1244 at 1270 (10th Cir.2006) ("By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)."); *Condict v. Condict*, 826 F.2d 923, 927 (10th Cir.1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient.").

### B. Rule 11 Sanctions

**\*\*3** We now turn to the second issue in this case: whether the district court properly denied Defendant PPA's motion for sanctions against Kearney. We conclude that the denial was improper and remand for further consideration.

#### 1. Standard of review

**\*\*4** "All aspects of the district court's Rule 11 determination are reviewed for abuse of discretion, which is shown if the district court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Barrett v. Tallon*, 30 F.3d 1296, 1301 (10th Cir.1994) (quotation omitted).

#### 2. Analysis

**\*\*4** The district court denied PPA's motion for sanctions against Kearney, concluding that
**\*\*4** [t]he insufficiency of the federal claims does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

195 Fed.Appx. 717
195 Fed.Appx. 717, 2006 WL 2501414 (C.A.10 (Colo.)), RICO Bus.Disp.Guide 11,130
(Cite as: 195 Fed.Appx. 717)

Page 5

warrant a determination that sanctions should be imposed. That would require a separation of the federal claims from the state claims and this court has no basis for determining that none of the state claims made against PPA could be supported by evidence if *722 those claims were fully litigated. This court has no basis for making a Rule 11 determination with respect to the state law claims and is unwilling to separate them for this purpose.

**4 We agree with the PPA that the district court made "the erroneous legal assumption that the sanction analysis for the dismissed federal claims ... was somehow dependent on either the validity or the adjudication of the state law claims."

**4 Subdivision (b) of Rule 11 provides, in relevant part, that
**4 [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
**4 ...
**4 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
**4 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;....

**4 Fed.R.Civ.P. 11(b). Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Id. at 11(c).

**4 In Dodd Insurance Services, Inc. v. Royal Insurance Company of America, 935 F.2d 1152 (10th Cir.1991), we noted a circuit split as to the proper interpretation of Rule 11:
**4 Some courts have interpreted Rule 11 narrowly, suggesting that sanctions are inappropriate when a pleading contains both valid and frivolous claims. See, e.g., FDIC v. Tekfen Constr. & Installation Co., 847 F.2d 440, 444 n. 6 (7th Cir.1988) ("[E]ven if this minor argument were off the mark, the fact that one argument in an otherwise valid paper is not meritorious" does not warrant Rule 11 sanctions.); Burull v. First Nat'l Bank of Minneapolis, 831 F.2d 788, 789 (8th Cir.1987) (lawsuit containing meritless and factually groundless claims did not mandate Rule 11 sanctions because complaint, "taken as a whole, was legally and factually substantial enough to reach a jury"), cert. denied, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1540 (9th Cir.1986) ("Rule [11] permits the imposition of sanctions only when the 'pleading, motion, or other paper' itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous."). Other courts interpret Rule 11 more broadly, finding that it may be violated by a pleading containing a single frivolous claim. See, e.g., Cross & Cross Properties v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir.1989) ("[T]o adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established reading of Rule 11."); Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir.1988) ("Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions."); *723 Frantz v. United States Powerlifting Fed'n, 836 F.2d 1063, 1067 (7th Cir.1987) ("Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing.").

**5 Id. at 1158. We chose in Dodd to follow the broader interpretation of Rule 11 and therefore held "that a pleading containing both frivolous and nonfrivolous claims may violate Rule 11." Id. We firmly stated that "[t]o conclude otherwise would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions." Id. (quotation omitted).

**5 [2] We conclude that Dodd is controlling in this case. The district court essentially declined to consider whether the insufficiency of Kearney's RICO claims merited sanctions because it was unwilling to "separat[e]" those claims from Kearney's other-potentially meritorious-state-law claims. Yet Dodd specifically held that proper application of Rule 11 requires evaluating claims individually for sanctions purposes. This comports with the plain language of the Rule, which speaks in terms of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

195 Fed.Appx. 717   Page 6
195 Fed.Appx. 717, 2006 WL 2501414 (C.A.10 (Colo.)), RICO Bus.Disp.Guide 11,130
**(Cite as: 195 Fed.Appx. 717)**

"claims" and "legal contentions." Fed.R.Civ.P. 11(b)(2). Each claim must be individually evaluated and the merit, or potential merit, of one legal claim does not diminish the command of Rule 11 that *each* claim have the necessary legal support.

**\*\*5** Kearney argues that the district court's refusal to separate the claims was proper because his state-law claims were "at the heart" of his RICO claims. We do not think that relatedness matters. Although there are, not surprisingly, many similarities between the state and federal causes of action asserted by Kearney, RICO contains special requirements that do not apply to the state law claims. Therefore, even if Kearney were to prevail on his state-law claims, that would be quite irrelevant to the question of whether the federal claims-with their unique requirements-were warranted and nonfrivolous.

**\*\*5** We emphasize that our decision, of course, should not be taken as a conclusion that sanctions are merited in this case; that is a decision for the district court to make in the first instance. Our conclusion is simply that the district court "based its ruling on an erroneous view of the law," *Barrett,* 30 F.3d at 1301 (quotation omitted), and thereby abused its discretion. Consequently, we remand for the district court to address whether sanctions are merited.

### III. CONCLUSION

**\*\*5** For the foregoing reasons, we AFFIRM the dismissal of Kearney's RICO claims but REVERSE the district court's decision on sanctions and REMAND for a determination of whether sanctions are merited.

C.A.10 (Colo.),2006.
Kearney v. Dimanna
195 Fed.Appx. 717, 2006 WL 2501414 (C.A.10 (Colo.)), RICO Bus.Disp.Guide 11,130

Briefs and Other Related Documents (Back to top)

- 2005 WL 2124385 (Appellate Brief) Appellee's Reply Brief on Cross-Appeal (May 26, 2005) Original Image of this Document (PDF)
- 2005 WL 441590 (Appellate Brief) Appellant's Opening Brief (Jan. 18, 2005) Original Image of this Document (PDF)
- 04-1443 (Docket) (Oct. 22, 2004)
- 04-1439 (Docket) (Oct. 21, 2004)
- 2004 WL 3481276 (Appellate Brief) Defendants/Appellees David Thomas' and Steven Evans' Answer Brief on Cross Appeal (Sep. 21, 2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.